IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NATIONAL INDOOR FOOTBALL LEAGUE L.L.C.,** | |
| Plaintiff | CIVIL DIVISION |
| | NO. CA 2 - 548 |
| v. | TYPE OF PLEADING: |
| | Reply to Defendants' Motion in Limine |
| **R.P.C. EMPLOYER SERVICES, INC., and DAN J. D'ALIO,** | |
| | JURY TRIAL DEMANDED |
| Defendants. | |
| | FILED ON BEHALF OF: |
| | Plaintiff |
| | COUNSEL FOR PLAINTIFF: |
| | TIMOTHY C. LEVENTRY, LL.M |
| | LEVENTRY, HASCHAK & RODKEY, LLC |
| | 1397 EISENHOWER BOULEVARD |
| | RICHLAND SQUARE III, SUITE 202 |
| | JOHNSTOWN, PA 15904 |
| | (814) 266-1799 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONAL INDOOR FOOTBALL** | : | |
| **LEAGUE L.L.C.,** | : | **CIVIL DIVISION** |
| **Plaintiff** | : | **NO. CA 2 - 548** |
| | : | |
| v. | : | **TYPE OF PLEADING:** |
| | : | |
| | : | **Reply to Defendants' Motion in** |
| **R.P.C. EMPLOYER SERVICES, INC.,** | : | **Limine** |
| **and DAN J. D'ALIO,** | : | |
| | : | |
| **Defendants.** | : | |

### PLAINTIFF'S REPLY TO DEFENDANTS' MOTION IN LIMINE

AND NOW, comes the Plaintiff, NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C. (hereinafter "NIFL"), by and through its attorneys, Leventry, Haschak & Rodkey, LLC, and files the foregoing Reply to Defendants' Motion In Limine:

1.   Admitted.

2.   Admitted.

3.   Admitted.

4.   Admitted.

5.   Denied.  The Defendants fail to allege or to put forth any evidence obtained in discovery that the NIFL breached the Service Agreement, therefore, the Court should deny the Defendants' argument concerning the NIFL's alleged breach of the Service Agreement.  By way of additional answer, the Plaintiffs complied with the Service Agreement at all times relevant hereto. NIFL teams paid to RPC $9,217.07 for Worker's Compensation Premiums and $8,136.00 in

management fees between March 30, 2001 and April 16, 2001. No NIFL team missed a required payment to R.P.C. Employer Services, Inc. ("RPC") while the service agreement was in effect.

Furthermore, the NIFL established an address in Ohio even though it was not required to do so under the Service Agreement. The NIFL/RPC Service Agreement <u>does not</u> state the NIFL must move its headquarters to Ohio in order to secure workers' compensation coverage; in fact, the Service Agreement does not even mention moving League headquarters to Ohio. The marketing Proposal, given six (6) months earlier, is the only written document provided by RPC to the NIFL prior to RPC's cancellation of the NIFL/RPC Service Agreement which recommends the NIFL relocate its League offices to Ohio, but the Proposal <u>is not</u> part of the Service Agreement pursuant to the integration clause under paragraph 15(a) of the Agreement. A true and correct copy of the Service Agreement is attached hereto, made a part hereof and labeled **Exhibit A**.

If RPC seeks to avoid liability for breach of the NIFL/RPC Service Agreement, it is a condition precedent to avoid liability for its breach of contract that RPC prove it would have had the ability to perform if the NIFL had moved its headquarters to Ohio. <u>See</u> <u>e.g.</u> <u>Alabama Football, Inc. v. Greenwood</u>, 452 F.Supp. 1191, 1194 (W.D. Pa. 1978). In <u>Greenwood</u>, the court decided if Alabama Football, Inc. could sue to recover damages on a football contract entered into with L.C. Greenwood. <u>Id.</u> Alabama Football, Inc. sought to recover two (2) bonus payments given to L.C. Greenwood under the contract after L.C. Greenwood refused play for Alabama Football, Inc in 1975 after its Birmingham World Football League team went bankrupt and ceased operations. <u>Id.</u> at 1193. In deciding whether Alabama Football, Inc. could recover damages from L.C. Greenwood, the court held Alabama Football, Inc. had to first demonstrate it could field a viable team to compete in

Birmingham in 1975.  Id. at 1194.  Alabama Football, Inc. could not meet its burden because it financially could not resume operations in 1975.  Id. at 1196.

