# EXHIBITS FOR REPLY TO DEFENDANTS' MOTION IN LIMINE

| | |
|---|---|
| SERVICE AGREEMENT | A |
| BLATERI DEPOSITION | B |
| JUNE 4, 2001 LETTER FROM TOM SICO TO THE NIFL | C |
| RPC'S PROPOSAL | D |
| SHIVER DEPOSITION | E |
| APRIL 13, 2001 NOTIFICATION LETTER | F |
| APRIL 17, 2001 TERMINATION LETTER | G |
| MARCH 30, 2001 TO MAY 14, 2001 PREMIUM PAYMENT CERTIFICATE | H |
| MARCH 30, 2001 TO AUGUST 31, 2001 PREMIUM PAYMENT CERTIFICATE | I |

# RPC Employer Services, Inc.

## Service Agreement

This Agreement is made and entered effective this 20th day of March, 2001, by and between RPC Employer Services, Inc. ("RPC"), an Ohio Corporation located at 7771 Raglan Dr. NE, PO Box 8605, Warren, Ohio 44484, and;

| | |
|---|---|
| Company Name: | National Indoor Football League, L.L.C. |
| Address: | PO Box 8628 |
| City: | Warren |
| State: | Ohio |
| Zip: | 44484 |
| EIN or SSN: | 94-3387642 (Ohio Corporation) |

## 1.   STAFFING

RPC hereby agrees to furnish to Client, and Client hereby agrees to engage from RPC, staffing for all Job Function Positions.

## 2.   TERM OF AGREEMENT

This Agreement shall commence on the EFFECTIVE STARTING DATE set forth below and shall continue in effect of the initial term ("Initial Term") of one (1) year following the commencement of this Agreement. This Agreement may thereafter be extended by mutual consent of both RPC and Client from month to month "Extended Term". During the Initial Term, RPC or Client may terminate this Agreement by giving written notice of termination to the other party thirty (30) days prior to the effective date of said termination. During the Extended Term, either party may terminate this Agreement upon giving written notice thirty (30) days prior to the effective date of said termination. Notwithstanding anything to the contrary contained in this Agreement, RPC may terminate this Agreement immediately upon twenty-four (24) hours notice to Client in the event of a material breach by Client of any of the provisions to this Agreement.

### 2a.  PAYROLL REPORTING: Commencing with the EFFECTIVE STARTING DATE, and according to the payroll processing frequency itemized on the FEE STRUCTURE STATEMENT page, the Client must report employee wages in a timely manner so as to allow RPC to process and distribute payroll and related benefits in accordance with Federal and State guidelines. Should client fail to report wages each and every pay period, RPC shall reserve the right to immediately terminate this agreement pending payment in full of all obligations. Client shall be solely responsible for all wages and applicable taxes pertaining to unreported wages. If Client requests to activate service with RPC in the future, then Client would be required to meet normal underwriting guidelines in order to initiate new service.

## 3.   FEES

a.   Client shall pay RPC a fee (the "Fee") as specified in the Fee Structure Statement attached hereto and made a part hereof. The Fee shall be paid in full, by wire transfer, direct bank debit, certified check or money order and delivered to RPC not less than twenty-four hours prior to the distribution of any payroll checks for such period. Any failure by Client to make payment as set forth shall render Client in default of this Agreement and constitute a material breach hereof, and any Employee(s) assigned to Client shall be transferred to Client effective the last day of the preceding pay period for such Employee(s).

b.   The Fee shall consist of the following items: all payroll (inclusive of bonuses, holiday pay, sick leave pay, vacation pay and/or other special payments), all applicable federal, state and local taxes, including all applicable Federal Insurance Contributions Act, Federal Unemployment Tax Act and Medicare Coverage payments, all premiums and contributions in connection with any employee retirement or other benefits including, but not limited to, all health, accident disability or other insurance premiums, all workers' compensation premiums including any required deposits not charged as part of the set-up fee, all unemployment compensation charges, and a service fee (the "Service Fee") for the administrative services of RPC.

EXHIBIT

A

tabbies

# RPC Employer Services, Inc.

## Service Agreement

c. During the Initial Term of this Agreement, RPC may not adjust the Fee except for statutory increases in employment taxes or insurance or any change in the Job Function Positions required by Client. During the Extended Term of this Agreement, RPC may adjust the Fee for statutory increases in employment taxes or insurance or any change in the Job Function Positions required by Client, or upon thirty (30) days prior written notice.

d. Any increase in the Fee for statutory increases in employment taxes or insurance or any change in the Job Function Positions shall be effective on the date of such increases or change.

e. Client agrees to verify all time sheets or other evidence of time submissions by Employees (as defined in Paragraph 13.)

## 4.   CLIENT DEPOSIT

a. RPC reserves the right at any time during the term of this Agreement to require Client to deposit such funds or provide such other guaranty as RPC in its sole discretion, may determine from time to time to guarantee the performance of Client hereunder. The deposit shall be in an amount equal to one (1) payroll cycle as calculated for each Client. The waiver by RPC of this requirement at any time shall not stop or act as a waiver of RPC's right to require a deposit at any subsequent time during the term of this Agreement.

b. In the event Client fails to maintain the required deposit from time to time as determined at the sole discretion of RPC the same shall be termed to be a material breach of this Agreement.

c. On termination of this Agreement, any balance remaining in the account of Client shall be remitted to Client on or before [sixty (60)] days after the termination of this Agreement, provided that Client has performed all of its obligations under the terms of this Agreement

d. Any moneys of Client in possession of RPC hereunder may be applied to RPC to any default in any payments by Client under the terms of this Agreement.

## 5.   INSURANCE

a. Workers' Compensation Insurance

RPC shall furnish and keep in full force and effect at all times during the term of this Agreement workers' compensation insurance covering all Employees filling Job Function Positions under the terms of this Agreement, and where applicable, such policies shall designate Client and RPC respectively, as the first and second named insured. In addition, RPC shall cause that appropriate evidence of insurance be filed with the Worker's Compensation Bureau of any state as deemed necessary by the Client.

b. Automobile Liability Insurance

If any Employee filling a Job Function Position is to drive a vehicle of any kind for Client, Client shall furnish automobile liability insurance covering said vehicle and said Employees. The policy of automobile insurance shall insure against public liability for bodily injury and property damage, with a minimum combined single limit of One Million Dollars ($1,000,000.00) and uninsured motorist or personal injury protection, or equivalent coverage, of at least the minimum limits required by the state where such "no fault" laws apply. Client shall cause its insurance carrier to name the Employees and RPC as additional named insured and loss payees, and to issue a Certificate of Insurance to RPC whereby RPC is provided not less than (30) days advance notice of cancellation or material change in any such automobile liability insurance coverage. RPC shall be the Certificate Holder for purposes of making claims thereunder.

c. General Liability Coverage

Client agrees to cause its insurance carrier to name RPC and Client's employees as additional insured on Client's general liability insurance policy, and shall issue a Certificate of Insurance evidencing same to RPC whereby RPC is provided not less than thirty (30) days notice of cancellation or material change in said general liability insurance policy. The minimum requirements of said general liability insurance policy shall be One Million Dollars ($1,000,000.00) combined single limit including, but not limited to, where applicable, premises, operations, products, completed operations, contractors, personal injury, host liquor liability, independent contractors and full liquor liability. In the event, Client renders professional services, a professional services rider on said general liability and extended coverage policy shall be required as

