# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE L.L.C., | CIVIL DIVISION |
| Plaintiff | NO. CA 2 - 548 |
| v. | TYPE OF PLEADING: |
| | Brief in Support of Motion in Limine |
| R.P.C. EMPLOYER SERVICES, INC., and DAN J. D'ALIO, | |
| | JURY TRIAL DEMANDED |
| Defendants. | |
| | FILED ON BEHALF OF: |
| | Plaintiff |
| | COUNSEL FOR PLAINTIFF: |
| | TIMOTHY C. LEVENTRY, LL.M<br>LEVENTRY, HASCHAK<br>& RODKEY, LLC<br>1397 EISENHOWER BOULEVARD<br>RICHLAND SQUARE III, SUITE 202<br>JOHNSTOWN, PA 15904<br>(814) 266-1799 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONAL INDOOR FOOTBALL LEAGUE L.L.C.,** | : | |
| **Plaintiff** | : | **CIVIL DIVISION** |
| | : | **NO. CA 2 - 548** |
| v. | : | |
| | : | **TYPE OF PLEADING:** |
| | : | |
| | : | **Brief in Support of Motion in Limine** |
| **R.P.C. EMPLOYER SERVICES, INC., and DAN J. D'ALIO,** | : | |
| | : | |
| **Defendants.** | : | |

## BRIEF IN SUPPORT OF MOTION IN LIMINE

AND NOW, comes the Plaintiff, NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C., by and through its attorneys, Leventry, Haschak, & Rodkey, LLC, and files the foregoing Brief in Support of its Motion in Limine.

## STATEMENT OF THE FACTS

In March of 2001, the National Indoor Football League (hereinafter "NIFL) entered into a contract (hereinafter the "Contract") with RPC Employers Services, Inc. (hereinafter "RPC") in which RPC agreed to secure Ohio workers' compensation coverage for all NIFL team football players and staff for the 2001 NIFL Season. (The NIFL executed the NIFL/RPC contract on March 21, 2001 while RPC executed same on March 27, 2001). The Agreement was to be effective on March 20, 2001. Despite the NIFL's performance of its obligations under the contract, RPC failed to provide workers' compensation coverage as contracted. Therefore, on or about April 13, 2002, the NIFL filed the instant suit against RPC alleging four counts including the Racketeer Influenced

and Corrupt Organizations Act (RICO), 18 U.S.C. Section 1964 et.seq., Breach of Contract, and Fraud.

In late October of 2000 approximately six (6) months before the Contract was signed, RPC, through it's President, Dan J.D'Alio, issued a proposal to the NIFL advising it could provide payroll and workers' compensation insurance coverage to NIFL players through the Ohio Bureau of Workers' Compensation if the Plaintiff signed a contract with RPC because of RPC's location in the State of Ohio. D'Alio represented to the NIFL, that it could provide workers' compensation coverage to all NIFL players under the Ohio Worker's Compensation Act because it would lease employees to the NIFL from its Ohio office which would qualify league players for coverage. The Proposal also stated the NIFL could have workers' compensation coverage for all NIFL employees through the state of Ohio based on the national headquarters for your League locating to Ohio. The Proposal is the only written documentation provided by RPC before it cancelled the NIFL/RPC Contract suggesting to the NIFL that Ohio workers' compensation law requires the NIFL to move its headquarters to the State of Ohio. An April 16, 2001 an email from Dan D'Alio to the NIFL is the only post-contract document suggesting relocating the league headquarters is necessary. The Contract of which RPC prepared <u>does not state</u> the NIFL must move its headquarters to Ohio in order to secure coverage, in fact the written Contract does not even refer to this issue. Notwithstanding this, Dan D'Alio claims the NIFL breached the Contract by not moving its headquarters to Ohio. The evidence obtained by Deposition testimony shows that whether the NIFL's headquarters was in Ohio or not did not affect or determine coverage for the players, all of whom worked, played and lived in states other than Ohio.

