National Indoor Football League
Operations Manual
Team Participation Agreement
Date: 03-01
Page 1 of 7



**EXHIBIT**
D

## TEAM PARTICIPATION AGREEMENT

THIS AGREEMENT this _____ / _____ day of ___ *March* ___ ,20 *01* _____ between

# National Indoor Football League, llc (NIFL)

And

_____ *Billings   Outlaws* _____ ("TEAM")

### WITNESSETH

WHEREAS Team desires to compete in the National Indoor Football League (the League) established by The NIFL and upon application made by the team, the NIFL is willing to allow Team to compete.

NOW, THEREFORE, The parties intending to be legally bound hereby agree as follows:

1.  **LICENSE TO OPERATE**
    For valuable consideration, the receipt of which is hereby acknowledged, NIFL hereby grants
    To Team a revocable license to operate a professional football Team as a member of the
    League in ___ *Billings, MT* ___, in accordance with the agreement.

2.  **OPERATION OF PROFESSIONAL FOOTBALL TEAM**
    A. Team agrees to operate a football team to participate in scheduled games by the NIFL and
       abide by the Operating Regulations attached as Exhibit "A", the Operations Manual
       attached as Exhibit B, rules of the game and by-law, of the League as adopted by the
       League and as they may be amended from time to time.

    B. Team further agrees to provide a professional football team ready, willing and able to play the
       scheduled League games.

    C. Team recognizes that great expense and preparation is involved in hosting each and every
       professional football contest and agrees that irreparable harm will result to the League and
       other member teams of the League if Team fails to operate its professional football team in
       accordance with this agreement, the Leagues operating regulations, operations manual and
       rules as such may be amended from time to time. Team acknowledges it is subject to a claim
       for actual damages incurred by League or other member teams in the event team falls to
       operate its team in accordance with this agreement, the League's Operating Regulations,
       Operations Manual and rules as such may be amended from time to time.

3.  **FINANCIAL ASSURANCES**
    Team shall annually post a letter of credit (from team's bank) in the amount of $25,000.00 as
    security. For the purpose set forth herein, team may deposit $ 25,000 in League special account
    in lieu of issuing a Letter of Credit. A majority vote of the team owners (the whole league) is
    necessary to invoke the letter of credit (LOC). If a team is in default, as defined in sec. 10, with a

**EXHIBIT**

P- 39

National Indoor Football League
Operations Manual
Team Participation Agreement
Date: 03/01
Page 2 of 7

majority vote the LOC can be called upon.

Letters of Credit are due into the league office by March 15, 2001. Letters of credit should be issued from December to December 31 – renewable annually.

4.   **BOARD OF GOVERNORS**
A Team shall have one representative with (1) vote on the Board of Governors of the League. Teams seat on the Board of Governors shall be forfeited in the event Team is declared in "Default" with this agreement and the Financial Assurances Agreement (Letter of Credit)

5.   **PROPERTIES**
A.  Team agrees to select a team name, logo and colors, subject to approval by League and refrain from allowing the use of any unauthorized names, marks, logo designs, symbols or *colors*. Teams may not change or modify team name, logo or colors without the express written consent of NIFL. Team shall have ownership of the name " _Outlaws_ " and all related logos and trademarks. However, it is agreed that ownership of all of Team's trade names, logos and trademarks shall revert to the NIFL in the event that Team ceases operating a team in the League or otherwise defaults in its obligations to the NIFL under this agreement until the end of the current playing season (to enable team to continue to play during the season). Upon completion of the playing season, the properties will be returned to the Team ownership group.

B.  NIFL hereby grants to Team a non-exclusive license to utilize the trade name "National Indoor Football League" and all other trade names associated with the league. Such license shall run concurrent with this Agreement.

6.   **LEAGUE DUES AND ASSIGNMENT OF INVENTORY TO THE NIFL**
Team shall pay NIFL a monthly dues payment to be fixed annually by the NIFL  The 2001 dues are set at $ 500.00 month, due at the beginning of each month.

1.  In the event that any payment is not made when due, Team shall pay a late payment fee of 10% of the amount of any payment that is past due.

B.  Team shall assign to NIFL for its exclusive use in trading for national sponsorships:
1.  2 dasher board signs
2.  1 field logo – plus two locations in building -the NIFL must be placed as a logo on the playing field (possibly the 10-15 yard line) League recognition is required on the field.
3.  4 P. A. announcements per game.
C.  Each team will have league logo prominently displayed in same spot (to be determined by league).

7.   **OFFICIALS PAY AND ASSESSMENT**
Team shall pay each member of its officials even the amount fixed by NIFL for each year from time to time. It is acknowledged and agreed that the amount is currently $125.00 per official per game. All teams must pay the officials the same fee. The officials must be college or professional Referees. Certified officials only. The Director of Officials of the league will make selection of referees.

