# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NATIONAL INDOOR FOOTBALL LEAGUE L.L.C.,** | |
| **Plaintiff** | CIVIL DIVISION |
| | NO. CA 2 - 548 |
| v. | |
| | TYPE OF PLEADING: |
| | |
| | Reply to Defendants' Motion |
| **R.P.C. EMPLOYER SERVICES, INC.,** | for Reconsideration |
| **and DAN J. D'ALIO,** | |
| | |
| **Defendants.** | **JURY TRIAL DEMANDED** |
| | |
| | **FILED ON BEHALF OF:** |
| | |
| | **Plaintiff** |
| | |
| | **COUNSEL FOR PLAINTIFF:** |
| | |
| | **TIMOTHY C. LEVENTRY, LL.M** |
| | **LEVENTRY, HASCHAK &** |
| | **RODKEY, LLC** |
| | **1397 EISENHOWER BOULEVARD** |
| | **RICHLAND SQUARE III, SUITE 202** |
| | **JOHNSTOWN, PA 15904** |
| | **(814) 266-1799** |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE L.L.C., | : | |
| | : | CIVIL DIVISION |
| Plaintiff | : | NO. CA 2 - 548 |
| | : | |
| v. | : | TYPE OF PLEADING: |
| | : | |
| | : | Reply to Defendants' Motion |
| R.P.C. EMPLOYER SERVICES, INC., | : | for Reconsideration |
| and DAN J. D'ALIO, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S REPLY TO DEFENDANTS' MOTION FOR RECONSIDERATION**

AND NOW, comes the Plaintiff, NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C. (hereinafter "NIFL"), by and through its attorneys, Leventry, Haschak & Rodkey, LLC, and files the foregoing Reply to Defendants' Motion for Reconsideration:

**SUMMARY OF RESPONSE**

The Plaintiffs are attempting to argue NIFL does not have standing to sue RPC for the unpaid workers' compensation claims of its teams' players because of the lack of an employer/employee relationship between the NIFL and the players. With the exception of the March 13, 2006 oral argument on the parties Motions in Limine, this is first time in this litigation the Defendants have raised a standing argument despite having over four (4) years to do so. Notwithstanding this, the NIFL is permitted to bring suit on behalf of its teams' players even though it is not the employer of those players (the NIFL has never argued it employed those players directly). As discussed in greater detail herein, the NIFL has the right to sue RPC for the unpaid workers's compensation claims of its teams' players for the following reasons:

a.        The contractually NIFL promised its teams in each team's Participation Agreement that the NIFL would enter into a contract with RPC for its payroll and workers' compensation services.  Then, the NIFL signed-off on the player contracts thereby providing its own promise to the employee to provide workers' compensation insurance.  Carolyn Shiver, as league President and on behalf of the NIFL, signed each player's contract along with a representative from the respective team.  Each player contract contained a promise by the team and by the NIFL, as evidenced by the league President's signature, that the "Club will provide [workers' compensation] coverage for Player."  Subsequently, NIFL contracted with RPC for RPC to provide workers' compensation for the NIFL's teams' players.

When RPC failed to provide workers' compensation to the teams' players, each team is liable under their respective state law for failing to provide workers' compensation.  Each team is also liable to each player for failing provide workers' compensation under the Player's Contract.  Since the teams can be sued by their state's attorney's general and by their players, each team can sue the NIFL who contracted provide RPC for its workers' compensation services for the teams' players through RPC.  Therefore, the NIFL can sue RPC for the unpaid workers' compensation claims of its teams' players.

b.        The NIFL's right to sue RPC for its players unpaid workers' compensation claims and to introduce its teams' players records for the reasons described in subparagraph (a) *supra* is further supported by the fact that if the NIFL cannot assert the damages of its teams' players, RPC essentially argues no one else can do so.  To be more specific, the Defendants imply that if the players and/or individual teams would sue RPC directly, RPC would undoubtedly argue no privity exists to justify their suit.  It is, therefore, absurd to assert the NIFL does not have standing to sue

RPC for its teams players' unpaid workers' compensation claims since RPC entered into a written contract with the NIFL provide the coverage. Assuming arguendo RPC was suing the teams for non-payment of the premiums, it would be just as absurd for the teams to argue they do not owe RPC any money because of lack the privity.

  c. The NIFL promised many medical providers and players that it would seek reimbursement for the unpaid workers' compensation claims. These promises give the NIFL the right to pursue RPC on behalf of the players, medical providers and its teams for the unpaid claims because these promises are enforceable under the doctrine of promissory estoppel.

  d. The NIFL is permitted to bring suit against RPC on behalf of its member teams and its member teams' players under the Supreme Court's doctrine contained in <u>Hunt v. Washington State Apple Advertising Commission</u>, 432 U.S. 333, 343 (1977).

  e. At no time has the NIFL alleged it was the players' employer either in the Nebraska case or in this case. It was the parties understanding that RPC was to operate as the employer of the players for RPC to provide its services. Paragraph 1 of the Service Service Agreement states, "RPC hereby agrees to furnish to Client, and Client hereby agrees to engage from RPC, staffing for all Job Function Positions."

