# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONAL INDOOR FOOTBALL LEAGUE L.L.C.,** | : | **CIVIL DIVISION** |
| PLAINTIFF, | : | |
| | : | **NO.:  CA 2 - 548** |
| v. | : | |
| | : | **TYPE OF PLEADING:** |
| **R.P.C. EMPLOYER SERVICES, INC., and DAN J. D'ALIO,** | : | **EXHIBITS TO PLAINTIFF'S MOTIONS IN LIMINE WITH RESPECT TO THE** |
| DEFENDANTS. | : | **DAMAGES PORTION OF TRIAL** |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | **FILED ON BEHALF OF:** |
| | : | |
| | : | **PLAINTIFF** |
| | : | |
| | : | **COUNSEL FOR PLAINTIFF:** |
| | : | |
| | : | **TIMOTHY C. LEVENTRY, LL.M.** |
| | : | **LEVENTRY, HASCHAK & RODKEY, LLC** |
| | : | **PA I.D. 34980** |
| | : | **1397 EISENHOWER BOULEVARD** |
| | : | **RICHLAND SQUARE III, SUITE 202** |
| | : | **JOHNSTOWN, PA  15904** |
| | : | **(814) 266-1799** |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL | : | CIVIL DIVISION |
| LEAGUE L.L.C., | : | |
| PLAINTIFF, | : | NO.:  CA 2 - 548 |
| | : | |
| v. | : | |
| | : | TYPE OF PLEADING: |
| | : | |
| R.P.C. EMPLOYER SERVICES, INC., | : | EXHIBITS TO PLAINTIFF'S MOTIONS |
| and DAN J. D'ALIO, | : | IN LIMINE WITH RESPECT TO THE |
| DEFENDANTS. | : | DAMAGES PORTION OF TRIAL |

### PLAINTIFF'S EXHIBITS

A.  Service Agreement between the NIFL and RPC

B.  March 16, 2006 Order

Completed NIFL Player HCFA Form

Blank HCFA Form

Blank Ohio FROI-1 Form

C.  RPC's Proposal to the NIFL

D.  March 23, 2006 Order

E.  Nicky Seymour Judgment

Emmanuel Bentley Judgment

Kareem Vance Judgment

# RPC Employer Services, Inc.

## Service Agreement

This Agreement is made and entered effective this 20th day of March, 2001, by and between RPC Employer Services, Inc. ("RPC"), an Ohio Corporation located at 7771 Raglan Dr. NE, PO Box 8605, Warren, Ohio 44484, and;

| | |
|---|---|
| Company Name: | National Indoor Football League, L.L.C. |
| Address: | PO Box 8628 |
| City: | Warren |
| State: | Ohio |
| Zip: | 44484 |
| EIN or SSN: | 94-3387642 (Ohio Corporation) |

## 1.    STAFFING

RPC hereby agrees to furnish to Client, and Client hereby agrees to engage from RPC, staffing for all Job Function Positions.

## 2.    TERM OF AGREEMENT

This Agreement shall commence on the EFFECTIVE STARTING DATE set forth below and shall continue in effect of the initial term ("Initial Term") of one (1) year following the commencement of this Agreement. This Agreement may thereafter be extended by mutual consent of both RPC and Client from month to month "Extended Term". During the Initial Term, RPC or Client may terminate this Agreement by giving written notice of termination to the other party thirty (30) days prior to the effective date of said termination. During the Extended Term, either party may terminate this Agreement upon giving written notice thirty (30) days prior to the effective date of said termination. Notwithstanding anything to the contrary contained in this Agreement, RPC may terminate this Agreement immediately upon twenty-four (24) hours notice to Client in the event of a material breach by Client of any of the provisions to this Agreement.

**2a.    PAYROLL REPORTING:** Commencing with the EFFECTIVE STARTING DATE, and according to the payroll processing frequency itemized on the FEE STRUCTURE STATEMENT page, the Client must report employee wages in a timely manner so as to allow RPC to process and distribute payroll and related benefits in accordance with Federal and State guidelines. Should client fail to report wages each and every pay period, RPC shall reserve the right to immediately terminate this agreement pending payment in full of all obligations. Client shall be solely responsible for all wages and applicable taxes pertaining to unreported wages. If Client requests to activate service with RPC in the future, then Client would be required to meet normal underwriting guidelines in order to initiate new service.

## 3.    FEES

a.    Client shall pay RPC a fee (the "Fee") as specified in the Fee Structure Statement attached hereto and made a part hereof. The Fee shall be paid in full, by wire transfer, direct bank debit, certified check or money order and delivered to RPC not less than twenty-four hours prior to the distribution of any payroll checks for such period. Any failure by Client to make payment as set forth shall render Client in default of this Agreement and constitute a material breach hereof, and any Employee(s) assigned to Client shall be transferred to Client effective the last day of the preceding pay period for such Employee(s).

b.    The Fee shall consist of the following items: all payroll (inclusive of bonuses, holiday pay, sick leave pay, vacation pay and/or other special payments), all applicable federal, state and local taxes, including all applicable Federal Insurance Contributions Act, Federal Unemployment Tax Act and Medicare Coverage payments, all premiums and contributions in connection with any employee retirement or other benefits including, but not limited to, all health, accident disability or other insurance premiums, all workers' compensation premiums including any required deposits not charged as part of the set-up fee, all unemployment compensation charges, and a service fee (the "Service Fee") for the administrative services of RPC.

**EXHIBIT**

A

# RPC Employer Services, Inc.
## Service Agreement

c.   During the Initial Term of this Agreement, RPC may not adjust the Fee except for statutory increases in employment taxes or insurance or any change in the Job Function Positions required by Client. During the Extended Term of this Agreement, RPC may adjust the Fee for statutory increases in employment taxes or insurance or any change in the Job Function Positions required by Client, or upon thirty (30) days prior written notice.

d.   Any increase in the Fee for statutory increases in employment taxes or insurance or any change in the Job Function Positions shall be effective on the date of such increases or change.

e.   Client agrees to verify all time sheets or other evidence of time submissions by Employees (as defined in Paragraph 13.)

## 4.   CLIENT DEPOSIT

a.   RPC reserves the right at any time during the term of this Agreement to require Client to deposit such funds or provide such other guaranty as RPC in its sole discretion, may determine from time to time to guarantee the performance of Client hereunder. The deposit shall be in an amount equal to one (1) payroll cycle as calculated for each Client. The waiver by RPC of this requirement at any time shall not stop or act as a waiver of RPC's right to require a deposit at any subsequent time during the term of this Agreement.

b.   In the event Client fails to maintain the required deposit from time to time as determined at the sole discretion of RPC the same shall be termed to be a material breach of this Agreement.

c.   On termination of this Agreement, any balance remaining in the account of Client shall be remitted to Client on or before [sixty (60)] days after the termination of this Agreement, provided that Client has performed all of its obligations under the terms of this Agreement

d. Any moneys of Client in possession of RPC hereunder may be applied to RPC to any default in any payments by Client under the terms of this Agreement.

## 5.   INSURANCE

a.   Workers' Compensation Insurance

RPC shall furnish and keep in full force and effect at all times during the term of this Agreement workers' compensation insurance covering all Employees filling Job Function Positions under the terms of this Agreement, and where applicable, such policies shall designate Client and RPC respectively, as the first and second named insured. In addition, RPC shall cause that appropriate evidence of insurance be filed with the Worker's Compensation Bureau of any state as deemed necessary by the Client.

b.   Automobile Liability Insurance

If any Employee filling a Job Function Position is to drive a vehicle of any kind for Client, Client shall furnish automobile liability insurance covering said vehicle and said Employees. The policy of automobile insurance shall insure against public liability for bodily injury and property damage, with a minimum combined single limit of One Million Dollars ($1,000,000.00) and uninsured motorist or personal injury protection, or equivalent coverage, of at least the minimum limits required by the state where such "no fault" laws apply. Client shall cause its insurance carrier to name the Employees and RPC as additional named insured and loss payees, and to issue a Certificate of Insurance to RPC whereby RPC is provided not less than (30) days advance notice of cancellation or material change in any such automobile liability insurance coverage. RPC shall be the Certificate Holder for purposes of making claims thereunder.

c.   General Liability Coverage

Client agrees to cause its insurance carrier to name RPC and Client's employees as additional insured on Client's general liability insurance policy, and shall issue a Certificate of Insurance evidencing same to RPC whereby RPC is provided not less than thirty (30) days notice of cancellation or material change in said general liability insurance policy. The minimum requirements of said general liability insurance policy is One Million Dollars ($1,000,000.00) combined single limit including, but not limited to, where applicable, premises, operations, products, completed operations, contractors, personal injury, host liquor liability, independent contractors and full liquor liability. In the event, Client renders professional services, a professional services rider on said general liability and extended coverage policy shall be required as

# RPC Employer Services, Inc.
## Service Agreement

applicable. Said professional services liability coverage shall, depending on the business activities of Client, and upon the written request of RPC provide for minimum limits of coverage of One Million Dollars ($1,000,000.00).

   d.   Group Medical Insurance

After the completion of a specified probationary period, each Employee filling a Job Function Position may elect within the enrollment period at his or her cost, to be covered by a group medical insurance policy offered by RPC. Each Employee may elect additional coverage by reimbursing RPC the actual cost of the extra coverage. In the event an Employee is terminated or is otherwise unavailable to reimburse RPC for coverage elected, Client shall reimburse RPC for any premium dollars advanced by RPC on behalf of the Employee.

   e.   Retirement Plan Each employee filling a Job Function Position may voluntarily participate in a 401k Plan provided by RPC to the extent such plan is in existence.

   f.   Excluded Coverage

RPC shall not be responsible and shall not furnish insurance for claims involving discrimination or harassment, including but not limited to claims involving age, sex, race, religion, equal pay, national origin, disability, marital status, veteran status or sexual preference. Client agrees to indemnify and hold RPC harmless for any and all liability for such claims resulting from acts or omissions of Client or any director, officer, employee, or other agent of Client, as further described in Paragraph 9. Any damages, attorneys' fees or expenses awarded to an Employee or his/her representative as a result of any such claims will be paid by Client.

   g.   Subrogation

Client hereby waives any claim in its favor against RPC by way of subrogation or indemnification which may arise during the Initial Term or any Extended Term of this Agreement or any and all loss of, or damage to, any of the Client's property or for bodily injury which loss, damage or bodily injury is covered by insurance to the extent that such loss is recovered under such policies of insurance as are required in this Agreement.

   h.   Specific Continuing Covenant

Client and RPC each agree to keep in full force and effect, at all times during the Initial Term and any Extended Term of this Agreement, all insurance policies required under this Agreement.

## 6.   COMPLIANCE WITH LAWS

   a.   General

Client agrees, at its expense, to provide reasonable accommodations for all Employees having a disability as defined in Title 1 of the Americans with Disabilities Act.

   b.   Americans With Disabilities Act

Client agrees, at its expense, to provide reasonable accommodations for all Employees having a disability as defined in Title 1 of the Americans with Disabilities Act. Client also agrees to indemnify and hold RPC harmless from any and all claims arising from Client's failure to provide reasonable accommodations, and for any expenses incurred by RPC for having to make reasonable accommodations as a result of Client's refusal to do so, as further described in Paragraph 9.

## 7.   ADMINISTRATION

RPC acknowledges that it is responsible for such administrative employment matters as the payment of all federal, state and local employment taxes, the providing of workers' compensation coverage, and the providing of non-obligatory fringe benefit programs for the Employees.