Like Greenwood, RPC cannot establish it could have been able to secure workers' compensation coverage in Ohio had the NIFL moved its headquarters to Ohio (even if it was an element of the Contract, which the NIFL denies).  At the March 15, 2001 meeting between RPC and representatives from the Ohio Bureau of Workers' Compensation, the Bureau instructed RPC that relocation of the League's headquarters to Ohio would not create coverage for staff, coaches and players working in other states.   A true and correct copy of Rex Blateri's deposition is attached hereto, made a part hereof and labeled **Exhibit B**; Blateri Deposition, Page 20; Page 30; Page 36.  In a June 4, 2001 letter, Tom Sico, Director of the Bureau's Legal Operations, confirmed Mr. Blateri's analysis stating relocation of the League's headquarters to Ohio would serve to secure coverage for administrative staff in Ohio, but coverage would not attach for teams and coaches outside of Ohio.  Mr. Sico's June 4, 2001 letter is attached hereto, made a part hereof and labeled **Exhibit C**.  Because there was no possibility of workers' compensation coverage for players and staff working outside Ohio, even if the NIFL had moved its headquarters to Ohio, RPC is not entitled to avoid damages for breaching the NIFL/RPC Service Agreement.

      6.      Admitted.

      7.      Admitted

      8.      Admitted in part.  Denied in part.  It is admitted the NIFL's players were employed by each of the teams, however, it is denied the NIFL, as the league governing entity, does not have standing to bring this action on behalf of the players who suffered unpaid workers' compensation claims.  The NIFL entered into the Service Agreement on behalf of the teams and as an agent of the

teams who employed the players. Carolyn Shiver testified on page 16 of her deposition that each team is a member of the National Indoor Football League, LLC. According to each player's contract with their respective team, the team is a "member" of the NIFL. Carolyn Shiver, on behalf of the NIFL, signed each player's contract along with a representative from the respective team. Since the teams are members of the NIFL, Carolyn Shiver was authorized to execute the Service Agreement, which applied to the NIFL's member teams electing to use RPC and governed the payroll and workers' compensation reporting to RPC for team's players. With regard to how the team's operated under the Service Agreement, Carolyn Shiver testified on pages 34 and 35 of her deposition that under the Service Agreement, the teams would send monies to the NIFL who would them forward the payroll funds to RPC for disbursement.

Because each team is a member of the NIFL and because the league signed the player's team employment contracts, the NIFL can bring claims on behalf of the players whose workers' compensation claims went unpaid. Furthermore, because the NIFL acted as an agent for the teams when entering into and operating under the Service Agreement, the NIFL has the right to enforce the unpaid workers' compensation claims of its team's players. It is well settled that an organization such as the NIFL and its members have standing to maintain RICO and fraud actions. Standardbred Owners Association v. Roosevelt Raceway Associates, L.P., 985 F.2d 102, 104-05 (2nd Cir. Ct. of Apps. 1993).

In addition, RPC understood that the Service Agreement involved the NIFL's teams because it charged separate fees for players and coaches from the individual teams. RPC also understood it was to provide workers' compensation insurance to the NIFL's team's players. For instance, in its Proposal, RPC marketed its ability to cover the NIFL's teams under its Ohio workers' compensation

policy.  RPC stated, "Ohio is a state-run workers' compensation insurance program and we have received approval from our pool of managers to add your group.  Ohio will cover <u>your teams</u> and support staff in Ohio . . ." (Emphasis Added).  A true and correct copy of the Proposal is attached as **Exhibit D**.  Given RPC's understanding that it was providing workers' compensation and payroll services to the teams and players through the NIFL league offices, RPC's standing argument lacks merit.

       9.      Denied. The damages incurred by the NIFL and each team's players consist of all damages and expenses incurred by players as well as the NIFL.  With respect to the players, the damages include all medical bills they incurred as a result of their injuries in addition to wage loss. The NIFL made specific representations to players and medical provider that it would pay claims from the recovery in the instant case.  Carolyn Shiver testified to this.  A true and correct copy of the Shiver Deposition is attached hereto, made a part hereof and labeled **Exhibit E;** <u>Shiver Deposition</u>**,** 122.  Because of these representations, the statute of limitations connected to unpaid claims are tolled under the Doctrine of Promissory Estoppel and the Federal Doctrine of Equitable Tolling. The individual players gave up their right to sue the NIFL based upon the NIFL's promise to pay. Equitable tolling functions to stop the statute of limitations from running where the claims accrual date has already passed. <u>Oschiver vs. Levin</u>, 38 F.3d 1380, 1387 (3d.Cir.1994).  Equitable tolling is appropriate "only where the principles of equity would make the rigid application of a limitation period unfair."  <u>Jones vs. Morton</u>, 195 F.3d 153, 159 (3d Cir. 1999).