# RPC Employer Services, Inc.
## Service Agreement

applicable. Said professional services liability coverage shall, depending on the business activities of Client, and upon the written request of RPC provide for minimum limits of coverage of One Million Dollars ($1,000,000.00).

    d.   Group Medical Insurance

After the completion of a specified probationary period, each Employee filling a Job Function Position may elect within the enrollment period at his or her cost, to be covered by a group medical insurance policy offered by RPC. Each Employee may elect additional coverage by reimbursing RPC the actual cost of the extra coverage. In the event an Employee is terminated or is otherwise unavailable to reimburse RPC for coverage elected, Client shall reimburse RPC for any premium dollars advanced by RPC on behalf of the Employee.

    e.   Retirement Plan Each employee filling a Job Function Position may voluntarily participate in a 401k Plan provided by RPC to the extent such plan is in existence.

    f.   Excluded Coverage

RPC shall not be responsible and shall not furnish insurance for claims involving discrimination or harassment, including but not limited to claims involving age, sex, race, religion, equal pay, national origin, disability, marital status, veteran status or sexual preference. Client agrees to indemnify and hold RPC harmless for any and all liability for such claims resulting from acts or omissions of Client or any director, officer, employee, or other agent of Client, as further described in Paragraph 9. Any damages, attorneys' fees or expenses awarded to an Employee or his/her representative as a result of any such claims will be paid by Client.

    g.   Subrogation

Client hereby waives any claim in its favor against RPC by way of subrogation or indemnification which may arise during the Initial Term or any Extended Term of this Agreement or any and all loss of, or damage to, any of the Client's property or for bodily injury which loss, damage or bodily injury is covered by insurance to the extent that such loss is recovered under such policies of insurance as are required in this Agreement.

    h.   Specific Continuing Covenant

Client and RPC each agree to keep in full force and effect, at all times during the Initial Term and any Extended Term of this Agreement, all insurance policies required under this Agreement.

## 6. COMPLIANCE WITH LAWS

    a.   General

Client agrees, at its expense, to provide reasonable accommodations for all Employees having a disability as defined in Title 1 of the Americans with Disabilities Act.

    b.   Americans With Disabilities Act

Client agrees, at its expense, to provide reasonable accommodations for all Employees having a disability as defined in Title 1 of the Americans with Disabilities Act. Client also agrees to indemnify and hold RPC harmless from any and all claims arising from Client's failure to provide reasonable accommodations, and for any expenses incurred by RPC for having to make reasonable accommodations as a result of Client's refusal to do so, as further described in Paragraph 9.

## 7. ADMINISTRATION

RPC acknowledges that it is responsible for such administrative employment matters as the payment of all federal, state and local employment taxes, the providing of workers' compensation coverage, and the providing of non-obligatory fringe benefit programs for the Employees.

## 8. WORK ENVIRONMENT

Client agrees that it will comply with all laws, regulations, ordinances, directives and rules imposed by controlling federal, state and local government authorities including, but not limited to, The Americans With Disabilities Act, Title VII of the Civil Rights Act, the Occupational Safety and Health Act, the Fair Labor Standards Act and the Family Medical Leave Act. If applicable, and that it will within twenty-four (24) hours,

# RPC Employer Services, Inc.
## Service Agreement

report all accidents and injuries to RPC. Client agrees to comply, at its expense, with any specific directives from the workers' compensation insurance carrier, if any, or any governmental agency having jurisdiction over the work place or the Employees' health and safety. Client shall provide and ensure use of all personal protective equipment as required by federal, state or local law, regulations, ordinances, directives or rules, or as deemed necessary by RPC or by its workers' compensation carrier, if any. RPC workers' compensation carrier, if any, has the right at any scheduled mutually convenient time, to inspect Client's premises and operations, but is not obligated to undertake such inspections. RPC or its carrier, if any, may give reports to the Client of the results of any inspections. Neither any carrier nor RPC warrants the results of any such inspections or the absence thereof, or that the operations and/or premises are in compliance with any laws regulations, codes or standards.

## 9.   HOLD HARMLESS

Client hereby agrees to indemnify, defend and hold RPC harmless from and against any and all claims, damages, losses, judgments, fees, expenses and costs (including court costs and attorneys' fees) and liabilities and obligations of any nature whatsoever, contingent or otherwise, known or unknown, as though expressly set forth and described herein, which Client may incur, suffer, become liable for, or which may be asserted or claimed against Client arising out of or related to the acts, errors or omissions of Client or any director, officer, employee or other agent of Client, including, without limitation, any and all claims in any way related to the matters contained in Paragraph 5(f) and 6 or any violation of this Agreement by Client or RPC's efforts to enforce this indemnity. Client shall take all reasonable measures to inform creditors and other third parties that all Employees assigned to Client to fill the Job Function Positions are employees of RPC, and that RPC is not responsible for Client's debts, acts, errors or omissions except as specifically set forth in this Agreement.

Notwithstanding anything to the contrary contained herein, RPC shall not be liable in any in any event for Client's loss of profits, business, goodwill, or other consequential, special, or incidental damages.

## 10.   LATE CHARGE

Should payment of any amounts due RPC not be made when due, Client shall pay a monthly late charge at a rate of one and one-half percent (1 ½%) per month on all past due invoices, or the maximum rate permitted by law, whichever is less.

## 11.   DEFAULT

Client shall be in default of this Agreement, and said default shall constitute a material breach hereof, if:

- a. Client shall fail to pay the Fee;
- b. Client shall fail to report timely employee wage information each and every pay period
- c. Client shall commit any act that interferes with the rights of RPC as the employer of the Employees provided under this Agreement;
- d. Client shall fail to provide any insurance required under this Agreement;
- e. Client shall fail to comply with any law, regulations, ordinance, directive, or rule regarding the health and safety of Employees from RPC's workers compensation carrier, if any or any governmental agency;
- f. Client shall commit any act that disrupts any of the rights of RPC as the employer of the Employees provided for under this Agreement;
- g. Client or any guarantor of Client's obligations hereunder shall generally not pay its debts as they become due;
- h. Client or any guarantor of Client's obligations hereunder shall admit its inability to pay its debts or shall make a general assignment for the benefit of creditors;
- i. Client or any guarantor of Client's obligations hereunder shall commence any case, proceeding or other action seeking to have an order for relief entered on its behalf as debtor or to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it, or its debts, under any law relating

# RPC Employer Services, Inc.
## Service Agreement

to bankruptcy, insolvency, reorganization or relief of debtors or seeking appointment of a receiver, trustee, custodian or other similar official for Client or for all or any substantial part of Client's property;

j.   Client or any guarantor of Client's obligations hereunder shall take any corporate or other action to authorize or to contemplate any of the actions set forth above; or

k.   Client shall fail to comply with any applicable governmental law, regulation, ordinance, directive or rule, whether federal, state or local.

## 12.   EFFECT OF BANKRUPTCY OR INSOLVENCY

In the event any of the actions specified in the immediately preceding paragraph occurs, RPC shall have no further obligation to advance any funds on behalf of Client pursuant to this Agreement for any purpose whatsoever unless RPC shall have such funds in its possession at the time any payment or advance is due under this Agreement.