During 2001, the NIFL did not have any teams sponsored in the State of Ohio, it did not plan to have any teams in Ohio nor did it have an office or any employees in the State of Ohio. Carolyn Shiver, President of the NIFL, instructed RPC and D'Alio that the NIFL would not have any teams in the State of Ohio, and also informed D'Alio and RPC that the NIFL would not have employees working in the State of Ohio. After the Contract was signed, RPC instructed the NIFL to establish an <u>address</u> in Ohio, and the NIFL complied by establishing a post office box and by using RPC's Warren, Ohio office as its physical address. RPC and D'Alio participated and assisted the NIFL in establishing this address; but did not request any other Ohio presence.

On March 15, 2001, RPC President Dan J. D'Alio met in person with representatives from the Ohio Bureau of Workers' Compensation at their Columbus, Ohio office to discuss whether workers' compensation insurance coverage would apply to NIFL players since the league players where located in different states outside of Ohio. D'Alio and Rex Blateri, a representative of the Ohio Bureau of Workers' Compensation, and Jerelyn Pasternak, a representative of RPC's workers' compensation third (3rd) party administrator, Professional Risk Management, attended the March 15, 2001 meeting.

Deposition testimony reveals Mr. Blateri informed D'Alio that RPC could not provide worker's compensation insurance coverage to the NIFL through the Ohio Bureau of Workers' Compensation because the Plaintiff's players were not located in the State of Ohio and were not providing any services in Ohio. Deposition testimony, in addition to email records produced by Bureau employees immediately following the March 15, 2001 meeting, indicates the Ohio Bureau of Workers' Compensation clearly expressed to Mr. D'Alio and RPC that it could not cover NIFL employees not working in the State of Ohio. During the deposition testimony of Rex Blateri, he

explained Dan D'Alio indicated to him at the March 15, 2001 face-to-face meeting that the League headquarters would move to Ohio, but all of the teams would remain in different states. Based upon this information, Mr. Blateri determined the Bureau did not see any possibility of providing coverage to the NIFL through RPC acting as the PEO, even if the League headquarters were in Ohio. Rex Blateri advised Dan D'Alio and RPC of this position at the face-to-face meeting on March 15, 2001.

RPC also claims that the NIFL did not properly complete form C-110's causing coverage to be denied. With regard to the C-110 forms, Mr. Blateri also testified the C-110 does not function to secure coverage for teams or players outside the State of Ohio because the teams have no relationship to Ohio. Notwithstanding this firsthand information, Dan D'Alio fraudulently caused RPC to enter into a contract with the NIFL on March 21, 2001 for his and RPC's personal gain to provide and to coordinate workers' compensation coverage through the State of Ohio. Neither before nor after entering into the NIFL/RPC Contract did Dan D'Alio or RPC inform the NIFL that the Ohio Bureau of Compensation representatives told them that workers' compensation coverage for all NIFL employees was not permitted under Ohio Workers' Compensation Law. During the time in which the NIFL/RPC contract was in effect, the NIFL believed RPC had secured workers' compensation coverage for the NIFL through the State of Ohio. This was further represented to the NIFL by RPC obtaining and providing to the NIFL a Certificate of Premium Payment for workers' compensation insurance covering March 30, 2001 through May 14, 2001.

Despite the fact that Dan D'Alio knew workers' compensation coverage would not be available in Ohio, RPC still entered into the contract with the NIFL. Relying upon RPC's promises, the NIFL, as instructed by RPC, assembled employment documentation to secure workers' compensation coverage and establish payroll services in late March, 2001. Completing these forms

was basically a waste of time. At the request of RPC, the NIFL assembled and mailed to RPC Ohio Bureau of Workers' Compensation C-110 forms to establish Ohio jurisdiction for all players under the Ohio Workers' Compensation Act. Between March 30, 2001 and April 16, 2001, RPC forwarded these forms to the Ohio Bureau of Workers' Compensation, but contrary to RPC's representations, the C-110 forms did not and could not establish workers' compensation coverage for any NIFL employee working outside Ohio. The NIFL also paid to RPC $9,217.07 for Worker's Compensation Premiums and $8,136.00 in management fees between March 30, 2001 and April 16, 2001, which management fees and premiums RPC accepted. Dan D'Alio testified RPC turned over the workers' compensation premiums to the Ohio Bureau of Workers' Compensation.