8.     **EXCLUSIVE TERRITORY**
Team shall be the exclusive operator of a member professional team of the League within the
metropolitan statistical area of Team's home venue. Team may not participate in games outside of
the exclusive territory unless scheduled by the NIFL. Team may not change its home venue or
attempt to move its exclusive territory without the prior written consent of NIFL, such consent
will not be unreasonable withheld.

Current member owners have first right of refusal on any expansion area at the current NIFL
market value.

9.     **SALE OR TRANSFER OF LICENSE**
Team shall have the right to sell or transfer its license to operate upon the prior written approval
of the NIFL. Said approval shall not be unreasonably withheld.  League members must have the
right to review new ownership to ensure that they are viable to continue the team.

10.     **DEFAULT**
1. Team may be in default of this agreement upon the occurrence of any of the following events
   and a majority vote of the members...

   A  In the event that Team fails to appear and participate in a game scheduled by NIFL or
      participates in any game not scheduled or approved of by the NIFL unless prevented by
      acts of God, nature or events beyond control.

   B. In the event that Team transfers Team ownership without notice and review by the league
      members.

   C. In the event that Team defaults under any player agreement or failure to make payment of
      player wages and other financial obligations which Team has to its players as set forth in
      Player agreements,

   D. In the event that Team fails to procure policies of insurance required by state and arena.

   E. In the event that Team defaults under arena lease

   F. A team is not paying league dues, fines, or assessments to the league - with 30 days written
      notice the league may declare this agreement as null and void and may elect to seek the
      following remedies, or any remedy at law.

2. Team shall be given 15 days of written notice of pending default prior to being declared in
   default.

11.     **TERMINATION OF AGREEMENT**
An event of default as defined in 10 of this agreement may be cause for termination of this
agreement and Team's license to operate a professional football club as a member of the League
In the event of termination of this agreement:

   A.    League shall notify Team of Termination of this agreement and revocation of its license to



operate by certified mail at Teams last known business address.

B.  Team agrees to pay to League within fifteen (15) days after the effective date of termination such amounts owed to League which are then unpaid under this agreement, if any.

C.  League may have unrestricted right to demand payment against the issuer under the letter of credit to continue playing season.

D.  The NIFL may elect to operate the Team's professional football team to complete the current playing season. The league shall further have the full and unrestricted right to take and seize all trade names, trademarks, team logo, uniforms, equipment, merchandise contract and lease rights, and /or property, and Team agrees to surrender the aforementioned property to League for the duration of the playing season.  However, League shall have no obligation to exercise any of its rights under this provision nor will be liable for any debts of Team.  Properties will be returned to team ownership after completion of season.

E.  Upon termination, the NIFL shall have no further obligation to Team and Team forfeits any property right in it's license to operate and membership in the League. Team will not be permitted to transfer or sell it's license

F.  Team's seat on the Board of Governors may be automatically revoked, by electing to take steps to seek any remedy at law.

12.  **DEFAULT BY LEAGUE**
NIFL may be deemed to be in default of this agreement in the event that the League fails to have eight 8 operating teams league-wide (including The Team) by commencement of each calendar year.  In such event the team shall be entitled to affiliate itself with such League, as the team deems appropriate.

13   **ATTORNEY FEES and COSTS**
The NIFL shall be entitled to recover from Team all attorney's fees, costs and disbursements incurred by the NIFL in connection with the interpretation or enforcement of this agreement when team is found in default by member owners.  Team shall likewise be entitled to recover from NIFL league all attorney's fees, costs, and disbursements should league be found in error.

14   **U.S. DOLLARS**
All amounts to be paid hereunder shall be in United States Dollars unless stated otherwise herein.

15.  **LAWS AND VENUE**
This agreement shall be interpreted in accordance with the laws of the state of Ohio.  Should litigation be initiated in connection with the Interpretations or enforcement of this agreement. Whichever party seeks law then goes to recover attorney fees.

16.  **BINDING EFFECT**
This agreement shall be binding upon and shall ensure to the benefit of the parties hereto, their successors and assignees until December 31 of year and shall automatically remain in effect until written notice of cancellation is given within 30 days of December 31.

17.   **ASSIGNMENT**

Team shall not assign its right or responsibilities pursuant to this agreement to a third party without the prior knowledge and consent of the NIFL member teams.  Member teams must have assurance that new ownership group has the funds to continue the current playing season.

18.   **AUDIT**

Team shall provide the NIFL with an annual accounting, of which, a profit and loss statement is acceptable.