<b><u>AD SERIATIM REPLY TO THE DEFENDANTS' MOTION</u></b>

  1. Admitted.

  2. Admitted in part. Denied in part. It is admitted the Plaintiff asserted it had a contractual arrangement with RPC Employer Services, Inc. ("RPC") to provide workers' compensation for its teams. The NIFL agreed to use RPC's services for its teams. The NIFL's

contractual relationship with RPC and the NIFL's contractual relationship with its teams, as it relates to RPC's providing workers compensation insurance, is summarized as follows:

 a. On October 28, 2000, RPC prepared a proposal for the <u>NIFL, LLC</u> (the NIFL league offices) stating "Ohio is a state-run workers' compensation insurance program and we have received approval from our pool of managers to add <u>your</u> group. Ohio will cover <u>your teams</u> and support staff in Ohio . . ." This proposal was directed to the NIFL, LLC, who acted on behalf of its teams. The Proposal is attached hereto, made a part hereof and labeled **Exhibit A.** The Proposal illustrates RPC dealt directly with the NIFL, LLC rather than the individual teams.

 b. The NIFL acted on behalf of its teams in negotiating with RPC and in entering into a contract with RPC because NIFL agreed to do so in its Participation Agreements with the teams, each of which is a member of NIFL. (Carolyn Shiver testified on page 16 of her deposition that each team is a member of the National Indoor Football League, LLC.) For the benefit of its teams, the NIFL agreed to use the services provided by a professional employer organization. Daniel D'Alio ("D'Alio") stated RPC is a professional employer organization. Page 10 of D'Alio's deposition testimony is attached hereto, made a part hereof and labeled **Exhibit B**. In the teams' Participation Agreements with the NIFL, all of which contain identical terms, the NIFL stated the "NIFL will provide the following services on behalf of Team and other member teams . . . (K). A professional employee organization will be utilized by the league to benefit <u>all members of the league</u>." A team Participation Agreement is attached hereto, made a part hereof and labeled **Exhibit C.**

 Then, the NIFL signed-off on the player contracts thereby providing its own promise to the employee to provide workers' compensation insurance. Carolyn Shiver, on behalf of the NIFL, signed each player's contract along with a representative from the respective team. Each player contract contained a promise by the team and by the NIFL, as evidenced by its President's signature, that the "Club will provide [workers' compensation] coverage for Player." Since the teams are members of the NIFL and because the NIFL promised each team in the Participation Agreement to employ the services of RPC, Carolyn Shiver was authorized to enter into the RPC/NIFL Service Agreement, which applied to the NIFL's member teams electing to use RPC and contained the terms governing payroll and workers' compensation services provided by RPC for teams' players and coaches. Carolyn Shiver noted in her handwriting on the Service Agreement that RPC was not to cut payroll checks until wire transfers of funds were received from each team.

 c. On behalf it its teams, the NIFL entered into the Service Agreement with RPC on March 27, 2001 for its teams to receive workers' compensation and payroll services. RPC agreed to "furnish and keep in full force and effect at all times during

the term of this Agreement workers compensation insurance" for the which the RPC received services fees for every team's player and coach. The Service Agreement is attached hereto, made a part hereof and labeled **Exhibit D**.

Although the NIFL admits that it had a contract with its teams to use the services of professional employer organization, like RPC, for its teams, the NIFL has never asserted that it is the direct employer of the players. In its Reply to the Defendants' Motion in Limine, the NIFL stated in Paragraph 8, "It is admitted the NIFL's players were employed by each of the teams, however, it is denied the NIFL, as the league governing entity, does not have standing to bring this action on behalf of the players who suffered unpaid workers' compensation claims."

The NIFL's contractual relationship with its teams and with RPC are important facts in this case because it proves the NIFL's standing to sue RPC and to introduce all players. Presently, this issue is before the court because RPC, for the first time in this litigation, challenges the NIFL's right to bring suit against RPC and to introduce its teams' players' medical records. For the reasons discussed below, the NIFL has established its standing in this case.

First, as described above, the NIFL has the right to sue RPC for the unpaid workers compensation claims of its teams' players because the NIFL promised its teams that it would provide the services of RPC and it entered into a contract with RPC for workers' compensation for the teams' players. When RPC failed to provide workers' compensation to the teams' players, each team became liable under their respective state law for failing to provide workers' compensation, which in turn, allows each team to pursue the NIFL. Each team and the NIFL is also liable to each player for failing provide workers' compensation under the Player's Contract because the NIFL's league signed off on each player's team employment contact. Since the teams can be sued by their state's

attorney's general/workers' compensation agencies and by their players, each team can sue the NIFL who promised to use RPC for its workers' compensation services for the teams' players.