## 8.   WORK ENVIRONMENT

Client agrees that it will comply with all laws, regulations, ordinances, directives and rules imposed by controlling federal, state and local government authorities including, but not limited to, The Americans With Disabilities Act, Title VII of the Civil Rights Act, the Occupational Safety and Health Act, the Fair Labor Standards Act and the Family Medical Leave Act. If applicable, and that it will within twenty-four (24) hours,

# RPC Employer Services, Inc.
## Service Agreement

report all accidents and injuries to RPC. Client agrees to comply, at its expense, with any specific directives from the workers' compensation insurance carrier, if any, or any governmental agency having jurisdiction over the work place or the Employees' health and safety. Client shall provide and ensure use of all personal protective equipment as required by federal, state or local law, regulations, ordinances, directives or rules, or as deemed necessary by RPC or by its workers' compensation carrier, if any. RPC workers' compensation carrier, if any, has the right at any scheduled mutually convenient time, to inspect Client's premises and operations, but is not obligated to undertake such inspections. RPC or its carrier, if any, may give reports to the Client of the results of any inspections.   Neither any carrier nor RPC warrants the results of any such inspections or the absence thereof, or that the operations and/or premises are in compliance with any laws regulations, codes or standards.

## 9.   HOLD HARMLESS

Client hereby agrees to indemnify, defend and hold RPC harmless from and against any and all claims, damages, losses, judgments, fees, expenses and costs (including court costs and attorneys' fees) and liabilities and obligations of any nature whatsoever, contingent or otherwise, known or unknown, as though expressly set forth and described herein, which Client may incur, suffer, become liable for, or which may be asserted or claimed against Client arising out of or related to the acts, errors or omissions of Client or any director, officer, employee or other agent of Client, including, without limitation, any and all claims in any way related to the matters contained in Paragraph 5(f) and 6 or any violation of this Agreement by Client or RPC's efforts to enforce this indemnity. Client shall take all reasonable measures to inform creditors and other third parties that all Employees assigned to Client to fill the Job Function Positions are employees of RPC, and that RPC is not responsible for Client's debts, acts, errors or omissions except as specifically set forth in this Agreement.

Notwithstanding anything to the contrary contained herein, RPC shall not be liable in any in any event for Client's loss of profits, business, goodwill, or other consequential, special, or incidental damages.

## 10.   LATE CHARGE

Should payment of any amounts due RPC not be made when due, Client shall pay a monthly late charge at a rate of one and one-half percent (1 ½%) per month on all past due invoices, or the maximum rate permitted by law, whichever is less.

## 11.   DEFAULT

Client shall be in default of this Agreement, and said default shall constitute a material breach hereof, if:

a.   Client shall fail to pay the Fee;

b.   Client shall fail to report timely employee wage information each and every pay period

c.   Client shall commit any act that interferes with the rights of RPC as the employer of the Employees provided under this Agreement;

d.   Client shall fail to provide any insurance required under this Agreement;

e.   Client shall fail to comply with any law, regulations, ordinance, directive, or rule regarding the health and safety of Employees from RPC's workers compensation carrier, if any or any governmental agency;

f.   Client shall commit any act that disrupts any of the rights of RPC as the employer of the Employees provided for under this Agreement;

g.   Client or any guarantor of Client's obligations hereunder shall generally not pay its debts as they become due;

h.   Client or any guarantor of Client's obligations hereunder shall admit its inability to pay its debts or shall make a general assignment for the benefit of creditors;

i.   Client or any guarantor of Client's obligations hereunder shall commence any case, proceeding or other action seeking to have an order for relief entered on its behalf as debtor or to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it, or its debts, under any law relating

# RPC Employer Services, Inc.
## Service Agreement

to bankruptcy, insolvency, reorganization or relief of debtors or seeking appointment of a receiver, trustee, custodian or other similar official for Client or for all or any substantial part of Client's property;

j.   Client or any guarantor of Client's obligations hereunder shall take any corporate or other action to authorize or to contemplate any of the actions set forth above; or

k.   Client shall fail to comply with any applicable governmental law, regulation, ordinance, directive or rule, whether federal, state or local.

## 12.  EFFECT OF BANKRUPTCY OR INSOLVENCY

In the event any of the actions specified in the immediately preceding paragraph occurs, RPC shall have no further obligation to advance any funds on behalf of Client pursuant to this Agreement for any purpose whatsoever unless RPC shall have such funds in its possession at the time any payment or advance is due under this Agreement.

## 13.  EMPLOYEES

For purposes of this Agreement, the term "Employee," whether singular or plural, shall mean such individuals as shall be assigned by RPC to fill the Job Function Positions of Client under this Agreement. All such individuals covered by this agreement shall be deemed to be assigned to Client on a permanent basis.

## 14.  WARRANTY

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, RPC MAKES NO COVENANT, REPRESENTATION, WARRANTY, OR AGREEMENT OF ANY KIND, EXPRESS OR IMPLIED, TO CLIENT OR ANY OTHER PARTY WITH RESPECT TO THE PERFORMANCE BY EMPLOYEES OF SERVICES RENDERED TO CLIENT AS CONTEMPLATED HEREUNDER. UNDER NO CIRCUMSTANCES SHALL RPC TOTAL LIABILITY OF ANY KIND ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING BUT NOT LIMITED TO ANY WARRANTY CLAIMS HEREUNDER REGARDLESS OF THE FORUM AND REGARDLESS OF WHETHER ANY ACTION OR CLAIM IS BASED ON CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE) EXCEED THE TOTAL AMOUNT PAID BY CLIENT TO RPC AS SERVICE FEES HEREUNDER (DETERMINED AS OF THE DATE OF ANY FINAL JUDGMENT IN SUCH ACTION).

## 15.  MISCELLANEOUS

a.   Entire Agreement

This Agreement constitutes the entire understanding and agreement of the parties hereto with respect to the covenants contemplated hereby, and supersedes all prior oral and written agreements and understandings of the parties relating to the subject matter hereof.

b.   Attorneys' Fees

In the event that any action is brought by either party hereto as a result of a breach or a default in any provision of this Agreement, the prevailing party in such action shall be awarded reasonable attorneys' fees and costs in addition to any other relief to which the party may be entitled.

c.   Survival of Agreement

All covenants, representations, warranties, and agreements made herein shall survive the execution and delivery of this Agreement. Wherever in this Agreement reference is made to any of the parties hereto, such reference shall be deemed to include the corporate successors in interest, legal representatives, heirs, assigns, and any other successors of such party.

d.   Construction

This Agreement shall be governed by, construed and enforced under the substantive, and not conflicts, laws of the State of Ohio. The forum for any litigation hereunder shall be the federal or state, as appropriate, courts located in Trumbull County, Ohio. An action for breach of this Agreement or any other action otherwise arising out of or related to this Agreement must be commenced within one (1) year from the date

# RPC Employer Services, Inc.
## Service Agreement

the right, claim, demand or cause of action shall first occur, or be barred forever. The headings appearing herein are for convenience only, and are without legal effect.

  e.   Waiver of Breach

Failure by either party at any time to require performance by the other party or to claim a breach of any provision of this Agreement will not be construed as a waiver of any subsequent breach nor affect the effectiveness of this Agreement, nor any part thereof, nor prejudice either party with regard to any such subsequent action.

  f.   Notices

Any notice or demand to be given hereunder by either party to the other shall be effected by personal delivery in writing or a certified mail, postage paid, return receipt requested, and shall be addressed to the party's principal place of business set forth above, but each party may change the address by written notice in accordance with this paragraph.

  g.   Validity

This Agreement shall be valid and enforceable only after it has been signed by both parties. In the event any term, warrant, covenant, condition, or provision of this Agreement is held to invalid or unenforceable, the balance of this Agreement shall remain in full force and effect and shall stand as if the unenforceable part did not exist.

  h.   No Partnership

Notwithstanding any provision to the contrary herein, RPC, under this Agreement or by any action taken pursuant hereto, shall not be deemed a partner, joint venture, or joint employer with Client.

In witness whereof, the parties have executed this Agreement as of the date and year first written above.

RPC EMPLOYER SERVICES, INC.

By: _____     3-27-01
      Daniel J. D'Alio, President                    Date


NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C.

By: _Carolyn Shiver President 3/21/01_
      Carolyn Shiver, President              Date

**NOTICE: THIS AGREEMENT IS SUBJECT TO THE FINAL APPROVAL OF THE HOME OFFICE AND SHALL NOT BECOME EFFECTIVE UNTIL SUCH TIME AS APPROVAL IS GRANTED AS EVIDENCED BY THE ABOVE ENDORSEMENT OF AN OFFICER OF RPC EMPLOYER SERVICES, INC.**

## EFFECTIVE STARTING DATE:

Based on each team's first game of the 2001 season according to the official published schedule, which shall be made a part of this agreement.

# RPC Employer Services, Inc.
## Service Agreement

## FEE STRUCTURE STATEMENT

| Description | Amount | Per |
|---|---|---|
| Payroll Frequency: | | Weekly |
| Service Fee: | | |
| Players, coaches | $18.00 | Person per weekly pay period |
| Office Staff | $12.00 | Person per weekly pay period |
| FICA (Employer Match) | 7.65% | Of taxable wages up to taxable limits |
| FUTA (Federal Unemployment) | 0.80% | Of taxable wages up to taxable limits |
| SUTA (State Unemployment) | 2.75% | Of taxable wages up to taxable limits |
| Workers' Compensation: | | |
| -Players, Coaches, Code 9179: | 11.65% | Per $100 of Payroll |
| -Office staff, Code 8810: | 0.52% | Per $100 of Payroll |
| DEDUCTIBLE: | $1000 | PER CLAIM AS ASSESSED TO EACH TEAM BY THE LEAGUE MANAGEMENT |
| Overnight Delivery | $13.00 | Per Payroll Delivery as requested |
| Direct Debit Fee | $5.00 | Per Invoice |
| One-time Setup | $495.00 | |

# RPC Employer Services, Inc.
## Service Agreement
### SECURITY DEPOSIT

As additional security for performance of the obligation incurred, Client hereby grants to and deposits with RPC cash and/or an irrevocable standby letter of credit in an amount equal to one (1) estimated payroll cycle inclusive of gross payroll and all applicable federal, state and local taxes, as well as, the total estimated employee benefits paid, for a total of $ (see NOTE below). Said sum shall be held by RPC until such time as the Agreement between the parties is terminated and any and all obligations, indebtedness, or other liabilities of Client have been satisfied or applied hereto.

RPC EMPLOYER SERVICES, INC.

By _____
       Daniel J. D'Alio, President


NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C.

By _____
       Carolyn Shiver, President
Do not cut payroll checks for teams unless wire transfers are received.


NOTE: Security deposit will be waived so long as wire transfer or direct debit payment is received by RPC on Wednesday prior to each Friday pay date. If this term is not met, then a Security Deposit will be necessary in order to continue service.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL INDOOR FOOTBALL<br>LEAGUE, L.L.C.,<br><br>            Plaintiff,<br><br>      v.<br><br>R.P.C EMPLOYER SERVICES, INC.,  and<br>DAN J. D'ALIO,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)    02: 02cv0548<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM ORDER OF COURT

Presently pending before the Court for disposition are the following:

• PLAINTIFF'S MOTION IN LIMINE, with brief in support (*Document Nos. 62 and 65, respectively*), and the response in opposition filed by Defendants (*Document No. 63*); and

• DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DAMAGES (*Document No. 61*), and the reply in opposition filed by Plaintiff (*Document No. 64*).

On March 13, 2006, the Court heard oral argument on these motions at which all parties were represented by counsel who presented and argued the issues skillfully and effectively.

After a review of the case law, the Federal Rules of Evidence, and the arguments of counsel, the Court finds and rules as follows:

**EXHIBIT**

B

### PLAINTIFF'S FIRST MOTION IN LIMINE (DOCUMENT No. 62-1)

Plaintiff argues that because its claims are for common-law damages, the damages available to it are the full amount of damages, which are largely unpaid medical bills, rather than damages based upon reimbursement rates under the Ohio Workers' Compensation Act. *See Vandemark v. Southland Corp.*, 525 N.E.2d 1374 (Ohio 1988); *Harleysville Ins. Co. v. Wozniak*, 500 A.2d 872 (Pa. Super. 1985). Defendants respond that "the item of damage belongs to the employee who would be the player and not the employer team or league." Response at 2.