      The Federal Equitable Tolling Doctrine holds that tolling of the statute of limitations is appropriate in three circumstances: (1) Where the defendant has actively misled the plaintiff respecting the plaintiff's Cause of Action; (2) Where the plaintiff in some extraordinary way has

been prevented from asserting his/her rights; and (3) Where the plaintiff has timely asserted his/her rights mistakenly in the wrong forum. Oshiver, 38 F.3d at 1380. This doctrine applies to the instant case because individual players and medical providers were promised payment of their claims from the recovery against RPC in the present case. Individual players and medical providers also fall into the second category of plaintiffs who have "been prevented from asserting their rights" since they have relied on the NIFL to recover damages for their individual claims. Therefore, the actual damages sustained by the individual players are the actual damages of the NIFL. The NIFL remains exposed to potential lawsuits by the individual players and medical providers who have postponed litigation against the NIFL under the Doctrines of Estoppel and Equitable Tolling. Since these doctrines apply against the NIFL, they apply to RPC as they remain a necessary party to the individual player and medical provider claims.

Finally, the NIFL also faces potential damages in its failure to provide Workers' Compensation coverage to its team's players. Under Pennsylvania law, for instance, it is a criminal offense for an employer not to provide Workers' Compensation coverage to its employees. The offense is categorized as a misdemeanor in the third degree, which carries a penalty of not more than one year incarceration and a maximum fine of $2,500.00. Additionally, each day that the employer fails to provide Workers' Compensation coverage is a separate offense. In Pennsylvania, NIFL has the exposure of a $2,500.00 fine for each day of the 2001 football season in which it failed to provide Workers' Compensation coverage for Pennsylvania players.

10. Denied. The first sentence of the first page of the NIFL/RPC Service Agreement states "[t]his Agreement is made and entered effective this 20th day of March, 2001." (Emphasis

Added). Accordingly, RPC is obligated to provide workers' compensation insurance beginning March 20, 2001.

11. Denied. The Defendants' attempt to bar the Plaintiffs' assertion of damages after April 17, 2001, which is the date RPC terminated the Service Agreement, is an attempt to limit the relief available to the Plaintiffs based upon RPC's bad-faith termination of the Service Agreement. RPC and D'Alio terminated the Service Agreement because they tried to cover up their fraud. Before the NIFL signed the Service Agreement on March 21, 2001, D'Alio met with representatives from the Ohio Bureau of Workers' Compensation about the NIFL's workers' compensation coverage. Dan D'Alio told the Ohio BWC that all of the teams would remain in different states and that the NIFL had plans to establish an office in Ohio. Blateri Deposition, page 20 (**Exhibit B**). (The NIFL was in the process of establishing an address in Ohio at the time of the March 15, 2001 meeting.) Based upon the information conveyed to Mr. Blateri by Dan D'Alio at the March 15, 2001 meeting, Mr. Blateri concluded the Bureau did not see any possibility of granting coverage to the NIFL through RPC acting as the PEO. Blateri Deposition, Page 20; Page 30; Page 36 (**Exhibit B**). Even though RPC knew this on March 15, 2001, it never told the NIFL about the results of this meeting.

When RPC realized it could no longer hide its fraud, RPC terminated the Service Agreement. On Friday, April 13, 2001, RPC sent instructions to the NIFL to clarify the policies and procedures required to obtain workers' compensation coverage including the necessity of completing certain documents for the Ohio BWC, such as form C-110, which form did not establish coverage even when completed. RPC's April 13, 2001 letter is attached hereto, made a part hereof and labeled **Exhibit F**. The following Tuesday, on April 17, 2001, RPC terminated the contract with the NIFL,

effective April 13, 2001, without giving the NIFL time to complete the requested actions outlined in the April 13 letter sent by RPC to the NIFL. RPC's April 17, 2001 letter is attached hereto, made a part hereof and labeled **Exhibit G**. In the April 17, 2001 termination letter, RPC failed to tell the NIFL that the NIFL's believed-to-be-in-existence Ohio coverage did not exist. <u>Shiver Deposition</u>, Page 139 (**Exhibit E**). The April 17, 2001 letter also failed to instruct the NIFL that it had to obtain its own insurance from another provider other than the Ohio BWC.