## 13.   EMPLOYEES

For purposes of this Agreement, the term "Employee," whether singular or plural, shall mean such individuals as shall be assigned by RPC to fill the Job Function Positions of Client under this Agreement. All such individuals covered by this agreement shall be deemed to be assigned to Client on a permanent basis.

## 14.   WARRANTY

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, RPC MAKES NO COVENANT, REPRESENTATION, WARRANTY, OR AGREEMENT OF ANY KIND, EXPRESS OR IMPLIED, TO CLIENT OR ANY OTHER PARTY WITH RESPECT TO THE PERFORMANCE BY EMPLOYEES OF SERVICES RENDERED TO CLIENT AS CONTEMPLATED HEREUNDER. UNDER NO CIRCUMSTANCES SHALL RPC TOTAL LIABILITY OF ANY KIND ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING BUT NOT LIMITED TO ANY WARRANTY CLAIMS HEREUNDER REGARDLESS OF THE FORUM AND REGARDLESS OF WHETHER ANY ACTION OR CLAIM IS BASED ON CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE) EXCEED THE TOTAL AMOUNT PAID BY CLIENT TO RPC AS SERVICE FEES HEREUNDER (DETERMINED AS OF THE DATE OF ANY FINAL JUDGMENT IN SUCH ACTION).

## 15.   MISCELLANEOUS

a.   Entire Agreement

This Agreement constitutes the entire understanding and agreement of the parties hereto with respect to the covenants contemplated hereby, and supersedes all prior oral and written agreements and understandings of the parties relating to the subject matter hereof.

b.   Attorneys' Fees

In the event that any action is brought by either party hereto as a result of a breach or a default in any provision of this Agreement, the prevailing party in such action shall be awarded reasonable attorneys' fees and costs in addition to any other relief to which the party may be entitled.

c.   Survival of Agreement

All covenants, representations, warranties, and agreements made herein shall survive the execution and delivery of this Agreement. Wherever in this Agreement reference is made to any of the parties hereto, such reference shall be deemed to include the corporate successors in interest, legal representatives, heirs, assigns, and any other successors of such party.

d.   Construction

This Agreement shall be governed by, construed and enforced under the substantive, and not conflicts, laws of the State of Ohio. The forum for any litigation hereunder shall be the federal or state, as appropriate, courts located in Trumbull County, Ohio. An action for breach of this Agreement or any other action otherwise arising out of or related to this Agreement must be commenced within one (1) year from the date

# RPC Employer Services, Inc.
## Service Agreement

the right, claim, demand or cause of action shall first occur, or be barred forever. The headings appearing herein are for convenience only, and are without legal effect.

**e.** _Waiver of Breach_

Failure by either party at any time to require performance by the other party or to claim a breach of any provision of this Agreement will not be construed as a waiver of any subsequent breach nor affect the effectiveness of this Agreement, nor any part thereof, nor prejudice either party with regard to any such subsequent action.

**f.** _Notices_

Any notice or demand to be given hereunder by either party to the other shall be effected by personal delivery in writing or a certified mail. postage paid, return receipt requested, and shall be addressed to the party's principal place of business set forth above, but each party may change the address by written notice in accordance with this paragraph.

**g.** _Validity_

This Agreement shall be valid and enforceable only after it has been signed by both parties. In the event any term, warrant, covenant, condition, or provision of this Agreement is held to invalid or unenforceable, the balance of this Agreement shall remain in full force and effect and shall stand as if the unenforceable part did not exist.

**h.** _No Partnership_

Notwithstanding any provision to the contrary herein, RPC, under this Agreement or by any action taken pursuant hereto, shall not be deemed a partner, joint venture, or joint employer with Client.

In witness whereof, the parties have executed this Agreement as of the date and year first written above.

**RPC EMPLOYER SERVICES, INC.**

By: _____     3-27-01
Daniel J. D'Alio, President                                    Date


**NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C.**

By: Carolyn Shiver President 3/21/01
Carolyn Shiver, President                                    Date

**NOTICE: THIS AGREEMENT IS SUBJECT TO THE FINAL APPROVAL OF THE HOME OFFICE AND SHALL NOT BECOME EFFECTIVE UNTIL SUCH TIME AS APPROVAL IS GRANTED AS EVIDENCED BY THE ABOVE ENDORSEMENT OF AN OFFICER OF RPC EMPLOYER SERVICES, INC.**

## EFFECTIVE STARTING DATE:

Based on each team's first game of the 2001 season according to the official published schedule, which shall be made a part of this agreement.

# RPC Employer Services, Inc.
## Service Agreement

## FEE STRUCTURE STATEMENT

| Description | Amount | Per |
|---|---|---|
| Payroll Frequency: | | Weekly |
| Service Fee: | | |
| Players, coaches | $18.00 | Person per weekly pay period |
| Office Staff | $12.00 | Person per weekly pay period |
| FICA (Employer Match) | 7.65% | Of taxable wages up to taxable limits |
| FUTA (Federal Unemployment) | 0.80% | Of taxable wages up to taxable limits |
| SUTA (State Unemployment) | 2.75% | Of taxable wages up to taxable limits |
| Workers' Compensation: | | |
| -Players, Coaches, Code 9179: | 11.65% | Per $100 of Payroll |
| -Office staff, Code 8810: | 0.52% | Per $100 of Payroll |
| DEDUCTIBLE: | $1000 | PER CLAIM AS ASSESSED TO EACH TEAM BY THE LEAGUE MANAGEMENT |
| Overnight Delivery | $13.00 | Per Payroll Delivery as requested |
| Direct Debit Fee | $5.00 | Per Invoice |
| One-time Setup | $495.00 | |

# RPC Employer Services, Inc.
## Service Agreement
### SECURITY DEPOSIT

As additional security for performance of the obligation incurred, Client hereby grants to and deposits with RPC cash and/or an irrevocable standby letter of credit in an amount equal to one (1) estimated payroll cycle inclusive of gross payroll and all applicable federal, state and local taxes, as well as, the total estimated employee benefits paid, for a total of $ (see **NOTE** below). Said sum shall be held by RPC until such time as the Agreement between the parties is terminated and any and all obligations, indebtedness, or other liabilities of Client have been satisfied or applied hereto.

**RPC EMPLOYER SERVICES, INC.**

By _____

Daniel J. D'Alio, President

**NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C.**

By _____ President

Carolyn Shiver, President

*Do not cut payroll checks for teams unless wire transfers are received.*

**NOTE:** Security deposit will be waived so long as wire transfer or direct debit payment is received by RPC on Wednesday prior to each Friday pay date. If this term is not met, then a Security Deposit will be necessary in order to continue service.

# ○EmployShare™

*Focus On The Business Of Your Busines[s]*

To All NIFL Team
Attn: Carolyn Shiver

Please be advised that our services, including workers' compensation, will not be effective until all of the following have been completed:

- League Service Agreement with RPC Employer Services, Inc. is completed and signed by both parties.
- First pay date is set and agreed upon by <u>all</u> teams.
- Employee applications must be received and fully completed, which must include the appropriate paperwork, including I-9 verification documentation and the Ohio Form C-110.  *The C-110 must be filed with the state of Ohio BWC with 10 days of execution in order to be considered filed by the state for coverage.