On Friday, April 13, 2001, RPC sent additional instructions to the NIFL to clarify the policies and procedures required to obtain workers' compensation coverage including the necessity of completing form C-110's. Again, missing from the April 13, 2001 letter is any reference to the League moving its headquarters to Ohio. The following Tuesday, on April 17, 2001, RPC terminated the contract with the NIFL, effective April 13, 2001, without giving the NIFL time to complete the requested actions outlined in the April 13th letter sent by RPC to the NIFL (which actions would not have created coverage anyway). In the April 17, 2001 letter, RPC also failed to instruct the NIFL that it never had coverage with Ohio and that it should obtain coverage from another provider other than Ohio. The NIFL avers RPC terminated its agreement with the NIFL in bad faith because, through their own errors and fraud, RPC caused the NIFL to rely on its expertise and then finally determined it could not sustain any longer the illusion of workers' coverage through the state of Ohio for all NIFL employees. Dan D'Alio and RPC then tried to cover up their error and fraud by terminating the Contract and blaming it on the NIFL.

# ARGUMENT

**A.   The NIFL is entitled to its full amount of damages under Ohio and Pennsylvania Law.**

The Ohio Workers Compensation Act permits an employee to proceed by an action at law outside of the Ohio act for damages against an employer where the employer fails to provide worker's compensation coverage. <u>Vandemark v. Southland Corporation</u>, 525 N.E.2d 1374 (OH 1988)( holding an employee whose employer failed to process a workers' compensation claim can file suit in tort for the full amount of damages allowed at common-law without limiting the medical bill-based damages to the amounts reimbursed under Ohio Workmen's Compensation Act).   In <u>Vandemark v. Southland Corporation</u>, the Supreme Court of Ohio considered whether an employee could sue his employer in tort claiming the full amount of medical bills and lost wages for the employer's failure to process a workers' compensation claim despite the immunity generally afforded to an employer from suits by injured employees under the Ohio Workmen's Compensation Act.  525 N.E.2d 1374 (1988).  Upon reviewing applicable case law, the Ohio Supreme Court permitted the employee to file suit in tort for the full amount of damages allowed at common-law without limiting the medical bill based damages to the amounts reimbursed under Ohio Workmen's Compensation.  The Ohio Supreme Court relied heavily on the fact the essential nature of the claim "<u>falls outside the scope of workers' compensation statutes</u>" (emphasis added).  <u>Id.</u> at 1376-1377. In holding that a common-law cause of action exists by the employee against the employer for failure to process a claim for worker's compensation, the Court reasoned:

> "[t]he injury alleged in this regard is not a physical injury sustained in the course of employment; rather, it is in the nature of a financial injury that resulted from the employer's alleged failure to process a workers' compensation claim back in 1980. The injury alleged in plaintiff's complaint occurred when plaintiff discovered that the defendant had not processed the prior claim. . . . As mentioned before, the instant cause is not a workers' compensation action; it is a common-law action for damages outside the scope of workers' compensation." Id. at 1377-78.

The reasoning of Vandemark applies with equal force in this case. The NIFL's claims are for common-law damages and unpaid medical bills caused by RPC's failure to secure workers' compensation insurance similar to the Vandemark Plaintiff's common-law claim for damages and unpaid medical bills caused by the Vandemark Defendant's failure to process a workers' compensation claim. Count II (Breach of Contract) and Count III (Fraud) of the NIFL's Amended Complaint are common-law actions. The actual damages available under Count I (RICO) also are based upon common-law damages. Because the NIFL's claims are for common-law damages, the damages available to the NIFL are the full amount of damages and medical bills rather than damages based upon reimbursement rates under the Ohio Workers' Compensation Act. The Vandemark Plaintiff was entitled to pursue the full amount of damages available at common-law and the NIFL also is permitted to do so.