19.   **TERMS and RENEWAL**

This agreement shall commence on the date of execution and expire on December 31, 2001. Agreement automatically renews unless team submits, by certified mail, a notice of withdrawal within 30 days of December 31.

21.   **FACILITY LEASE**

Team negotiates arena leases.  League requires a copy of lease or a letter from arena guaranteeing the playing dates.

22.   **FINES and SUSPENSIONS**

League shall have the right to fine and suspend players, coaches and other personnel of team for violation of League rules and by-laws. Fines assessed to Team's personnel are to be collected by Team and shall be deemed assessments under this agreement and are payable by Team to the NIFL.

23.   **INSURANCE**

Team shall carry and keep at its expense. The minimum insurance required by the state and arena where team is playing.  Team must name the NIFL "successors and/or assigns" as an additional insured on all of the above described coverage's. The League recognizes that these minimum insurance figures shall be subject to adjustment by the NIFL from -time to time in the discretion of the NIFL.

24.   **NIFL REPRESENTATIONS**

A.  All participating teams of the League will execute a standard Team Participation Agreement, substantially similar to this agreement. And be bound by the similar terms and conditions as set forth in this agreement governing the operations of League owned Teams.  Furthermore, this agreement shall not be altered, amended, changed, or modified except in writing executed by the majority of the partners.

B.  This agreement may be amended by majority vote of the members.

25.   **LEAGUE DUTIES**

NIFL will provide the following services on behalf of Team and other member teams

A.  Schedule games in a number to be fixed by the League. Team will have one week to review and ask for changes

B.  Provide qualified oversight of game officials:

C.  Coordinate league sponsorships, discounts and barter arrangements for the benefit of the member teams. Committees will be formed from (members from each district) to work league-wide sponsorships.

D.  Provide a league-wide Commissioner

E.  Enforce by-laws, rules and regulations

F.  Compile and publish league statistics

G.  Investigate and approve expansion applicants and issue expansion team licenses. of member teams will review these applications and report recommendations to the whole league. Licenses will be issued through the league office.

H.  Annually publishes a League operations manual and distributes a copy of said manual to Team; final approved copy will be forwarded to each member team.

K.  A professional employee organization will be utilized by the league to benefit all members of league. The PEO requires that the monies be deposited into a central account by Monday for checks in team's hands by Thursday of that week.

L.  Review PEO yearly.

26. **MARKETING SCHOOL FEES**
There will be a ___xxxxx_____ fee to enter the NIFL. This fee automatically includes all marketing materials. This is a league requirement.

27. **CONSTRUCTION**
A.  The exercise of any right by either party will not be considered to be an election of any remedy or the exclusive remedy of a party. Failure to exercise any right or remedy available to the NIFL under this agreement at any time shall not be considered to be a waiver or release of the right to exercise that right or remedy

B.  All headings and titles of sections are for convenience only. The wording of each section shall govern over its heading. Words and phrases herein, including any acknowledgment hereof if any, shall be construed as the singular or plural and as masculine, feminine or neuter gender, according to text.

C.  It any part of this agreement shall be adjudged invalid, the remainder shall not be invalid. Any part of any section found to be invalid shall not invalidate the remaining part of said section

D.  It is agreed between the parties that time is of the essence in each provision of this agreement.

E.  This agreement may be executed by the parties in separate parts with the signature of Each party to a copy of the contract, even if not the same copy constituting the creation of a binding contract between the parties.

National Indoor Football League
Operations Manual
Team Participation Agreement
Date: 03/04
Page 7 of 7

28. **EXHIBITION AND PLAYOFF GAME PROCEEDS**

A. The Team shall be entitled to retain all of the net proceeds of any exhibition games that are played by Team. However, Team shall be responsible for and shall pay all direct costs and expenses incurred by the visiting team for such exhibition games, including, but not limited to, travel costs, the visiting team's housing costs and compensation to the visiting team's player's and coaches.

B. The net proceeds of all League Playoff games shall be divided as follows

   1. 15% to the League.
   2. 30% to the visiting team at such playoff game, and
   3. 55% to the home team at such playoff game.

D. Championship game will be determined by committee, but certainly the most beneficial site will be chosen.

29. **FACSIMILE SIGNATURE**

Facsimile signatures will be accepted as original signatures. However, for record keeping purposes, an original signed document must be submitted to the League within 30 days of facsimile transmission.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seal the day and year first above written.

National Indoor Football League, inc

By: _____ Bruce Bailey (Exe. Comm. Chairperson)

By: _____ Carolyn Shiver (Exe. Comm. Chairperson)

By: _____ Duane Anderson (Exe. Comm. Chairperson)

By: _____
Its: _____

By: _____
Its: _____