In fact, because of the NIFL's promises to its teams, the NIFL and its teams have been pursued directly by some state's workers' compensation systems for failure to carry workers' compensation.  The Montana State Fund is one of those agencies who pursued the NIFL for unpaid claims which were ultimately paid by the Montana State Fund.  A copy of the a January 15, 2003 notice of lien filing against the NIFL by the Montana State Fund along with a June 24, 2003 letter to NIFL detailing the Montana State Fund's intent to pursue the NIFL is attached hereto as **Exhibit E.**  Some NIFL teams have been sued by their players.  Kareem Vance, a former player with the Monroe Bayou Beast, obtained a judgment against the Monroe Bayou Beast for his unpaid claims.  A copy of the judgment is attached hereto, made a part hereof and labeled **Exhibit F**.  Another such example is the Nebraska suit cited by the Defendants.  In that case, the NIFL defended a player suit by arguing, quite correctly, that it is not the employer of the player, as it has pled in this case.

Second, the NIFL has standing to bring suit against RPC because promises it made to players and medical providers to obtain payment.  In the course of events as this matter unfolded, the NIFL attempted to avoid suits by the teams, players and medical providers by promising many medical providers, teams and players that it would recover the unpaid workers' compensation claims.  Attached as **Exhibit G** are four (4) letters to several medical providers in which the NIFL, through its attorneys, asked for the medical provider's cooperation in not filing suit against the NIFL.  Carolyn Shiver also testified to the promises she made directly to medical providers.  A true and correct copy of the Shiver Deposition is attached hereto, made a part hereof and labeled **Exhibit H;** Shiver Deposition**,** 122.  Because of the NIFL's promises made to the medical providers, the NIFL

faces suit from those if they do not honor their promise to obtain reimbursement under the doctrine of promissory estoppel. Hyland v. First USA Bank, 1995 WL 595861 (E.D. PA. 1995) (dismissing the defendants motions to dismiss where the plaintiff satisfied the pleading requirement for promissory estoppel by alleging it relied on a bank's promise to help it resolve a credit card payment dispute.)

As described in the NIFL's Reply to the Defendants' Motion in Limine, because of these representations, the statute of limitations connected to unpaid claims are tolled under the doctrine of equitable tolling. The individual players and/or medical providers gave up their right to sue their teams or the NIFL in the original applicable statute of limitations period because upon the NIFL's promise to pay. Nevertheless, equitable tolling functions to stop the statute of limitations from running where the claims accrual date has already passed. Oschiver vs. Levin, 38 F.3d 1380, 1387 (3d.Cir.1994). Accordingly, the individual players and medical providers who relied upon the NIFL's promises may still sue the NIFL because the applicable statute of limitations is not a bar to their claim.

Third, under the Supreme Court's test enunciated in Hunt v. Washington State Apple Advertising Commission, an organization such as the NIFL has standing to bring suit on behalf of its members. 432 U.S. 333, 343 (1977). Organizations may file suit on behalf of their members provided that: "(1) the organization's members would have standing to sue on their own, (2) the interests the organization seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires individual participation of its members. Id. at 343. The NIFL meets each of these tests:

(1)     Each team would have standing to sue RPC on its own, if each team elected to do so, since they are intended third party beneficiaries of the Service Agreement between RPC and the NIFL.

(2)     The NIFL's purpose is to manage and maintain a viable indoor football league in various cities in the United States. The NIFL pursuit of these claims protects its business interests and those of its teams by avoiding lawsuits and satisfying existing claims from medical providers and players.

(3)     The individual teams relied on the Participation Agreement wherein the NIFL promised to hire RPC to provide workers' compensation and payroll services. To that end, the NIFL contracted with RPC for RPC to provide these services for its members and, therefore, the NIFL has standing to directly pursue this matter for its teams and its teams' players. Furthermore, because of the Court's ruling on the Plaintiff's Motions in Limine, neither the NIFL's teams nor its teams' player employees must participate in the instant litigation. Liability testimony is confined to Carolyn Shiver, President of the NIFL and to representatives from the Ohio Bureau of Workers' Compensation. All players' unpaid workers compensation claims may be introduced without either the player's or medical provider's testimony under Federal Rules of Evidence 803(6) and 902(11).

It is also well settled that an organization such as the NIFL has standing to maintain RICO and fraud actions on behalf of its members. <u>Standardbred Owners Association v. Roosevelt Raceway Associates, L.P.</u>, 985 F.2d 102, 104-05 (2nd Cir. Ct. of Apps. 1993).

3.      Denied.  As explained in greater detail in paragraph 2, which is incorporated herein by reference, the NIFL defended the suit in the Nebraska Workers' Compensation Court by arguing, quite correctly, that it is not the employer of the player, as it has pled in this case.