During the oral argument, counsel for Plaintiff represented that a single contract was entered into between the Plaintiff, the National Indoor Football League ("NIFL"), the teams (as members of the NIFL), and the players. As part of that contract, the NIFL contractually agreed to provide workers' compensation and medical coverage to the players. Therefore, Plaintiff argues that it has standing to pursue these claims because under the contract it is obligated to provide workers' compensation and medical coverage to the players.

The Court agrees. At first blush, the *Vandermark* and *Harleysville* decisions, upon which Plaintiff relies, appear to be distinguishable from the instant factual scenario. However, upon closer examination, the Court finds that the instant factual scenario closely resembles that presented in those two cases. In *Vandermark* and *Harleysville*, the employers either failed to process a claim for workers' compensation or failed to carry workers' compensation insurance. In both instances, the courts found that the essential nature of the claims fell "outside the scope of workers' compensation statutes" and, therefore, did not limit damages to the level of

2

reimbursement available under the applicable workers' compensation acts. *Vandemark*, 525 N.E.2d at 1376-77.

In the case *sub judice,* all teams are members of the NIFL, and the NIFL, on behalf of the players and teams, entered into a Service Agreement with Defendant R.P.C. Employer Services, Inc., to provide workers compensation and medical coverage for its players among other services. Undeniably, such coverage was not provided, although the parties dispute the reasons for the termination of the Service Agreement. Accordingly, like the courts in *Vandermark* and *Harleysville,* this Court finds and rules that the claims surrounding this litigation "fall outside the scope of workers' compensation statutes," and, therefore, Plaintiff may be entitled to recover the full amount of damages and medical bills if properly proven and Plaintiff will <u>not</u> be limited by the level of reimbursement available under the Ohio Workers' Compensation Act.

Accordingly, Plaintiff's First Motion in Limine is **GRANTED**.


**PLAINTIFF'S SECOND MOTION IN LIMINE** *(Document No. 62-2)*

Pursuant to Federal Rules of Evidence 803(6) and 902(11), Plaintiff requests that the Court permit the use of the individual players' medical records, invoices, and Federal Health Care Financing Administration ("HCFA") claim forms as evidence to prove its damages and costs. Defendant objects to this request arguing that "Plaintiff needs to present evidence of reasonableness, necessity and causation which would be necessary to prove damages." Resp. at 3.

Plaintiff counters that at trial it will establish that the alleged injuries of each player were sustained during the 2001 season and that Carolyn Shriver, President of the NIFL, will testify, if necessary, as to each player, his team and relationship to the NIFL, and the injuries that the players sustained. Further, Plaintiff argues that nothing precludes Defendant from challenging the reasonableness, necessity, and/or causation of the injuries and treatment reflected in the medical records and bills at issue. If Defendant desires to introduce counter evidence, it may; however, the Rules of Evidence permit said records to be admitted into evidence at trial.

Federal Rule of Evidence 803(6) sets forth an exception to the hearsay rule as follows:

> (6)  Records of regularly conducted activity.  A memorandum report, record or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

> The federal business records exception is based on the Uniform Business Records as Evidence Act, but is more expansive and allows the admission of opinions or diagnoses in business records.

Fed.R. Evid. 803(6).

Federal Rule of Evidence 902(11) (Self Authentication) provides as follows:

4

Certified domestic records of regularly conducted activity. The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record -

(A)  was made at or near the time of the occurrence set forth by, or from information transmitted by, a person with knowledge of those matters;
(B)    was kept in the course of the regularly conducted activity; and

(C)    was made by the regularly conducted activity as a regular practice.

A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Fed. R. Evid. 902(11).

Plaintiff has represented to the Court that it has provided to Defendants the written notice required by Federal Rule of Evidence 902(11) and has supplied the "majority of the actual HCFA forms and medical records to the Defendants." Mot. at ¶ 3. Defendants respond that the records they received are not complete, *to wit:* some are simply bills without any medical record support.

The Court is cognizant of the fact that this case presents major obstacles and issues to both parties due to the volume of players and medical records and bills involved in the litigation. However, requiring Plaintiff to bring into Court all of the various medical providers, who are located all across the United States, would be unduly burdensome to the Plaintiff, and this situation appears to typify the reason why Federal Rules of Evidence 803(6) and 902(11) were adopted and promulgated.

5

Accordingly, the Court rules that Plaintiff will be permitted to introduce into evidence certain documents that may be used to establish its damages without actual testimony from the medical provider(s).  However, Plaintiff is forewarned that the requirements of Federal Rule of Evidence 803(6) and 902(11), as well as all other Federal Rules of Evidence, will be strictly enforced and each document will be assessed for admissibility, including trustworthiness,  upon presentation.

With these limitations, Plaintiff's Second Motion in Limine is **GRANTED.**

### DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DAMAGES *(Document No. 61)*

Defendants request that the Court exclude evidence of damages relating to unpaid medical expenses and wage loss or, in the alternative, limit the same as follows:

(i)    Plaintiff cannot seek to recovery for any amounts beyond the $31,800.50 it has alleged to have paid in medical claims;

(ii)    Plaintiff cannot assert any damages for medical expenses incurred by players during pre-season games;

(iii)    Plaintiff cannot assert any damages for unpaid medical expenses or losses incurred after April 17, 2001, the effective termination date of the service agreement; and

(iv)    Plaintiff should be excluded from providing any evidence of unpaid medical expenses or wage losses thirty (30) days past the date of the termination of the service agreement.

6

The Court has previously addressed the issue of the evidence of damages and thus, Defendants' request is **DENIED.** *See* discussion on Plaintiff's First Motion in Limine *supra.* Therefore, the Court will address seriatim Defendants' alternative grounds for relief.

As discussed *supra,* Plaintiff alleges that it was contractually obligated to provide workers' compensation and medical coverage to the players. According to Plaintiff's counsel, the NIFL has made promises to medical providers and players that it will cover the medical expenses incurred by the players. Therefore, Plaintiff is not limited to seeking recovery of only the $31,800.50 it has already paid, but rather Plaintiff may seek recovery for all medical damages it has incurred and reasonably expects to incur as a result of the alleged unlawful termination of the Service Agreement.

Next, Defendants argue that Plaintiff cannot assert any damages for medical expenses incurred by players during pre-season games. The Service Agreement specifically states that the effective starting date is "based on each team's first game of the 2001 season according to the official published schedule, which shall be made a part of this agreement." The parties are in agreement that the first game of the 2001 season occurred on March 30, 2001. Accordingly, the Court finds and rules that Plaintiff cannot assert any damages for medical expenses incurred by players prior to March 30, 2001.

Defendants' last requested limitations revolve around a determination of when the Service Agreement ended. Plaintiff argues that Defendants unilaterally and unlawfully terminated the contract because they knew that they would not be able to provide coverage. Defendants argue that the Service Agreement was terminated because the Plaintiff was in material breach.

7

The questions of material breach and effective termination date of the Service

Agreement are clearly issues of fact for the jury to determine. Therefore, the Court **DENIES**

Defendants' requests to limit Plaintiff to any damages for unpaid medical expenses or losses

incurred after April 17, 2001, and/or preclude Plaintiff from introducing into evidence unpaid

medical expenses and wage losses "thirty (30) days past the date of the termination of the

service agreement."

So **ORDERED** this 16th day of March, 2006.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:     Forrest B. Fordham, III, Esquire
        Email: ffordhamlaw@aol.com

        Timothy C. Leventry, Esquire
        Leventry & Haschak
        Email: tleventry@lhrklaw.com

        Bernard C. Caputo, Esquire
        Email: Bcaputolaw@aol.com

        Michael J. Seymour, Esquire
        Email: mjseymour@covad.net

APPROVED OMB-0938-0008

PLEASE
DO NOT
STAPLE
IN THIS
AREA

NIFL  **W/C**
ATTN: SUSAN NATIONS
600 LOIRE AVE
LAFAYETTE, LA  70507

[XX]PICA

**HEALTH INSURANCE CLAIM FORM**

PICA

| MEDICARE | MEDICAID | CHAMPUS | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER | (FOR PROGRAM IN ITEM 1) |
|---|---|---|---|---|---|---|---|---|
| (Medicare #) | (Medicaid #) | (Sponsor's SSN) | (VA File #) | (SSN or ID) | (SSN) | X (ID) | 240595994 | |

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
LOCKLEAR, WILLIAM C

3. PATIENT'S BIRTH DATE  MM 12 DD 13 YY 77   SEX M [X] F

4. INSURED'S NAME (Last Name, First Name, Middle Initial)
SAME

5. PATIENT'S ADDRESS (No., Street)
914 WEST OLIVE

6. PATIENT RELATIONSHIP TO INSURED
Self [X]  Spouse []  Child []  Other []

7. INSURED'S ADDRESS (No., Street)
SAME

CITY
WEST MONROE     STATE LA

8. PATIENT STATUS
Single []  Married []  Other [X]

CITY     STATE

ZIP CODE
71292     TELEPHONE (Include Area Code) (318) 325-7840

Employed []  Full-Time Student []  Part-Time Student []

ZIP CODE     TELEPHONE (INCLUDE AREA CODE) (318) 325-7840

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (CURRENT OR PREVIOUS)
YES []  NO [X]

a. INSURED'S DATE OF BIRTH  MM 12 DD 13 YY 77   SEX M [X]  F

b. OTHER INSURED'S DATE OF BIRTH  MM DD YY   SEX M []  F []

b. AUTO ACCIDENT?   PLACE (State)
YES []  NO [X]

b. EMPLOYER'S NAME OR SCHOOL NAME
NIFL BAYOU BEAST

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?
YES []  NO [X]

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
YES []  NO [X]   If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.
SIGNED  SIGNATURE ON FILE     DATE 5/04/01

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.
SIGNED  SIGNATURE ON FILE

14. DATE OF CURRENT:  MM DD YY  ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY (LMP)

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE  MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION
FROM MM DD YY  TO MM DD YY

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE
MCCLELLAND, MD, SCOTT

17a. I.D. NUMBER OF REFERRING PHYSICIAN

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
FROM MM DD YY  TO MM DD YY

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?   $ CHARGES
YES []  NO [X]

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)
1. 959.7
2. |___
3. |___
4. |___

22. MEDICAID RESUBMISSION CODE     ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A. DATE(S) OF SERVICE | | | | | B. Place of Service | C. Type of Service | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS   MODIFIER | E. DIAGNOSIS CODE | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. EMG | J. COB | K. RESERVED FOR LOCAL USE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FROM MM | DD | YY | TO MM | DD | YY | | | | | | | | | | |
| 5 | 04 | 01 | | | | 2 | F | 73721   26   MRI/LOW EXTREMITY/JOINT W/OUT | 1 | 165 00 | 1 | | | | |

25. FEDERAL TAX I.D. NUMBER  720853141   SSN [] EIN [X]

26. PATIENT'S ACCOUNT NO.
268470

27. ACCEPT ASSIGNMENT? (For govt. claims, see back)
YES [X]  NO []

28. TOTAL CHARGE
$ 165 00

29. AMOUNT PAID
$

30. BALANCE DUE
$ 165 00

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
SIGNED  DAN DAVIDSON, MD     DATE 5/13/01

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)
NORTH MONROE HOSP
3421 MEDICAL PARK DR
MONROE     LA 71203

33. PHYSICIAN'S SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE & PHONE #   318 387 3453
RADIOLOGY ASSOCIATES
1601 LAMY LANE
MONROE     LA 7120