  The NIFL avers RPC terminated its agreement with the NIFL in bad faith because, through their own errors and fraud, RPC caused the NIFL to rely on its expertise and then finally determined it could not sustain any longer the illusion of workers' coverage through the state of Ohio for all NIFL employees. Dan D'Alio and RPC then tried to cover up their error and fraud by terminating the Service Agreement and blaming it on the NIFL. RPC should not be entitled to benefit from its termination of the Service Agreement because it acted in bad faith. The NIFL's damages should be the full amount of unpaid medical bills from March 20, 2001 through the end of the 2001 season.

  12. Denied. The NIFL made every good faith attempt to mitigate damages, but RPC made this impossible because it never informed the NIFL that the Ohio BWC told RPC in mid-March of 2001 that coverage would not be possible. As a result, NIFL believed the Ohio BWC would cover all players and continued to attempt to obtain coverage through Ohio until June 4, 2001 at which time it was too late for the NIFL to obtain coverage from another carrier so late into the season.

  When RPC terminated the Service Agreement, RPC's April 17, 2001 termination letter made no mention of cancelling workers' compensation coverage and made not mention that the NIFL never had coverage through Ohio. <u>Shiver Deposition</u>, 139 (**Exhibit E**) Accordingly, the NIFL

believed it still had workers' compensation coverage and that the NIFL coverage was based on RPC's Ohio policy because the NIFL had paid premiums through RPC to the Bureau for the dates of March 30, 2001 through May 14, 2001, as evidenced by a Certificate of Premium Payment issued to the NIFL for those dates. Shiver Deposition, 102, 139 (**Exhibit E**); A true and correct copy of the March 30, 2001 through May 14, 2001 Certificate of Premium Payment is attached hereto, made a part hereof and labeled **Exhibit H**.

Meanwhile, upon RPC's cancellation of the Service Agreement, the NIFL spoke with the Ohio BWC in attempt to maintain coverage for the remainder of the season beginning on May 14, 2001 when the first Certificate of Premium Payment expired. Shiver Deposition, 96-97 (**Exhibit E**). The Ohio BWC told the NIFL to submit new C-110 forms directly to the Ohio BWC, which forms are used to establish Ohio jurisdiction. Shiver Deposition, 103-05 (**Exhibit E**). The NIFL paid a Ohio BWC bill directly and then received a new Certificate of Premium Payment for the dates of March 30, 2001 through August 31, 2001, which the NIFL believed extended coverage for the remainder of the NIFL season. Shiver Deposition, 96-97, 104-05 (**Exhibit E**); A true and correct copy of the March 30, 2001 through August 31, 2001 Certificate of Premium Payment is attached hereto, made a part hereof and labeled **Exhibit I**. The NIFL believed coverage to be in effect with Ohio until June 4, 2001 when the Ohio BWC issued its formal legal opinion. Shiver Deposition, 104-05 (**Exhibit E**). At that time, the 2001 season was almost over and the NIFL could not find another insurance company to provide workers' compensation for all NIFL players since the season had less than two (2) months remaining. Shiver Deposition, 105-07 (**Exhibit E**). Had RPC told the NIFL about the results of the March 15, 2001 meeting, the NIFL undoubtedly would not have wasted a month and a half trying to maintain coverage through Ohio and could have searched elsewhere.

WHEREFORE, Plaintiff, National Indoor Football League, respectfully requests this court deny all the Defendants' Motions in Limine.

                                          Respectfully submitted,

                                          <u>s/ Timothy C. Leventry                 </u>
                                          Timothy C. Leventry, LL.M
                                          Attorney at Law

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONAL INDOOR FOOTBALL LEAGUE L.L.C.,** | : | |
| **Plaintiff** | : | **CIVIL DIVISION** |
| | : | **NO. CA 2 - 548** |
| v. | : | |
| | : | **TYPE OF PLEADING:** |
| | : | |
| | : | **Reply to Defendants' Motion in Limine** |
| **R.P.C. EMPLOYER SERVICES, INC., and DAN J. D'ALIO,** | : | |
| | : | |
| **Defendants.** | : | |

  I, Timothy C. Leventry, do hereby certify that a true and correct copy of the foregoing Reply to Defendants' Motions In Limine was served on the parties listed below by **regular mail and/or fax**:

Michael J. Seymour, Esq.
Feczko and Seymour
520 Grant Building
310 Grant Street
Pittsburgh, PA 15219

Bernard C. Caputo, Esq.
Fort Pitt Commons Building, Suite 260
445 Fort Pitt Boulevard
Pittsburgh, Pennsylvania 15219

               **LEVENTRY, HASCHAK, & RODKEY, LLC**

Dated: _____3-6-06_____      By: _s/ Timothy C. Leventry_
               Timothy C. Leventry, Esquire