If you have any questions, please do not hesitate to contact me at 724-843-3020 ext. 122.

Sincerely,

Maureen A. Ciarolla
Director, Human Resource Operations

PO Box 8605, Warren, OH 44484
Phone: (800) 635-9961 Fax: (419) 821-0229
E-mail: ddalio@employshare.com

1    the -- your understanding about the headquarters for

2    the league?

3    A.          The headquarters was currently located in

4    Louisiana.  And that they, they being the PEO and

5    the National Indoor Football League, had worked out

6    some type of arrangement to relocate the league

7    headquarters to Ohio.

8    Q.          Okay.  Based on the understanding that

9    you had at that meeting, could you tell us today

10   what Dan D'Alio and Ms. Pasternack were advised by

11   you and the other members from the Bureau?

12   A.          Sure.  At the meeting I can -- it was

13   conveyed to Jere Pasternack and Mr. D'Alio that if

14   the -- if the teams did not locate -- were not

15   located in the state of Ohio, if they did not

16   operate in the state of Ohio, then --

17   Q.          You mean the teams?

18   A.          The teams.  The teams did not operate in

19   the state of Ohio, we did not see any possibility of

20   Ohio granting coverage to the National Indoor

21   Football League through the PEO.

22   Q.          Okay.  Mr. Blateri, what was the date of

23   your meeting?

24   A.          I do not know that.  I do not know the

EXHIBIT

tabbies®

B

1    Q.          You tell me, again, what you advised

2    them.

3    A.          Yeah.  Sure.  I gave an informal or

4    unofficial observation based on the high level

5    scenario that they gave me, Al Monahan and Kay

6    Spicer, that it did not appear that this would fall

7    under the Bureau's jurisdiction to provide coverage.

8    And that basically caused the e-mail to our law

9    department that we left it as we will get an

10   official word from our law department.

11   Q.          So after March 15th, did any facts

12   actually -- did any facts change from what you were

13   told by Mr. D'Alio or Ms. Pasternack at your

14   meeting?

15   A.          Actually, no, it did not.  Everything --

16   I'm trying to think.  For the most part how they

17   described the relationship and how the National

18   Indoor Football League would operate, there was no

19   drastic change in what was told to us at the

20   meeting.

21   Q.          Okay.  So you have a meeting on

22   March 15th.  There's some internal e-mails regarding

23   this matter.  The Bureau receives on March 30th the

24   application from the NIFL.  And a certificate is

1   had moved its headquarters and all its corporate

2   employees to Ohio, and those corporate employees who

3   worked in the headquarters all lived and worked

4   here, first of all, would those employees that

5   worked in the corporate headquarters have been

6   covered by the workers' compensation certificate

7   issued by the Bureau?

8            MR. SEYMOUR:  Objection to form.

9            THE WITNESS:  Yes.

10  BY MR. LEVENTRY:

11  Q.       Okay.  Assuming that the -- again, the

12  headquarters and the employees were moved to the

13  state of Ohio, would the players for the 18 teams,

14  none of which were in the state of Ohio and none of

15  which played games in the state of Ohio, been

16  covered by the Bureau of Workers' Compensation

17  coverage?

18           MR. SEYMOUR:  Objection to form.

19           THE WITNESS:  No.

20  BY MR. LEVENTRY:

21  Q.       And did you, in fact, inform Mr. D'Alio

22  and Ms. Pasternack of that position with the Bureau

23  on March 15th, 2001?

24           MR. SEYMOUR:  Objection to form.

EXHIBIT

C



Better Workers' Compensation
Built with you in mind.

Bob Taft
Governor

James Conrad
Administrator/CEO

The Ohio Bureau of Workers' Compensation
30 West Spring Street, Columbus OH 43215-2256

Legal Operations    Phone:   614-466-6600
Fax:     614-466-9384

June 4, 2001

Carolyn Shiver, President
National Indoor Football League
122 ½ Third St.
Tiltonsville, OH  43963

and

Carolyn Shiver, President
National Indoor Football League
600 Loire Avenue
Lafayette, LA 70507

RE:    National Indoor Football League (NIFL)
       Risk Nos. 1201109 &1338243

Dear Ms. Shiver:

The purpose of this letter is to advise you of the legal position of the Ohio Bureau of Workers' Compensation (BWC) with respect to alleged coverage of National Indoor Football League (NIFL) teams based outside the State of Ohio. For reasons which I will discuss below, it is BWC's position that the various NIFL teams based in cities outside Ohio do not have sufficient jurisdictional contact with Ohio and therefore BWC will not pay any alleged claims filed on behalf of these players.

On March 17, 2001, on behalf of the NIFL you executed an application for Ohio workers' compensation coverage with BWC. On the application you listed the location of operations for the NIFL as Warren, Ohio, and indicated the number of Ohio employees was 550. At the same time, you gave a P.O. Box in Warren, Ohio as the office address. Subsequent to the completion of the application and your payment of the premium deposit, it is my understanding that you have attempted to submit numerous completed C-110 forms to BWC. At the same time, BWC has been advised that none of the teams participating in the NIFL are located in Ohio. Moreover, none of the players were hired in Ohio or work in Ohio. Therefore, none of these players have sufficient jurisdictional contacts with Ohio to be covered under any policy with the Ohio Bureau of Workers' Compensation.

Page 2
Carolyn Shiver
May 25, 2001

You should be aware that where a company has an office or other facility in Ohio, as is allegedly the case with NIFL, but actually operates in another state or states, Ohio does not have jurisdiction over persons hired out of state, who are supervised and controlled in other states and perform all of their actual work in other states. Thus, the Bureau's form C-110 **cannot** be used to attempt to obtain Ohio coverage for employment relationships where the **only** contact with this state is that the employer has an office in Ohio. Rather, coverage should be obtained for the employees in the state in which they were hired and are working.

Based upon all the information which has been provided to BWC, none of the actual players in the NIFL were hired in Ohio and none of them are presently working in Ohio. Therefore, any workers' compensation claims filed in Ohio are properly denied. If you have any office staff which is hired in Ohio and actually works in Ohio, these workers would be covered under Ohio coverage. However, that has not been my understanding to date. In fact, it is my understanding that the NIFL does not in fact operate out of the State of Ohio.

I trust this information is useful to you. Please do not hesitate to contact me should you have further questions concerning this matter.

Very truly yours,

Tom Sico
Director of Legal Operations

JK/h:miscella/NIFL.doc
June 1, 2001

Xc:     Marty Herf, Chief Risk Officer
        Al Monahan, Director, Employer Operations
        Rex Blateri, Administrative Officer, Employer Operations

A program offered by RPC Employer Services, Inc.

## EmployShare™

The ultimate solution for managing tomorrow's human resource needs.

Saturday, October 28, 2000

Matt Swezey
StaffMarket Services
7316 Manatee Ave West #341
Bradenton, FL 342.9
E-mail: Matt@staffmarket.com

RE: RFP #25, NATIONAL INDOOR FOOTBALL LEAGUE, INC.