Pennsylvania law also permits an action at law for full damages unrestricted by the workers' compensation reimbursement rates. 77 P.S. §501(d). The Pennsylvania Superior Court has interpreted this section as allowing an employee to proceed against the employer's liability insurer where the employer fails to carry workers' compensation insurance. Harleysville Insurance Company vs. Wozniak, 500 A. 2d 872, 875 (Pa. Super. 1985). Because the employee may proceed with an action at law for damages, the Superior Court did not limit damages to the level of reimbursement available under Pennsylvania's Workers' Compensation Act. Id. at 874-876.

Given above-discussed case law and statutory law, the NIFL is entitled to the full amount of damages including all medical bills, lost wages and out-of-pocket costs.  Under both Ohio law and Pennsylvania law, the entitlement to the full amount of damages means the NIFL's claim is not reduced by a deductible, co-payment or any other reduction.  There is no case law or statutory law in either state that sanctions the imposition of a deductible, co-payment or other reduction set off.

Both Ohio law and Pennsylvania law clearly state the NIFL's claim is an action at law for <u>full damages and penalties</u>, which is also not subject to the reimbursement rates applicable only to claims falling within the scope of workers' compensation statutes.  Practically speaking, the Defendants should not be rewarded for its failures.  The NIFL deserves the full amount of damages equal to all unpaid workers' compensation claims, medical bills, lost wages and any consequential damages.

### B. Federal Rules of Evidence 803 (6) and 902(11) permit self-authentification of the player's medical records and invoices with a written declaration/certification by each provider that satisfies the requirements of 803 (6) and 902(11).

Rule 803 of the Federal Rules of Evidence provides an exception to the hearsay rule for the use of medical records for use at trial.   Federal Rule 803 states in part:

HEARSAY EXCEPTIONS; AVAILABILITY OF DECLARANT IMMATERIAL

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> (6) Records of regularly conducted activity.  A memorandum report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term "business" as used in this

paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The federal business records exception is based on the Uniform Business Records as Evidence Act, but it is more expansive and allows the admission of opinions or diagnoses in business records.

Federal Rule 803 (6) used in conjunction with Federal Rule of Evidence 902, (Self Authentication), permits the use of medical records and billing invoices to be used at trial of the case. Specifically, Rule 902(11) states as follows:

Certified domestic records of regularly conducted activity. The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803 (6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any act of congress or rule supplies by the Supreme Court pursuant to statutory authority, certifying that the record –

(A)   was made at or near the time of the occurrence set forth by, or from information transmitted by, a person with knowledge of those matters;

(B)   was kept in the course of the regularly conducted activity; and

(C)   was made by the regularly conducted activity as a regular practice.

A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

In reference to Rule 803(6), the Advisory Committee Notes explain that Rule 902(11) "sets forth a procedure by which parties can authenticate certain records of regularly conducted activity, other than through the testimony of a foundation witness." Rambus, Inc. v. Infineon Technologies AG, 348 F.Supp.2d 698, 701 citing Advisory Committee's Notes. The Advisory Committee Notes to Rule 803 concerning the 2000 amendments, state that Rule 902(11) "provides that the foundation

requirements of Rule 803(6) can be satisfied under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses."

With regard to the instant case, the Plaintiffs potentially would have to bring approximately one hundred providers to Pittsburgh from all across the United States to testify to written medical records absent the applicability of Rules 803(6) and 902(11). Requiring such testimony in court would be unduly burdensome on the Plaintiff, therefore, this is the exact reason Rules 803(6) and 902(11) were promulgated and adopted.

In <u>Rambus</u>, the Court laid out the four (4) requirements of a written certification needed to satisfy the Federal Rule of Evidence 902(11). If a written certification meets all four (4) requirements, the records are admissible without using a foundation witness.

    1.    <u>The Declarant: A Custodian or Other Qualified Person</u>. The declaration must be made by a "custodian or other qualified witness." This interpreted to mean the custodian must be one who actually keeps or knows about the company's record keeping requirements and how they are created. <u>Rambus</u>, 348 F.Supp.2d at 702-03 <u>citing</u> <u>United States v. Porter</u>, 821 F.2d 968, 977 (4th Cir. 1987).