4.      Admitted.

5.      Admitted.

6.      Admitted.  The records speak for themselves.

7.      Admitted.  The NIFL's answer speaks for itself.

8.      Admitted.  The player's contract speaks for itself.

9.      Admitted. The player's contract speak for itself. The NIFL's contractual relationship with their players is described more fully in paragraph 2, which is incorporated herein by reference.

10.     Denied.  For the reasons discussed in greater detail in paragraph 2, which is incorporated herein by reference, the NIFL promised its teams it would procure the services of RPC by entering into a Participation Agreement with each team, and the NIFL promised its players it would hire RPC to provide workers' compensation insurance by co-signing each player's employment contract with each team.

11.     Admitted.  The Participation Agreement speaks for itself.

12.     Denied.  For the reasons discussed more fully in paragraph 2, which is incorporated herein by reference, the NIFL obligated itself to obtain workers' compensation insurance for each team because the NIFL promised each team in the Participation Agreement that it would employ the services of RPC for the benefit of the teams.

13.     Denied.  Paragraph 25(k) of the Participation Agreement does not state the paragraph is limited to payroll services.

14.     Admitted.  Each team is a member of the NIFL, LLC.

15.     Denied.  For the reasons discussed in paragraph 2, which is incorporated herein by reference, the NIFL is not arguing it possesses standing based upon its employment relationship with its teams' players.

16.     Denied.  For the reasons discussed in paragraph 2, which is incorporated herein by reference, the NIFL is not arguing it possesses standing based upon its employment relationship with its teams' players.

17.     Denied.  As explained in greater detail in paragraph 2, which is incorporated herein by reference, the NIFL defended the suit in the Nebraska Workers' Compensation Court by arguing, quite correctly, that it is not the employer of the player, as it has pled in this case.  Furthermore, it was the parties understanding that RPC was to operate as the employer of the players for RPC to provide its services.  Paragraph 1 of the Service  Service Agreement states, "RPC hereby agrees to furnish to Client, and Client hereby agrees to engage from RPC, staffing for all Job Function Positions."  Daniel D'Alio testified the NIFL's players were to be made RPC employees so RPC could provide services.  Page 74 of D'Alio's Deposition is attached hereto, made a part hereof and labeled **Exhibit I**.

18.     Denied.  For the reasons discussed in paragraph 2, which is incorporated herein by reference, the NIFL is not arguing it possesses standing based upon the NIFL's employment relationship with its teams' players.

19.     Denied.  In the Service Agreement, which is signed by the NIFL but not by its teams, RPC's promise to provide workers' compensation is not dependent upon the employees entering into an employment relationship directly with the NIFL.  To the contrary, as described in paragraph 17,

it was the parties understanding that RPC was to operate as the employer of the players for RPC to provide its services. Furthermore, for the reasons discussed in paragraph 2, which is incorporated herein by reference, the NIFL has the right to sue RPC for the unpaid workers's compensation claims of its teams' players.

20. Denied. The Service Agreement obligates RPC to provide workers' compensation insurance. In the Service Agreement, RPC agreed to "furnish and keep in full force and effect at all times during the term of this Agreement workers compensation insurance" for which RPC received service fees for each teams' players and coaches.

WHEREFORE, Plaintiff, National Indoor Football League, respectfully requests this Court deny all the Defendants' Motion for Reconsideration

.

                                                Respectfully submitted,

                                                s/ Timothy C. Leventry
                                                Timothy C. Leventry, LL.M
                                                Attorney at Law

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONAL INDOOR FOOTBALL** | : | |
| **LEAGUE L.L.C.,** | : | **CIVIL DIVISION** |
| **Plaintiff** | : | **NO. CA 2 - 548** |
| | : | |
| **v.** | : | **TYPE OF PLEADING:** |
| | : | |
| | : | **Reply to Defendants' Motion** |
| **R.P.C. EMPLOYER SERVICES, INC.,** | : | **for Reconsideration** |
| **and DAN J. D'ALIO,** | : | |
| | : | |
| **Defendants.** | : | |

  I, Timothy C. Leventry, do hereby certify that a true and correct copy of the foregoing Reply to Defendants' Motion for Reconsideration was served on the parties listed below by **regular mail, email and/or fax**:

Michael J. Seymour, Esq.
Feczko and Seymour
520 Grant Building
310 Grant Street
Pittsburgh, PA 15219

Bernard C. Caputo, Esq.
Fort Pitt Commons Building, Suite 260
445 Fort Pitt Boulevard
Pittsburgh, Pennsylvania 15219

                   **LEVENTRY, HASCHAK,**
                   **& RODKEY, LLC**

Dated: 3-23-06         By: s/ Timothy C. Leventry
                    Timothy C. Leventry, Esquire