PIN# 07372R

PLEASE
DO NOT
STAPLE
IN THIS
AREA

CARRIER

| | PICA | | | | | | | **HEALTH INSURANCE CLAIM FORM** | | | PICA | |

| 1. MEDICARE | MEDICAID | CHAMPUS | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER | (FOR PROGRAM IN ITEM 1) |
|---|---|---|---|---|---|---|---|---|
| (Medicare #) | (Medicaid #) | (Sponsor's SSN) | (VA File #) | (SSN or ID) | (SSN) | (ID) | | |

| 2. PATIENT'S NAME (Last Name, First Name, Middle Initial) | 3. PATIENT'S BIRTH DATE MM | DD | YY     SEX  M     F | 4. INSURED'S NAME (Last Name, First Name, Middle Initial) |
|---|---|---|

| 5. PATIENT'S ADDRESS (No., Street) | 6. PATIENT RELATIONSHIP TO INSURED   Self   Spouse   Child   Other | 7. INSURED'S ADDRESS (No., Street) |
|---|---|---|
| CITY                                STATE | 8. PATIENT STATUS   Single   Married   Other | CITY                              STATE |
| ZIP CODE          TELEPHONE (Include Area Code) | Employed   Full-Time Student   Part-Time Student | ZIP CODE        TELEPHONE (INCLUDE AREA CODE) |

| 9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial) | 10. IS PATIENT'S CONDITION RELATED TO: | 11. INSURED'S POLICY GROUP OR FECA NUMBER |
|---|---|---|
| a. OTHER INSURED'S POLICY OR GROUP NUMBER | a. EMPLOYMENT? (CURRENT OR PREVIOUS)   YES   NO | a. INSURED'S DATE OF BIRTH MM | DD | YY    SEX  M    F |
| b. OTHER INSURED'S DATE OF BIRTH MM | DD | YY   SEX  M   F | b. AUTO ACCIDENT?    PLACE (State)   YES   NO | b. EMPLOYER'S NAME OR SCHOOL NAME |
| c. EMPLOYER'S NAME OR SCHOOL NAME | c. OTHER ACCIDENT?   YES   NO | c. INSURANCE PLAN NAME OR PROGRAM NAME |
| d. INSURANCE PLAN NAME OR PROGRAM NAME | 10d. RESERVED FOR LOCAL USE | d. IS THERE ANOTHER HEALTH BENEFIT PLAN?   YES   NO   If yes, return to and complete item 9 a-d. |

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.

| 12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.    SIGNED _____ DATE _____ | 13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.    SIGNED _____ |
|---|---|

| 14. DATE OF CURRENT: MM | DD | YY  ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY(LMP) | 15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE  MM | DD | YY | 16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION MM | DD | YY    FROM        TO  MM | DD | YY |
|---|---|---|
| 17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE | 17a. I.D. NUMBER OF REFERRING PHYSICIAN | 18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES MM | DD | YY    FROM        TO  MM | DD | YY |
| 19. RESERVED FOR LOCAL USE | | 20. OUTSIDE LAB?   YES   NO     $ CHARGES |

| 21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE) | 22. MEDICAID RESUBMISSION CODE        ORIGINAL REF. NO. |
|---|---|
| 1.                          3. | |
| 2.                          4. | 23. PRIOR AUTHORIZATION NUMBER |

| 24. | A | | | | | B | C | D | | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | DATE(S) OF SERVICE | | | | | Place of Service | Type of Service | PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) | | DIAGNOSIS CODE | $ CHARGES | DAYS OR UNITS | EPSDT Family Plan | EMG | COB | RESERVED FOR LOCAL USE |
| | From MM | DD | YY | To MM | DD | YY | | | CPT/HCPCS | MODIFIER | | | | | | | |
| 1 | | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | | |

| 25. FEDERAL TAX I.D. NUMBER    SSN  EIN | 26. PATIENT'S ACCOUNT NO. | 27. ACCEPT ASSIGNMENT? (For govt. claims, see back)   YES   NO | 28. TOTAL CHARGE  $ | 29. AMOUNT PAID  $ | 30. BALANCE DUE  $ |
|---|---|---|---|---|---|
| 31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)    SIGNED _____ DATE _____ | 32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office) | | 33. PHYSICIAN'S, SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE & PHONE #     PIN#        GRP# | | |

CARRIER

PATIENT AND INSURED INFORMATION

PHYSICIAN OR SUPPLIER INFORMATION

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88)    **PLEASE PRINT OR TYPE**    APPROVED OMB-0938-0008 FORM CMS-1500 (12-90),   FORM RRB-1500,
APPROVED OMB-1215-0055 FORM OWCP-1500,   APPROVED OMB-0720-0001 (CHAMPUS)



# First Report of an Injury, Occupational Disease or Death

**WARNING:**
Any person who obtains compensation from BWC or self-insuring employers by knowingly misrepresenting or concealing facts, making false statements or accepting compensation to which he or she is not entitled, is subject to felony criminal prosecution for fraud.
(R.C. 2913.48)

## Injured worker and injury/disease/death info.

Last name, first name, middle initial

Social Security number

Marital status
☐ Single
☐ Married
☐ Divorced
☐ Separated
☐ Widowed

Date of birth

Home mailing address

Sex  ☐ Male  ☐ Female

Number of dependents

City        State        9-digit ZIP code

Country if different from USA

Department name

Wage rate
$ _____ Per: ☐ Hour ☐ Month ☐ Week ☐ Year ☐ Other _____

What days of the week do you usually work?
☐ Sun ☐ Mon ☐ Tues ☐ Wed ☐ Thur ☐ Fri ☐ Sat

Regular work hours
From _____ To _____

Have you been offered or do you expect to receive payment or wages for this claim from anyone other than the Ohio Bureau of Workers' Compensation? ☐ Yes ☐ No If yes, please explain.

Occupation or job title

Employer name

Mailing address (number and street, city or town, state, ZIP code and county)

Location, if different from mailing address

Was the place of accident or exposure on employer's premises? ☐ Yes ☐ No
(If no, give accident location, street address, city, state and ZIP code)

Date of injury/disease

Time of injury _____ ☐ a.m. ☐ p.m.

If fatal, give date of death

Time employee began work _____ ☐ a.m. ☐ p.m.

Date last worked

Date returned to work

Date hired

State where hired

Date employer notified

Description of accident (Describe the sequence of events that directly injured the employee, or caused the disease or death.)

Type of injury/disease and part(s) of body affected (For example: sprain of lower left back)

*Benefit application/medical release – I am applying for recognition of my claim under the Ohio Workers' Compensation Act for work-related injuries that I did not purposely inflict. I request payment for compensation and/or medical expenses as allowable. Direct payment(s) to the providers of any medical services are authorized. I understand that I am allowing any provider who attends to, treats or examines me to release all medical, psychological and/or psychiatric information that is causally or historically related to physical or mental injuries relevant to issues necessary to the administration of my workers' compensation claim to the Ohio Bureau of Workers' Compensation, the Industrial Commission of Ohio, the employer listed in this claim, that employer's managed care organization and any authorized representatives. I further authorize the Ohio Rehabilitation Services Commission to release information about my physical, mental, vocational and social conditions that is causally or historically related to physical or mental injuries relevant to issues necessary for the administration of my workers' compensation claim to the aforementioned parties.*

Injured worker signature

Date

E-mail address

Telephone number ( )

Work number ( )

## Treatment info.

Health-care provider name

Telephone number ( )

Fax number ( )

Initial treatment date

Street address

City

State

9-digit ZIP code

Diagnosis(es): Include ICD code(s)

Will the incident cause the injured worker to miss eight or more days of work? ☐ Yes ☐ No

Is the injury causally related to the industrial incident? ☐ Yes ☐ No

Health-care provider signature

11-digit BWC provider number

Date

## Employer info.

Employer policy number

**Check if** ☐ Employer is self-insuring
☐ Injured worker is owner/partner/member of firm

Telephone number ( )

Fax number ( )

E-mail address

Federal ID number

Manual number

Was employee treated in an emergency room? ☐ Yes ☐ No

Was employee hospitalized overnight as an inpatient? ☐ Yes ☐ No

If treatment was given away from work site, provide the facility name, street address, city and state and ZIP code

☐ **Certification** - The employer certifies that the facts in this application are correct and valid.

☐ **Rejection** - The employer rejects the validity of this claim for the reason(s) listed below:

**For self-insuring employers only**
☐ **Clarification** - The employer clarifies and allows the claim for the condition(s) below:
☐ **Medical only**   ☐ **Lost time**

Employer signature and title

Date

OSHA case number



# First Report of an Injury, Occupational Disease or Death

This form can be completed and submitted online at:
**ohiobwc.com**

## Report your injury by completing all three sections of this form

① Complete as much of all three sections of this form as possible to reduce the time necessary in determining the claim. If this form is completed by the injured worker at the first visit to a medical provider, the injured worker may give the FROI to the provider to complete the treatment information section. The provider can then submit the FROI to the MCO.

② Deliver, mail or fax the completed document to your employer or your employer's managed care organization (MCO).

③ If you do not know your employer's MCO, contact BWC at **1-800-OHIOBWC** and follow the prompts, or use the MCO on BWC's Web site at **ohiobwc.com.**

④ If you are unable to determine your MCO, mail or fax this form to the BWC customer service office closest to your home. For information on your local customer service office, please visit **ohiobwc.com,** or call **1-800-OHIOBWC.**

## Injured workers employed by a self-insuring employer

- Complete this form and give to your employer.
- Your employer should be able to tell you if he or she is a self-insuring employer.
- If your employer is self-insuring and you file this information with BWC, processing delays may occur.

## For assistance in completing this form, call your BWC customer service office Monday through Friday, 8 a.m. – 4:45 p.m.

**Ashtabula Customer Focus Center**
525 Lake Ave.
Ashtabula, OH 44004
Phone: (440) 964-8505
Fax: (440) 964-8530

**Bridgeport Customer Focus Center**
56104 National Road, Suite 112C
Bridgeport, OH 43912-2506
Phone: (740) 635-1163
Fax: (740) 635-6210

**Cambridge**
61501 Southgate Road
Cambridge, OH 43725
Phone: (740) 435-4200
Fax: (866) 281-9351

**Canton**
400 Third St., S. E.
Canton, OH 44702-1102
Phone: (330) 438-0638
Toll free: (800) 713-0991
Fax: (866) 281-9352

**Cincinnati**
125 E. Court St.
Cincinnati, OH 45202-2196
Phone: (513) 852-3341
Fax: (866) 281-9353

**Cleveland**
615 Superior Ave. W.
Cleveland, OH 44113-1889
Phone: (216) 787-3050
Toll free: (800) 821-7075
Fax: (866) 336-8345

**Columbus**
30 W. Spring St.
Columbus, OH 43215-2256
Phone: (614) 728-5416
Fax: (866) 336-8352

**Dayton**
3401 Park Center Drive
P.O. Box 13910
Dayton, OH 45413-0910
Phone: (937) 264-5000
Fax: (866) 281-9356

**Garfield Heights**
4800 E. 131 St.
Garfield Heights, OH 44105
Phone: (216) 584-0100
Toll free: (800) 224-6446
Fax: (866) 457-0590

**Governor's Hill**
8650 Governor's Hill Drive,
Cincinnati, OH 45249
Phone: (513) 583-4400
Fax: (866) 281-9357

**Hamilton**
One Renaissance Center
345 High St.
Hamilton, OH 45011
Phone: (513) 785-4500
Fax: (866) 336-8343

**Lima**
2025 E. Fourth St.
Lima, OH 45804-4101
Phone: (419) 227-3127
Toll free: (888) 419-3127
Fax: (866) 336-8346

**Logan**
1225 W. Hunter St.
P.O. Box 630
Logan, OH 43138-0630
Phone: (740) 385-5607
Toll free: (800) 385-5607
Fax: (866) 336-8348

**Mansfield**
240 Tappan Drive, N.
P.O. Box 8051
Mansfield, OH 44906-8051
Phone: (419) 747-4090
Fax: (866) 336-8350

**Portsmouth**
1005 Fourth St.
P.O. Box 1307
Portsmouth, OH 45662-1307
Phone: (740) 353-2187
Fax: (866) 336-8353

**Springfield**
1 S. Limestone St. L-5
P.O. Box 1467
Springfield, OH 45501-1467
Phone: (937) 327-1425
Fax: (866) 457-0593