Dear Matt:

Thank you for this opportunity to respond to RFP #25, National Indoor Football League, Inc. Following is our proposal based on the information you supplied through your web site and via fax and phone. Please keep in mind that this proposal is valid until January 1, 2001. If service, in part or in whole, is not commenced by that time, then a new proposal may be necessary.

Dear National Indoor Football League, Inc. Management:

We provide employer support services that help our clients to focus on the business of their business, both in time, money, and efficiency. We call this program **EmployShare**™. As a professional employer, there are key areas that we may or may not influence, depending on your needs and requirements. Please keep in mind that every company has its unique needs and objectives. We are interested in meeting each particular need and objective <u>and will modify our service plan</u> to meet our client's specific needs.

## ❑ THE BUSINESS OF PROFESSIONAL EMPLOYER ORGANIZATIONS (PEOs)

There are specialists for nearly every type of function: trial lawyer, divorce lawyer, orthodontist, transmission specialist, aeronautic engineer, tax specialist, etc. You name it and there is likely a field of expertise to call on except being an employer. It used to be that your accountant or attorney could handle everything for you, from tax filings to personnel handbooks to workers' compensation claims hearings. But that has changed because each profession has become much more specialized. You now need to have four attorneys on hand to battle potential litigation and multiple accountants to manage taxes, abatements, payroll, health care, sales tax, and more.

Proposal Notes

Page 1 of 8

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



NAPEO Member
National Association
of Professional Employer
Organizations

EXHIBIT

D



A program offered by RPC Employer Services, Inc.

# EmployShare™

*The ultimate solution for managing tomorrow's human resource needs.*

Professional employers specialize in *being* an employer. We utilize the economies of scale to provide services in the most cost-effective fashion possible. Payroll, payroll taxes, deductions, health care, credit union, workers' compensation, unemployment insurance, and personnel policy management are just a few of the areas we specialize in.

Our business (and industry) has flourished because we utilize our strength in numbers to provide your company with the human resource support that is necessary in order to protect your company from unwarranted government compliance implications and penalties. Following is a summary of our services that will be provided:

## ☐ **WE BECOME YOUR 'VIRTUAL' PAYROLL DEPARTMENT**

We are confident that you will greatly appreciate the payroll and personnel support that we give you as your virtual payroll department. You will have complete payroll wage input control via fax or Internet e-mail to our offices, but you will be able to stop at that point and walk away from the rest of your payroll and payroll tax responsibilities. This means that you will be free to focus on more profitable, profit-earning functions: receivable collections, client service, and overall increased productivity. Each of our clients has reported in different ways how they have found better, more profitable job functions for those employees that were once boggled down with administrative and payroll functions.

Employees will be receiving their earnings each Friday via direct deposit or payroll check. All data is processed by RPC, in Beaver Falls, PA, utilizing the latest in computer hardware (Dell) and software (Darwin). Our integrated HR and payroll software system provides us the support necessary to process accurate, timely checks and reports. And we make changes quickly, which is very important to our clients. They depend on us to have immediate answers.

### Here's how the payroll system works:

We recommend that your staff utilize our front-end payroll input software, which we will install and train your staff on. This simple program is very easy to learn/use and will allow for a more accurate and organized transfer of wage information compared to using standard fax time sheet input.

After entering and saving input data, you will e-mail the pay date file to us on Monday or Tuesday and we will bill you for the entire payroll costs on Wednesday. You will receive your check(s) on Thursday for Friday pay date and we will receive our payment, direct debit, or wire transfer from you by

Proposal Notes

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



NAPEO Member
National Association
of Professional Employer
Organizations



A program offered by RPC Employer Services, Inc.

# EmployShare

*The ultimate solution for managing tomorrow's human resource needs.*

Thursday. We will work with you each payroll week to make certain that the payroll is always accurate and all changes are made according to your needs.

**All payroll taxes** and payroll tax filings are the sole responsibility of RPC Employer Services, Inc. Federal, state, <u>and local taxes</u> are deposited each week and RPC is solely responsible for the accuracy and timeliness of payments and filings. We have been pleased with the accuracy of our processing which has enabled us to expand into other states without any tax implications. Please remember that our payroll is processed on OUR tax identification number and NOT on your number.

**Direct deposit** of an employee's net pay is a free option that we recommend to everyone. Payday should be just as productive a day as any other. Having your pay directly deposited saves time, worry, and anxiety. There really is no need to go to the bank when the Federal Reserve will place your pay in your own account. Employees on direct deposit receive the same pay stub as when receiving a check. It is easy to sign up for direct deposit (the application is in the employee's paperwork) and the process usually takes effect within two business weeks.

## ❑ WE BECOME YOUR 'VIRTUAL' PERSONNEL DEPARTMENT

You are our client; we are your vendor. We are interested in helping and supporting your organization as you see the need. Consequently, you retain day-to-day control of your associates. We become your virtual personnel department, available in person, by phone, fax, and the Internet.

We protect you from employee discipline conflicts by acting as your enforcer, your guide, and your counsel. Our clients depend daily on our team of human resource professionals because they have the client's best interests at the forefront of their objectives.

## Employee Handbook

We have a thorough and legally extensive employee handbook that will become the foundation of our mutual personnel policies. We will customize the policies within the handbook to conform to your unique needs. Our handbook covers all aspects of personnel policy that are essential for every type of company. It is authored by one of the nation's leading labor law firms, Littler-Mendelson, and is updated, as pertinent law changes become precedent.

Proposal Notes



NAPEO Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



**A program offered by RPC Employer Services, Inc.**

EmployShare
*The ultimate solution for managing tomorrow's human resource needs.*

## Day-To-Day Personnel Communication

Policy violations and employee separations are critical points that must be documented accordingly. We have an easy-to-use ADVISORY FORM that can be faxed or e-mailed between our companies as a means of documenting an employee's personnel file. We utilize a staff of seasoned attorneys in matters of labor, unemployment, and workers' compensation and will use their services at no added charge to you. We want to protect our relationship with your employees and will put forth our best efforts to make sure that all personnel correspondence is handled in the most professional and confidential manner possible.

Our clients depend on our impartial implementation of policy, knowing that our sole objective is to protect them from needless litigation and conflict.

## ☐ WORKERS' COMPENSATION MANAGEMENT

Your group will becomes part of our Ohio workers' compensation pool, managed by our staff in conjunction with Professional Risk management, Youngstown, Ohio, one of the nation's leading workers' compensation management companies. Your workers' compensation premium is remitted each pay period and is calculated against actual reported wages. There are no premium deposits or final audits since you are part of our group

We are responsible for all claims, including accident reporting, accident investigation, and pending litigation. However, we expect your complete cooperation in all matters relating to our mutual employees.

All clients are expected to make available light-duty job assignments for early return-to-work situations. Light-duty assignments not only reduce your total cost, but also help to get the injured employee into the workplace sooner. We will guide you through light-duty options as the need arises.

## Workers' Compensation Premium Savings

RPC enjoys an extremely large credit on its Ohio workers' compensation policy. You will save at least $436,536 in workers' compensation premium by utilizing our service. The base rate for code 9179 is 26.1958% of taxable wages. RPC will charge 11.65% of taxable wages, which amounts to a savings of 56% off base rate. Ohio is a state-run workers' compensation insurance program and we have received approval from our pool managers to add your group. Ohio will cover your teams and support staff in Ohio based on the national headquarters for your league locating Ohio, preferably close at hand in Warren, Ohio.