    2.    <u>The Time of Making Requirement</u>. The record must be "made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters." <u>Id</u>. at 704.

    3.    <u>"Kept in the Course of the Regularly Conducted Activity" Requirement</u>. The record must be "kept in the course of the regularly conducted activity." This means the particular record must be kept as a part of the usual course of business." <u>Id.</u> at 704. A record kept in the ordinary

course of business is one kept pursuant to established procedures for the making of such business records.  Id. at 704 citing United States v. Wells, 262 F.3d 455, 463 n.8 (5th Cir. 2001).

       4.     The "As a Regular Practice of the Regularly Conducted Activity" Requirement. The last requirement of 902(11) is that keeping the record must have been a regular practice of a "regularly conducted activity" to make and keep the record at issue.  It is not enough that a particular employee makes and keeps the records as his or her own regular practice because *it must be the regular practice of the business*.  Id. at 705.  In other words, the records have to be kept as a regular practice of the entity.  Id. at 705 citing Pierce v. Atchison T. & S.F. Ry., 110 F.3d 431, 444 (7th Cir.1997); Monotype Corp. PLC v. Inter. Typeface Corp., 43 F.3d 443, 450 (9th Cir.1994); O'Malley v. U.S. Fid. & Guar. Co., 776 F.2d 494, 500 (5th Cir.1985).

In the instant matter, the NIFL sent a Certification Records Custodian to each provider asking each provider to complete the Certification and return it with the medical records related to the NIFL team player or players treated.  A true and correct copy of one of the Certifications by a medical provider is attached hereto, made a part hereof and labeled **Exhibit A**.  The NIFL's Certification meets the requirements of Rule 902(11) as discussed in Rambus:

       1.     The Declarant: A Custodian or Other Qualified Person. The NIFL's Certifications are made by the custodian for each medical provider, which identified in the first paragraph of each Certification.

       2.     The Time of Making Requirement. Each Record Custodian stated the player's record was made "on or about the time of the event."

       3.     "Kept in the Course of the Regularly Conducted Activity" Requirement.  Each NIFL Certification states the records are "prepared and maintained in the ordinary course of business."

All of the Certifications were completed by Medical Providers who keep these records on a constant basis as part of the health care industry.

    4.    <u>The "As a Regular Practice of the Regularly Conducted Activity" Requirement</u>. The Certifications used by the NIFL all state "it is our regular practice to maintain said records." "[O]ur regular practice" refers to the first line of paragraph two which identifies the Medical Provider who maintains the records. The language used in the NIFL's Certifications satisfy the requirement that the record is kept in the regular practice of the business.

Because the Certifications obtained by the NIFL from medical providers meet the requirements of Rule 902(11), the medical records and billing invoices for NIFL players to which they refer are admissible in this case without using a foundation witness at trial.

    Respectfully submitted,

    s/ Timothy C. Leventry
    Timothy C. Leventry, LL.M
    Attorney for the Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE L.L.C., | : | |
| | : | CIVIL DIVISION |
| Plaintiff | : | NO. CA 2 - 548 |
| | : | |
| v. | : | TYPE OF PLEADING: |
| | : | |
| | : | **Brief in Support of Motion in Limine** |
| R.P.C. EMPLOYER SERVICES, INC., and DAN J. D'ALIO, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I, Timothy C. Leventry, do hereby certify that a true and correct copy of the foregoing Brief in Support of the Plaintiff's Motions in Limine was served on the parties listed below by **regular mail or fax**:

Michael J. Seymour, Esq.
Feczko and Seymour
520 Grant Building
310 Grant Street
Pittsburgh, PA 15219

Bernard C. Caputo, Esq.
Fort Pitt Commons Building, Suite 260
445 Fort Pitt Boulevard
Pittsburgh, Pennsylvania 15219

**LEVENTRY, HASCHAK, & RODKEY, LLC**

Dated: 3-6-06                    By: s/ Timothy C. Leventry
                                       Timothy C. Leventry, Esquire