**Toledo**
1 Government Center, Suite 1236
P.O. Box 794
Toledo, OH 43697-0794
Phone: (419) 245-2700
Fax: (866) 457-0594

**Youngstown**
242 Federal Plaza, W., Suite 200
P.O. Box 1877
Youngstown, OH 44501-1877
Phone: (330) 797-5500
Toll free: (800) 551-6446
Fax: (866) 457-0596

**Completion instructions**
(continued)

*Injured worker and injury/disease/death info.*

| Last name, first name, middle initial | | | Social Security number | Marital status ☐ Single ☐ Married ☐ Divorced ☐ Separated ☐ Widowed | Date of birth |
| Home mailing address ① | | | Sex ☐ Male ☐ Female | | Number of dependents |
| City | State | 9-digit ZIP code | Country if different from USA | | Department name ② |
| Wage rate $ ____ Per: ____ ☐ Hour ☐ Month ☐ Year ☐ Other____ ☐ Week ③ | | | What days of the week do you usually work? ④ ☐ Sun ☐ Mon ☐ Tues ☐ Wed ☐ Thur ☐ Fri ☐ Sat | Regular work From ____ To ____ | |
| Have you been offered or do you expect to receive payment or wages for this claim from anyone other than the Ohio Bureau of Workers' Compensation? ☐ YES ☐ NO If yes, please explain. ⑤ | | | | | Occupation or job title ⑥ |
| Employer name ⑦ | | | | | |
| Mailing address (number and street, city or town, state, ZIP code and county) | | | | | |
| Location, if different from mailing address | | | | | |
| Was place of accident or exposure on employer's premises? ☐ Yes ☐ No If no, give accident location, street address, city, state and ZIP code. | | | | | |
| Date of injury/disease ⑧ | Time of injury ☐ a.m.☐ p.m. | If fatal, give date of death | Time employee began work ☐ a.m.☐ p.m. | Date last worked ⑨ | Date returned to work ⑩ |
| Date hired | | State where hired ⑪ | | Date employer notified ⑫ | |
| Description of accident (Describe the sequence of events that directly injured the employee, or caused the disease or death) ⑬ | | | | Type of injury/disease and part(s) of body affected (for example: sprain of lower left back, etc.) ⑭ | |
| Benefit application/medical release – I am applying for recognition of my claim under the Ohio Workers' Compensation Act for work-related injuries that I did not purposely inflict. I request payment for compensation and or medical expenses as allowable. Direct payment(s) to the providers of any medical services are authorized. I understand that I am allowing any provider who attends to, treats or examines me to release all medical, psychological and/or psychiatric information that is causally or historically related to physical or mental injuries relevant to issues necessary to the administration of my workers' compensation claim to the Ohio Bureau of Workers' Compensation, the Industrial Commission of Ohio, the employer listed in this claim, that employer's managed care organization and any authorized representative. I further authorize the Ohio Rehabilitation Services Commission to release information about my physical, mental, vocational and social conditions that is causally or historically related to physical or mental injuries relevant to issues necessary for the administration of my workers' compensation claim to the aforementioned parties. | | | | | |
| Injured worker signature ⑮ | | | Date | Telephone number ( ) | Fax number ( ) |

① **Home address:** Enter the home address where the injured worker lives. Include the apartment number, if applicable.
  • If the post office does not deliver mail to the home address, list the mailing address instead of the home address.

② **Department name:** Enter the injured worker's department or area name where he/she normally reports for work.

③ **Wage rate:** Enter the injured worker's rate of pay, and then select how often it is received. (If the pay rate being reported is not hourly, report the gross amount.)
  • If eight or more days of work will be missed, BWC needs wage information for the 52 weeks prior to the date of injury. Submit wage information using employer payroll reports, wage statement (BWC form C-94-A), W-2s, etc.

④ **What days of the week do you usually work? What are your regular work hours:** Enter the days and hours the injured worker normally works.
  • If the days worked vary from week to week, list the number of hours worked in an average week.

⑤ **Wages:** If you received wages during disability, please explain.

⑥ **Occupation or job title:** Enter the injured worker's type of occupation or actual job title at the time of injury, occupational disease or death.

⑦ **Employer name:** Enter the name of the injured worker's employer at the time of the injury, occupational disease or death.

⑧ **Date of injury/disease:** Enter the date injured worker was injured. OR
If the injured worker contracted an occupational disease, determine which of the following happened most recently:
  • The occupational disease was diagnosed by a medical provider;
  • The first medical treatment;
  • The injured worker first quit work, due to the occupational disease.
  **Enter this as the date of occupational disease.**

⑨ **Date last worked:** Enter the last day worked as a result of this injury, occupational disease or death.

⑩ **Date returned to work:** Enter the date the injured worker returned to work after the injury or occupational disease.

⑪ **State where hired:** Enter the state where the injured worker was hired by the employer listed on this application.

⑫ **Date employer notified:** Enter the date the employer was notified of the injury, occupational disease or death.

⑬ **Description of accident:** Describe in detail the events that caused the injury, occupational disease or death. Attach additional sheets, if necessary.

⑭ **Type of injury/disease and part of body affected:** Describe the nature of the injury, occupational disease or death.
Indicate the part(s) of body injured, affected or that caused the death.
Examples:
  • Laceration of first toe, left foot;
  • Sprain of lower right back; etc.

⑮ **Injured worker signature (injured workers only):** Please read the Benefit /application/medical release information before signing and dating this form.



Instructions continued on last page

# Completion instructions
(continued)

**Treatment info.**

| Health-care provider name | | Telephone number ( ) | Fax number ( ) | Initial treatment date |
|---|---|---|---|---|
| Street address | | City | | State | 9-digit ZIP code |

Diagnosis(es): Include (ICD code(s)) ①

| Will the incident cause the injured worker to miss eight or more days of work? ☐ Yes ☐ No | ② Is the injury causally related to the industrial incident? ☐ Yes ☐ No |
|---|---|
| Health-care provider signature ③ | 11-digit BWC provider number ④ | Date |

**Treatment info.**

① Indicate the diagnosis and ICD codes for conditions being treated as a result of the injury.

② Indicate the treating provider's medical opinion that the injury sustained is causally related to the industrial incident, that the injury could result from the method (manner) of the accident, as described by the injured worker. It must be clear that the diagnosis in all probability occurred as a result of the injury.

③ Signature of the health-care provider completing this form.

④ Enter the physician's or health-care provider's 11-digit BWC-assigned provider number.

**Employer info.**

| ① Employer policy number | | | | check if ☐ Employer is self-insuring ☐ Injured worker is owner/partner/member of firm |
|---|---|---|---|---|
| Telephone number ( ) | Fax number ( ) | E-mail address | Federal ID number | Manual number ② |
| Was employee treated in an emergency room? ☐ Yes ☐ No | | | Was employee hospitalized as an inpatient? ☐ Yes ☐ No | |

If treatment was given away from work site, provide this facility name, street address, city, state and ZIP code

| ☐ Certification - The employer ③ certifies that the facts in this application are correct and valid. | ☐ Rejection - The employer ④ rejects the validity of this claim for the reasons listed below | For self-insuring employers only ☐ Clarification - The employer clarifies ⑤ and allows the claim for the condition(s) below: |
|---|---|---|
| Employer: signature and title | | Date | OSHA case number ⑥ |

**Employer info.**

① Enter the employer's BWC-assigned policy number, which is located on the BWC certificate of coverage.

② Enter the four-digit code that indicates the injured worker's job classification, located on the semiannual payroll report.
   - If you do not know the injured worker's manual number, call **1-800-OHIOBWC** and follow the prompts.

③ If certification is selected and the claim is allowed, it will promptly be paid. Employers certifying a claim waive both the notice of receipt and notice of first order of compensation.

④ If rejection is selected, use the space provided to list the reasons for rejection. Attach additional sheets, if necessary.

⑤ Self-insuring employers that choose to clarify certification may use the space provided. Attach additional sheet, if necessary.

⑥ If this is an OSHA-reportable injury, include the case number assigned by the employer. This form meets OSHA 301 requirements and may be used in lieu of the OSHA 301 when reporting recordable injuries and illnesses to the federal government.

**Note:**
*If your employee misses eight or more days of work, BWC will need wage information for the 52 weeks prior to the date of injury. Submit wage information using employer payroll reports, wage statement (BWC form C-94-A), W-2s, etc.*



Saturday, October 28, 2000

Matt Swezey
StaffMarket Services
7316 Manatee Ave West #341
Bradenton, FL 342.9
E-mail: Matt@staffmarket.com

RE: RFP #25, NATIONAL INDOOR FOOTBALL LEAGUE, INC.

Dear Matt:

Thank you for this opportunity to respond to RFP #25, National Indoor Football League, Inc. Following is our proposal based on the information you supplied through your web site and via fax and phone. Please keep in mind that this proposal is valid until January 1, 2001. If service, in part or in whole, is not commenced by that time, then a new proposal may be necessary.

Dear National Indoor Football League, Inc. Management:

We provide employer support services that help our clients to focus on the business of their business, both in time, money, and efficiency. We call this program *EmployShare*™. As a professional employer, there are key areas that we may or may not influence, depending on your needs and requirements. Please keep in mind that every company has its unique needs and objectives. We are interested in meeting each particular need and objective and will modify our service plan to meet our client's specific needs.

## ❑ THE BUSINESS OF PROFESSIONAL EMPLOYER ORGANIZATIONS (PEOs)

There are specialists for nearly every type of function: trial lawyer, divorce lawyer, orthodontist, transmission specialist, aeronautic engineer, tax specialist, etc. You name it and there is likely a field of expertise to call on except being an employer. It used to be that your accountant or attorney could handle everything for you, from tax filings to personnel handbooks to workers' compensation claims hearings. But that has changed because each profession has become much more specialized. You now need to have four attorneys on hand to battle potential litigation and multiple accountants to manage taxes, abatements, payroll, health care, sales tax, and more.

Proposal
Notes

Page 1 of 8

EXHIBIT

C



A program offered by RPC Employer Services, Inc.

**EmploayShare**

*The ultimate solution for managing tomorrow's human resource needs.*

Professional employers specialize in *being* an employer. We utilize the economies of scale to provide services in the most cost-effective fashion possible. Payroll, payroll taxes, deductions, health care, credit union, workers' compensation, unemployment insurance, and personnel policy management are just a few of the areas we specialize in.

Our business (and industry) has flourished because we utilize our strength in numbers to provide your company with the human resource support that is necessary in order to protect your company from unwarranted government compliance implications and penalties. Following is a summary of our services that will be provided:

## ❑ WE BECOME YOUR 'VIRTUAL' PAYROLL DEPARTMENT

We are confident that you will greatly appreciate the payroll and personnel support that we give you as your virtual payroll department. You will have complete payroll wage input control via fax or Internet e-mail to our offices, but you will be able to stop at that point and walk away from the rest of your payroll and payroll tax responsibilities. This means that you will be free to focus on more profitable, profit-earning functions: receivable collections, client service, and overall increased productivity. Each of our clients has reported in different ways how they have found better, more profitable job functions for those employees that were once boggled down with administrative and payroll functions.

Employees will be receiving their earnings each Friday via direct deposit or payroll check. All data is processed by RPC, in Beaver Falls, PA, utilizing the latest in computer hardware (Dell) and software (Darwin). Our integrated HR and payroll software system provides us the support necessary to process accurate, timely checks and reports. And we make changes quickly, which is very important to our clients. They depend on us to have immediate answers.

### Here's how the payroll system works:

We recommend that your staff utilize our front-end payroll input software, which we will install and train your staff on. This simple program is very easy to learn/use and will allow for a more accurate and organized transfer of wage information compared to using standard fax time sheet input.

After entering and saving input data, you will e-mail the pay date file to us on Monday or Tuesday and we will bill you for the entire payroll costs on Wednesday. You will receive your check(s) on Thursday for Friday pay date and we will receive our payment, direct debit, or wire transfer from you by

Proposal
Notes

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010   800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



**NAPEO** Member
National Association
of Professional Employer
Organizations



Thursday. We will work with you each payroll week to make certain that the payroll is always accurate and all changes are made according to your needs.