Proposal Notes



**NAPEO** Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



**A program offered by RPC Employer Services, Inc.**

## EmployShare™

*The ultimate solution for managing tomorrow's human resource needs.*

## NORTH EAST OHIO, A FOOTBALL CAPITAL

Warren, Ohio, located 20 miles north of Youngstown, is equidistant from Cleveland (Browns) and Pittsburgh (Steelers). Football has always been the premier sport. Rent, taxes, and such are very low in Warren as compared to any other area.

Population is 479,155 with median household income of $33,479. Median home value is $67,928 and the business base includes General Motors and numerous large steel makers.

Local support for your organization will be tremendous, especially if you can build an arena here also. We have solid relationships within the community and with political leaders. We can help you grow and prosper while at the same time serving your payroll and personnel needs. Certainly a mutually beneficial business relationship.

## ❑ UNEMPLOYMENT INSURANCE MANAGEMENT

Since all employees are paid on our tax identification number, you are literally protected from tangles with unemployment claims. We will minimize unemployment claims abuse through careful implementation of our policy handbook along with our Advisory form. Every advisory communication from your managers will become part of the employee's personnel file. We will work closely with your managers to make sure that we abide by the law yet control unnecessary unemployment claims. Of course, you are free to apply your time to your business. We will apply our time to controlling hidden litigation that can easily arise out of an employment dispute.

## ❑ CREDIT UNION BENEFITS

We belong to numerous credit unions, so your employees will be welcomed to join the credit union of their choice. There are many valuable services available to all employees, from Visa cards to home and auto loans. The interest rates are exceptional and the service response is prompt. We hope that employees consider setting aside some money for the future and we want to make that process as simple and easy as possible. Any payroll deductions to credit unions are directly deposited into employee accounts, which makes the process quick and accurate.

Proposal Notes

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



NAPEO  Member
National Association
of Professional Employer
Organizations

**A program offered by RPC Employer Services, Inc.**

# EmployShare™

*The ultimate solution for managing tomorrow's human resource needs.*

## ❑ NATIONAL PPO HEALTH COVERAGE

We have an excellent medical benefits plan. Since medical benefits are not part of your Request For Proposal, we can discuss these matters at a later date and as you see the need.

## ❑ NATIONAL DENTAL COVERAGE

Dental coverage is available but is not being presented at this time per your request.

## ❑ VISION COVERAGE

Vision coverage is available but is not being presented at this time per your request.

## ❑ LIFE INSURANCE

Our medical plan includes $10,000 of term coverage for all employees. For two-party and family coverage, we include spouse coverage of $2,500 and dependent coverage of $1,000 per dependent.

## ❑ DISABILITY INCOME PROTECTION

Group disability income protection is available. Our plan is an integrated benefit that includes life, ltd, and std. Rates are exceptional and coverage is extended on a guarantee issue basis which means that there are no medical questions asked for standard coverage. Guarantee issue limits are:

    LIFE:       $190,000
    LTD:        $10,000 per month
    STD:        $1,385 per week

Your actual benefit and rate is based on the life amount, which is equal to annual earnings.

## ❑ SECTION 125 PRE-TAX DEDUCTION SERVICES

We have an IRS-approved Section 125 plan that allows all health insurance deductions to be withheld from paychecks on a pre-tax basis. All employee deductions are withheld from gross wages, which saves the employee and your company tremendous tax dollars. We pass these savings directly to your invoice and your employees take home more net pay.

## ❑ 401(k) RETIREMENT PLAN SERVICES

We have an excellent retirement program through our 401(k) plan administered by Great West, one of the Nation's leading plan administrators. Employees can set aside any amount of money each week, tax-deferred, through payroll deduction and take advantage of compound interest earnings immediately. We do not charge extra fees for using our

Proposal Notes


**NAPEO** Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



401(k) plan, so employees are free to join the plan at their discretion. Our plan allows bonus contributions to be made on behalf of employees. This means that you can elect to use our 401(k) as a vehicle for distributing profit sharing or other incentive payments.



## ❑ **FINANCIAL SERVICES**

All Employ Share associates are eligible to receive American Express Financial Services at preferred rates. Investment advice, pertaining to the 401(k), can be very useful for maximizing return on your employees' 401(k) earnings.

Management workshops and seminars are available at no added charge. Personal Financial services are made available to all Employ Share associates at preferred rates.

**Note:** American Express Financial Advisors is one of the largest Employ Share clients (associates). You may want to discuss our program with them to better understand why they chose Employ Share over all other employer service options.

## ❑ **FINANCIAL DETAILS**

See attached for all rate details.

## ❑ **GETTING STARTED**

Here is a snapshot of the implementation process, should you decide to proceed:

1. Review proposal and discuss all issues and questions.
2. Authorize Service Agreement; detailing relationship between parties, rates, terms, and effective start date.
3. Complete Employee enrollment files. We usually meet with each employee group to discuss all aspects of our program, answer questions about paperwork, and explain in detail all benefits, 401(k), insurance, etc.
4. Process employee enrollment information and other relevant forms.
5. Prepare invoice remittance process, whether by wire transfer or direct debit. Bank routing and account information is gathered and setup in advance. All payroll invoices are due and payable before release of paychecks.

Proposal
Notes

Page 7 of 8





6.  Install front-end payroll input software at client site. Conduct training for client personnel dealing with payroll input software (one hour). Conduct input and e-mail tests using sample payroll files.
7.  Create first input data file at RPC based and e-mail to client for first pay. RPC will create new payroll input files every pay period to insure that client has accurate account of all active employees.
8.  Receive first payroll input file from client, process all data, and invoice customer by fax or e-mail.
9.  Receive first invoice payment via wire transfer or direct debit.
10. Deliver paychecks (or direct deposits) to customer along with hard copy of invoice and invoice detail reports, department costing, and other required reports.

The EmployShare payroll and human resource system can produce nearly any report imaginable. We will determine beforehand the exact format of each report required and the frequency of each report.

We know that you and your employees will appreciate our package of services. Please call me at 800-635-9961 with your questions. I look forward to discussing your questions and hope that we can be of service as you see the need.

Thank you for this consideration.