**All payroll taxes** and payroll tax filings are the sole responsibility of RPC Employer Services, Inc. Federal, state, and local taxes are deposited each week and RPC is solely responsible for the accuracy and timeliness of payments and filings. We have been pleased with the accuracy of our processing which has enabled us to expand into other states without any tax implications. Please remember that our payroll is processed on OUR tax identification number and NOT on your number.

**Direct deposit** of an employee's net pay is a free option that we recommend to everyone. Payday should be just as productive a day as any other. Having your pay directly deposited saves time, worry, and anxiety. There really is no need to go to the bank when the Federal Reserve will place your pay in your own account. Employees on direct deposit receive the same pay stub as when receiving a check. It is easy to sign up for direct deposit (the application is in the employee's paperwork) and the process usually takes effect within two business weeks.

❏ **WE BECOME YOUR 'VIRTUAL' PERSONNEL DEPARTMENT**
You are our client, we are your vendor. We are interested in helping and supporting your organization as you see the need. Consequently, you retain day-to-day control of your associates. We become your virtual personnel department, available in person, by phone, fax, and the Internet.

We protect you from employee discipline conflicts by acting as your enforcer, your guide, and your counsel. Our clients depend daily on our team of human resource professionals because they have the client's best interests at the forefront of their objectives.

**Employee Handbook**
We have a thorough and legally extensive employee handbook that will become the foundation of our mutual personnel policies. We will customize the policies within the handbook to conform to your unique needs. Our handbook covers all aspects of personnel policy that are essential for every type of company. It is authored by one of the nation's leading labor law firms, Littler-Mendelson, and is updated, as pertinent law changes become precedent.

Proposal Notes





A program offered by RPC Employer Services, Inc.

**EmployShare®**

The ultimate solution for managing tomorrow's human resource needs.

## Day-To-Day Personnel Communication

Policy violations and employee separations are critical points that must be documented accordingly. We have an easy-to-use ADVISORY FORM that can be faxed or e-mailed between our companies as a means of documenting an employee's personnel file. We utilize a staff of seasoned attorneys in matters of labor, unemployment, and workers' compensation and will use their services at no added charge to you. We want to protect our relationship with your employees and will put forth our best efforts to make sure that all personnel correspondence is handled in the most professional and confidential manner possible.

Our clients depend on our impartial implementation of policy, knowing that our sole objective is to protect them from needless litigation and conflict.

## ❑ WORKERS' COMPENSATION MANAGEMENT

Your group will becomes part of our Ohio workers' compensation pool, managed by our staff in conjunction with Professional Risk management, Youngstown, Ohio, one of the nation's leading workers' compensation management companies. Your workers' compensation premium is remitted each pay period and is calculated against actual reported wages. There are no premium deposits or final audits since you are part of our group

We are responsible for all claims, including accident reporting, accident investigation, and pending litigation. However, we expect your complete cooperation in all matters relating to our mutual employees.

All clients are expected to make available light-duty job assignments for early return-to-work situations. Light-duty assignments not only reduce your total cost, but also help to get the injured employee into the workplace sooner. We will guide you through light-duty options as the need arises.

## Workers' Compensation Premium Savings

RPC enjoys an extremely large credit on its Ohio workers' compensation policy. You will save at least $436,536 in workers' compensation premium by utilizing our service. The base rate for code 9179 is 26.1958% of taxable wages. RPC will charge 11.65% of taxable wages, which amounts to a savings of 56% off base rate. Ohio is a state-run workers' compensation insurance program and we have received approval from our pool managers to add your group. Ohio will cover your teams and support staff in Ohio based on the national headquarters for your league locating Ohio, preferably close at hand in Warren, Ohio.

**Proposal Notes**

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



**NAPEO** Member
National Association
of Professional Employer
Organizations



## NORTH EAST OHIO, A FOOTBALL CAPITAL

Warren, Ohio, located 20 miles north of Youngstown, is equidistant from Cleveland (Browns) and Pittsburgh (Steelers). Football has always been the premier sport. Rent, taxes, and such are very low in Warren as compared to any other area.

Population is 479,155 with median household income of $33,479. Median home value is $67,928 and the business base includes General Motors and numerous large steel makers.

Local support for your organization will be tremendous, especially if you can build an arena here also. We have solid relationships within the community and with political leaders. We can help you grow and prosper while at the same time serving your payroll and personnel needs. Certainly a mutually beneficial business relationship.

### ❑ UNEMPLOYMENT INSURANCE MANAGEMENT

Since all employees are paid on our tax identification number, you are literally protected from tangles with unemployment claims. We will minimize unemployment claims abuse through careful implementation of our policy handbook along with our Advisory form. Every advisory communication from your managers will become part of the employee's personnel file. We will work closely with your managers to make sure that we abide by the law yet control unnecessary unemployment claims. Of course, you are free to apply your time to your business. We will apply our time to controlling hidden litigation that can easily arise out of an employment dispute.

### ❑ CREDIT UNION BENEFITS

We belong to numerous credit unions, so your employees will be welcomed to join the credit union of their choice. There are many valuable services available to all employees, from Visa cards to home and auto loans. The interest rates are exceptional and the service response is prompt. We hope that employees consider setting aside some money for the future and we want to make that process as simple and easy as possible. Any payroll deductions to credit unions are directly deposited into employee accounts, which makes the process quick and accurate.

Proposal Notes

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM





## ❑ NATIONAL PPO HEALTH COVERAGE

We have an excellent medical benefits plan. Since medical benefits are not part of your Request For Proposal, we can discuss these matters at a later date and as you see the need.

## ❑ NATIONAL DENTAL COVERAGE

Dental coverage is available but is not being presented at this time per your request.

## ❑ VISION COVERAGE

Vision coverage is available but is not being presented at this time per your request.

## ❑ LIFE INSURANCE

Our medical plan includes $10,000 of term coverage for all employees. For two-party and family coverage, we include spouse coverage of $2,500 and dependent coverage of $1,000 per dependent.

## ❑ DISABILITY INCOME PROTECTION

Group disability income protection is available. Our plan is an integrated benefit that includes life, ltd, and std. Rates are exceptional and coverage is extended on a guarantee issue basis which means that there are no medical questions asked for standard coverage. Guarantee issue limits are:

| | |
|---|---|
| LIFE: | $190,000 |
| LTD: | $10,000 per month |
| STD: | $1,385 per week |

Your actual benefit and rate is based on the life amount, which is equal to annual earnings.

## ❑ SECTION 125 PRE-TAX DEDUCTION SERVICES

We have an IRS-approved Section 125 plan that allows all health insurance deductions to be withheld from paychecks on a pre-tax basis. All employee deductions are withheld from gross wages, which saves the employee and your company tremendous tax dollars. We pass these savings directly to your invoice and your employees take home more net pay.

## ❑ 401(k) RETIREMENT PLAN SERVICES

We have an excellent retirement program through our 401(k) plan administered by Great West, one of the Nation's leading plan administrators. Employees can set aside any amount of money each week, tax-deferred, through payroll deduction and take advantage of compound interest earnings immediately. We do not charge extra fees for using our

Proposal
Notes



Page 6 of 8



401(k) plan, so employees are free to join the plan at their discretion. Our plan allows bonus contributions to be made on behalf of employees. This means that you can elect to use our 401(k) as a vehicle for distributing profit sharing or other incentive payments.



## ❏ FINANCIAL SERVICES

All EmployShare associates are eligible to receive American Express Financial Services at preferred rates. Investment advice, pertaining to the 401(k), can be very useful for maximizing return on your employees' 401(k) earnings.

Management workshops and seminars are available at no added charge. Personal Financial services are made available to all EmployShare associates at preferred rates.

**Note:** American Express Financial Advisors is one of the largest EmployShare clients (associates). You may want to discuss our program with them to better understand why they chose EmployShare over all other employer service options.

## ❏ FINANCIAL DETAILS

See attached for all rate details.

## ❏ GETTING STARTED

Here is a snapshot of the implementation process, should you decide to proceed:

1. Review proposal and discuss all issues and questions.
2. Authorize Service Agreement; detailing relationship between parties, rates, terms, and effective start date.
3. Complete Employee enrollment files. We usually meet with each employee group to discuss all aspects of our program, answer questions about paperwork, and explain in detail all benefits, 401(k), insurance, etc.
4. Process employee enrollment information and other relevant forms.
5. Prepare invoice remittance process, whether by wire transfer or direct debit. Bank routing and account information is gathered and setup in advance. All payroll invoices are due and payable before release of paychecks.

Proposal
Notes

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM





6. Install front-end payroll input software at client site. Conduct training for client personnel dealing with payroll input software (one hour). Conduct input and e-mail tests using sample payroll files.
7. Create first input data file at RPC based and e-mail to client for first pay. RPC will create new payroll input files every pay period to insure that client has accurate account of all active employees.
8. Receive first payroll input file from client, process all data, and invoice customer by fax or e-mail.
9. Receive first invoice payment via wire transfer or direct debit.
10. Deliver paychecks (or direct deposits) to customer along with hard copy of invoice and invoice detail reports, department costing, and other required reports.

The EmployShare payroll and human resource system can produce nearly any report imaginable. We will determine beforehand the exact format of each report required and the frequency of each report.

We know that you and your employees will appreciate our package of services. Please call me at 800-635-9961 with your questions. I look forward to discussing your questions and hope that we can be of service as you see the need.

Thank you for this consideration.

Sincerely,

*Daniel J. D'Alio*

Daniel D'Alio
President & CEO

Proposal
Notes



# EmployShare™

### Financial Details

National Indoor Football League                    October 28, 2000

| Payroll Item | 80 active clerical employees 600 active players and staff |
|---|---|
| Annual taxable wages: | As reported |
| Social security: (The employer match) | 7.65% of taxable wages |
| Federal unemployment: | 0.8% of first $7000 in wages |
| State unemployment: We will utilize Ohio as the home state based on league headquarters locating in Ohio. | OH: 2.75% of first $9,000 in wages |
| Workers' compensation We will utilize Ohio as the home state based on league headquarters locating in Ohio. | 8810: 0.52% of taxable wages 9179: 11.65% of taxable wages |
| Health Coverage: | Not quoted at this time |
| Dental Coverage: | Not quoted at this time |
| Vision Coverage: | Not quoted at this time |
| Disability Coverage: | Not quoted at this time |
| Set-up Fee (one time) | $ 495.00 Includes all employee files, handbook creation, and payroll software implementation and training. |
| RPC service fee[1]: (See footnote below) | $ 12.00/ea/pay for clerical employees $ 18.00/ea/pay for team employees Weekly (52) pay dates |
| Overnight Delivery Fee | $ 13.00 as requested |
| Invoice Direct Debit Fee | $ 5.00 per invoice |
| Employee Pay Direct Deposit | No Charge |
| Payroll Reports | No Charge |
| Section 125 Cafeteria Plan | No additional cost |
| 401(k) Retirement Plan[2]: (See footnote below) | No additional cost |

[1] RPC service fee covers all costs related to payroll processing, new hire reporting, federal, state, and local tax filing, all year-end tax filing including W2's, personnel administration, employee handbooks, labor attorney services related to RPC services provided, workers' comp administration and risk management, unemployment claims management including hearings and litigation, health insurance administration, 401(k) administration including annual fees for compliance testing and reporting.

[2] RPC'S 401(k) is free to all clients. There are no annual fees assessed for start-up or annual administrative maintenance. Great-West Life, the nation's leader in 401(k), is the administration provider. Employees can enroll on a monthly basis, with client matching provided as 'increased employee contributions'.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NATIONAL INDOOR FOOTBALL            )
LEAGUE, L.L.C.,                     )
                                    )
              Plaintiff,            )
                                    )
        v.                          )        02: 02cv0548
                                    )
R.P.C EMPLOYER SERVICES, INC.,  and )
DAN J. D'ALIO,                      )
                                    )
              Defendant.            )

### ORDER OF COURT

AND NOW, this 23rd day of March, 2006, upon consideration of the MOTION TO

STRIKE WITNESSES AND MEDICAL DOCUMENTS filed by Defendants (*Document No.