Sincerely,

*Daniel J. D'Alio*

Daniel D'Alio
President & CEO

**Proposal Notes**



NAPEO Member
National Association
of Professional Employer
Organizations

# EmployShare™

**Financial Details**

National Indoor Football League

October 28, 2000

| Payroll Item | 80 active clerical employees 600 active players and staff |
|---|---|
| Annual taxable wages: | As reported |
| Social security: (The employer match) | 7.65% of taxable wages |
| Federal unemployment: | 0.8% of first $7000 in wages |
| State unemployment: We will utilize Ohio as the home state based on league headquarters locating in Ohio. | OH: 2.75% of first $9,000 in wages |
| Workers' compensation We will utilize Ohio as the home state based on league headquarters locating in Ohio. | 8810: 0.52% of taxable wages 9179: 11.65% of taxable wages |
| Health Coverage: | Not quoted at this time |
| Dental Coverage: | Not quoted at this time |
| Vision Coverage: | Not quoted at this time |
| Disability Coverage: | Not quoted at this time |
| Set-up Fee (one time) | $ 495.00 Includes all employee files, handbook creation, and payroll software implementation and training. |
| RPC service fee[1]: (See footnote below) | $ 12.00/ea/pay for clerical employees $ 18.00/ea/pay for team employees Weekly (52) pay dates |
| Overnight Delivery Fee | $ 13.00 as requested |
| Invoice Direct Debit Fee | $ 5.00 per invoice |
| Employee Pay Direct Deposit | No Charge |
| Payroll Reports | No Charge |
| Section 125 Cafeteria Plan | No additional cost |
| 401(k) Retirement Plan[2]: (See footnote below) | No additional cost |

---

[1] RPC service fee covers all costs related to payroll processing, new hire reporting federal, state, and local tax filing, all year-end tax filing including W2's, personnel administration, employee handbooks, labor attorney services related to RPC services provided, workers' comp administration and risk management, unemployment claims management including hearings and litigation, health insurance administration, 401(k) administration including annual fees for compliance testing and reporting.

[2] RPC'S 401(k) is free to all clients. There are no annual fees assessed for start-up or annual administrative maintenance. Great-West Life, the nation's leader in 401(k), is the administration provider. Employees can enroll on a monthly basis, with client matching provided as 'increased employee contributions'.

96

1    A.          Yes.

2    Q.          So it wasn't something

3    that you called about then and said,

4    hey, these are the wrong dates.

5    We're actually running the league

6    until August and, therefore, the

7    coverage period shouldn't stop on

8    May 14th?

9    A.          No, we did call whenever

10   R.P.C. pulled out and, you know,

11   made sure our certificate was okay,

12   but there actually came a bill that

13   you had to pay.  And then that went

14   the next quarter, I believe.  And

15   probably another bill would have

16   come for another quarter after that

17   had we continued on.  I don't know

18   that, but I would guess.  You know,

19   in other words, they are covering

20   you for their time period and not

21   any longer.

22   Q.          So to the best of your

23   recollection, you believe that the

24   document, Number 11, or the

25   photocopy of Number 11 --- I don't

EXHIBIT

E

97

1  have the actual document

2  representing Number 11, was

3  something you received after R.P.C.

4  pulled out?

5  A.          Yes.

6                    (Deposition Exhibit

7                    Number 12 marked for

8                    identification.)

9  BY ATTORNEY SEYMOUR:

10  Q.          I show you a document

11  that's been marked as Number 12.

12  Have you seen Number 12 before this

13  morning?

14  A.          Yes.

15  Q.          The document itself is ---

16  at least I can't see a date on it,

17  but it does refer to terminating our

18  agreement effective April 13, 2001.

19  Given that date that's within the

20  body of it, do you have any

21  recollection of when you received

22  this?

23  A.          Exact recollection, April

24  16th and it was FAXed.

25  Q.          Did you understand the two

102

1  12 by FAX, what did you do in

2  response?

3  A.          You can imagine I sent

4  them a rather nasty letter.  You

5  know, I don't have that with me, but

6  I do have a copy of it, just telling

7  him that, number one, you don't

8  terminate an agreement and send it

9  on the 16th and say, by the way,

10  we're backdating this three days.

11  You know, and you don't terminate an

12  agreement without just cause in my

13  opinion.  And I couldn't find any

14  just cause.

15  Q.          Well, what did you do

16  about the issues regarding payroll

17  and Workers' Compensation for the

18  ten teams or 11 that were being

19  handled through R.P.C.?

20  A.          What did we do?

21  Q.          Yes.

22  A.          Well, I mean, here we were

23  in the middle of a season of play.

24  And we had a certificate from Ohio

25  saying we were insured, so we went

103

1    ahead with the teams.  And then, you

2    know, now they are all in their

3    individual state funds, a couple

4    years later.

5    Q.          So for the season, the '01

6    season, did you continue to rely

7    upon the Ohio certificate for

8    Workers' Compensation?

9    A.          When we talked to our

10   general liability insurance, they

11   said, number one, R.P.C. can't

12   cancel your insurance without a 30

13   day notice.  And so they felt, go

14   ahead, you're insured, because they

15   can't cancel you without 30 days.

16   And we also had the Ohio

17   certificate.  And it said we were

18   insured.

19   Q.          So your understanding was

20   that you had 30 days, that would

21   take you to May 16th, right?

22   A.          Right.

23   Q.          And after May 16th, then

24   what did you rely on for Workers'

25   Comp?

104

1   A.          We had talked to Ohio and

2   they just said get new C-110s under

3   your name and send them in.

4   Q.          Do you recall who at Ohio

5   you spoke to?

6   A.          No.

7   Q.          And when you say we, of

8   course, it may not have been you

9   personally, is that why you're using

10  we?

11  A.          I did.  It was me that

12  talked to Ohio.

13  Q.          Okay.

14  A.          But, of course, I didn't

15  go through this whole in detail of

16  what was going on.  I just said, you

17  know, I have this certificate of

18  insurance, are we insured?

19  Q.          And you don't know who it

20  was that you spoke to?

21  A.          No, I don't.  I'm sure

22  that somewhere in my notes I wrote

23  it down, but I don't remember who it

24  was.

25  Q.          So based on that

1  conversation, what was your

2  understanding then in regard to

3  Workers' Compensation?

4  A.          That we moved forward.  We

5  were insured.

6  Q.          Do you recall how long you

7  continued to have that

8  understanding?

9  A.          Ohio sent us a letter

10  maybe in June, I can't remember the

11  date, that they wouldn't cover any

12  out of state employees and we were

13  all out of state employees.

14  Q.          After you received that

15  letter, what did you do about

16  Workers' Compensation?

17  A.          Well, our insurance

18  company said you have a 30 day grace

19  period on any insurance, so you have

20  30 days.  By that time, our season

21  was pretty much ended.  So we --- by

22  then, we were like, okay, you know,

23  this is it.  We've got to find a new

24  company.

25  Q.          Who's this insurance

106

1   company telling you this?

2   A.        HRH is our general

3   liability and they carry us through

4   I think it's American Fidelity

5   General or American General.  They

6   were our general liability carrier.

7   And our thoughts were, okay, if we

8   don't have Work Comp, then the next

9   one back is your GL that's got to

10  pick up these claims and we really

11  need to talk to them right away and

12  let them know what's going on.  So

13  we did keep HRH informed.

14  Q.        Where is HRH located?

15  A.        They are in Amarillo,

16  Texas.

17  Q.        Did you send HRH a copy of

18  the letter that you received from

19  Ohio in June?

20  A.        I don't know what I gave

21  them.  I met them at the airport.

22  Q.        What airport?

23  A.        I don't remember.  I guess

24  Dallas.  Now, I was on my way to

25  traveling out west and they met me

107

1  at the airport.  I think it was

2  Dallas.  We talked about this and I

3  showed them a lot of paperwork, but

4  I don't know that I left them

5  anything.

6  Q.        So through the balance of

7  the '01 season, after receiving a

8  letter from Ohio and your belief

9  that you had continued Comp coverage

10  for another 30 days, there was no

11  other Workers' Compensation for that

12  season?