72*), and the response in opposition filed by the Plaintiff (*Document No. 79*), it is hereby

**ORDERED** as follows:

a.      Defendants' request to preclude Plaintiff from offering any witnesses listed

on its March 14, 2006 List of Witnesses or, in the alternative, any witnesses so listed but not

listed in Plaintiff's Pretrial Statement is **DENIED;**

b.      Defendants' request to preclude Plaintiff from offering into evidence any

medical exhibits on its March 14, 2006, List of Exhibits or, in the alternative, any medical

documentation provided to Defendants on March 13, 2006 is **GRANTED IN PART AND**

**DENIED IN PART** as follows:

1.      Plaintiff will be allowed to introduce into evidence any and all

medical records supplied to Defendants in November 2005 to the extent that the records in

EXHIBIT

D

question are admissible under Federal Rules of Evidence 803(6) and 902(11), or otherwise with an appropriate foundation witness;

       2.     Plaintiff will be allowed to introduce into evidence any medical(s) records or documents that were produced to Defendants on March 13, 2006, _if_ such records constitute the underlying supporting documentation to establish or confirm the accuracy of the information set forth in the medical provider-completed Health Insurance Claim Forms (HCFA-1500s) that were previously produced to Defendants in November 2005, to the extent that the records in question are admissible under Federal Rules of Evidence 803(6) and 902(11), or otherwise with an appropriate foundation witness. *See* November 18, 2005, correspondence from Timothy Leventry, Esquire to Michael J. Seymour, Esquire; and December 5, 2005, correspondence from Timothy Leventry, Esquire to Michael J. Seymour, Esquire.

       3.     To the extent that the documents produced on March 13, 2006 are beyond the scope of those records provided to Defendants in November 2005, same will be excluded.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:     Forrest B. Fordham, III, Esquire
        Leventry Law Office
        1405 Eisenhower Boulevard
        Richland Square I, Suite 200
        Johnstown, PA 15904

        Timothy C. Leventry, Esquire
        Leventry & Haschak
        Email: tleventry@lhrklaw.com

        Bernard C. Caputo, Esquire

Law Offices of Bernard C. Caputo
Email: Bcaputolaw@aol.com

Michael J. Seymour, Esquire
Feczko & Seymour
Email: mjseymour@covad.net

03/30/2006   22:27   2288968372                ANDREW C BURRELL PA                         PAGE   08/12

## MISSISSIPPI WORKERS' COMPENSATION COMMISSION
## MWCC NO. 02 10760-H-5080-C

NICKY SEYMOUR                                                CLAIMANT

VS

MISSISSIPPI FIRE DOGS                                        EMPLOYER
SELF-INSURED

**Representing the Claimant:**

    Honorable Andrew C. Burrell, Esquire, Gulfport, Mississippi

**Representing the Employer/Carrier:**

    Honorable Donald Rafferty, Esquire, Gulfport, Mississippi

### ORDER OF ADMINISTRATIVE JUDGE

    A hearing was held on August 3, 2005, at the Harrison County Courthouse located in Gulfport, Mississippi at 1:30 p.m.  This cause concerns an admitted injury which occurred on or about April 7, 2001.  It is noted for the record that no one appeared for the employer and carrier, self-insured, listed in this action.

    Evidence was entered into this cause as follows:

Claimant Exhibit 1:                     Medical Records Affidavit of Bienville Orthopaedic
                                        Specialists;

Claimant Exhibit 2:                     Medical Records of Biloxi Outpatient Surgery.

### ISSUE

Existence, nature and extent of disability attributable to the injury.

### SUMMARY AND EVALUATION OF RELEVANT EVIDENCE

    The claimant testified on his own behalf indicating that he is 30 years old and a graduate of Ocean Springs High School.  He also attended the University of Southern Mississippi and has a Physical Education degree.  In the past, he also played baseball for the University of Southern

**EXHIBIT**

tabbies

E

Mississippi. Claimant was employed by the Mississippi Fire Dogs as an offensive specialist. He signed all the necessary contracts and paperwork and was insured by the company. Claimant was injured returning a kick when he felt a "pop" in his knee. He had ACL reconstruction surgery for this injury which occurred while playing. Claimant testified that the number of players present at the time he was working for the Mississippi Fire Dogs was approximately 25 to 30 players with "about" 5 or 6 coaches and/or other associated personnel and testified "We were paid by a check that said Mississippi Fire Dogs." The ACL reconstruction was performed to repair a torn meniscus of the left knee. Following same, he had extensive physical therapy. As to his current problems, he indicated he still had problems with flexion and extension and it can interfere with his present job as a coach particularly after a long day. However, he's still able to work. Claimant is currently on salary and employed as a coach at Ocean Springs High School. Claimant testified that his average weekly wage on the date of injury was $300.00 per week.

Medical Records Affidavit of Dr. Jeffrey D. Noblin, a board certified orthopaedic surgeon was entered into this cause and indicate the treatment performed by the doctor for this work related injury. Dr. Noblin testified that this was a patient who was originally seen by Dr. Terrell on April 9, 2001. At that particular point he was a quarterback for the Mississippi Fire Dogs. Claimant "planted" his foot when he was about to be hit and felt a "pop" in his knee. He subsequently was diagnosed with a ACL tear and was referred to Dr. Noblin for further evaluation and surgical treatment. Claimant underwent surgery on April 26, 2001 for medial meniscal repair and ACL reconstruction. The claimant lived in Hattiesburg and was very slow to get his therapy initiated and started up in Hattiesburg according to this physician. Dr. Noblin was continuing to follow him and he remained "somewhat" stiff on the date of July 9, 2002 in terms of his knee and after long period

2

of time following him with very aggressive physical therapy, the claimant was noted to still have a "little bit" of limitations in terms of his motion and he was taken back to surgery on March 14, 2002. At that particular point he had a manipulation under anesthesia of his left knee and an injection of some steroids. The claimant was last seen on May 3, 2002. Dr. Noblin opined that the injury he suffered is related to his work related accident of April 7, 2001. It was Dr. Noblin's feeling that he would "probably" be pain free in the future and in terms of any kind of future medical care this was alluded to in the note on May 3, 2002. Hopefully this would be "it" in terms of surgical treatment for his knee and the ACL is very stable. Upon the last visit with Dr. Noblin the claimant still had a very slight amount of limitation of extension but he felt he would continue to get that back. Dr. Noblin did not think he would need anything further besides possible arthroscopic debridement of his knee to help totally achieve full extension and the medical impairment rating for this particular condition would be 5% to the whole person, 12% lower extremity in the affected knee. Dr. Noblin testified there were no permanent restrictions at this particular point and his period of temporary total disability was from April 7, 2001 to and through March 29, 2002. All opinions were rendered to a reasonable degree of medical probability.

Essentially, the operative reports of the Cedar Lake Surgery Center located in Biloxi, Mississippi and Biloxi Outpatient Surgery were admitted into this cause under affidavit and marked as Claimant Exhibit 2. They detailed the original operation performed by Dr. Noblin on April 26, 2001, for a left knee medial meniscal tear with anterior cruciate ligament insufficiency and the procedure was termed an arthroscopy of the left knee with medial meniscal repair followed by bone patella tendon bone ACL reconstruction and insertion of pain pump. On that date he presented as a young gentlemen who plays for the Mississippi Fire Dogs and three weeks ago had injured his knee

3

in a game where he sustained a ACL injury as well as medial and lateral meniscal tears and following a long course of physical therapy there was an additional operative procedure performed by Dr. Noblin at the Cedar Lake Surgery Center in the form of an arthrofibrosis left knee manipulation under anesthesia, left knee, and injection of steroid. This occurred on March 14, 2002.

## DECISION

1. The claimant suffered an admittedly compensable injury in the employ of the instant employer while he was playing in a defensive position for the Mississippi Fire Dogs on or about April 7, 2001. This work related injury necessitated surgery as performed by Dr. Jeffrey D. Noblin, his treating physician, and a further operative procedure performed by Dr. Noblin during the process of his recovery from the left lower extremity injury.

2. It is determined by the undersigned that the Mississippi Fire Dogs had sufficient personnel and/or employees to satisfy the requirement of the Act as regards the requisite number of employees. These numbers were testified to by the claimant on the occasion of this hearing under sworn testimony and were uncontradicted. Further, there was no evidence forwarded by Mississippi Fire Dogs, self-insured, or by Donald Rafferty, their counsel of record. Miss. Code Annotated, Section 71-3-5 (Rev. 2000).

3. The average weekly wage of the claimant is determined to be $300.00 per week on the date of injury.

## ORDER

IT IS, THEREFORE, ORDERED AND ADJUDGED that the employer, Mississippi Fire Dogs and carrier, self-insured, pay workers' compensation benefits to the claimant as follows:

1. Temporary total disability benefits in the amount of $200.01 per week commencing on

4

Case 2:02-cv-00548-TFM Document 100-5 Filed 10/28/06 Page 41 of 52

April 7, 2001 and concluding through March 29, 2002, the date of maximum medical improvement or benefit as designated by his treating physician Dr. Jeffrey D. Noblin.

2. Proper credit for any and all monies, wages or benefits, if any, previously paid to the claimant during this time frame is to be applied.

3. The employer and carrier are liable for penalties and interest pursuant to Miss. Code Annot. Section 71-3-37 (5) (6) (Rev. 2000).

4. Provide medical services and supplies as required by the nature of the claimant's injury and the process of his recovery therefrom in accordance with Miss. Code Annot. Section 71-3-15 (Rev. 2000), including all past medical expenses associated thereto.

5. Pay to the claimant the amount reflected by the 12% permanent partial medical impairment rating assigned as required by the Act and outlined in Miss. Code Annot. Section 71-3-17 (c) (2) (Rev. 2000).

**IT IS FURTHER ORDERED AND ADJUDGED** that no claim for permanency of disability is requested and none is found.

SO ORDERED this the 21st day of October, 2005.

VIRGINIA WILSON MOUNGER
ADMINISTRATIVE JUDGE

Phyllis C. Clark
Phyllis Clark, Commission Secretary
MWCC NO. 02 10760-H-5080-C

5

Lile
Barr
Lydi

N
V
M
an
M

MV

RE

Tota

Less

8% In

10% P

Total a

Sincerel

Shaw

MWCC S



# Mississippi Workers' Compensation Commission

1428 Lakeland Drive / Post Office Box 5300
Jackson, Mississippi 39296-5300
(601) 987-4280
Email: shofmister@mwcc.state.ms.us
http://www.mwcc.state.ms.us

Liles Williams, Chairman
Barney J. Schoby, Commissioner
Lydia Quarles, Commissioner

Sherry Hofmister, Supervisor
Medical Cost Containment

11/16/2005

Nicky Seymour
vs.
MS Fire Dogs
and
MS Fire Dogs

MWCC #          0210760-H-5080-C

RE: Calculation of Lump Sum Award to Claimant in the above styled cause for the following
     type of disability:          Temporary Total

Total Award:

| | | | |
|---|---|---|---|
| 51.000000 | weeks a | $200.01 | |
| 04/07/2001 | to completion. | | $10,200.51 |

Less Credits:                    $0.00

8% Interest:
          to      11/30/2005                    $3,876.22

10% Penalty:
          to      10/21/2005                    $1,020.05

**Total amount due:**                                   **$15,096.78**

Sincerely,

MWCC Statistician

## MISSISSIPPI WORKERS' COMPENSATION COMMISSION
### MWCC NO. 02 10761-H-5081-C
### MWCC NO. 02 10762-H-5082-C

**EMMANUEL BENTLEY**                                                **CLAIMANT**

**VS**

**MISSISSIPPI FIRE DOGS**
**SELF-INSURED**                                                    **EMPLOYER**

**Representing the Claimant:**

    Honorable Andrew C. Burrell, Esquire, Gulfport, Mississippi

**Representing the Employer/Carrier:**

    Honorable Donald Rafferty, Esquire, Gulfport, Mississippi (no appearance)

### ORDER OF ADMINISTRATIVE JUDGE

    A hearing was held on August 3, 2005, at 9:00 a.m. at the Harrison County Courthouse located in Gulfport, Mississippi. This cause concerns two claims, namely H-5081 and H-5082 which were consolidated by the Administrative Judge's Motion for purposes of discovery and hearing and same were heard at one setting. The attorney for the employer/self-insured did not appear for this evidentiary hearing on the merits.