13  A.        And our season ended the

14  last week of July, which would have

15  taken us through that.

16  Q.        Now, in the following

17  season '02, how did you arrange the

18  payrolls and the Workers'

19  Compensation?

20  A.        Everybody went to their

21  state funds, so we didn't have any

22  more problems.

23  Q.        Now, in terms of total

24  premiums paid for Workers'

25  Compensation for the '01 season, do

139

1   that the --- that they were

2   terminating the insurance with the

3   Ohio Bureau of Workers'

4   Compensation?

5   A.         No, it isn't.  In fact,

6   this --- HRH felt that they weren't

7   terminating the insurance.

8   Q.         Did the last paragraph of

9   that letter advise you that they

10  were going to notify the Ohio Bureau

11  of Workers' Compensation that they

12  were terminating the agreement with

13  you?

14  A.         Yeah, it says they are

15  going to notify Ohio Bureau of

16  Workers' Compensation that they were

17  no longer our employer firm.

18  Q.         Is there anywhere in there

19  that says that your certificate of

20  insurance from the Bureau of

21  Workers' Compensation of insurance

22  was terminated?

23  A.         No.

24  Q.         Another question that I

25  would ask you, is Mr. Seymour asked

Employer
Employee

# EmployShare ™

RPC Employer Services, Inc.
6804 Big Beaver Boulevard
P.O. Box 350
Beaver Falls, PA 15010-0350
Tel: (724) 843-3020
Toll Free: 1-800-635-9961
Fax: (724) 384-3071
www.employshare.com

April 13, 2001 ~Fri.

*letter saying what NIFL
needs to get Ohio coverage!
(2 pgs)

Certified Mail & Facsimile

National Indoor Football League
Attn: Carolyn Shiver
600 Loire Ave
Lafayette, LA 70507

RE:    Policies and Procedures – Applications and Workers Compensation
       EFFECTIVE IMMEDIATELY

Dear Ms. Shiver:

This letter shall serve as confirmation to inform the National Indoor Football League and all participating teams of the following policies and procedures RPC Employer Services, Inc. must put into place due to the restrictions placed by the workers' compensation carrier. This will help eliminate the miscommunication and confusion between the teams, the NIFL office and RPC.

1)     All new player applications, fully and correctly completed (sample enclosed) including two forms of <u>acceptable</u> I-9 identification documents, must be received into our office no later than the prior Wednesday of weekend in which the player is utilized. The C110, the workers' compensation contract, must be filed with the State of Ohio <u>before</u> the employee/player is utilized in order for the employee/player to be covered.

**PLEASE NOTE: NO player will be considered an employee/player and therefore entered into our system, which means that paychecks will not be issued nor workers compensation coverage be in place (no liability will be assumed by RPC Employer Services, Inc.) until all paperwork is completed correctly, received in our office and filed with the State of Ohio.**

2)     A Release form must be signed and received by noon, Monday of the payroll week in order for an employee/player to be terminated in our system, otherwise a management fee will be charged for each player that is active in our system.

All injured players must remain active and a management fee will be charged to the appropriate team.

EXHIBIT

F

April 13, 2001

3)    No payroll checks will be sent until wired funds are verified thru the NIFL
      National City account. You can fax to RPC Employer Services, Inc. a copy of
      the wire verification to expedite the procedure.

4)    Workers compensation accident reports must be fully completed and legible
      including a description of the injury/accident. return date or estimated return
      date and address and phone number of the medical treatment provider. The
      accident report must be faxed to the NIFL first and will be forward to our
      service provider Professional Risk Management.   All treatment must be
      approved by CRA for coverage:

                  CRA Managed Care Inc.

                  614-854-9305

                  All bills are the be forward to:

                  CRA Managed Care, Inc.
                  PO Box 261107
                  Columbus, OH  43226

                  614-854-9305          fax: 614-854-9307

      A workers compensation contact must be provided to RPC Employer
      Services, Inc. by each team by Tuesday April 17, 2001.   A workers'
      compensation packet will be mail to each team the week of April 16, 2001.

      It is RPC's suggestion that each team appoints a person to be responsible for the
application process and a person for the workers' compensation process in order for your team
to have a smooth process. These responsible people may feel free to contact me with any
questions or concerns.

      **There will be no exceptions to the above polices and procedures.**

      If you have any questions, please do not hesitate to contact me.  I thank you for your
cooperation with respect to these policies and procedures and insuring a prosperous and
effective working relationship.

                              Sincerely,

                              Maureen A. Ciarolla
                              Director Human Resource Operations

# ◯EmployShare™

*Focus On The Business Of Your Business*

**CERTIFIED MAIL/FACSIMILE**

National Indoor Football League
Attn: Carolyn Shiver
League Office
600 Loire Ave
Lafayette, LA 70507

Ms. Shiver:

This letter will service as certification that RPC Employer Services, Inc. hereby is terminating our agreement effective April 13, 2001 for the reasons as follows:

Non-payment
Non-compliance

Please be advised that all agencies such as the Ohio Bureau of Workers' compensation, will be notified of this termination.

Yours truly,

Daniel D'Alio
President

CC:   Bureau of Ohio Workers' Compensation
      Professional Risk Management
      CRA  Managed Care

**EXHIBIT**

G

Certificate issued first.

# STATE OF OHIO

## BUREAU OF WORKERS' COMPENSATION

COLUMBUS, OHIO 43215-2256

### CERTIFICATE OF PREMIUM PAYMENT

This certifies that the employer listed below has paid into the State Insurance Fund as required by law. Therefore, the employer is entitled to the rights and benefits of the fund for the period specified. For more information call 1-800-OHIOBWC.

**THIS CERTIFICATE MUST BE CONSPICUOUSLY POSTED.**

POLICY NO. AND EMPLOYER
1338423

PERIOD SPECIFIED BELOW
03/30/2001 THRU 05/14/2001



NATIONAL INDOOR FOOTBALL LEAGUE LLC
NIFL
PO BOX 8621
WARREN OH 44484-0628

_James Conrad_
ADMINISTRATOR

DP-22
BWC - 1622 (REV. 3/96)
002498333

THIS CERTIFICATE MAY BE REPRODUCED AS NEEDED

TP-655

EXHIBIT
H

*Certificate issued second.*

# STATE OF OHIO

## BUREAU OF WORKERS' COMPENSATION

COLUMBUS, OHIO 43215-2256

### CERTIFICATE OF PREMIUM PAYMENT

This certifies that the employer listed below has paid into the State Insurance Fund as required by law. Therefore, the employer is entitled to the rights and benefits of the fund for the period specified. For more information call 1-800-OHIOBWC.

**THIS CERTIFICATE MUST BE CONSPICUOUSLY POSTED.**

POLICY NO. AND EMPLOYER

PERIOD SPECIFIED BELOW

1338423

NATIONAL INDOOR FOOTBALL LEAGUE LLC
NIFL
PO BOX 8600
WARREN OH 44484-0628

03/30/2001 THRU 08/31/2001

*James Conrad*

ADMINISTRATOR

DP-22
BWC - 1622 (REV. 3/96)

THIS CERTIFICATE MAY BE REPRODUCED AS NEEDED

EXHIBIT

I