    This cause concerns two injuries the claimant suffered while working for the instant employer, Mississippi Fire Dogs which is an indoor football league, the first having occurred on April 5, 2001 when the claimant suffered a right arm injury in the form of a fractured wrist and later, on July 22, 2001 an injury to his left knee.

### ISSUE

The existence, nature, and extent of disability attributable to the two injuries as cited above.

### EVIDENCE

Evidence was entered into this cause as follows:

Claimant Exhibit 1:                    Bill of Suncoast Anesthesia;

Claimant Exhibit 2:                    Medical Records of Rehabilitation Center of South
                                       MS;

Claimant Exhibit 3:                    Medical Records of Biloxi Outpatient Surgery/Cedar
                                       Lake Surgery Center;

Claimant Exhibit 4:                    Medical Records Affidavit of Bienville Orthopaedic
                                       Specialists.

## SUMMARY AND EVALUATION OF RELEVANT EVIDENCE

The claimant testified on his own behalf indicating at the hearing that he is 33 years old. He presented as a very well educated and well groomed young man. Claimant is currently employed at the Keesler Air Force Base. Claimant testified both injuries occurred while on the field during a scheduled game. The claimant indicated that he had also played in the past for other arena teams besides the Mississippi Fire Dogs. Claimant was employed by the Mississippi Fire Dogs as a defensive back. He also made personal appearances quite often for the Boys and Girls Clubs with the expenses being paid by the Mississippi Fire Dogs for public relations purposes. As to his current condition, he still has pain and inflammation of the left knee. It is difficult for him to squat and bend which he must do in his current job at Keesler and the wrist injury is still in need of further medical treatment. His current problem with his wrist is that it is disjoined making it hard to grasp and hold things. Claimant is making $12.54 at Keesler Air Force Base as a ground maintenance person. Regarding the number of employees with the Mississippi Fire Dogs, this claimant testified to at least 8 coaches and 20 to 30 players and management people. The claimant also testified that he made $300.00 per week and his checks were signed and issued by the Mississippi Fire Dogs.

## SUMMARY OF MEDICAL EVIDENCE

Dr. Jeffrey D. Noblin, a board certified orthopaedic surgeon with Bienville Orthopaedic

Specialists testified in this cause indicating his treatment of the patient or claimant, Emanuel Bentley noting that Mr. Bentley was originally seen in April of 2001 by Dr. Robert E. Terrell and was noted to have a right distal radius fracture that was relatively non-displaced.  He subsequently saw Dr. Alexander D. Blevens, the hand specialist associated with the group and was noted to have an intra articular fracture that was treated with immobilization at that particular time.  Five weeks out, he appeared to be healing and had relatively good alignment.  Subsequently, in July of the same year, the patient sustained an injury to the left knee and was pulled from the game at that particular time. He later came in and saw Dr. Terrell who ordered an MRI scan which showed a PCL (Posterior Cruciate Ligament) rupture and the ACL (Anterior Cruciate Ligament) appeared to be injured as well. The claimant subsequently underwent necessary surgical treatment on August 27, 2001, for an ACL and PCL reconstruction of the knee itself performed by Dr. Jeffrey D. Noblin.  After the knee surgery, the patient continued to complain of pain in his wrist and again saw Dr. Blevens and an MRI scan revealed a triangular fibro cartilage tear over the wrist itself.   Surgery was recommended but the patient, secondary to multiple problems with his workers' compensation carrier, was denied this surgery on more than one occasion.  The last time Dr. Noblin saw Mr. Bentley was on May 14, 2002 and issued to him on that date a maximum medical improvement date and permanent partial medical impairment rating in terms of his left knee. Dr. Noblin felt it prudent to keep open, in terms of his wrist, any assignment because at that point and time they were still trying to get the necessary surgical treatment performed.  In terms of his primary diagnosis, same would be left knee with ACL/PCL tears as well as right wrist triangular fibro cartilage complex tear with right distal radial fracture. The patients' injures were related to his work related accidents as previously mentioned.  There is no further treatment necessary in terms of his left knee.  The

3

03/30/2006   22:27   2288968372

treatments recommended in terms of his wrist include that of arthroscopic intervention by Dr. Blevens. The doctor indicated that most likely the patient would one day be "pain free." However, there is an increasing incidence of arthrosis in terms of the knee. Claimant would be very stable and very active and have few limitations with this knee although he will have some noted arthritic changes. As to the patient's wrist, this was difficult to judge at this particular time until surgical intervention could be performed to determined how much range of motion he would get from that. If he stays at the current level that he has in terms of the significant limited pronation and supination, he will be limited a significant amount in terms of what he can with his wrist. As regards further medical care, this would mainly include arthroscopy of his wrist and a further workup relative to that. Dr. Noblin testified he would rate the claimant's medical impairment rating of 7% to the whole person and 15% to the left lower extremity. He further reiterated that he could not give an impairment rating for the wrist because it had not been "completely fixed." Dr. Noblin testified that the claimant would have been temporarily and totally disabled from April 5, 2001 to and through May 14, 2002 at which time Dr. Noblin assigned to him a medical impairment rating with certain possible future problems but no actual or permanent restrictions. All opinions were rendered to a reasonable degree of medical probability.

## DECISION

Upon evaluation of all testimony, lay and medical, and based upon a preponderance of the evidence supported by applicable law, I hereby render the following findings of fact:

1. The claimant suffered two admittedly compensable injuries while in the employ of the Mississippi Fire Dogs and operating in the position of a defensive back.

2. Relative to the injury to his right arm that he suffered in the form of a fractured wrist and

4

his current condition, it is determined by the undersigned that the employer and carrier herein are responsible for continued medical treatment for the resolution of the fractured wrist and right arm or upper right extremity injury. All medical protocols as determined by Dr. Blevens should be borne by the employer/self-insured. Further, a hearing may be held to determine if there is any subsequent permanent partial medical impairment rating associated with the right arm and wrist injury after the conclusion of the claimant's reasonable and necessary treatment for the resolution thereof. The claimant would be temporarily and totally disabled due to the right arm injury from April 5, 2001 forward.

3. As to the left knee, the claimant was temporarily and totally disabled from the date of July 22, 2001 to and through May 14, 2002. The assignment of a 15% permanent partial medical impairment rating to the left knee requires the employer/self-insured to pay disability benefits according to Miss. Code Annot. Section 71-3-17 (c) (2) (Rev. 2000) without further delay..

4. All associated medical bills past, present and future are the responsibility of the Mississippi Fire Dogs/self-insured.

5. The testimony of the claimant, uncontradicted at the hearing, is indicative of the fact that the employer in this cause has more than the requisite number of employees required to fall under the purview of the Act and it is determinable that the Mississippi Fire Dogs are required and should hold workers' compensation insurance for their employees. Miss. Code Annot. Section 71-3-5 (Rev. 2000).

## ORDER

IT IS, THEREFORE, ORDERED AND ADJUDGED that the employer, Mississippi Fire Dogs and carrier, self-insured, pay workers' compensation benefits to the claimant as follows:

1. Temporary total disability benefits in the amount of $200.01 per week commencing on April 5, 2001 and continuing to and through May 14, 2002. Proper credit, if any, should be applied.

2. The claimant is determined to still be temporarily and totally disabled as regards the right arm or fractured wrist injury therefore, liability may lie should the claimant suffer any loss of time as a result of the injury as the claimant is currently working and receiving regular wages.

3. The employer is liable for any and all medical expenses and benefits relative to this right arm and fractured wrist injury and same should be immediately initiated including but not limited to the operative procedures as contemplated by Dr. Blevens, his treating physician for this injury.

4. Penalties and interest, pursuant to Miss. Code Annot. Section 71-3-37 (5) (6) (Rev. 2000).

5. Pay immediately to the claimant the disability rating as assigned of 15% to the left lower extremity as outlined by Miss. Code Annot. Section 71-3-17 (c) (2) (Rev. 2000).

6. Provide medical services and supplies as required by the nature of the claimant's injuries and the process of his recovery therefrom in accordance with Miss. Code Annot. Section 71-3-15 (Rev. 2000).

**SO ORDERED** this the ___31st___ day of ___October___, 2005.

_Virginia Wilson Mounger_
**VIRGINIA WILSON MOUNGER**
**ADMINISTRATIVE JUDGE**

_Phyllis C. Clark_
Phyllis Clark, Commission Secretary
MWCC NO. 02 10761-H-5081-C
MWCC NO. 02 10762-H-5082-C

6



# Mississippi Workers' Compensation Commission

1428 Lakeland Drive / Post Office Box 5300
Jackson, Mississippi 39296-5300
(601) 987-4280
Email: shofmister@mwcc.state.ms.us
http://www.mwcc.state.ms.us

Liles Williams, Chairman
Barney J. Schoby, Commissioner
Lydia Quarles, Commissioner

Sherry Hofmister, Supervisor
Medical Cost Containment

11/16/2005

Emmanuel Bentley
vs.
MS Fire Dogs
and
MS Fire Dogs

MWCC #        0210762-H-5082-C and 0210761-H-5081-C

RE:  Calculation of Lump Sum Award to Claimant in the above styled cause for the following
      type of disability:              Temporary Total

Total Award:
        57.857143        weeks  a      $200.01                                          $11,572.01
        04/05/2001        to completion.

Less Credits:                            $0.00

8% Interest:                                                $4,324.71
            to    11/30/2005

10% Penalty:                                                $1,157.20
            to    10/21/2005

Total amount due:                                                              $17,053.92

Sincerely,

MWCC Statistician

OWCA

KAREEM VANCE      RECEIVED      OFFICE OF WORKERS' COMPENSATION

VERSUS NO: 01-03938  2002 JUL 30  PM 2:27                    DISTRICT 1E

MONROE BAYOU BEAST  DISTRICT 1E- MONROE        STATE OF LOUISIANA

FILED: _____     0 2 - 4 3 6 1     _____
                                                    DEPUTY CLERK OF COURT

---

## JUDGMENT

This matter having come before this Court for a Trial on July 25, 2002 and after argument

and submissions of evidence, and the law and evidence being in favor thereof:

IT IS ORDERED, ADJUDGED AND DECREED that Employee/Plaintiff, KAREEM

VANCE is awarded $2,528.36 for loss wages, any and all medicals expenses including but not

limited to: Speciality Imaging $800.00; Diagnostic Imaging $1,023.00; University Sports Medicine

$1,266.50; Northeast LA Radiology Associates $155.00; Cornerstone Rehab of Batesville $959.00;

and Cornerstone Rehab of Water Valley $1,018.00.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant, Carolyn

Shiver on behalf of the Monroe Bayou Beast, is to pay KAREEM VANCE mileage in the amount

of $540.40, $2,000 for penalties and $3,000 in attorney fees to Jeffrey D. Guerriero.

Judgment rendered, signed and filed on the 31 day of July, 2002.

THUS DONE and SIGNED this 31 day of July, 2002, in chambers at

Monroe, Ouachita Parish, Louisiana.

_____
JUDGE BRENZA IRVING

CERTIFIED
TRUE COPY

OCT 0 2 2002
BY Barbara _____
DEPUTY CLERK
4TH JUDICIAL DISTRICT COURT
OUACHITA PARISH, LA

2002 OCT - 2  A 10: 20
LINDA LANDRUM
BY

FILED & RECORDED
CLERK & RECORDER
OUACHITA PARISH, LA

A TRUE COPY

APPROVED AS TO FORM:

JEFFREY D. GUERRIERO FOR
Plaintiffs,