IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NATIONAL INDOOR FOOTBALL          )
LEAGUE, L.L.C.                    )
                                 )
          Plaintiff,              )
     v.                           )       CIVIL ACTION NO.: 2:02-cv-548
                                 )
R.P.C. EMPLOYER SERVICES,         )
INC.,                             )
          Defendant.              )

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE
WITH RESPECT TO THE DAMAGES PORTION OF THE TRIAL**

**AND NOW**, comes the Defendant R.P.C. Employer Services, Inc.
(hereinafter "RPC"), by its attorneys, Feczko and Seymour and
Michael J. Seymour, Esquire and files the following Response to
Plaintiff's Motion in Limine with Respect to the Damages Portion
of the Trial:

**FIRST MOTION IN LIMINE**

**ISSUE:**    **WHETHER PLAINTIFF'S CLAIMS ARE REDUCED BY A
          DEDUCTIBLE?**

**ANSWER:**   **YES, EACH CLAIM IS REDUCED BY A $1,000.00 PER CLAIM
          DEDUCTIBLE PURSUANT TO THE TERMS OF THE SERVICE
          AGREEMENT BETWEEN THE PARTIES.**

1.     The Service Agreement did provide that each claim
would be subject to a $1,000.00 deductible.  The fee payable to
RPC was based upon the fee structure statement referenced in
Paragraph 3(a) of the Service Agreement.  The fee structure
statement under description indicates a deductible in the amount
of $1,000.00 with the language, "per claim as assigned to each

team by the League Management." Attached to Plaintiff's Motions In Limine as Exhibit "A" is a copy of the Service Agreement.

2.      This Court's Order dated March 16, 2006 did not determine that the deductible did not apply. This issue was neither raised nor referenced in the Court's Order of March 16, 2006.

3.      The Service Agreement did contain a fee structure statement being page 7 of the Service Agreement, a copy of which is attached as Exhibit "A" to Plaintiff's Motion which contains the language as quoted.

4.      The deductible is clearly referenced under the section dealing with Workers' Compensation and the applicable fees and as further acknowledged by the President, Caroline Shiver's response in accepting the deductible when she signed the Service Agreement stating "The original quote to us is as noted, however, the contract says a $1,000.00 deductible per claim. We can manage this, but I did not know about this". See Page 16 of P-24 of Plaintiff's List of Exhibits. Accordingly, the Plaintiff signed the Service Agreement accepting the $1,000.00 deductible as a condition of the contract.

5.      It is admitted that the proposal submitted to the Plaintiff by RPC in October, 2000 did not impose a deductible. However, the first paragraph of the proposal stated "Please keep in mind that this proposal is valid until January 1, 2001. If

2

service in part or in whole is not commenced by that time, then a new proposal may be necessary." The Service Agreement was not signed on behalf of the Plaintiff until March 21, 2001 and on behalf of the Defendant, on March 27, 2001 and as previously mentioned, did include a fee structure schedule with the $1,000.00 deductible per claim referenced and agreed upon by Plaintiff's President.

6.    It is denied that there is any language in the proposal which eliminates any possibility for a deductible. On the contrary as previously stated, the proposal was subject to change at any time following January 1, 2001. The balance of the averments are denied.

**WHEREFORE,** Plaintiff's claims are subject to a $1,000.00 deductible per claim.

**SECOND MOTION IN LIMINE**

ISSUE:        **MAY HEALTH CARE FINANCING ADMINISTRATION 1500 FORMS AND/OR MEDICAL CHARTS/NOTES/ REPORTS BE INTRODUCED FOR PURPOSES OF PROVING THE INJURED NIFL PLAYERS' WORKERS' COMPENSATION CLAIMS?**

ANSWER:       **ONLY IF THEY COMPLY WITH THE COURT ORDERS DATED JULY 18, 2005, MARCH 16, 2006 AND MARCH 23, 2006.**

7.    It is admitted this Court issued an Order dated March 16, 2006 containing the verbiage quoted.

8.    It is admitted the Court permitted the NIFL to

3

introduce medical records by following Rule 803(6) and 902(11) adding a warning that the requirements of these rules "will be strictly enforced and each document will be assessed for admissibility including trustworthiness, upon presentation."

9.    The averment in Paragraph 9 is denied as the language of the court Order states ". . . the Court rules that Plaintiff will be permitted to introduce into evidence certain documents... ...."

10.    It is admitted that the Court's March 16, 2006 Order did not require a specific document to prove damages.  However, this Court's Order of March 23, 2006 did restrict Plaintiff to the medical records supplied to Defendants in November, 2005 and documents produced to Defendants on March 13, 2006, "if such records constitute the underlying supporting documents to establish or confirm the accuracy of the information set forth in the medical provider completed health insurance claim forms (HCFA-1500) that were previously produced to Defendants in November, 2005 to the extent that the records in question are admissible under Federal Rules of Evidence 803(6) and 902(11) or otherwise with an appropriate foundation witness."

11.    It is denied that the NIFL may introduce a HCFA form alone or a medical provider's notes/chart/report alone (or similar medical record) alone and to the contrary must be in accordance with the prior rulings of this Court.

**WHEREFORE,** Plaintiff's request to introduce a HCFA form alone or any medical record alone should be denied.

### THIRD MOTION IN LIMINE

**ISSUE:**        **CAN SUPPLEMENTAL MEDICAL DOCUMENTATION/ RECORDS FOR INJURED NIFL PLAYERS AND RULE 902(11) CERTIFICATIONS PROVIDED TO RPC AFTER MARCH 13, 2006 BE ADMITTED INTO EVIDENCE TO PROVE THE NIFL'S DAMAGES?**

**ANSWER:**       **NO.**

12.    It is admitted that this Court issued a March 23, 2006 Order permitting Plaintiff to provide RPC supporting documentation for those records sent to RPC in November, 2005.

13.    Although the Plaintiff did send to Defendant in November, 2005 HCFA forms and other medical invoice forms, it did not provide notes/charts/reports illustrating services provided to injured NIFL players.  In response to the production, Defendant's counsel directed correspondence to Plaintiff's counsel dated December 1, 2005 complaining that the information supplied consisted of nothing more than a billing statement by the medical provider identifying the name and address of the player, the player's date of birth, the name of the player's team and the part of the anatomy involved.  An example is attached to the letter from Defendant's counsel dated December 1, 2005.

14.    It is admitted the Plaintiff sent additional medical provider notes/charts/reports that corresponded with and

supplemented certain HCFA forms and certain medical invoices, but did not supplement prior notes/charts/reports sent in November, 2005. It is further admitted that the Court's Order dated March 23, 2006 referring to the March 13, 2006 production is accurately quoted and excluded any documents produced on March 13, 2006 which went beyond the scope of the records provided to Defendants in November, 2005.

15.     The Defendant denies the allegation concerning the Order's primary concern, as the Order speaks for itself. Although the Order referenced did not say the Plaintiff could not submit additional compliant records after March 13, 2006, the case was scheduled for trial on March 28, 2006, the Order was entered March 23, 2006 and no further productions were requested by Plaintiff or expected by Defendant.

16.     It is denied that the Order of March 23, 2006 permits the Plaintiff to introduce medical records sent after March 15, 2006 as long as those records have been given to Defendant and as long as though those records support corresponding documents that were sent to Defendant by the Plaintiff in November of 2005.

17.     The Court's Order of March 23, 2006 excluded any evidence not produced on March 13, 2006 as the Order was entered on March 23, 2006 and the trial was scheduled to commence March 28, 2006. Plaintiff had been aware of the required documentation to prove damages from Judge Ambrose's Order dated July 18, 2005

6

and any prejudice suffered by it is due to its lack of diligence. It is admitted that Defendant undertook no discovery relative to the information provided in November, 2005 and it is averred that no such discovery was required as Defendant did not receive proper authentication for the records that had been received.

**WHEREFORE,** Plaintiff's request to introduce all HCFA forms, medical records, similar documents or Rule 902(11) Certifications at any time should be denied.

### FOURTH MOTION IN LIMINE

**ISSUE:**     **CAN THE COURT TAKE JUDICIAL NOTICE OF JUDGMENTS ENTERED AGAINST THE NIFL AND ITS MEMBER TEAMS IN OTHER JURISDICTIONS AS ESTABLISHING THE NIFL'S DAMAGES RELATIVE TO THOSE JUDGMENTS?**

**ANSWER:**     **NO.**

18.    Rule 201(b) of the Federal Rules of Evidence speaks for itself.

19.    Rule 201(d) of the Federal Rules of Evidence speaks for itself.

20.    Rule 201(b)(2) of the Federal Rules of Evidence speaks for itself.

21.    It is unknown as to whether or not judgments have been entered against the NIFL or its member teams in favor of injured NIFL players whose injuries were not covered by Workers' Compensation insurance due to RPC's breach of contract.

7

Therefore, it is denied these judgments are at issue in this case for purposes of determining the Plaintiff's damages.

22.    The judgments referred to speak for themself.

23.    The Plaintiff's request that the Court take judicial notice of the judgments and fix the amount as the amount of damages due the Plaintiff for the respective players' case should be denied unless the Defendant previously received in accordance with the prior rulings of this Court the documentary evidence required to support such claims and the judgments are properly certified and authenticated in accordance with the Federal Rules of Evidence.

**WHEREFORE,** Plaintiff's request that the Court take judicial notice of the judgments by Nicky Seymour, Emanuel Bently and Corrine Vance should be denied.


Respectfully submitted,

**FECZKO AND SEYMOUR**


_s/Michael J. Seymour_
Michael J. Seymour, Esquire
PA I.D. No. 00260
Feczko and Seymour
Firm I.D. #003
310 Grant Street
Suite 520 Grant Building
Pittsburgh, PA 15219
(412) 261-4970

8

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I served a true and correct copy of the within Defendant's Response to Plaintiff's Motion in Limine with Respect to the Damages Portion of the Trial upon the following **electronically** on the 9th day of November, 2006:

Timothy C. Leventry, Esquire
**LEVENTRY, HASCHAK, RODKEY & KLEMENTIK, LLC**
1397 Eisenhower Boulevard
Richland Square III, Suite 202
Johnstown, PA 15904

*s/Michael J. Seymour*
Michael J. Seymour, Esquire
Counsel for Defendant

# RPC Employer Services, Inc.

## Service Agreement

This Agreement is made and entered effective this 20th day of March, 2001, by and between RPC Employer Services, Inc. ("RPC"), an Ohio Corporation located at 7771 Raglan Dr. NE, PO Box 8605, Warren, Ohio 44484, and;

| | |
|---|---|
| Company Name: | National Indoor Football League, L.L.C. |
| Address: | PO Box 8628 |
| City: | Warren |
| State: | Ohio |
| Zip: | 44484 |
| EIN or SSN: | 94-3387642 (Ohio Corporation) |

**1.   STAFFING**

RPC hereby agrees to furnish to Client, and Client hereby agrees to engage from RPC, staffing for all Job Function Positions.

**2.   TERM OF AGREEMENT**

This Agreement shall commence on the EFFECTIVE STARTING DATE set forth below and shall continue in effect of the initial term ("Initial Term") of one (1) year following the commencement of this Agreement. This Agreement may thereafter be extended by mutual consent of both RPC and Client from month to month "Extended Term". During the Initial Term, RPC or Client may terminate this Agreement by giving written notice of termination to the other party thirty (30) days prior to the effective date of said termination. During the Extended Term, either party may terminate this Agreement upon giving written notice thirty (30) days prior to the effective date of said termination. Notwithstanding anything to the contrary contained in this Agreement, RPC may terminate this Agreement immediately upon twenty-four (24) hours notice to Client in the event of a material breach by Client of any of the provisions to this Agreement.

**2a. PAYROLL REPORTING**: Commencing with the EFFECTIVE STARTING DATE, and according to the payroll processing frequency itemized on the FEE STRUCTURE STATEMENT page, the Client must report employee wages in a timely manner so as to allow RPC to process and distribute payroll and related benefits in accordance with Federal and State guidelines. Should client fail to report wages each and every pay period, RPC shall reserve the right to immediately terminate this agreement pending payment in full of all obligations. Client shall be solely responsible for all wages and applicable taxes pertaining to unreported wages. If Client requests to activate service with RPC in the future, then Client would be required to meet normal underwriting guidelines in order to initiate new service.

**3.   FEES**

a.   Client shall pay RPC a fee (the "Fee") as specified in the Fee Structure Statement attached hereto and made a part hereof. The Fee shall be paid in full, by wire transfer, direct bank debit, certified check or money order and delivered to RPC not less than twenty-four hours prior to the distribution of any payroll checks for such period. Any failure by Client to make payment as set forth shall render Client in default of this Agreement and constitute a material breach hereof, and any Employee(s) assigned to Client shall be transferred to Client effective the last day of the preceding pay period for such Employee(s).

b.   The Fee shall consist of the following items: all payroll (inclusive of bonuses, holiday pay, sick leave pay, vacation pay and/or other special payments), all applicable federal, state and local taxes, including all applicable Federal Insurance Contributions Act, Federal Unemployment Tax Act and Medicare Coverage payments, all premiums and contributions in connection with any employee retirement or other benefits including, but not limited to, all health, accident disability or other insurance premiums, all workers' compensation premiums including any required deposits not charged as part of the set-up fee, all unemployment compensation charges, and a service fee (the "Service Fee") for the administrative services of RPC.

r 17 01 01:21p                                                                    p.3

# RPC Employer Services, Inc.
## Service Agreement

c.   During the Initial Term of this Agreement, RPC may not adjust the Fee except for statutory increases in employment taxes or insurance or any change in the Job Function Positions required by Client. During the Extended Term of this Agreement, RPC may adjust the Fee for statutory increases in employment taxes or insurance or any change in the Job Function Positions required by Client, or upon thirty (30) days prior written notice.

d.   Any increase in the Fee for statutory increases in employment taxes or insurance or any change in the Job Function Positions shall be effective on the date of such increases or change.

e.   Client agrees to verify all time sheets or other evidence of time submissions by Employees (as defined in Paragraph 13.)

## 4.   CLIENT DEPOSIT

a.   RPC reserves the right at any time during the term of this Agreement to require Client to deposit such funds or provide such other guaranty as RPC in its sole discretion, may determine from time to time to guarantee the performance of Client hereunder. The deposit shall be in an amount equal to one (1) payroll cycle as calculated for each Client. The waiver by RPC of this requirement at any time shall not stop or act as a waiver of RPC's right to require a deposit at any subsequent time during the term of this Agreement.

b.   In the event Client fails to maintain the required deposit from time to time as determined at the sole discretion of RPC the same shall be termed to be a material breach of this Agreement.

c.   On termination of this Agreement, any balance remaining in the account of Client shall be remitted to Client on or before [sixty (60)] days after the termination of this Agreement, provided that Client has performed all of its obligations under the terms of this Agreement

d. Any moneys of Client in possession of RPC hereunder may be applied to RPC to any default in any payments by Client under the terms of this Agreement.

## 5.   INSURANCE

a.   Workers' Compensation Insurance

RPC shall furnish and keep in full force and effect at all times during the term of this Agreement workers' compensation insurance covering all Employees filling Job Function Positions under the terms of this Agreement, and where applicable, such policies shall designate Client and RPC respectively, as the first and second named insured. In addition, RPC shall cause that appropriate evidence of insurance be filed with the Worker's Compensation Bureau of any state as deemed necessary by the Client.

b.   Automobile Liability Insurance

If any Employee filling a Job Function Position is to drive a vehicle of any kind for Client, Client shall furnish automobile liability insurance covering said vehicle and said Employees. The policy of automobile insurance shall insure against public liability for bodily injury and property damage, with a minimum combined single limit of One Million Dollars ($1,000,000.00) and uninsured motorist or personal injury protection, or equivalent coverage, of at least the minimum limits required by the state where such "no fault" laws apply. Client shall cause its insurance carrier to name the Employees and RPC as additional named insured and loss payees, and to issue a Certificate of Insurance to RPC whereby RPC is provided not less than (30) days advance notice of cancellation or material change in any such automobile liability insurance coverage. RPC shall be the Certificate Holder for purposes of making claims thereunder.

c.   General Liability Coverage

Client agrees to cause its insurance carrier to name RPC and Client's employees as additional insured on Client's general liability insurance policy, and shall issue a Certificate of Insurance evidencing same to RPC whereby RPC is provided not less than thirty (30) days notice of cancellation or material change in said general liability insurance policy. The minimum requirements of said general liability insurance policy shall be One Million Dollars ($1,000,000.00) combined single limit including, but not limited to, where applicable, premises, operations, products, completed operations, contractors, personal injury, host liquor liability, independent contractors and full liquor liability. In the event, Client renders professional services, a professional services rider on said general liability and extended coverage policy shall be required as

# RPC Employer Services, Inc.
## Service Agreement

applicable. Said professional services liability coverage shall, depending on the business activities of Client, and upon the written request of RPC provide for minimum limits of coverage of One Million Dollars ($1,000,000.00).

d. Group Medical Insurance

After the completion of a specified probationary period, each Employee filling a Job Function Position may elect within the enrollment period at his or her cost, to be covered by a group medical insurance policy offered by RPC. Each Employee may elect additional coverage by reimbursing RPC the actual cost of the extra coverage. In the event an Employee is terminated or is otherwise unavailable to reimburse RPC for coverage elected, Client shall reimburse RPC for any premium dollars advanced by RPC on behalf of the Employee.

e. Retirement Plan Each employee filling a Job Function Position may voluntarily participate in a 401k Plan provided by RPC to the extent such plan is in existence.

f. Excluded Coverage

RPC shall not be responsible and shall not furnish insurance for claims involving discrimination or harassment, including but not limited to claims involving age, sex, race, religion, equal pay, national origin, disability, marital status, veteran status or sexual preference. Client agrees to indemnify and hold RPC harmless for any and all liability for such claims resulting from acts or omissions of Client or any director, officer, employee, or other agent of Client, as further described in Paragraph 9. Any damages, attorneys' fees or expenses awarded to an Employee or his/her representative as a result of any such claims will be paid by Client.

g. Subrogation

Client hereby waives any claim in its favor against RPC by way of subrogation or indemnification which may arise during the Initial Term or any Extended Term of this Agreement or any and all loss of, or damage to, any of the Client's property or for bodily injury which loss, damage or bodily injury is covered by insurance to the extent that such loss is recovered under such policies of insurance as are required in this Agreement.

h. Specific Continuing Covenant

Client and RPC each agree to keep in full force and effect, at all times during the Initial Term and any Extended Term of this Agreement, all insurance policies required under this Agreement.

## 6. COMPLIANCE WITH LAWS

a. General

Client agrees, at its expense, to provide reasonable accommodations for all Employees having a disability as defined in Title 1 of the Americans with Disabilities Act.

b. Americans With Disabilities Act

Client agrees, at its expense to provide reasonable accommodations for all Employees having a disability as defined in Title 1 of the Americans with Disabilities Act. Client also agrees to indemnify and hold RPC harmless from any and all claims arising from Client's failure to provide reasonable accommodations, and for any expenses incurred by RPC for having to make reasonable accommodations as a result of Client's refusal to do so, as further described in Paragraph 9.

## 7. ADMINISTRATION

RPC acknowledges that it is responsible for such administrative employment matters as the payment of all federal, state and local employment taxes, the providing of workers' compensation coverage, and the providing of non-obligatory fringe benefit programs for the Employees.

## 8. WORK ENVIRONMENT

Client agrees that it will comply with all laws, regulations, ordinances, directives and rules imposed by controlling federal, state and local government authorities including, but not limited to, The Americans With Disabilities Act, Title VII of the Civil Rights Act, the Occupational Safety and Health Act, the Fair Labor Standards Act and the Family Medical Leave Act. If applicable, and that it will within twenty-four (24) hours,

Apr 17 01 01:21p

# RPC Employer Services, Inc.

## Service Agreement

report all accidents and injuries to RPC. Client agrees to comply, at its expense, with any specific directives from the workers' compensation insurance carrier, if any, or any governmental agency having jurisdiction over the work place or the Employees' health and safety. Client shall provide and ensure use of all personal protective equipment as required by federal, state or local law, regulations, ordinances, directives or rules, or as deemed necessary by RPC or by its workers' compensation carrier, if any. RPC workers' compensation carrier, if any, has the right at any scheduled mutually convenient time, to inspect Client's premises and operations, but is not obligated to undertake such inspections. RPC or its carrier, if any, may give reports to the Client of the results of any inspections.  Neither any carrier nor RPC warrants the results of any such inspections or the absence thereof, or that the operations and/or premises are in compliance with any laws regulations, codes or standards.

### 9.   HOLD HARMLESS

Client hereby agrees to indemnify, defend and hold RPC harmless from and against any and all claims, damages, losses, judgments, fees, expenses and costs (including court costs and attorneys' fees) and liabilities and obligations of any nature whatsoever, contingent or otherwise, known or unknown, as though expressly set forth and described herein, which Client may incur, suffer, become liable for, or which may be asserted or claimed against Client arising out of or related to the acts, errors or omissions of Client or any director, officer, employee or other agent of Client, including, without limitation, any and all claims in any way related to the matters contained in Paragraph 5(f) and 6 or any violation of this Agreement by Client or RPC's efforts to enforce this indemnity. Client shall take all reasonable measures to inform creditors and other third parties that all Employees assigned to Client to fill the Job Function Positions are employees of RPC, and that RPC is not responsible for Client's debts, acts, errors or omissions except as specifically set forth in this Agreement.

Notwithstanding anything to the contrary contained herein, RPC shall not be liable in any in any event for Client's loss of profits, business, goodwill, or other consequential, special, or incidental damages.

### 10.   LATE CHARGE

Should payment of any amounts due RPC not be made when due, Client shall pay a monthly late charge at a rate of one and one-half percent (1 ½%) per month on all past due invoices, or the maximum rate permitted by law, whichever is less.

### 11.   DEFAULT

Client shall be in default of this Agreement, and said default shall constitute a material breach hereof, if:

a.   Client shall fail to pay the Fee;

b.   Client shall fail to report timely employee wage information each and every pay period

c.   Client shall commit any act that interferes with the rights of RPC as the employer of the Employees provided under this Agreement;

d.   Client shall fail to provide any insurance required under this Agreement;

e.   Client shall fail to comply with any law, regulations, ordinance, directive, or rule regarding the health and safety of Employees from RPC's workers compensation carrier, if any or any governmental agency;

f.   Client shall commit any act that disrupts any of the rights of RPC as the employer of the Employees provided for under this Agreement;

g.   Client or any guarantor of Client's obligations hereunder shall generally not pay its debts as they become due;

h.   Client or any guarantor of Client's obligations hereunder shall admit its inability to pay its debts or shall make a general assignment for the benefit of creditors;

i.   Client or any guarantor of Client's obligations hereunder shall commence any case, proceeding or other action seeking to have an order for relief entered on its behalf as debtor or to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it, or its debts, under any law relating

Apr 17 01 01:22p

# RPC Employer Services, Inc.
## Service Agreement

to bankruptcy, insolvency, reorganization or relief of debtors or seeking appointment of a receiver, trustee, custodian or other similar official for Client or for all or any substantial part of Client's property;

j.   Client or any guarantor of Client's obligations hereunder shall take any corporate or other action to authorize or to contemplate any of the actions set forth above; or

k.   Client shall fail to comply with any applicable governmental law, regulation, ordinance, directive or rule, whether federal, state or local.

## 12.   EFFECT OF BANKRUPTCY OR INSOLVENCY

In the event any of the actions specified in the immediately preceding paragraph occurs, RPC shall have no further obligation to advance any funds on behalf of Client pursuant to this Agreement for any purpose whatsoever unless RPC shall have such funds in its possession at the time any payment or advance is due under this Agreement.

## 13.   EMPLOYEES

For purposes of this Agreement, the term "Employee," whether singular or plural, shall mean such individuals as shall be assigned by RPC to fill the Job Function Positions of Client under this Agreement. All such individuals covered by this agreement shall be deemed to be assigned to Client on a permanent basis.

## 14.   WARRANTY

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, RPC MAKES NO COVENANT, REPRESENTATION, WARRANTY, OR AGREEMENT OF ANY KIND, EXPRESS OR IMPLIED, TO CLIENT OR ANY OTHER PARTY WITH RESPECT TO THE PERFORMANCE BY EMPLOYEES OF SERVICES RENDERED TO CLIENT AS CONTEMPLATED HEREUNDER. UNDER NO CIRCUMSTANCES SHALL RPC TOTAL LIABILITY OF ANY KIND ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING BUT NOT LIMITED TO ANY WARRANTY CLAIMS HEREUNDER REGARDLESS OF THE FORUM AND REGARDLESS OF WHETHER ANY ACTION OR CLAIM IS BASED ON CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE) EXCEED THE TOTAL AMOUNT PAID BY CLIENT TO RPC AS SERVICE FEES HEREUNDER (DETERMINED AS OF THE DATE OF ANY FINAL JUDGMENT IN SUCH ACTION).

## 15.   MISCELLANEOUS

a.   Entire Agreement

This Agreement constitutes the entire understanding and agreement of the parties hereto with respect to the covenants contemplated hereby, and supersedes all prior oral and written agreements and understandings of the parties relating to the subject matter hereof.

b.   Attorneys' Fees

In the event that any action is brought by either party hereto as a result of a breach or a default in any provision of this Agreement, the prevailing party in such action shall be awarded reasonable attorneys' fees and costs in addition to any other relief to which the party may be entitled.

c.   Survival of Agreement

All covenants, representations, warranties, and agreements made herein shall survive the execution and delivery of this Agreement. Wherever in this Agreement reference is made to any of the parties hereto, such reference shall be deemed to include the corporate successors in interest, legal representatives, heirs, assigns, and any other successors of such party.

d.   Construction

This Agreement shall be governed by, construed and enforced under the substantive, and not conflicts, laws of the State of Ohio. The forum for any litigation hereunder shall be the federal or state, as appropriate, courts located in Trumbull County, Ohio. An action for breach of this Agreement or any other action otherwise arising out of or related to this Agreement must be commenced within one (1) year from the date

# RPC Employer Services, Inc.

## Service Agreement

the right, claim, demand or cause of action shall first occur, or be barred forever. The headings appearing herein are for convenience only, and are without legal effect.

e. <u>Waiver of Breach</u>

Failure by either party at any time to require performance by the other party or to claim a breach of any provision of this Agreement will not be construed as a waiver of any subsequent breach nor affect the effectiveness of this Agreement, nor any part thereof, nor prejudice either party with regard to any such subsequent action.

f. <u>Notices</u>

Any notice or demand to be given hereunder by either party to the other shall be effected by personal delivery in writing or a certified mail. postage paid, return receipt requested, and shall be addressed to the party's principal place of business set forth above, but each party may change the address by written notice in accordance with this paragraph.

g. <u>Validity</u>

This Agreement shall be valid and enforceable only after it has been signed by both parties. In the event any term, warrant, covenant, condition, or provision of this Agreement is held to invalid or unenforceable, the balance of this Agreement shall remain in full force and effect and shall stand as if the unenforceable part did not exist.

h. <u>No Partnership</u>

Notwithstanding any provision to the contrary herein, RPC, under this Agreement or by any action taken pursuant hereto, shall not be deemed a partner, joint venture, or joint employer with Client.

In witness whereof, the parties have executed this Agreement as of the date and year first written above.

**RPC EMPLOYER SERVICES, INC.**

By: _____   3-27-01

Daniel J. D'Alio, President        Date

**NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C.**

By: _Carolyn Shiver  President_ 3/21/01

Carolyn Shiver, President        Date

**NOTICE: THIS AGREEMENT IS SUBJECT TO THE FINAL APPROVAL OF THE HOME OFFICE AND SHALL NOT BECOME EFFECTIVE UNTIL SUCH TIME AS APPROVAL IS GRANTED AS EVIDENCED BY THE ABOVE ENDORSEMENT OF AN OFFICER OF RPC EMPLOYER SERVICES, INC.**

## EFFECTIVE STARTING DATE:

Based on each team's first game of the 2001 season according to the official published schedule, which shall be made a part of this agreement.

# RPC Employer Services, Inc.

## Service Agreement

This Agreement is made and entered effective this 20th day of March, 2001, by and between RPC Employer Services, Inc. ("RPC"), an Ohio Corporation located at 7771 Raglan Dr. NE, PO Box 8605, Warren, Ohio 44484, and;

| | |
|---|---|
| Company Name: | National Indoor Football League, L.L.C. |
| Address: | PO Box 8628 |
| City: | Warren |
| State: | Ohio |
| Zip: | 44484 |
| EIN or SSN: | 94-3387642 (Ohio Corporation) |

## 1.   STAFFING

RPC hereby agrees to furnish to Client, and Client hereby agrees to engage from RPC, staffing for all Job Function Positions.

## 2.   TERM OF AGREEMENT

This Agreement shall commence on the EFFECTIVE STARTING DATE set forth below and shall continue in effect of the initial term ("Initial Term") of one (1) year following the commencement of this Agreement. This Agreement may thereafter be extended by mutual consent of both RPC and Client from month to month "Extended Term". During the Initial Term, RPC or Client may terminate this Agreement by giving written notice of termination to the other party thirty (30) days prior to the effective date of said termination. During the Extended Term, either party may terminate this Agreement upon giving written notice thirty (30) days prior to the effective date of said termination. Notwithstanding anything to the contrary contained in this Agreement, RPC may terminate this Agreement immediately upon twenty-four (24) hours notice to Client in the event of a material breach by Client of any of the provisions to this Agreement.

   **2a.   PAYROLL REPORTING**: Commencing with the EFFECTIVE STARTING DATE, and according to the payroll processing frequency itemized on the FEE STRUCTURE STATEMENT page, the Client must report employee wages in a timely manner so as to allow RPC to process and distribute payroll and related benefits in accordance with Federal and State guidelines. Should client fail to report wages each and every pay period, RPC shall reserve the right to immediately terminate this agreement pending payment in full of all obligations. Client shall be solely responsible for all wages and applicable taxes pertaining to unreported wages. If Client requests to activate service with RPC in the future, then Client would be required to meet normal underwriting guidelines in order to initiate new service.

## 3.   FEES

   a.   Client shall pay RPC a fee (the "Fee") as specified in the Fee Structure Statement attached hereto and made a part hereof. The Fee shall be paid in full, by wire transfer, direct bank debit, certified check or money order and delivered to RPC not less than twenty-four hours prior to the distribution of any payroll checks for such period. Any failure by Client to make payment as set forth shall render Client in default of this Agreement and constitute a material breach hereof, and any Employee(s) assigned to Client shall be transferred to Client effective the last day of the preceding pay period for such Employee(s).

   b.   The Fee shall consist of the following items: all payroll (inclusive of bonuses, holiday pay, sick leave pay, vacation pay and/or other special payments), all applicable federal, state and local taxes, including all applicable Federal Insurance Contributions Act, Federal Unemployment Tax Act and Medicare Coverage payments, all premiums and contributions in connection with any employee retirement or other benefits including, but not limited to, all health, accident disability or other insurance premiums, all workers' compensation premiums including any required deposits not charged as part of the set-up fee, all unemployment compensation charges, and a service fee (the "Service Fee") for the administrative services of RPC.

r 17 01 01:21P                                                          p.3

# RPC Employer Services, Inc.
## Service Agreement

c.   During the Initial Term of this Agreement, RPC may not adjust the Fee except for statutory increases in employment taxes or insurance or any change in the Job Function Positions required by Client. During the Extended Term of this Agreement, RPC may adjust the Fee for statutory increases in employment taxes or insurance or any change in the Job Function Positions required by Client, or upon thirty (30) days prior written notice.

d.   Any increase in the Fee for statutory increases in employment taxes or insurance or any change in the Job Function Positions shall be effective on the date of such increases or change.

e.   Client agrees to verify all time sheets or other evidence of time submissions by Employees (as defined in Paragraph 13.)

## 4.   CLIENT DEPOSIT

a.   RPC reserves the right at any time during the term of this Agreement to require Client to deposit such funds or provide such other guaranty as RPC in its sole discretion, may determine from time to time to guarantee the performance of Client hereunder.  The deposit shall be in an amount equal to one (1) payroll cycle as calculated for each Client.  The waiver by RPC of this requirement at any time shall not stop or act as a waiver of RPC's right to require a deposit at any subsequent time during the term of this Agreement.

b.   In the event Client fails to maintain the required deposit from time to time as determined at the sole discretion of RPC the same shall be termed to be a material breach of this Agreement.

c.   On termination of this Agreement, any balance remaining in the account of Client shall be remitted to Client on or before [sixty (60)] days after the termination of this Agreement, provided that Client has performed all of its obligations under the terms of this Agreement

d. Any moneys of Client in possession of RPC hereunder may be applied to RPC to any default in any payments by Client under the terms of this Agreement.

## 5.   INSURANCE

a.   Workers' Compensation Insurance

RPC shall furnish and keep in full force and effect at all times during the term of this Agreement workers' compensation insurance covering all Employees filling Job Function Positions under the terms of this Agreement, and, where applicable, such policies shall designate Client and RPC respectively, as the first and second named insured.  In addition, RPC shall cause that appropriate evidence of insurance be filed with the Worker's Compensation Bureau of any state as deemed necessary by the Client.

b.   Automobile Liability Insurance

If any Employee filling a Job Function Position is to drive a vehicle of any kind for Client, Client shall furnish automobile liability insurance covering said vehicle and said Employees.  The policy of automobile insurance shall insure against public liability for bodily injury and property damage, with a minimum combined single limit of One Million Dollars ($1,000,000.00) and uninsured motorist or personal injury protection, or equivalent coverage, or at least the minimum limits required by the state where such "no fault" laws apply.  Client shall cause its insurance carrier to name the Employees and RPC as additional named insured and loss payees, and to issue a Certificate of Insurance to RPC whereby RPC is provided not less than (30) days advance notice of cancellation or material change in any such automobile liability insurance coverage.  RPC shall be the Certificate Holder for purposes of making claims thereunder.

c.   General Liability Coverage

Client agrees to cause its insurance carrier to name RPC and Client's employees as additional insured on Client's general liability insurance policy, and shall issue a Certificate of Insurance evidencing same to RPC whereby RPC is provided not less than thirty (30) days notice of cancellation or material change in said general liability insurance policy.  The minimum requirements of said general liability insurance policy shall be One Million Dollars ($1,000,000.00) combined single limit including, but not limited to, where applicable, premises, operations, products, completed operations, contractors, personal injury, host liquor liability, independent contractors and full liquor liability.  In the event, Client renders professional services, a professional services rider on said general liability and extended coverage policy shall be required as

pr 17 01 01:21p

# RPC Employer Services, Inc.
## Service Agreement

applicable. Said professional services liability coverage shall, depending on the business activities of Client, and upon the written request of RPC provide for minimum limits of coverage of One Million Dollars ($1,000,000.00).

    d.   Group Medical Insurance

After the completion of a specified probationary period, each Employee filling a Job Function Position may elect within the enrollment period at his or her cost, to be covered by a group medical insurance policy offered by RPC. Each Employee may elect additional coverage by reimbursing RPC the actual cost of the extra coverage. In the event an Employee is terminated or is otherwise unavailable to reimburse RPC for coverage elected, Client shall reimburse RPC for any premium dollars advanced by RPC on behalf of the Employee.

    e.   Retirement Plan Each employee filling a Job Function Position may voluntarily participate in a 401k Plan provided by RPC to the extent such plan is in existence.

    f.   Excluded Coverage

RPC shall not be responsible and shall not furnish insurance for claims involving discrimination or harassment, including but not limited to claims involving age, sex, race, religion, equal pay, national origin, disability, marital status, veteran status or sexual preference. Client agrees to indemnify and hold RPC harmless for any and all liability for such claims resulting from acts or omissions of Client or any director, officer, employee, or other agent of Client, as further described in Paragraph 9. Any damages, attorneys' fees or expenses awarded to an Employee or his/her representative as a result of any such claims will be paid by Client.

    g.   Subrogation

Client hereby waives any claim in its favor against RPC by way of subrogation or indemnification which may arise during the Initial Term or any Extended Term of this Agreement or any and all loss of, or damage to, any of the Client's property or for bodily injury which loss, damage or bodily injury is covered by insurance to the extent that such loss is recovered under such policies of insurance as are required in this Agreement.

    h.   Specific Continuing Covenant

Client and RPC each agree to keep in full force and effect, at all times during the Initial Term and any Extended Term of this Agreement, all insurance policies required under this Agreement.

## 6.  COMPLIANCE WITH LAWS

    a.   General

Client agrees, at its expense, to provide reasonable accommodations for all Employees having a disability as defined in Title 1 of the Americans with Disabilities Act.

    b.   Americans With Disabilities Act

Client agrees, at its expense, to provide reasonable accommodations for all Employees having a disability as defined in Title 1 of the Americans with Disabilities Act. Client also agrees to indemnify and hold RPC harmless from any and all claims arising from Client's failure to provide reasonable accommodations, and for any expenses incurred by RPC for having to make reasonable accommodations as a result of Client's refusal to do so, as further described in Paragraph 9.

## 7.  ADMINISTRATION

RPC acknowledges that it is responsible for such administrative employment matters as the payment of all federal, state and local employment taxes, the providing of workers' compensation coverage, and the providing of non-obligatory fringe benefit programs for the Employees.

## 8.  WORK ENVIRONMENT

Client agrees that it will comply with all laws, regulations, ordinances, directives and rules imposed by controlling federal, state and local government authorities including, but not limited to, The Americans With Disabilities Act, Title VII of the Civil Rights Act, the Occupational Safety and Health Act, the Fair Labor Standards Act and the Family Medical Leave Act. If applicable, and that it will within twenty-four (24) hours,

Apr 17 01 01:21p

# RPC Employer Services, Inc.
## Service Agreement

report all accidents and injuries to RPC. Client agrees to comply, at its expense, with any specific directives from the workers' compensation insurance carrier, if any, or any governmental agency having jurisdiction over the work place or the Employees' health and safety. Client shall provide and ensure use of all personal protective equipment as required by federal, state or local law, regulations, ordinances, directives or rules, or as deemed necessary by RPC or by its workers' compensation carrier, if any. RPC or its carrier, if any, has the right at any scheduled mutually convenient time, to inspect Client's premises and operations, but is not obligated to undertake such inspections. RPC or its carrier, if any, may give reports to the Client of the results of any inspections.   Neither any carrier nor RPC warrants the results of any such inspections or the absence thereof, or that the operations and/or premises are in compliance with any laws regulations, codes or standards.

### 9.   HOLD HARMLESS

Client hereby agrees to indemnify, defend and hold RPC harmless from and against any and all claims, damages, losses, judgments, fees, expenses and costs (including court costs and attorneys' fees) and liabilities and obligations of any nature whatsoever, contingent or otherwise, known or unknown, as though expressly set forth and described herein, which Client may incur, suffer, become liable for, or which may be asserted or claimed against Client arising out of or related to the acts, errors or omissions of Client or any director, officer, employee or other agent of Client, including, without limitation, any and all claims in any way related to the matters contained in Paragraph 5(f) and 6 or any violation of this Agreement by Client or RPC's efforts to enforce this indemnity.  Client shall take all reasonable measures to inform creditors and other third parties that all Employees assigned to Client to fill the Job Function Positions are employees of RPC, and that RPC is not responsible for Client's debts, acts, errors or omissions except as specifically set forth in this Agreement.

Notwithstanding anything to the contrary contained herein, RPC shall not be liable in any in any event for Client's loss of profits, business, goodwill, or other consequential, special, or incidental damages.

### 10.   LATE CHARGE

Should payment of any amounts due RPC not be made when due, Client shall pay a monthly late charge at a rate of one and one-half percent (1 ½%) per month on all past due invoices, or the maximum rate permitted by law, whichever is less.

### 11.   DEFAULT

Client shall be in default of this Agreement, and said default shall constitute a material breach hereof, if:

- a.   Client shall fail to pay the Fee;
- b.   Client shall fail to report timely employee wage information each and every pay period
- c.   Client shall commit any act that interferes with the rights of RPC as the employer of the Employees provided under this Agreement;
- d.   Client shall fail to provide any insurance required under this Agreement;
- e.   Client shall fail to comply with any law, regulations, ordinance, directive, or rule regarding the health and safety of Employees from RPC's workers compensation carrier, if any or any governmental agency;
- f.   Client shall commit any act that disrupts any of the rights of RPC as the employer of the Employees provided for under this Agreement;
- g.   Client or any guarantor of Client's obligations hereunder shall generally not pay its debts as they become due;
- h.   Client or any guarantor of Client's obligations hereunder shall admit its inability to pay its debts or shall make a general assignment for the benefit of creditors;
- i.   Client or any guarantor of Client's obligations hereunder shall commence any case, proceeding or other action seeking to have an order for relief entered on its behalf as debtor or to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it, or its debts, under any law relating

Apr 17 01 01:22p

# RPC Employer Services, Inc.
## Service Agreement

to bankruptcy, insolvency, reorganization or relief of debtors or seeking appointment of a receiver, trustee, custodian or other similar official for Client or for all or any substantial part of Client's property;

j. Client or any guarantor of Client's obligations hereunder shall take any corporate or other action to authorize or to contemplate any of the actions set forth above; or

k. Client shall fail to comply with any applicable governmental law, regulation, ordinance, directive or rule, whether federal, state or local.

## 12. EFFECT OF BANKRUPTCY OR INSOLVENCY

In the event any of the actions specified in the immediately preceding paragraph occurs, RPC shall have no further obligation to advance any funds on behalf of Client pursuant to this Agreement for any purpose whatsoever unless RPC shall have such funds in its possession at the time any payment or advance is due under this Agreement.

## 13. EMPLOYEES

For purposes of this Agreement, the term "Employee," whether singular or plural, shall mean such individuals as shall be assigned by RPC to fill the Job Function Positions of Client under this Agreement. All such individuals covered by this agreement shall be deemed to be assigned to Client on a permanent basis.

## 14. WARRANTY

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, RPC MAKES NO COVENANT, REPRESENTATION, WARRANTY, OR AGREEMENT OF ANY KIND, EXPRESS OR IMPLIED, TO CLIENT OR ANY OTHER PARTY WITH RESPECT TO THE PERFORMANCE BY EMPLOYEES OF SERVICES RENDERED TO CLIENT AS CONTEMPLATED HEREUNDER. UNDER NO CIRCUMSTANCES SHALL RPC TOTAL LIABILITY OF ANY KIND ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING BUT NOT LIMITED TO ANY WARRANTY CLAIMS HEREUNDER REGARDLESS OF THE FORUM AND REGARDLESS OF WHETHER ANY ACTION OR CLAIM IS BASED ON CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE) EXCEED THE TOTAL AMOUNT PAID BY CLIENT TO RPC AS SERVICE FEES HEREUNDER (DETERMINED AS OF THE DATE OF ANY FINAL JUDGMENT IN SUCH ACTION).

## 15. MISCELLANEOUS

a. Entire Agreement

This Agreement constitutes the entire understanding and agreement of the parties hereto with respect to the covenants contemplated hereby, and supersedes all prior oral and written agreements and understandings of the parties relating to the subject matter hereof.

b. Attorneys' Fees

In the event that any action is brought by either party hereto as a result of a breach or a default in any provision of this Agreement, the prevailing party in such action shall be awarded reasonable attorneys' fees and costs in addition to any other relief to which the party may be entitled.

c. Survival of Agreement

All covenants, representations, warranties, and agreements made herein shall survive the execution and delivery of this Agreement. Wherever in this Agreement reference is made to any of the parties hereto, such reference shall be deemed to include the corporate successors in interest, legal representatives, heirs, assigns, and any other successors of such party.

d. Construction

This Agreement shall be governed by, construed and enforced under the substantive, and not conflicts, laws of the State of Ohio. The forum for any litigation hereunder shall be the federal or state, as appropriate, courts located in Trumbull County, Ohio. An action for breach of this Agreement or any other action otherwise arising out of or related to this Agreement must be commenced within one (1) year from the date

# RPC Employer Services, Inc.

## Service Agreement

the right, claim, demand or cause of action shall first occur, or be barred forever.  The headings appearing herein are for convenience only, and are without legal effect.

    e.    <u>Waiver of Breach</u>

Failure by either party at any time to require performance by the other party or to claim a breach of any provision of this Agreement will not be construed as a waiver of any subsequent breach nor affect the effectiveness of this Agreement, nor any part thereof, nor prejudice either party with regard to any such subsequent action.

    f.    <u>Notices</u>

Any notice or demand to be given hereunder by either party to the other shall be effected by personal delivery in writing or a certified mail. postage paid, return receipt requested, and shall be addressed to the party's principal place of business set forth above, but each party may change the address by written notice in accordance with this paragraph.

    g.    <u>Validity</u>

This Agreement shall be valid and enforceable only after it has been signed by both parties.  In the event any term, warrant, covenant, condition, or provision of this Agreement is held to invalid or unenforceable, the balance of this Agreement shall remain in full force and effect and shall stand as if the unenforceable part did not exist.

    h.    <u>No Partnership</u>

Notwithstanding any provision to the contrary herein, RPC, under this Agreement or by any action taken pursuant hereto, shall not be deemed a partner, joint venture, or joint employer with Client.

In witness whereof, the parties have executed this Agreement as of the date and year first written above.

**RPC EMPLOYER SERVICES, INC.**

By: _____    3-27-01
    Daniel J. D'Alio, President        Date


**NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C.**

By: _Carolyn Shiver, President 3/21/01_
    Carolyn Shiver, President        Date

**NOTICE: THIS AGREEMENT IS SUBJECT TO THE FINAL APPROVAL OF THE HOME OFFICE AND SHALL NOT BECOME EFFECTIVE UNTIL SUCH TIME AS APPROVAL IS GRANTED AS EVIDENCED BY THE ABOVE ENDORSEMENT OF AN OFFICER OF RPC EMPLOYER SERVICES, INC.**

## EFFECTIVE STARTING DATE:

    Based on each team's first game of the 2001 season according to the official published schedule, which shall be made a part of this agreement.

# RPC Employer Services, Inc.

## Service Agreement

This Agreement is made and entered effective this 20th day of March, 2001, by and between RPC Employer Services, Inc. ("RPC"), an Ohio Corporation located at 7771 Raglan Dr. NE, PO Box 8605, Warren, Ohio 44484, and;

| | |
|---|---|
| Company Name: | National Indoor Football League, L.L.C. |
| Address: | PO Box 8628 |
| City: | Warren |
| State: | Ohio |
| Zip: | 44484 |
| EIN or SSN: | 94-3387642 (Ohio Corporation) |

**1.  STAFFING**

RPC hereby agrees to furnish to Client, and Client hereby agrees to engage from RPC, staffing for all Job Function Positions.

**2.  TERM OF AGREEMENT**

This Agreement shall commence on the EFFECTIVE STARTING DATE set forth below and shall continue in effect of the initial term ("Initial Term") of one (1) year following the commencement of this Agreement. This Agreement may thereafter be extended by mutual consent of both RPC and Client from month to month "Extended Term". During the Initial Term, RPC or Client may terminate this Agreement by giving written notice of termination to the other party thirty (30) days prior to the effective date of said termination. During the Extended Term, either party may terminate this Agreement upon giving written notice thirty (30) days prior to the effective date of said termination. Notwithstanding anything to the contrary contained in this Agreement, RPC may terminate this Agreement immediately upon twenty-four (24) hours notice to Client in the event of a material breach by Client of any of the provisions to this Agreement.

**2a. PAYROLL REPORTING**: Commencing with the EFFECTIVE STARTING DATE, and according to the payroll processing frequency itemized on the FEE STRUCTURE STATEMENT page, the Client must report employee wages in a timely manner so as to allow RPC to process and distribute payroll and related benefits in accordance with Federal and State guidelines. Should client fail to report wages each and every pay period, RPC shall reserve the right to immediately terminate this agreement pending payment in full of all obligations. Client shall be solely responsible for all wages and applicable taxes pertaining to unreported wages. If Client requests to activate service with RPC in the future, then Client would be required to meet normal underwriting guidelines in order to initiate new service.

**3.  FEES**

a.   Client shall pay RPC a fee (the "Fee") as specified in the Fee Structure Statement attached hereto and made a part hereof. The Fee shall be paid in full, by wire transfer, direct bank debit, certified check or money order and delivered to RPC not less than twenty-four hours prior to the distribution of any payroll checks for such period. Any failure by Client to make payment as set forth shall render Client in default of this Agreement and constitute a material breach hereof, and any Employee(s) assigned to Client shall be transferred to Client effective the last day of the preceding pay period for such Employee(s).

b.   The Fee shall consist of the following items: all payroll (inclusive of bonuses, holiday pay, sick leave pay, vacation pay and/or other special payments), all applicable federal, state and local taxes, including all applicable Federal Insurance Contributions Act, Federal Unemployment Tax Act and Medicare Coverage payments, all premiums and contributions in connection with any employee retirement or other benefits including, but not limited to, all health, accident disability or other insurance premiums, all workers' compensation premiums including any required deposits not charged as part of the set-up fee, all unemployment compensation charges, and a service fee (the "Service Fee") for the administrative services of RPC.

r 17 01 01:21p                                                                 P. 3

# RPC Employer Services, Inc.
## Service Agreement

c.    During the Initial Term of this Agreement, RPC may not adjust the Fee except for statutory increases in employment taxes or insurance or any change in the Job Function Positions required by Client. During the Extended Term of this Agreement, RPC may adjust the Fee for statutory increases in employment taxes or insurance or any change in the Job Function Positions required by Client, or upon thirty (30) days prior written notice.

d.    Any increase in the Fee for statutory increases in employment taxes or insurance or any change in the Job Function Positions shall be effective on the date of such increases or change.

e.    Client agrees to verify all time sheets or other evidence of time submissions by Employees (as defined in Paragraph 13.)

## 4.   CLIENT DEPOSIT

a.    RPC reserves the right at any time during the term of this Agreement to require Client to deposit such funds or provide such other guaranty as RPC in its sole discretion, may determine from time to time to guarantee the performance of Client hereunder. The deposit shall be in an amount equal to one (1) payroll cycle as calculated for each Client. The waiver by RPC of this requirement at any time shall not stop or act as a waiver of RPC's right to require a deposit at any subsequent time during the term of this Agreement.

b.    In the event Client fails to maintain the required deposit from time to time as determined at the sole discretion of RPC the same shall be termed to be a material breach of this Agreement.

c.    On termination of this Agreement, any balance remaining in the account of Client shall be remitted to Client on or before [sixty (60)] days after the termination of this Agreement, provided that Client has performed all of its obligations under the terms of this Agreement

d. Any moneys of Client in possession of RPC hereunder may be applied to RPC to any default in any payments by Client under the terms of this Agreement.

## 5.   INSURANCE

a.    Workers' Compensation Insurance
RPC shall furnish and keep in full force and effect at all times during the term of this Agreement workers' compensation insurance covering all Employees filling Job Function Positions under the terms of this Agreement, and where applicable, such policies shall designate Client and RPC respectively, as the first and second named insured. In addition, RPC shall cause that appropriate evidence of insurance be filed with the Worker's Compensation Bureau of any state as deemed necessary by the Client.

b.    Automobile Liability Insurance
If any Employee filling a Job Function Position is to drive a vehicle of any kind for Client, Client shall furnish automobile liability insurance covering said vehicle and said Employees. The policy of automobile insurance shall insure against public liability for bodily injury and property damage, with a minimum combined single limit of One Million Dollars ($1,000,000.00) and uninsured motorist or personal injury protection, or equivalent coverage, of at least the minimum limits required by the state where such "no fault" laws apply. Client shall cause its insurance carrier to name the Employees and RPC as additional named insured and loss payees, and to issue a Certificate of Insurance to RPC whereby RPC is provided not less than (30) days advance notice of cancellation or material change in any such automobile liability insurance coverage. RPC shall be the Certificate Holder for purposes of making claims thereunder.

c.    General Liability Coverage
Client agrees to cause its insurance carrier to name RPC and Client's employees as additional insured on Client's general liability insurance policy, and shall issue a Certificate of Insurance evidencing same to RPC whereby RPC is provided not less than thirty (30) days notice of cancellation or material change in said general liability insurance policy. The minimum requirements of said general liability insurance policy shall be One Million Dollars ($1,000,000.00) combined single limit including, but not limited to, where applicable, premises, operations, products, completed operations, contractors, personal injury, host liquor liability, independent contractors and full liquor liability. In the event, Client renders professional services, a professional services rider on said general liability and extended coverage policy shall be required as

pr 17 01 01:21p

# RPC Employer Services, Inc.
## Service Agreement

applicable.  Said professional services liability coverage shall, depending on the business activities of Client, and upon the written request of RPC provide for minimum limits of coverage of One Million Dollars ($1,000,000.00).

  d.  Group Medical Insurance

After the completion of a specified probationary period, each Employee filling a Job Function Position may elect within the enrollment period at his or her cost, to be covered by a group medical insurance policy offered by RPC.  Each Employee may elect additional coverage by reimbursing RPC the actual cost of the extra coverage.  In the event an Employee is terminated or is otherwise unavailable to reimburse RPC for coverage elected, Client shall reimburse RPC for any premium dollars advanced by RPC on behalf of the Employee.

  e.  Retirement Plan Each employee filling a Job Function Position may voluntarily participate in a 401k Plan provided by RPC to the extent such plan is in existence.

  f.  Excluded Coverage

RPC shall not be responsible and shall not furnish insurance for claims involving discrimination or harassment, including but not limited to claims involving age, sex, race, religion, equal pay, national origin, disability, marital status, veteran status or sexual preference.  Client agrees to indemnify and hold RPC harmless for any and all liability for such claims resulting from acts or omissions of Client or any director, officer, employee, or other agent of Client, as further described in Paragraph 9.   Any damages, attorneys' fees or expenses awarded to an Employee or his/her representative as a result of any such claims will be paid by Client.

  g.  Subrogation

Client hereby waives any claim in its favor against RPC by way of subrogation or indemnification which may arise during the Initial Term or any Extended Term of this Agreement or any and all loss of, or damage to, any of the Client's property or for bodily injury which loss, damage or bodily injury is covered by insurance to the extent that such loss is recovered under such policies of insurance as are required in this Agreement.

  h.  Specific Continuing Covenant

Client and RPC each agree to keep in full force and effect, at all times during the Initial Term and any Extended Term of this Agreement, all insurance policies required under this Agreement.

6.  **COMPLIANCE WITH LAWS**

  a.  General

Client agrees, at its expense, to provide reasonable accommodations for all Employees having a disability as defined in Title 1 of the Americans with Disabilities Act.

  b.  Americans With Disabilities Act

Client agrees, at its expense to provide reasonable accommodations for all Employees having a disability as defined in Title 1 of the Americans with Disabilities Act.  Client also agrees to indemnify and hold RPC harmless from any and all claims arising from Client's failure to provide reasonable accommodations, and for any expenses incurred by RPC for having to make reasonable accommodations as a result of Client's refusal to do so, as further described in Paragraph 9.

7.  **ADMINISTRATION**

RPC acknowledges that it is responsible for such administrative employment matters as the payment of all federal, state and local employment taxes, the providing of workers' compensation coverage, and the providing of non-obligatory fringe benefit programs for the Employees.

8.  **WORK ENVIRONMENT**

Client agrees that it will comply with all laws, regulations, ordinances, directives and rules imposed by controlling federal, state and local government authorities including, but not limited to, The Americans With Disabilities Act, Title VII of the Civil Rights Act, the Occupational Safety and Health Act, the Fair Labor Standards Act and the Family Medical Leave Act. If applicable, and that it will within twenty-four (24) hours,

Apr 17 01 01:21p

# RPC Employer Services, Inc.
## Service Agreement

report all accidents and injuries to RPC. Client agrees to comply, at its expense, with any specific directives from the workers' compensation insurance carrier, if any, or any governmental agency having jurisdiction over the work place or the Employees' health and safety. Client shall provide and ensure use of all personal protective equipment as required by federal, state or local law, regulations, ordinances, directives or rules, or as deemed necessary by RPC or by its workers' compensation carrier, if any. RPC workers' compensation carrier, if any, has the right at any scheduled mutually convenient time, to inspect Client's premises and operations, but is not obligated to undertake such inspections. RPC or its carrier, if any, may give reports to the Client of the results of any inspections. Neither any carrier nor RPC warrants the results of any such inspections or the absence thereof, or that the operations and/or premises are in compliance with any laws regulations, codes or standards.

### 9.   HOLD HARMLESS

Client hereby agrees to indemnify, defend and hold RPC harmless from and against any and all claims, damages, losses, judgments, fees, expenses and costs (including court costs and attorneys' fees) and liabilities and obligations of any nature whatsoever, contingent or otherwise, known or unknown, as though expressly set forth and described herein, which Client may incur, suffer, become liable for, or which may be asserted or claimed against Client arising out of or related to the acts, errors or omissions of Client or any director, officer, employee or other agent of Client, including, without limitation, any and all claims in any way related to the matters contained in Paragraph 5(f) and 6 or any violation of this Agreement by Client or RPC's efforts to enforce this indemnity. Client shall take all reasonable measures to inform creditors and other third parties that all Employees assigned to Client to fill the Job Function Positions are employees of RPC, and that RPC is not responsible for Client's debts, acts, errors or omissions except as specifically set forth in this Agreement.

Notwithstanding anything to the contrary contained herein, RPC shall not be liable in any in any event for Client's loss of profits, business, goodwill, or other consequential, special, or incidental damages.

### 10.   LATE CHARGE

Should payment of any amounts due RPC not be made when due, Client shall pay a monthly late charge at a rate of one and one-half percent (1 ½%) per month on all past due invoices, or the maximum rate permitted by law, whichever is less.

### 11.   DEFAULT

Client shall be in default of this Agreement, and said default shall constitute a material breach hereof, if:

    a.   Client shall fail to pay the Fee;

    b.   Client shall fail to report timely employee wage information each and every pay period

    c.   Client shall commit any act that interferes with the rights of RPC as the employer of the Employees provided under this Agreement;

    d.   Client shall fail to provide any insurance required under this Agreement;

    e.   Client shall fail to comply with any law, regulations, ordinance, directive, or rule regarding the health and safety of Employees from RPC's workers compensation carrier, if any or any governmental agency;

    f.   Client shall commit any act that disrupts any of the rights of RPC as the employer of the Employees provided for under this Agreement;

    g.   Client or any guarantor of Client's obligations hereunder shall generally not pay its debts as they become due;

    h.   Client or any guarantor of Client's obligations hereunder shall admit its inability to pay its debts or shall make a general assignment for the benefit of creditors;

    i.   Client or any guarantor of Client's obligations hereunder shall commence any case, proceeding or other action seeking to have an order for relief entered on its behalf as debtor or to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it, or its debts, under any law relating

# RPC Employer Services, Inc.
## Service Agreement

to bankruptcy, insolvency, reorganization or relief of debtors or seeking appointment of a receiver, trustee, custodian or other similar official for Client or for all or any substantial part of Client's property;

j.   Client or any guarantor of Client's obligations hereunder shall take any corporate or other action to authorize or to contemplate any of the actions set forth above; or

k.   Client shall fail to comply with any applicable governmental law, regulation, ordinance, directive or rule, whether federal, state or local.

## 12.  EFFECT OF BANKRUPTCY OR INSOLVENCY

In the event any of the actions specified in the immediately preceding paragraph occurs, RPC shall have no further obligation to advance any funds on behalf of Client pursuant to this Agreement for any purpose whatsoever unless RPC shall have such funds in its possession at the time any payment or advance is due under this Agreement.

## 13.  EMPLOYEES

For purposes of this Agreement, the term "Employee," whether singular or plural, shall mean such individuals as shall be assigned by RPC to fill the Job Function Positions of Client under this Agreement. All such individuals covered by this agreement shall be deemed to be assigned to Client on a permanent basis.

## 14.  WARRANTY

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, RPC MAKES NO COVENANT, REPRESENTATION, WARRANTY, OR AGREEMENT OF ANY KIND, EXPRESS OR IMPLIED, TO CLIENT OR ANY OTHER PARTY WITH RESPECT TO THE PERFORMANCE BY EMPLOYEES OF SERVICES RENDERED TO CLIENT AS CONTEMPLATED HEREUNDER. UNDER NO CIRCUMSTANCES SHALL RPC TOTAL LIABILITY OF ANY KIND ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING BUT NOT LIMITED TO ANY WARRANTY CLAIMS HEREUNDER REGARDLESS OF THE FORUM AND REGARDLESS OF WHETHER ANY ACTION OR CLAIM IS BASED ON CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE) EXCEED THE TOTAL AMOUNT PAID BY CLIENT TO RPC AS SERVICE FEES HEREUNDER (DETERMINED AS OF THE DATE OF ANY FINAL JUDGMENT IN SUCH ACTION).

## 15.  MISCELLANEOUS

a.   Entire Agreement

This Agreement constitutes the entire understanding and agreement of the parties hereto with respect to the covenants contemplated hereby, and supersedes all prior oral and written agreements and understandings of the parties relating to the subject matter hereof.

b.   Attorneys' Fees

In the event that any action is brought by either party hereto as a result of a breach or a default in any provision of this Agreement, the prevailing party in such action shall be awarded reasonable attorneys' fees and costs in addition to any other relief to which the party may be entitled.

c.   Survival of Agreement

All covenants, representations, warranties, and agreements made herein shall survive the execution and delivery of this Agreement. Wherever in this Agreement reference is made to any of the parties hereto, such reference shall be deemed to include the corporate successors in interest, legal representatives, heirs, assigns, and any other successors of such party.

d.   Construction

This Agreement shall be governed by, construed and enforced under the substantive, and not conflicts, laws of the State of Ohio. The forum for any litigation hereunder shall be the federal or state, as appropriate, courts located in Trumbull County, Ohio. An action for breach of this Agreement or any other action otherwise arising out of or related to this Agreement must be commenced within one (1) year from the date

# RPC Employer Services, Inc.

## Service Agreement

the right, claim, demand or cause of action shall first occur, or be barred forever. The headings appearing herein are for convenience only, and are without legal effect.

  e.   Waiver of Breach

Failure by either party at any time to require performance by the other party or to claim a breach of any provision of this Agreement will not be construed as a waiver of any subsequent breach nor affect the effectiveness of this Agreement, nor any part thereof, nor prejudice either party with regard to any such subsequent action.

  f.   Notices

Any notice or demand to be given hereunder by either party to the other shall be effected by personal delivery in writing or a certified mail. postage paid, return receipt requested, and shall be addressed to the party's principal place of business set forth above, but each party may change the address by written notice in accordance with this paragraph.

  g.   Validity

This Agreement shall be valid and enforceable only after it has been signed by both parties. In the event any term, warrant, covenant, condition, or provision of this Agreement is held to invalid or unenforceable, the balance of this Agreement shall remain in full force and effect and shall stand as if the unenforceable part did not exist.

  h.   No Partnership

Notwithstanding any provision to the contrary herein, RPC, under this Agreement or by any action taken pursuant hereto, shall not be deemed a partner, joint venture, or joint employer with Client.

In witness whereof, the parties have executed this Agreement as of the date and year first written above.

RPC EMPLOYER SERVICES, INC.

By: _____   3-27-01
      Daniel J. D'Alio, President                     Date


NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C.

By: _____   3/21/01
      Carolyn Shiver, President                       Date

**NOTICE: THIS AGREEMENT IS SUBJECT TO THE FINAL APPROVAL OF THE HOME OFFICE AND SHALL NOT BECOME EFFECTIVE UNTIL SUCH TIME AS APPROVAL IS GRANTED AS EVIDENCED BY THE ABOVE ENDORSEMENT OF AN OFFICER OF RPC EMPLOYER SERVICES, INC.**

## EFFECTIVE STARTING DATE:

  Based on each team's first game of the 2001 season according to the official published schedule, which shall be made a part of this agreement.

# RPC Employer Services, Inc.
## Service Agreement

## FEE STRUCTURE STATEMENT

| Description | Amount | Per |
|---|---|---|
| Payroll Frequency: | | Weekly |
| Service Fee: | | |
| Players, coaches | $18.00 | Person per weekly pay period |
| Office Staff | $12.00 | Person per weekly pay period |
| FICA (Employer Match) | 7.65% | Of taxable wages up to taxable limits |
| FUTA (Federal Unemployment) | 0.80% | Of taxable wages up to taxable limits |
| SUTA (State Unemployment) | 2.75% | Of taxable wages up to taxable limits |
| Workers' Compensation: | | |
| -Players, Coaches, Code 9179: | 11.65% | Per $100 of Payroll |
| -Office staff, Code 8810: | 0.52% | Per $100 of Payroll |
| DEDUCTIBLE: | $1000 | PER CLAIM AS ASSESSED TO EACH TEAM BY THE LEAGUE MANAGEMENT |
| Overnight Delivery | $13.00 | Per Payroll Delivery as requested |
| Direct Debit Fee | $5.00 | Per Invoice |
| One-time Setup | $495.00 | |

# RPC Employer Services, Inc.
## Service Agreement

## FEE STRUCTURE STATEMENT

| Description | Amount | Per |
|---|---|---|
| Payroll Frequency: | | Weekly |
| Service Fee: | | |
| Players, coaches | $18.00 | Person per weekly pay period |
| Office Staff | $12.00 | Person per weekly pay period |
| FICA (Employer Match) | 7.65% | Of taxable wages up to taxable limits |
| FUTA (Federal Unemployment) | 0.80% | Of taxable wages up to taxable limits |
| SUTA (State Unemployment) | 2.75% | Of taxable wages up to taxable limits |
| Workers' Compensation: | | |
| -Players, Coaches, Code 9179: | 11.65% | Per $100 of Payroll |
| -Office staff, Code 8810: | 0.52% | Per $100 of Payroll |
| DEDUCTIBLE: | $1000 | PER CLAIM AS ASSESSED TO EACH TEAM BY THE LEAGUE MANAGEMENT |
| Overnight Delivery | $13.00 | Per Payroll Delivery as requested |
| Direct Debit Fee | $5.00 | Per Invoice |
| One-time Setup | $495.00 | |

# RPC Employer Services, Inc.
## Service Agreement

## FEE STRUCTURE STATEMENT

| Description | Amount | Per |
|---|---|---|
| Payroll Frequency: | | Weekly |
| Service Fee: | | |
| Players, coaches | $18.00 | Person per weekly pay period |
| Office Staff | $12.00 | Person per weekly pay period |
| FICA (Employer Match) | 7.65% | Of taxable wages up to taxable limits |
| FUTA (Federal Unemployment) | 0.80% | Of taxable wages up to taxable limits |
| SUTA (State Unemployment) | 2.75% | Of taxable wages up to taxable limits |
| Workers' Compensation: | | |
| -Players, Coaches, Code 9179: | 11.65% | Per $100 of Payroll |
| -Office staff, Code 8810: | 0.52% | Per $100 of Payroll |
| DEDUCTIBLE: | $1000 | PER CLAIM AS ASSESSED TO EACH TEAM BY THE LEAGUE MANAGEMENT |
| Overnight Delivery | $13.00 | Per Payroll Delivery as requested |
| Direct Debit Fee | $5.00 | Per Invoice |
| One-time Setup | $495.00 | |

# EmployShare™

### Financial Details

National Indoor Football League                    October 28, 2000

| Payroll Item | 80 active clerical employees 600 active players and staff |
|---|---|
| Annual taxable wages: | As reported |
| Social security: (The employer match) | 7.65% of taxable wages |
| Federal unemployment: | 0.8% of first $7000 in wages |
| State unemployment: We will utilize Ohio as the home state based on league headquarters locating in Ohio. | OH: 2.75% of first $9,000 in wages |
| Workers' compensation We will utilize Ohio as the home state based on league headquarters locating in Ohio. | 8810: 0.52% of taxable wages 9179: 11.65% of taxable wages ✳ |
| Health Coverage: | Not quoted at this time |
| Dental Coverage: | Not quoted at this time |
| Vision Coverage: | Not quoted at this time |
| Disability Coverage: | Not quoted at this time |
| Set-up Fee (one time) | $ 495.00 Includes all employee files, handbook creation, and payroll software implementation and training. |
| RPC service fee[1]: (See footnote below) | $ 12.00/ea/pay for clerical employees $ 18.00/ea/pay for team employees Weekly (52) pay dates |
| Overnight Delivery Fee | $ 13.00 as requested |
| Invoice Direct Debit Fee | $ 5.00 per invoice |
| Employee Pay Direct Deposit | No Charge |
| Payroll Reports | No Charge |
| Section 125 Cafeteria Plan | No additional cost |
| 401(k) Retirement Plan[2]: (See footnote below) | No additional cost |

✳ *The original quote to us is as noted. — However the contract says a 1000 deductible per claim. We can manage this, but I did not know about this.*

[1] RPC service fee covers all costs related to payroll processing, new hire reporting federal, state, and local tax filing, all year-end tax filing including W2's, personnel administration, employee handbooks, labor attorney services related to RPC services provided, workers' comp administration and risk management, unemployment claims management including hearings and litigation, health insurance administration, 401(k) administration including annual fees for compliance testing and reporting.

[2] RPC'S 401(k) is free to all clients. There are no annual fees assessed for start-up or annual administrative maintenance. Great-West Life, the nation's leader in 401(k), is the administration provider. Employees can enroll on a monthly basis, with client matching provided as 'increased employee contributions'.

# *EmployShare*™
## Financial Details

National Indoor Football League                      October 28, 2000

| Payroll Item | 80 active clerical employees 600 active players and staff |
|---|---|
| Annual taxable wages: | As reported |
| Social security: (The employer match) | 7.65% of taxable wages |
| Federal unemployment: | 0.8% of first $7000 in wages |
| State unemployment: We will utilize Ohio as the home state based on league headquarters locating in Ohio. | OH: 2.75% of first $9,000 in wages |
| Workers' compensation We will utilize Ohio as the home state based on league headquarters locating in Ohio. | 8810: 0.52% of taxable wages 9179: 11.65% of taxable wages        ✳ |
| Health Coverage: | Not quoted at this time |
| Dental Coverage: | Not quoted at this time |
| Vision Coverage: | Not quoted at this time |
| Disability Coverage: | Not quoted at this time |
| Set-up Fee (one time) | $ 495.00 Includes all employee files, handbook creation, and payroll software implementation and training. |
| RPC service fee[1]: (See footnote below) | $ 12.00/ea/pay for clerical employees $ 18.00/ea/pay for team employees Weekly (52) pay dates |
| Overnight Delivery Fee | $ 13.00 as requested |
| Invoice Direct Debit Fee | $ 5.00 per invoice |
| Employee Pay Direct Deposit | No Charge |
| Payroll Reports | No Charge |
| Section 125 Cafeteria Plan | No additional cost |
| 401(k) Retirement Plan[2]: (See footnote below) | No additional cost |

✳ *The original quote to us is as noted. — However the contract says a 1000 deductible per claim. We can manage this, but I did not know about this.*

[1] RPC service fee covers all costs related to payroll processing, new hire reporting federal, state, and local tax filing, all year-end tax filing including W2's, personnel administration, employee handbooks, labor attorney services related to RPC services provided, workers' comp administration and risk management, unemployment claims management including hearings and litigation, health insurance administration, 401(k) administration including annual fees for compliance testing and reporting,

[2] RPC'S 401(k) is free to all clients. There are no annual fees assessed for start-up or annual administrative maintenance. Great-West Life, the nation's leader in 401(k), is the administration provider. Employees can enroll on a monthly basis, with client matching provided as 'increased employee contributions'.

# *EmployShare*™                                    **Financial Details**

National Indoor Football League                    October 28, 2000

| Payroll Item | 80 active clerical employees<br>600 active players and staff |
|---|---|
| Annual taxable wages: | As reported |
| Social security:<br>(The employer match) | 7.65% of taxable wages |
| Federal unemployment: | 0.8% of first $7000 in wages |
| State unemployment:<br>We will utilize Ohio as the home state based<br>on league headquarters locating in Ohio. | OH: 2.75% of first $9,000 in wages |
| Workers' compensation<br>We will utilize Ohio as the home state based<br>on league headquarters locating in Ohio. | 8810:  0.52% of taxable wages<br>9179: 11.65% of taxable wages |
| Health Coverage: | Not quoted at this time |
| Dental Coverage: | Not quoted at this time |
| Vision Coverage: | Not quoted at this time |
| Disability Coverage: | Not quoted at this time |
| Set-up Fee (one time) | $ 495.00<br>Includes all employee files, handbook creation,<br>and payroll software implementation and training. |
| RPC service fee[1]:<br>(See footnote below) | $ 12.00/ea/pay for clerical employees<br>$ 18.00/ea/pay for team employees<br>Weekly (52) pay dates |
| Overnight Delivery Fee | $ 13.00 as requested |
| Invoice Direct Debit Fee | $ 5.00 per invoice |
| Employee Pay Direct Deposit | No Charge |
| Payroll Reports | No Charge |
| Section 125 Cafeteria Plan | No additional cost |
| 401(k) Retirement Plan[2]:<br>(See footnote below) | No additional cost |

*The original quote to us is as noted. However the contract says a 1000 deductible per claim. We can manage this, but I did not know about this.*

[1] RPC service fee covers all costs related to payroll processing, new hire reporting federal, state, and local tax filing, all year-end tax filing including W2's, personnel administration, employee handbooks, labor attorney services related to RPC services provided, workers' comp administration and risk management, unemployment claims management including hearings and litigation, health insurance administration, 401(k) administration including annual fees for compliance testing and reporting,

[2] RPC'S 401(k) is free to all clients. There are no annual fees assessed for start-up or annual administrative maintenance. Great-West Life, the nation's leader in 401(k), is the administration provider. Employees can enroll on a monthly basis, with client matching provided as 'increased employee contributions'.



A program offered by RPC Employer Services, Inc.

**EmployShare®**

*The ultimate solution for managing someone's human resource needs.*

Saturday, October 28, 2000

Matt Swezey
StaffMarket Services
7316 Manatee Ave West #341
Bradenton, FL 342.9
E-mail: Matt@staffmarket.com

RE: RFP #25, NATIONAL INDOOR FOOTBALL LEAGUE, INC.

Dear Matt:

Thank you for this opportunity to respond to RFP #25, National Indoor Football League, Inc. Following is our proposal based on the information you supplied through your web site and via fax and phone. Please keep in mind that this proposal is valid until January 1, 2001. If service, in part or in whole, is not commenced by that time, then a new proposal may be necessary.

Dear National Indoor Football League, Inc. Management:

We provide employer support services that help our clients to focus on the business of their business, both in time, money, and efficiency. We call this program **EmployShare**™. As a professional employer, there are key areas that we may or may not influence, depending on your needs and requirements. Please keep in mind that every company has its unique needs and objectives. We are interested in meeting each particular need and objective <u>and will modify our service plan</u> to meet our client's specific needs.

❑ **THE BUSINESS OF**
   **PROFESSIONAL EMPLOYER ORGANIZATIONS (PEOs)**

There are specialists for nearly every type of function: trial lawyer, divorce lawyer, orthodontist, transmission specialist, aeronautic engineer, tax specialist, etc. You name it and there is likely a field of expertise to call on except being an employer. It used to be that your accountant or attorney could handle everything for you, from tax filings to personnel handbooks to workers' compensation claims hearings. But that has changed because each profession has become much more specialized. You now need to have four attorneys on hand to battle potential litigation and multiple accountants to manage taxes, abatements, payroll, health care, sales tax, and more.

**Proposal Notes**



NAPEO Member
National Association
of Professional Employer
Organizations

Page 1 of 8



EXHIBIT

D



A program offered by RPC Employer Services, Inc.

**EmployShare™**

*The ultimate solution for managing tomorrow's human resource needs.*

Professional employers specialize in *being* an employer. We utilize the economies of scale to provide services in the most cost-effective fashion possible. Payroll, payroll taxes, deductions, health care, credit union, workers' compensation, unemployment insurance, and personnel policy management are just a few of the areas we specialize in.

Our business (and industry) has flourished because we utilize our strength in numbers to provide your company with the human resource support that is necessary in order to protect your company from unwarranted government compliance implications and penalties. Following is a summary of our services that will be provided:

### ☐ WE BECOME YOUR 'VIRTUAL' PAYROLL DEPARTMENT

We are confident that you will greatly appreciate the payroll and personnel support that we give you as your virtual payroll department. You will have complete payroll wage input control via fax or Internet e-mail to our offices, but you will be able to stop at that point and walk away from the rest of your payroll and payroll tax responsibilities. This means that you will be free to focus on more profitable, profit-earning functions: receivable collections, client service, and overall increased productivity. Each of our clients has reported in different ways how they have found better, more profitable job functions for those employees that were once boggled down with administrative and payroll functions.

Employees will be receiving their earnings each Friday via direct deposit or payroll check. All data is processed by RPC, in Beaver Falls, PA, utilizing the latest in computer hardware (Dell) and software (Darwin). Our integrated HR and payroll software system provides us the support necessary to process accurate, timely checks and reports. And we make changes quickly, which is very important to our clients. They depend on us to have immediate answers.

#### *Here's how the payroll system works:*

We recommend that your staff utilize our front-end payroll input software, which we will install and train your staff on. This simple program is very easy to learn/use and will allow for a more accurate and organized transfer of wage information compared to using standard fax time sheet input.

After entering and saving input data, you will e-mail the pay date file to us on Monday or Tuesday and we will bill you for the entire payroll costs on Wednesday. You will receive your check(s) on Thursday for Friday pay date and we will receive our payment, direct debit, or wire transfer from you by

Proposal Notes



EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



A program offered by RPC Employer Services, Inc.

# EmployShare™

*The ultimate solution for managing tomorrow's human resource needs.*

Thursday. We will work with you each payroll week to make certain that the payroll is always accurate and all changes are made according to your needs.

**All payroll taxes** and payroll tax filings are the sole responsibility of RPC Employer Services, Inc. Federal, state, and local taxes are deposited each week and RPC is solely responsible for the accuracy and timeliness of payments and filings. We have been pleased with the accuracy of our processing which has enabled us to expand into other states without any tax implications. Please remember that our payroll is processed on OUR tax identification number and NOT on your number.

**Direct deposit** of an employee's net pay is a free option that we recommend to everyone. Payday should be just as productive a day as any other. Having your pay directly deposited saves time, worry, and anxiety. There really is no need to go to the bank when the Federal Reserve will place your pay in your own account. Employees on direct deposit receive the same pay stub as when receiving a check. It is easy to sign up for direct deposit (the application is in the employee's paperwork) and the process usually takes effect within two business weeks.

## ❑ WE BECOME YOUR 'VIRTUAL' PERSONNEL DEPARTMENT

You are our client; we are your vendor. We are interested in helping and supporting your organization as you see the need. Consequently, you retain day-to-day control of your associates. We become your virtual personnel department, available in person, by phone, fax, and the Internet.

We protect you from employee discipline conflicts by acting as your enforcer, your guide, and your counsel. Our clients depend daily on our team of human resource professionals because they have the client's best interests at the forefront of their objectives.

### Employee Handbook

We have a thorough and legally extensive employee handbook that will become the foundation of our mutual personnel policies. We will customize the policies within the handbook to conform to your unique needs. Our handbook covers all aspects of personnel policy that are essential for every type of company. It is authored by one of the nation's leading labor law firms, Littler-Mendelson, and is updated, as pertinent law changes become precedent.

**Proposal Notes**



NAPEO Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



A program offered by RPC Employer Services, Inc.

**Employ Share**™

*The ultimate solution for managing*
*tomorrow's human resource needs*

## Day-To-Day Personnel Communication

Policy violations and employee separations are critical points that must be documented accordingly. We have an easy-to-use ADVISORY FORM that can be faxed or e-mailed between our companies as a means of documenting an employee's personnel file. We utilize a staff of seasoned attorneys in matters of labor, unemployment, and workers' compensation and will use their services at no added charge to you. We want to protect our relationship with your employees and will put forth our best efforts to make sure that all personnel correspondence is handled in the most professional and confidential manner possible.

Our clients depend on our impartial implementation of policy, knowing that our sole objective is to protect them from needless litigation and conflict.

## ☐ WORKERS' COMPENSATION MANAGEMENT

Your group will becomes part of our Ohio workers' compensation pool, managed by our staff in conjunction with Professional Risk management, Youngstown, Ohio, one of the nation's leading workers' compensation management companies. Your workers' compensation premium is remitted each pay period and is calculated against actual reported wages. There are no premium deposits or final audits since you are part of our group

We are responsible for all claims, including accident reporting, accident investigation, and pending litigation. However, we expect your complete cooperation in all matters relating to our mutual employees.

All clients are expected to make available light-duty job assignments for early return-to-work situations. Light-duty assignments not only reduce your total cost, but also help to get the injured employee into the workplace sooner. We will guide you through light-duty options as the need arises.

## Workers' Compensation Premium Savings

RPC enjoys an extremely large credit on its Ohio workers' compensation policy. You will save at least $436,536 in workers' compensation premium by utilizing our service. The base rate for code 9179 is 26.1958% of taxable wages. RPC will charge 11.65% of taxable wages, which amounts to a savings of 56% off base rate. Ohio is a state-run workers' compensation insurance program and we have received approval from our pool managers to add your group. Ohio will cover your teams and support staff in Ohio based on the national headquarters for your league locating Ohio, preferably close at hand in Warren, Ohio.

**Proposal Notes**



NAPEO Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



A program offered by RPC Employer Services, Inc.

**EmployShare**

*The ultimate solution for managing tomorrow's human resource needs.*

## NORTH EAST OHIO, A FOOTBALL CAPITAL

Warren, Ohio, located 20 miles north of Youngstown, is equidistant from Cleveland (Browns) and Pittsburgh (Steelers). Football has always been the premier sport. Rent, taxes, and such are very low in Warren as compared to any other area.

Population is 479,155 with median household income of $33,479. Median home value is $67,928 and the business base includes General Motors and numerous large steel makers.

Local support for your organization will be tremendous, especially if you can build an arena here also. We have solid relationships within the community and with political leaders. We can help you grow and prosper while at the same time serving your payroll and personnel needs. Certainly a mutually beneficial business relationship.

## ❏ UNEMPLOYMENT INSURANCE MANAGEMENT

Since all employees are paid on our tax identification number, you are literally protected from tangles with unemployment claims. We will minimize unemployment claims abuse through careful implementation of our policy handbook along with our Advisory form. Every advisory communication from your managers will become part of the employee's personnel file. We will work closely with your managers to make sure that we abide by the law yet control unnecessary unemployment claims. Of course, you are free to apply your time to your business. We will apply our time to controlling hidden litigation that can easily arise out of an employment dispute.

## ❏ CREDIT UNION BENEFITS

We belong to numerous credit unions, so your employees will be welcomed to join the credit union of their choice. There are many valuable services available to all employees, from Visa cards to home and auto loans. The interest rates are exceptional and the service response is prompt. We hope that employees consider setting aside some money for the future and we want to make that process as simple and easy as possible. Any payroll deductions to credit unions are directly deposited into employee accounts, which makes the process quick and accurate.

Proposal
Notes



NAPEO Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



A program offered by RPC Employer Services, Inc.

# EmployShare™

*The ultimate solution for managing tomorrow's human resource needs.*

❑ **NATIONAL PPO HEALTH COVERAGE**

We have an excellent medical benefits plan. Since medical benefits are not part of your Request For Proposal, we can discuss these matters at a later date and as you see the need.

❑ **NATIONAL DENTAL COVERAGE**

Dental coverage is available but is not being presented at this time per your request.

❑ **VISION COVERAGE**

Vision coverage is available but is not being presented at this time per your request.

❑ **LIFE INSURANCE**

Our medical plan includes $10,000 of term coverage for all employees. For two-party and family coverage, we include spouse coverage of $2,500 and dependent coverage of $1,000 per dependent.

❑ **DISABILITY INCOME PROTECTION**

Group disability income protection is available. Our plan is an integrated benefit that includes life, ltd, and std. Rates are exceptional and coverage is extended on a guarantee issue basis which means that there are no medical questions asked for standard coverage. Guarantee issue limits are:

        LIFE:       $190,000
        LTD:        $10,000 per month
        STD:        $1,385 per week

Your actual benefit and rate is based on the life amount, which is equal to annual earnings.

❑ **SECTION 125 PRE-TAX DEDUCTION SERVICES**

We have an IRS-approved Section 125 plan that allows all health insurance deductions to be withheld from paychecks on a pre-tax basis. All employee deductions are withheld from gross wages, which saves the employee and your company tremendous tax dollars. We pass these savings directly to your invoice and your employees take home more net pay.

❑ **401(k) RETIREMENT PLAN SERVICES**

We have an excellent retirement program through our 401(k) plan administered by Great West, one of the Nation's leading plan administrators. Employees can set aside any amount of money each week, tax-deferred, through payroll deduction and take advantage of compound interest earnings immediately. We do not charge extra fees for using our

**Proposal Notes**



NAPEO Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



401(k) plan, so employees are free to join the plan at their discretion. Our plan allows bonus contributions to be made on behalf of employees. This means that you can elect to use our 401(k) as a vehicle for distributing profit sharing or other incentive payments.



## ❑ FINANCIAL SERVICES

All EmployShare associates are eligible to receive American Express Financial Services at preferred rates. Investment advice, pertaining to the 401(k), can be very useful for maximizing return on your employees' 401(k) earnings.

Management workshops and seminars are available at no added charge. Personal Financial services are made available to all EmployShare associates at preferred rates.

**Note:** American Express Financial Advisors is one of the largest EmployShare clients (associates). You may want to discuss our program with them to better understand why they chose EmployShare over all other employer service options.

## ❑ FINANCIAL DETAILS

See attached for all rate details.

## ❑ GETTING STARTED

Here is a snapshot of the implementation process, should you decide to proceed:

1. Review proposal and discuss all issues and questions.
2. Authorize Service Agreement; detailing relationship between parties, rates, terms, and effective start date.
3. Complete Employee enrollment files. We usually meet with each employee group to discuss all aspects of our program, answer questions about paperwork, and explain in detail all benefits, 401(k), insurance, etc.
4. Process employee enrollment information and other relevant forms.
5. Prepare invoice remittance process, whether by wire transfer or direct debit. Bank routing and account information is gathered and setup in advance. All payroll invoices are due and payable before release of paychecks.

Proposal Notes





A program offered by RPC Employer Services, Inc.

## EmployShare®

*The ultimate solution for managing tomorrow's human resource needs.*

6. Install front-end payroll input software at client site. Conduct training for client personnel dealing with payroll input software (one hour). Conduct input and e-mail tests using sample payroll files.
7. Create first input data file at RPC based and e-mail to client for first pay. RPC will create new payroll input files every pay period to insure that client has accurate account of all active employees.
8. Receive first payroll input file from client, process all data, and invoice customer by fax or e-mail.
9. Receive first invoice payment via wire transfer or direct debit.
10. Deliver paychecks (or direct deposits) to customer along with hard copy of invoice and invoice detail reports, department costing, and other required reports.

The EmployShare payroll and human resource system can produce nearly any report imaginable. We will determine beforehand the exact format of each report required and the frequency of each report.

We know that you and your employees will appreciate our package of services. Please call me at 800-635-9961 with your questions. I look forward to discussing your questions and hope that we can be of service as you see the need.

Thank you for this consideration.

Sincerely,

*Daniel J. D'Alio*

Daniel D'Alio
President & CEO

**Proposal Notes**



NAPEO   Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM

## *EmployShare*™                    **Financial Details**

National Indoor Football League                    October 28, 2000

| Payroll Item | 80 active clerical employees 600 active players and staff |
|---|---|
| **Annual taxable wages:** | **As reported** |
| **Social security:** **(The employer match)** | **7.65% of taxable wages** |
| **Federal unemployment:** | **0.8% of first $7000 in wages** |
| **State unemployment:** We will utilize Ohio as the home state based on league headquarters locating in Ohio. | **OH: 2.75% of first $9,000 in wages** |
| **Workers' compensation** We will utilize Ohio as the home state based on league headquarters locating in Ohio. | **8810:  0.52% of taxable wages** **9179: 11.65% of taxable wages** |
| **Health Coverage:** | **Not quoted at this time** |
| **Dental Coverage:** | **Not quoted at this time** |
| **Vision Coverage:** | **Not quoted at this time** |
| **Disability Coverage:** | **Not quoted at this time** |
| **Set-up Fee (one time)** | **$ 495.00** Includes all employee files, handbook creation, and payroll software implementation and training. |
| **RPC service fee[1]:** **(See footnote below)** | **$ 12.00/ea/pay for clerical employees** **$ 18.00/ea/pay for team employees** **Weekly (52) pay dates** |
| **Overnight Delivery Fee** | **$ 13.00 as requested** |
| **Invoice Direct Debit Fee** | **$ 5.00 per invoice** |
| **Employee Pay Direct Deposit** | **No Charge** |
| **Payroll Reports** | **No Charge** |
| **Section 125 Cafeteria Plan** | **No additional cost** |
| **401(k) Retirement Plan[2]:** **(See footnote below)** | **No additional cost** |

[1] RPC service fee covers all costs related to payroll processing, new hire reporting federal, state, and local tax filing, all year-end tax filing including W2's, personnel administration, employee handbooks, labor attorney services related to RPC services provided, workers' comp administration and risk management, unemployment claims management including hearings and litigation, health insurance administration, 401(k) administration including annual fees for compliance testing and reporting,

[2] RPC'S 401(k) is free to all clients. There are no annual fees assessed for start-up or annual administrative maintenance. Great-West Life, the nation's leader in 401(k), is the administration provider. Employees can enroll on a monthly basis, with client matching provided as 'increased employee contributions'.



A program offered by RPC Employer Services, Inc.

# EmployShare®

*The ultimate solution for managing tomorrow's human resource needs.*

Saturday, October 28, 2000

Matt Swezey
StaffMarket Services
7316 Manatee Ave West #341
Bradenton, FL 342.9
E-mail: Matt@staffmarket.com

RE: RFP #25, NATIONAL INDOOR FOOTBALL LEAGUE, INC.

Dear Matt:

Thank you for this opportunity to respond to RFP #25, National Indoor Football League, Inc. Following is our proposal based on the information you supplied through your web site and via fax and phone. Please keep in mind that this proposal is valid until January 1, 2001. If service, in part or in whole, is not commenced by that time, then a new proposal may be necessary.

Dear National Indoor Football League, Inc. Management:

We provide employer support services that help our clients to focus on the business of their business, both in time, money, and efficiency. We call this program **EmployShare™**. As a professional employer, there are key areas that we may or may not influence, depending on your needs and requirements. Please keep in mind that every company has its unique needs and objectives. We are interested in meeting each particular need and objective <u>and will modify our service plan</u> to meet our client's specific needs.

## ❑ THE BUSINESS OF
## PROFESSIONAL EMPLOYER ORGANIZATIONS (PEOs)

There are specialists for nearly every type of function: trial lawyer, divorce lawyer, orthodontist, transmission specialist, aeronautic engineer, tax specialist, etc. You name it and there is likely a field of expertise to call on except being an employer. It used to be that your accountant or attorney could handle everything for you, from tax filings to personnel handbooks to workers' compensation claims hearings. But that has changed because each profession has become much more specialized. You now need to have four attorneys on hand to battle potential litigation and multiple accountants to manage taxes, abatements, payroll, health care, sales tax, and more.

**Proposal Notes**



NAPEO Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM


EXHIBIT

D



A program offered by RPC Employer Services, Inc.

# EmployShare℠

*The ultimate solution for managing tomorrow's human resource needs.*

Professional employers specialize in *being* an employer. We utilize the economies of scale to provide services in the most cost-effective fashion possible. Payroll, payroll taxes, deductions, health care, credit union, workers' compensation, unemployment insurance, and personnel policy management are just a few of the areas we specialize in.

Our business (and industry) has flourished because we utilize our strength in numbers to provide your company with the human resource support that is necessary in order to protect your company from unwarranted government compliance implications and penalties. Following is a summary of our services that will be provided:

## ❑ WE BECOME YOUR 'VIRTUAL' PAYROLL DEPARTMENT

We are confident that you will greatly appreciate the payroll and personnel support that we give you as your virtual payroll department. You will have complete payroll wage input control via fax or Internet e-mail to our offices, but you will be able to stop at that point and walk away from the rest of your payroll and payroll tax responsibilities. This means that you will be free to focus on more profitable, profit-earning functions: receivable collections, client service, and overall increased productivity. Each of our clients has reported in different ways how they have found better, more profitable job functions for those employees that were once boggled down with administrative and payroll functions.

Employees will be receiving their earnings each Friday via direct deposit or payroll check. All data is processed by RPC, in Beaver Falls, PA, utilizing the latest in computer hardware (Dell) and software (Darwin). Our integrated HR and payroll software system provides us the support necessary to process accurate, timely checks and reports. And we make changes quickly, which is very important to our clients. They depend on us to have immediate answers.

### *Here's how the payroll system works:*

We recommend that your staff utilize our front-end payroll input software, which we will install and train your staff on. This simple program is very easy to learn/use and will allow for a more accurate and organized transfer of wage information compared to using standard fax time sheet input.

After entering and saving input data, you will e-mail the pay date file to us on Monday or Tuesday and we will bill you for the entire payroll costs on Wednesday. You will receive your check(s) on Thursday for Friday pay date and we will receive our payment, direct debit, or wire transfer from you by

Proposal Notes



**NAPEO** Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



Thursday. We will work with you each payroll week to make certain that the payroll is always accurate and all changes are made according to your needs.

**All payroll taxes** and payroll tax filings are the sole responsibility of RPC Employer Services, Inc. Federal, state, and local taxes are deposited each week and RPC is solely responsible for the accuracy and timeliness of payments and filings. We have been pleased with the accuracy of our processing which has enabled us to expand into other states without any tax implications. Please remember that our payroll is processed on OUR tax identification number and NOT on your number.

**Direct deposit** of an employee's net pay is a free option that we recommend to everyone. Payday should be just as productive a day as any other. Having your pay directly deposited saves time, worry, and anxiety. There really is no need to go to the bank when the Federal Reserve will place your pay in your own account. Employees on direct deposit receive the same pay stub as when receiving a check. It is easy to sign up for direct deposit (the application is in the employee's paperwork) and the process usually takes effect within two business weeks.

## ❑ WE BECOME YOUR 'VIRTUAL' PERSONNEL DEPARTMENT

You are our client; we are your vendor. We are interested in helping and supporting your organization as you see the need. Consequently, you retain day-to-day control of your associates. We become your virtual personnel department, available in person, by phone, fax, and the Internet.

We protect you from employee discipline conflicts by acting as your enforcer, your guide, and your counsel. Our clients depend daily on our team of human resource professionals because they have the client's best interests at the forefront of their objectives.

### Employee Handbook

We have a thorough and legally extensive employee handbook that will become the foundation of our mutual personnel policies. We will customize the policies within the handbook to conform to your unique needs. Our handbook covers all aspects of personnel policy that are essential for every type of company. It is authored by one of the nation's leading labor law firms, Littler-Mendelson, and is updated, as pertinent law changes become precedent.

Proposal
Notes



EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



A program offered by RPC Employer Services, Inc.

**EmployShare**
*The ultimate solution for managing
tomorrow's human resource needs.*

## Day-To-Day Personnel Communication

Policy violations and employee separations are critical points that must be documented accordingly. We have an easy-to-use ADVISORY FORM that can be faxed or e-mailed between our companies as a means of documenting an employee's personnel file. We utilize a staff of seasoned attorneys in matters of labor, unemployment, and workers' compensation and will use their services at no added charge to you. We want to protect our relationship with your employees and will put forth our best efforts to make sure that all personnel correspondence is handled in the most professional and confidential manner possible.

Our clients depend on our impartial implementation of policy, knowing that our sole objective is to protect them from needless litigation and conflict.

## ❑ WORKERS' COMPENSATION MANAGEMENT

Your group will becomes part of our Ohio workers' compensation pool, managed by our staff in conjunction with Professional Risk management, Youngstown, Ohio, one of the nation's leading workers' compensation management companies. Your workers' compensation premium is remitted each pay period and is calculated against actual reported wages. There are no premium deposits or final audits since you are part of our group

We are responsible for all claims, including accident reporting, accident investigation, and pending litigation. However, we expect your complete cooperation in all matters relating to our mutual employees.

All clients are expected to make available light-duty job assignments for early return-to-work situations. Light-duty assignments not only reduce your total cost, but also help to get the injured employee into the workplace sooner. We will guide you through light-duty options as the need arises.

## Workers' Compensation Premium Savings

RPC enjoys an extremely large credit on its Ohio workers' compensation policy. You will save at least $436,536 in workers' compensation premium by utilizing our service. The base rate for code 9179 is 26.1958% of taxable wages. RPC will charge 11.65% of taxable wages, which amounts to a savings of 56% off base rate. Ohio is a state-run workers' compensation insurance program and we have received approval from our pool managers to add your group. Ohio will cover your teams and support staff in Ohio based on the national headquarters for your league locating Ohio, preferably close at hand in Warren, Ohio.

Proposal
Notes



NAPEO Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



A program offered by RPC Employer Services, Inc.

**EmployShare™**

*The ultimate solution for managing
tomorrow's human resource needs.*

## NORTH EAST OHIO, A FOOTBALL CAPITAL

Warren, Ohio, located 20 miles north of Youngstown, is equidistant from Cleveland (Browns) and Pittsburgh (Steelers). Football has always been the premier sport. Rent, taxes, and such are very low in Warren as compared to any other area.

Population is 479,155 with median household income of $33,479. Median home value is $67,928 and the business base includes General Motors and numerous large steel makers.

Local support for your organization will be tremendous, especially if you can build an arena here also. We have solid relationships within the community and with political leaders. We can help you grow and prosper while at the same time serving your payroll and personnel needs. Certainly a mutually beneficial business relationship.

## ☐ UNEMPLOYMENT INSURANCE MANAGEMENT

Since all employees are paid on our tax identification number, you are literally protected from tangles with unemployment claims. We will minimize unemployment claims abuse through careful implementation of our policy handbook along with our Advisory form. Every advisory communication from your managers will become part of the employee's personnel file. We will work closely with your managers to make sure that we abide by the law yet control unnecessary unemployment claims. Of course, you are free to apply your time to your business. We will apply our time to controlling hidden litigation that can easily arise out of an employment dispute.

## ☐ CREDIT UNION BENEFITS

We belong to numerous credit unions, so your employees will be welcomed to join the credit union of their choice. There are many valuable services available to all employees, from Visa cards to home and auto loans. The interest rates are exceptional and the service response is prompt. We hope that employees consider setting aside some money for the future and we want to make that process as simple and easy as possible. Any payroll deductions to credit unions are directly deposited into employee accounts, which makes the process quick and accurate.

Proposal
Notes



*NAPEO* Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



A program offered by RPC Employer Services, Inc.

# EmployShare™

*The ultimate solution for managing tomorrow's human resource needs.*

## ❏ **NATIONAL PPO HEALTH COVERAGE**

We have an excellent medical benefits plan. Since medical benefits are not part of your Request For Proposal, we can discuss these matters at a later date and as you see the need.

## ❏ **NATIONAL DENTAL COVERAGE**

Dental coverage is available but is not being presented at this time per your request.

## ❏ **VISION COVERAGE**

Vision coverage is available but is not being presented at this time per your request.

## ❏ **LIFE INSURANCE**

Our medical plan includes $10,000 of term coverage for all employees. For two-party and family coverage, we include spouse coverage of $2,500 and dependent coverage of $1,000 per dependent.

## ❏ **DISABILITY INCOME PROTECTION**

Group disability income protection is available. Our plan is an integrated benefit that includes life, ltd, and std. Rates are exceptional and coverage is extended on a guarantee issue basis which means that there are no medical questions asked for standard coverage. Guarantee issue limits are:

    LIFE:     $190,000
    LTD:     $10,000 per month
    STD:     $1,385 per week

Your actual benefit and rate is based on the life amount, which is equal to annual earnings.

## ❏ **SECTION 125 PRE-TAX DEDUCTION SERVICES**

We have an IRS-approved Section 125 plan that allows all health insurance deductions to be withheld from paychecks on a pre-tax basis. All employee deductions are withheld from gross wages, which saves the employee and your company tremendous tax dollars. We pass these savings directly to your invoice and your employees take home more net pay.

## ❏ **401(k) RETIREMENT PLAN SERVICES**

We have an excellent retirement program through our 401(k) plan administered by Great West, one of the Nation's leading plan administrators. Employees can set aside any amount of money each week, tax-deferred, through payroll deduction and take advantage of compound interest earnings immediately. We do not charge extra fees for using our

**Proposal Notes**



NAPEO Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



401(k) plan, so employees are free to join the plan at their discretion. Our plan allows bonus contributions to be made on behalf of employees. This means that you can elect to use our 401(k) as a vehicle for distributing profit sharing or other incentive payments.



## ❏ FINANCIAL SERVICES

All EmployShare associates are eligible to receive American Express Financial Services at preferred rates. Investment advice, pertaining to the 401(k), can be very useful for maximizing return on your employees' 401(k) earnings.

Management workshops and seminars are available at no added charge. Personal Financial services are made available to all EmployShare associates at preferred rates.

**Note:** American Express Financial Advisors is one of the largest EmployShare clients (associates). You may want to discuss our program with them to better understand why they chose EmployShare over all other employer service options.

## ❏ FINANCIAL DETAILS

See attached for all rate details.

## ❏ GETTING STARTED

Here is a snapshot of the implementation process, should you decide to proceed:

1. Review proposal and discuss all issues and questions.
2. Authorize Service Agreement; detailing relationship between parties, rates, terms, and effective start date.
3. Complete Employee enrollment files. We usually meet with each employee group to discuss all aspects of our program, answer questions about paperwork, and explain in detail all benefits, 401(k), insurance, etc.
4. Process employee enrollment information and other relevant forms.
5. Prepare invoice remittance process, whether by wire transfer or direct debit. Bank routing and account information is gathered and setup in advance. All payroll invoices are due and payable before release of paychecks.

Proposal Notes



EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



A program offered by RPC Employer Services, Inc.

# EmployShare

*The ultimate solution for managing tomorrow's human resource needs.*

6. Install front-end payroll input software at client site. Conduct training for client personnel dealing with payroll input software (one hour). Conduct input and e-mail tests using sample payroll files.

7. Create first input data file at RPC based and e-mail to client for first pay. RPC will create new payroll input files every pay period to insure that client has accurate account of all active employees.

8. Receive first payroll input file from client, process all data, and invoice customer by fax or e-mail.

9. Receive first invoice payment via wire transfer or direct debit.

10. Deliver paychecks (or direct deposits) to customer along with hard copy of invoice and invoice detail reports, department costing, and other required reports.

The EmployShare payroll and human resource system can produce nearly any report imaginable. We will determine beforehand the exact format of each report required and the frequency of each report.

We know that you and your employees will appreciate our package of services. Please call me at 800-635-9961 with your questions. I look forward to discussing your questions and hope that we can be of service as you see the need.

Thank you for this consideration.

Sincerely,

*Daniel J. D'Alio*

Daniel D'Alio
President & CEO

## Proposal Notes



EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM

## *EmployShare*™                     **Financial Details**

National Indoor Football League                     October 28, 2000

| Payroll Item | 80 active clerical employees 600 active players and staff |
|---|---|
| **Annual taxable wages:** | **As reported** |
| **Social security:** **(The employer match)** | **7.65% of taxable wages** |
| **Federal unemployment:** | **0.8% of first $7000 in wages** |
| **State unemployment:** We will utilize Ohio as the home state based on league headquarters locating in Ohio. | **OH: 2.75% of first $9,000 in wages** |
| **Workers' compensation** We will utilize Ohio as the home state based on league headquarters locating in Ohio. | **8810:  0.52% of taxable wages** **9179: 11.65% of taxable wages** |
| **Health Coverage:** | **Not quoted at this time** |
| **Dental Coverage:** | **Not quoted at this time** |
| **Vision Coverage:** | **Not quoted at this time** |
| **Disability Coverage:** | **Not quoted at this time** |
| **Set-up Fee (one time)** | **$ 495.00** Includes all employee files, handbook creation, and payroll software implementation and training. |
| **RPC service fee[1]:** **(See footnote below)** | **$ 12.00/ea/pay for clerical employees** **$ 18.00/ea/pay for team employees** **Weekly (52) pay dates** |
| **Overnight Delivery Fee** | **$ 13.00 as requested** |
| **Invoice Direct Debit Fee** | **$ 5.00 per invoice** |
| **Employee Pay Direct Deposit** | **No Charge** |
| **Payroll Reports** | **No Charge** |
| **Section 125 Cafeteria Plan** | **No additional cost** |
| **401(k) Retirement Plan[2]:** **(See footnote below)** | **No additional cost** |

[1] RPC service fee covers all costs related to payroll processing, new hire reporting federal, state, and local tax filing, all year-end tax filing including W2's, personnel administration, employee handbooks, labor attorney services related to RPC services provided, workers' comp administration and risk management, unemployment claims management including hearings and litigation, health insurance administration, 401(k) administration including annual fees for compliance testing and reporting,

[2] RPC'S 401(k) is free to all clients. There are no annual fees assessed for start-up or annual administrative maintenance. Great-West Life, the nation's leader in 401(k), is the administration provider. Employees can enroll on a monthly basis, with client matching provided as 'increased employee contributions'.



A program offered by RPC Employer Services, Inc.

**EmployShare**
The ultimate solution for managing tomorrow's human resource needs.

Saturday, October 28, 2000

Matt Swezey
StaffMarket Services
7316 Manatee Ave West #341
Bradenton, FL 342.9
E-mail: Matt@staffmarket.com

RE: RFP #25, NATIONAL INDOOR FOOTBALL LEAGUE, INC.

Dear Matt:

Thank you for this opportunity to respond to RFP #25, National Indoor Football League, Inc. Following is our proposal based on the information you supplied through your web site and via fax and phone. Please keep in mind that this proposal is valid until January 1, 2001. If service, in part or in whole, is not commenced by that time, then a new proposal may be necessary.

**Proposal Notes**

Dear National Indoor Football League, Inc. Management:

We provide employer support services that help our clients to focus on the business of their business, both in time, money, and efficiency. We call this program **EmployShare**™. As a professional employer, there are key areas that we may or may not influence, depending on your needs and requirements. Please keep in mind that every company has its unique needs and objectives. We are interested in meeting each particular need and objective <u>and will modify our service plan</u> to meet our client's specific needs.

❑ **THE BUSINESS OF**
   **PROFESSIONAL EMPLOYER ORGANIZATIONS (PEOs)**
There are specialists for nearly every type of function: trial lawyer, divorce lawyer, orthodontist, transmission specialist, aeronautic engineer, tax specialist, etc. You name it and there is likely a field of expertise to call on except being an employer. It used to be that your accountant or attorney could handle everything for you, from tax filings to personnel handbooks to workers' compensation claims hearings. But that has changed because each profession has become much more specialized. You now need to have four attorneys on hand to battle potential litigation and multiple accountants to manage taxes, abatements, payroll, health care, sales tax, and more.



NAPEO Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



**EXHIBIT**

D



Professional employers specialize in *being* an employer. We utilize the economies of scale to provide services in the most cost-effective fashion possible. Payroll, payroll taxes, deductions, health care, credit union, workers' compensation, unemployment insurance, and personnel policy management are just a few of the areas we specialize in.

Our business (and industry) has flourished because we utilize our strength in numbers to provide your company with the human resource support that is necessary in order to protect your company from unwarranted government compliance implications and penalties. Following is a summary of our services that will be provided:

## ❑ WE BECOME YOUR 'VIRTUAL' PAYROLL DEPARTMENT

We are confident that you will greatly appreciate the payroll and personnel support that we give you as your virtual payroll department. You will have complete payroll wage input control via fax or Internet e-mail to our offices, but you will be able to stop at that point and walk away from the rest of your payroll and payroll tax responsibilities. This means that you will be free to focus on more profitable, profit-earning functions: receivable collections, client service, and overall increased productivity. Each of our clients has reported in different ways how they have found better, more profitable job functions for those employees that were once boggled down with administrative and payroll functions.

Employees will be receiving their earnings each Friday via direct deposit or payroll check. All data is processed by RPC, in Beaver Falls, P.A, utilizing the latest in computer hardware (Dell) and software (Darwin). Our integrated HR and payroll software system provides us the support necessary to process accurate, timely checks and reports. And we make changes quickly, which is very important to our clients. They depend on us to have immediate answers.

### *Here's how the payroll system works:*

We recommend that your staff utilize our front-end payroll input software, which we will install and train your staff on. This simple program is very easy to learn/use and will allow for a more accurate and organized transfer of wage information compared to using standard fax time sheet input.

After entering and saving input data, you will e-mail the pay date file to us on Monday or Tuesday and we will bill you for the entire payroll costs on Wednesday. You will receive your check(s) on Thursday for Friday pay date and we will receive our payment, direct debit, or wire transfer from you by

Proposal
Notes



EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



A program offered by RPC Employer Services, Inc.

## EmployShare™
*The ultimate solution for managing tomorrow's human resource needs.*

Thursday. We will work with you each payroll week to make certain that the payroll is always accurate and all changes are made according to your needs.

**All payroll taxes** and payroll tax filings are the sole responsibility of RPC Employer Services, Inc. Federal, state, and local taxes are deposited each week and RPC is solely responsible for the accuracy and timeliness of payments and filings. We have been pleased with the accuracy of our processing which has enabled us to expand into other states without any tax implications. Please remember that our payroll is processed on OUR tax identification number and NOT on your number.

**Direct deposit** of an employee's net pay is a free option that we recommend to everyone. Payday should be just as productive a day as any other. Having your pay directly deposited saves time, worry, and anxiety. There really is no need to go to the bank when the Federal Reserve will place your pay in your own account. Employees on direct deposit receive the same pay stub as when receiving a check. It is easy to sign up for direct deposit (the application is in the employee's paperwork) and the process usually takes effect within two business weeks.

## ❏ WE BECOME YOUR 'VIRTUAL' PERSONNEL DEPARTMENT
You are our client; we are your vendor. We are interested in helping and supporting your organization as you see the need. Consequently, you retain day-to-day control of your associates. We become your virtual personnel department, available in person, by phone, fax, and the Internet.

We protect you from employee discipline conflicts by acting as your enforcer, your guide, and your counsel. Our clients depend daily on our team of human resource professionals because they have the client's best interests at the forefront of their objectives.

### Employee Handbook
We have a thorough and legally extensive employee handbook that will become the foundation of our mutual personnel policies. We will customize the policies within the handbook to conform to your unique needs. Our handbook covers all aspects of personnel policy that are essential for every type of company. It is authored by one of the nation's leading labor law firms, Littler-Mendelson, and is updated, as pertinent law changes become precedent.

Proposal
Notes



NAPEO Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



A program offered by RPC Employer Services, Inc.

**EmployShare™**

*The ultimate solution for managing tomorrow's human resource needs.*

## Day-To-Day Personnel Communication

Policy violations and employee separations are critical points that must be documented accordingly. We have an easy-to-use ADVISORY FORM that can be faxed or e-mailed between our companies as a means of documenting an employee's personnel file. We utilize a staff of seasoned attorneys in matters of labor, unemployment, and workers' compensation and will use their services at no added charge to you. We want to protect our relationship with your employees and will put forth our best efforts to make sure that all personnel correspondence is handled in the most professional and confidential manner possible.

Our clients depend on our impartial implementation of policy, knowing that our sole objective is to protect them from needless litigation and conflict.

## ❑ WORKERS' COMPENSATION MANAGEMENT

Your group will becomes part of our Ohio workers' compensation pool, managed by our staff in conjunction with Professional Risk management, Youngstown, Ohio, one of the nation's leading workers' compensation management companies. Your workers' compensation premium is remitted each pay period and is calculated against actual reported wages. There are no premium deposits or final audits since you are part of our group

We are responsible for all claims, including accident reporting, accident investigation, and pending litigation. However, we expect your complete cooperation in all matters relating to our mutual employees.

All clients are expected to make available light-duty job assignments for early return-to-work situations. Light-duty assignments not only reduce your total cost, but also help to get the injured employee into the workplace sooner. We will guide you through light-duty options as the need arises.

## Workers' Compensation Premium Savings

RPC enjoys an extremely large credit on its Ohio workers' compensation policy. You will save at least $436,536 in workers' compensation premium by utilizing our service. The base rate for code 9179 is 26.1958% of taxable wages. RPC will charge 11.65% of taxable wages, which amounts to a savings of 56% off base rate. Ohio is a state-run workers' compensation insurance program and we have received approval from our pool managers to add your group. Ohio will cover your teams and support staff in Ohio based on the national headquarters for your league locating Ohio, preferably close at hand in Warren, Ohio.

Proposal Notes

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



**NAPEO** Member
National Association
of Professional Employer
Organizations



## NORTH EAST OHIO, A FOOTBALL CAPITAL

Warren, Ohio, located 20 miles north of Youngstown, is equidistant from Cleveland (Browns) and Pittsburgh (Steelers). Football has always been the premier sport. Rent, taxes, and such are very low in Warren as compared to any other area.

Population is 479,155 with median household income of $33,479. Median home value is $67,928 and the business base includes General Motors and numerous large steel makers.

Local support for your organization will be tremendous, especially if you can build an arena here also. We have solid relationships within the community and with political leaders. We can help you grow and prosper while at the same time serving your payroll and personnel needs. Certainly a mutually beneficial business relationship.

## ❑ UNEMPLOYMENT INSURANCE MANAGEMENT

Since all employees are paid on our tax identification number, you are literally protected from tangles with unemployment claims. We will minimize unemployment claims abuse through careful implementation of our policy handbook along with our Advisory form. Every advisory communication from your managers will become part of the employee's personnel file. We will work closely with your managers to make sure that we abide by the law yet control unnecessary unemployment claims. Of course, you are free to apply your time to your business. We will apply our time to controlling hidden litigation that can easily arise out of an employment dispute.

## ❑ CREDIT UNION BENEFITS

We belong to numerous credit unions, so your employees will be welcomed to join the credit union of their choice. There are many valuable services available to all employees, from Visa cards to home and auto loans. The interest rates are exceptional and the service response is prompt. We hope that employees consider setting aside some money for the future and we want to make that process as simple and easy as possible. Any payroll deductions to credit unions are directly deposited into employee accounts, which makes the process quick and accurate.

Proposal
Notes



EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM



## ❑ NATIONAL PPO HEALTH COVERAGE

We have an excellent medical benefits plan. Since medical benefits are not part of your Request For Proposal, we can discuss these matters at a later date and as you see the need.

## ❑ NATIONAL DENTAL COVERAGE

Dental coverage is available but is not being presented at this time per your request.

## ❑ VISION COVERAGE

Vision coverage is available but is not being presented at this time per your request.

## ❑ LIFE INSURANCE

Our medical plan includes $10,000 of term coverage for all employees. For two-party and family coverage, we include spouse coverage of $2,500 and dependent coverage of $1,000 per dependent.

## ❑ DISABILITY INCOME PROTECTION

Group disability income protection is available. Our plan is an integrated benefit that includes life, ltd, and std. Rates are exceptional and coverage is extended on a guarantee issue basis which means that there are no medical questions asked for standard coverage. Guarantee issue limits are:

| | |
|---|---|
| LIFE: | $190,000 |
| LTD: | $10,000 per month |
| STD: | $1,385 per week |

Your actual benefit and rate is based on the life amount, which is equal to annual earnings.

## ❑ SECTION 125 PRE-TAX DEDUCTION SERVICES

We have an IRS-approved Section 125 plan that allows all health insurance deductions to be withheld from paychecks on a pre-tax basis. All employee deductions are withheld from gross wages, which saves the employee and your company tremendous tax dollars. We pass these savings directly to your invoice and your employees take home more net pay.

## ❑ 401(k) RETIREMENT PLAN SERVICES

We have an excellent retirement program through our 401(k) plan administered by Great West, one of the Nation's leading plan administrators. Employees can set aside any amount of money each week, tax-deferred, through payroll deduction and take advantage of compound interest earnings immediately. We do not charge extra fees for using our

```
                                        Proposal
                                        Notes
```



Page 6 of 8



401(k) plan, so employees are free to join the plan at their discretion. Our plan allows bonus contributions to be made on behalf of employees. This means that you can elect to use our 401(k) as a vehicle for distributing profit sharing or other incentive payments.



## ❑ **FINANCIAL SERVICES**

All EmployShare associates are eligible to receive American Express Financial Services at preferred rates. Investment advice, pertaining to the 401(k), can be very useful for maximizing return on your employees' 401(k) earnings.

Management workshops and seminars are available at no added charge. Personal Financial services are made available to all EmployShare associates at preferred rates.

**Note:** American Express Financial Advisors is one of the largest EmployShare clients (associates). You may want to discuss our program with them to better understand why they chose EmployShare over all other employer service options.

## ❑ **FINANCIAL DETAILS**

See attached for all rate details.

## ❑ **GETTING STARTED**

Here is a snapshot of the implementation process, should you decide to proceed:

1. Review proposal and discuss all issues and questions.
2. Authorize Service Agreement; detailing relationship between parties, rates, terms, and effective start date.
3. Complete Employee enrollment files. We usually meet with each employee group to discuss all aspects of our program, answer questions about paperwork, and explain in detail all benefits, 401(k), insurance, etc.
4. Process employee enrollment information and other relevant forms.
5. Prepare invoice remittance process, whether by wire transfer or direct debit. Bank routing and account information is gathered and setup in advance. All payroll invoices are due and payable before release of paychecks.

Proposal Notes



Page 7 of 8



A program offered by RPC Employer Services, Inc.

# EmployShare

*The ultimate solution for managing tomorrow's human resource needs.*

6. Install front-end payroll input software at client site. Conduct training for client personnel dealing with payroll input software (one hour). Conduct input and e-mail tests using sample payroll files.

7. Create first input data file at RPC based and e-mail to client for first pay. RPC will create new payroll input files every pay period to insure that client has accurate account of all active employees.

8. Receive first payroll input file from client, process all data, and invoice customer by fax or e-mail.

9. Receive first invoice payment via wire transfer or direct debit.

10. Deliver paychecks (or direct deposits) to customer along with hard copy of invoice and invoice detail reports, department costing, and other required reports.

The EmployShare payroll and human resource system can produce nearly any report imaginable. We will determine beforehand the exact format of each report required and the frequency of each report.

We know that you and your employees will appreciate our package of services. Please call me at 800-635-9961 with your questions. I look forward to discussing your questions and hope that we can be of service as you see the need.

Thank you for this consideration.

Sincerely,

*Daniel J. D'Alio*

Daniel D'Alio
President & CEO

**Proposal
Notes**



NAPEO Member
National Association
of Professional Employer
Organizations

EmployShare by RPC Employer Services, Inc.
PO Box 350, Beaver Falls, PA 15010  800-635-9961 E-fax: 419-821-0229
WWW.EMPLOYSHARE.COM

## *EmployShare*™         **Financial Details**

National Indoor Football League        October 28, 2000

| Payroll Item | 80 active clerical employees 600 active players and staff |
|---|---|
| Annual taxable wages: | As reported |
| Social security: (The employer match) | 7.65% of taxable wages |
| Federal unemployment: | 0.8% of first $7000 in wages |
| State unemployment: We will utilize Ohio as the home state based on league headquarters locating in Ohio. | OH: 2.75% of first $9,000 in wages |
| Workers' compensation We will utilize Ohio as the home state based on league headquarters locating in Ohio. | 8810:  0.52% of taxable wages 9179: 11.65% of taxable wages |
| Health Coverage: | Not quoted at this time |
| Dental Coverage: | Not quoted at this time |
| Vision Coverage: | Not quoted at this time |
| Disability Coverage: | Not quoted at this time |
| Set-up Fee (one time) | $ 495.00 Includes all employee files, handbook creation, and payroll software implementation and training. |
| RPC service fee[1]: (See footnote below) | $ 12.00/ea/pay for clerical employees $ 18.00/ea/pay for team employees Weekly (52) pay dates |
| Overnight Delivery Fee | $ 13.00 as requested |
| Invoice Direct Debit Fee | $ 5.00 per invoice |
| Employee Pay Direct Deposit | No Charge |
| Payroll Reports | No Charge |
| Section 125 Cafeteria Plan | No additional cost |
| 401(k) Retirement Plan[2]: (See footnote below) | No additional cost |

---

[1] RPC service fee covers all costs related to payroll processing, new hire reporting federal, state, and local tax filing, all year-end tax filing including W2's, personnel administration, employee handbooks, labor attorney services related to RPC services provided, workers' comp administration and risk management, unemployment claims management including hearings and litigation, health insurance administration, 401(k) administration including annual fees for compliance testing and reporting,

[2] RPC'S 401(k) is free to all clients. There are no annual fees assessed for start-up or annual administrative maintenance. Great-West Life, the nation's leader in 401(k), is the administration provider. Employees can enroll on a monthly basis, with client matching provided as 'increased employee contributions'.

LAW OFFICES

## FECZKO AND SEYMOUR

520 GRANT BUILDING, 310 GRANT STREET
PITTSBURGH, PENNSYLVANIA 15219-2201
TELEPHONE 412-261-4970
FAX AVAILABLE

ALBERT G. FECZKO, JR.
MICHAEL J. SEYMOUR
MICHAEL D. SEYMOUR

SUBURBAN OFFICE
3400 SOUTH PARK ROAD
BETHEL PARK, PA. 15102
TELEPHONE 412-833-5554

U-200

December 1, 2005

Timothy C. Leventry, Esquire
**LEVENTRY, HASCHAK, RODKEY & KLEMENTIK, LLC**
1397 Eisenhower Boulevard
Richland Square III, Suite 202
Johnstown, PA    15904

> **RE:   National Indoor Football League vs. RPC Employer
>         Services, et al.**
> **NO:   02-0548**

Dear Mr. Leventry:

I have reviewed the records that accompanied your letter of
November 18, 2005 and as you mentioned in your letter, the
records are separated by team and individual files.

However, the medical record for each player consist of
nothing more than a billing statement by the medical provider
which identifies the name and address of the player, the player's
date of birth, the name of the player's team and the part of the
anatomy involved.   For everyone's reference, I enclose a copy of
the statement of Dion Alexander.

Attorney Caputo and I both agree that this information does
not satisfy the requirements of Judge Ambrose's Order dated July
18, 2005 and prevents us from determining the amount that the
Ohio Worker's Compensation Bureau would have reimbursed to the
medical provider.

Specifically, the documents provided by you do not provide
any information that would be required by the Ohio Worker's
Compensation report form, which is Item 1 of the Order, nor the
percentage of the claim that would be paid under the Ohio
Worker's Compensation regulations, Item #3 and does not verify
the medical treatment or nature of the specific injury for each
player which was, in my opinion, contemplated by Item #2 of the
Order.

Timothy C. Leventry, Esquire
December 1, 2005
Page 2


    Accordingly, I would ask that you supplement the information
supplied to date in sufficient time so that we can have a
meaningful settlement discussion at the Conference scheduled
before Judge Ambrose on December 20, 2005.


                        Very truly yours,


                        Michael J. Seymour

MJS/mo

Encl.

cc:  The Honorable Donetta W. Ambrose(w/encl.)
     Bernard C. Caputo, Esquire (w/encl.)

WORKERS COMP OF OHIO

PO BOX 261107
COLUMBUS OH 43220

SS#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  MAILED

**HEALTH INSURANCE CLAIM FORM**

PICA | SEP 25 ENT'D | PICA

| MEDICARE | MEDICAID | CHAMPUS | CHAMPVA | GROUP HEALTH PLAN (SSN or ID) | FECA BLK LUNG (SSN) | OTHER | 1a. INSURED'S I.D. NUMBER (FOR PROGRAM IN ITEM 1) |
|---|---|---|---|---|---|---|---|
| (Medicare #) | (Medicaid #) | (Sponsor's SSN) | (VA File #) | | | XX (ID) | 290701220 |

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
ALEXANDER , DION

3. PATIENT'S BIRTH DATE  03 02 1974   SEX  X M   F

4. INSURED'S NAME (Last Name, First Name, Middle Initial)
NATIONAL INDOOR FOOTBALL

5. PATIENT'S ADDRESS (No., Street)
1615 W SMITH ST J206

6. PATIENT RELATIONSHIP TO INSURED
Self  XX  Spouse   Child   Other

7. INSURED'S ADDRESS (No., Street)

CITY  KENT   STATE  WA

8. PATIENT STATUS
Single  XX  Married   Other

CITY  BILLINGS   MT   STATE

ZIP CODE  98032   TELEPHONE (Include Area Code)  ( 253 ) 813-1747

Employed   Full-Time Student   Part-Time Student

ZIP CODE  59101   TELEPHONE (INCLUDE AREA CODE)  (  )

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER
LEFT KNEE

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (CURRENT OR PREVIOUS)   YES  NO

a. INSURED'S DATE OF BIRTH  MM DD YY   M   SEX   F

b. OTHER INSURED'S DATE OF BIRTH  MM DD YY   M   SEX   F

b. AUTO ACCIDENT?   YES  XX NO   PLACE (State)

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?   YES  XX NO

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?   YES  NO   If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED  SIGNATURE ON FILE   DATE

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED  SIGNATURE ON FILE

14. DATE OF CURRENT:   ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY (LMP)  05 18 2001

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE  MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION  MM DD YY   FROM   TO

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE
ATHLETIC TRAINER

17a. I.D. NUMBER OF REFERRING PHYSICIAN

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES  MM DD YY   FROM   MM DD YY   TO

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?   YES  NO   $ CHARGES

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)
1. 726.65 LT
2.
3.
4.

22. MEDICAID RESUBMISSION CODE   ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A. DATE(S) OF SERVICE | | | | | | B. Place of Service | C. Type of Service | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS | MODIFIER | E. DIAGNOSIS CODE | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. EMG | J. COB | K. RESERVED FOR LOCAL USE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| From MM | DD | YY | To MM | DD | YY | | | | | | | | | | | |
| 05 | 18 | 2001 | | | | 11 | 1 | 99202 | | 1 | 111.00 | 1 | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

25. FEDERAL TAX I.D. NUMBER   SSN  EIN  XX
10306722

26. PATIENT'S ACCOUNT NO.
90590

27. ACCEPT ASSIGNMENT? (For govt. claims see back)   XX YES  NO

28. TOTAL CHARGE  $ 111.00

29. AMOUNT PAID  $

30. BALANCE DUE  $ 111.00

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
DAVID SHENTON MD
08/10/2001

SIGNED  1/WCOI/D/  3   DATE

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)

33. PHYSICIAN'S, SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE & PHONE #
ORTHOPEDIC ASSOCIATES PC
2900 12TH AVE N#100 EAST
BILLINGS MT 59101
17344956400

PIN#  TELEPHONE #  (406) 238-6724

APPROVED OMB-0938-0008 FORM HCFA-1500 (12-90), FORM RRB-1500,

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88)   **PLEASE PRINT OR TYPE**

LAW OFFICES

# Feczko and Seymour

520 GRANT BUILDING, 310 GRANT STREET
PITTSBURGH, PENNSYLVANIA 15219-2201
Telephone 412-261-4970
FAX AVAILABLE

Albert G. Feczko, Jr.
Michael J. Seymour
Michael D. Seymour

Suburban Office
3400 South Park Road
Bethel Park, PA. 15102
TELEPHONE 412-833-5554

U-200

December 1, 2005

Timothy C. Leventry, Esquire
**LEVENTRY, HASCHAK, RODKEY & KLEMENTIK, LLC**
1397 Eisenhower Boulevard
Richland Square III, Suite 202
Johnstown, PA   15904

> **RE:  National Indoor Football League vs. RPC Employer**
> **Services, et al.**
> **NO:  02-0548**

Dear Mr. Leventry:

I have reviewed the records that accompanied your letter of November 18, 2005 and as you mentioned in your letter, the records are separated by team and individual files.

However, the medical record for each player consist of nothing more than a billing statement by the medical provider which identifies the name and address of the player, the player's date of birth, the name of the player's team and the part of the anatomy involved.  For everyone's reference, I enclose a copy of the statement of Dion Alexander.

Attorney Caputo and I both agree that this information does not satisfy the requirements of Judge Ambrose's Order dated July 18, 2005 and prevents us from determining the amount that the Ohio Worker's Compensation Bureau would have reimbursed to the medical provider.

Specifically, the documents provided by you do not provide any information that would be required by the Ohio Worker's Compensation report form, which is Item 1 of the Order, nor the percentage of the claim that would be paid under the Ohio Worker's Compensation regulations, Item #3 and does not verify the medical treatment or nature of the specific injury for each player which was, in my opinion, contemplated by Item #2 of the Order.

Timothy C. Leventry, Esquire
December 1, 2005
Page 2


    Accordingly, I would ask that you supplement the information
supplied to date in sufficient time so that we can have a
meaningful settlement discussion at the Conference scheduled
before Judge Ambrose on December 20, 2005.


               Very truly yours,

               Michael J. Seymour

MJS/mo

Encl.

cc:  The Honorable Donetta W. Ambrose(w/encl.)
     Bernard C. Caputo, Esquire (w/encl.)

WORKERS COMP OF OHIO

PO BOX 261107
COLUMBUS OH 43220

PLEASE
DO NOT
STAPLE
IN THIS
AREA

SS#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

**MAILED**

CARRIER

---

# HEALTH INSURANCE CLAIM FORM

| PICA | | | | | | | PICA |

| MEDICARE | MEDICAID | CHAMPUS | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER (FOR PROGRAM IN ITEM 1) |
|---|---|---|---|---|---|---|---|
| (Medicare #) | (Medicaid #) | (Sponsor's SSN) | (VA File #) | (SSN or ID) | (SSN) | XX (ID) | 290701220 |

**SEP 25 ENT'D**

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
ALEXANDER, DION

3. PATIENT'S BIRTH DATE  08 02 1974  M X  SEX  F

4. INSURED'S NAME (Last Name, First Name, Middle Initial)
NATIONAL INDOOR FOOTBALL

5. PATIENT'S ADDRESS (No., Street)
1615 W SMITH ST J206

6. PATIENT RELATIONSHIP TO INSURED
Self X  Spouse  Child  Other

7. INSURED'S ADDRESS (No., Street)

CITY  KENT  STATE  WA

8. PATIENT STATUS
Single  Married XX  Other

CITY  BILLINGS  MT  STATE

ZIP CODE  98032  TELEPHONE (Include Area Code)  ( 253 ) 813-1747

Employed  Full-Time Student  Part-Time Student

ZIP CODE  59101  TELEPHONE (INCLUDE AREA CODE)  (   )

9. OTHER INSURED'S NAME (Last Name, First Name. Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER
LEFT KNEE **

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (CURRENT OR PREVIOUS)  XX YES  NO

a. INSURED'S DATE OF BIRTH  MM DD YY  M  SEX  F

b. OTHER INSURED'S DATE OF BIRTH  MM DD YY  M  SEX  F

b. AUTO ACCIDENT?  YES  XX NO  PLACE (State)

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?  YES  XX NO

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?  YES  NO  If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED  SIGNATURE ON FILE  DATE

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED  SIGNATURE ON FILE

14. DATE OF CURRENT:  ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY (LMP)  MM DD YY

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE  MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION  FROM  TO

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE
ATHLETIC TRAINER

17a. I.D. NUMBER OF REFERRING PHYSICIAN

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES  MM DD YY  FROM  TO  MM DD YY

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?  YES  NO  $ CHARGES

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)
1. 726.65 LT
3.

22. MEDICAID RESUBMISSION CODE  ORIGINAL REF. NO.

2.
4.

23. PRIOR AUTHORIZATION NUMBER

| 24. | A. DATE(S) OF SERVICE | | | | | B. Place of Service | C. Type of Service | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS | MODIFIER | E. DIAGNOSIS CODE | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. EMG | J. COB | K. RESERVED FOR LOCAL USE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | From MM DD YY | | | To MM DD YY | | | | | | | | | | | | |
| | 05 18 2001 | | | | | 11 | 1 | 99202 | | 1 | 111.00 | 1 | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

25. FEDERAL TAX I.D. NUMBER  810306722  SSN  EIN XX

26. PATIENT'S ACCOUNT NO.  90090

27. ACCEPT ASSIGNMENT? (For govt. claims see back)  XX YES  NO

28. TOTAL CHARGE  $ 111.00

29. AMOUNT PAID  $

30. BALANCE DUE  $ 111.00

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)

DAVID SHENTON MD
08/10/2001
SIGNED  1/WCOI/D/ 3  DATE

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)

33. PHYSICIAN'S, SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE
ORTHOPEDIC ASSOCIATES PC
2900 12TH AVE N#100 EAST
BILLINGS MT 59101
17344956400
PIN#  TELEPHONE # (406) 238-6724

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88)  PLEASE PRINT OR TYPE  APPROVED OMB-0938-0008 FORM HCFA-1500 (12-90), FORM RRB-1500,

PATIENT AND INSURED INFORMATION

PHYSICIAN OR SUPPLIER INFORMATION

LAW OFFICES

# FECZKO AND SEYMOUR

520 GRANT BUILDING, 310 GRANT STREET
PITTSBURGH, PENNSYLVANIA 15219-2201
TELEPHONE 412-261-4970
FAX AVAILABLE

ALBERT G. FECZKO, JR.
MICHAEL J. SEYMOUR
MICHAEL D. SEYMOUR

SUBURBAN OFFICE
3400 SOUTH PARK ROAD
BETHEL PARK, PA. 15102
TELEPHONE 412-833-5554

U-200

December 1, 2005

Timothy C. Leventry, Esquire
**LEVENTRY, HASCHAK, RODKEY & KLEMENTIK, LLC**
1397 Eisenhower Boulevard
Richland Square III, Suite 202
Johnstown, PA   15904

> **RE:   National Indoor Football League vs. RPC Employer
>        Services, et al.**
> **NO:   02-0548**

Dear Mr. Leventry:

I have reviewed the records that accompanied your letter of
November 18, 2005 and as you mentioned in your letter, the
records are separated by team and individual files.

However, the medical record for each player consist of
nothing more than a billing statement by the medical provider
which identifies the name and address of the player, the player's
date of birth, the name of the player's team and the part of the
anatomy involved.  For everyone's reference, I enclose a copy of
the statement of Dion Alexander.

Attorney Caputo and I both agree that this information does
not satisfy the requirements of Judge Ambrose's Order dated July
18, 2005 and prevents us from determining the amount that the
Ohio Worker's Compensation Bureau would have reimbursed to the
medical provider.

Specifically, the documents provided by you do not provide
any information that would be required by the Ohio Worker's
Compensation report form, which is Item 1 of the Order, nor the
percentage of the claim that would be paid under the Ohio
Worker's Compensation regulations, Item #3 and does not verify
the medical treatment or nature of the specific injury for each
player which was, in my opinion, contemplated by Item #2 of the
Order.

Timothy C. Leventry, Esquire
December 1, 2005
Page 2


    Accordingly, I would ask that you supplement the information
supplied to date in sufficient time so that we can have a
meaningful settlement discussion at the Conference scheduled
before Judge Ambrose on December 20, 2005.


                        Very truly yours,



                        Michael J. Seymour

MJS/mo

Encl.

cc:  The Honorable Donetta W. Ambrose(w/encl.)
     Bernard C. Caputo, Esquire (w/encl.)

WORKERS COMP OF OHIO

PO BOX 261107
COLUMBUS OH 43220

PLEASE
DO NOT
STAPLE
IN THIS
AREA

SS#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   MAILED   SEP 25

## HEALTH INSURANCE CLAIM FORM

| PICA | | | | | | PICA |
|---|---|---|---|---|---|---|

MEDICARE (Medicare #) | MEDICAID (Medicaid #) | CHAMPUS (Sponsor's SSN) | CHAMPVA (VA File #) | GROUP HEALTH PLAN (SSN or ID) | FECA BLK LUNG (SSN) | OTHER XX (ID)

1a. INSURED'S I.D. NUMBER (FOR PROGRAM IN ITEM 1)
290701220

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
ALEXANDER, DION

3. PATIENT'S BIRTH DATE
01 02 1974   SEX X

4. INSURED'S NAME (Last Name, First Name, Middle Initial)
NATIONAL INDOOR FOOTBALL

5. PATIENT'S ADDRESS (No., Street)
1615 W SMITH ST J206

6. PATIENT RELATIONSHIP TO INSURED
Self X   Spouse   Child   Other

7. INSURED'S ADDRESS (No., Street)

CITY
KENT   STATE WA

8. PATIENT STATUS
Single X   Married   Other
Employed   Full-Time Student   Part-Time Student

CITY
BILLINGS   MT   STATE

ZIP CODE
98032   TELEPHONE (Include Area Code)
( 253 ) 813-1747

ZIP CODE
59101   TELEPHONE (INCLUDE AREA CODE)
(  )

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER
LEFT KNEE

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (CURRENT OR PREVIOUS)
XX YES   NO

a. INSURED'S DATE OF BIRTH
MM DD YY   M   SEX F

b. OTHER INSURED'S DATE OF BIRTH
MM DD YY   M   SEX F

b. AUTO ACCIDENT?
YES   XX NO   PLACE (State)

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?
YES   XX NO

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
YES   NO   If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED   SIGNATURE ON FILE   DATE

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED   SIGNATURE ON FILE

14. DATE OF CURRENT: ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY (LMP)
06 18 2001

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION
FROM MM DD YY   TO MM DD YY

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE
ATHLETIC TRAINER

17a. I.D. NUMBER OF REFERRING PHYSICIAN

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
FROM MM DD YY   TO MM DD YY

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?
YES   NO   $ CHARGES

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)
1. 726.65 LT
2.
3.
4.

22. MEDICAID RESUBMISSION CODE   ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A. DATE(S) OF SERVICE From MM DD YY | To MM DD YY | B. Place of Service | C. Type of Service | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS MODIFIER | E. DIAGNOSIS CODE | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. EMG | J. COB | K. RESERVED FOR LOCAL USE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05 18 2001 | | 11 | 1 | 99202 | 1 | 111.00 | 1 | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

25. FEDERAL TAX I.D. NUMBER   SSN   EIN
810306722   XX

26. PATIENT'S ACCOUNT NO.
90690

27. ACCEPT ASSIGNMENT? (For govt. claims see back)
XX YES   NO

28. TOTAL CHARGE
$ 111.00

29. AMOUNT PAID
$

30. BALANCE DUE
$ 111.00

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
DAVID SHENTON MD
08/10/2001
SIGNED   1/WCOI/D/ 3   DATE

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)

33. PHYSICIAN'S SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE
ORTHOPEDIC ASSOCIATES PC
2900 12TH AVE N #100 EAST
BILLINGS MT 59101
17344956400
PIN# TELEPHONE # (406) 238-6724

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88)   PLEASE PRINT OR TYPE   APPROVED OMB-0938-0008 FORM HCFA-1500 (12-90), FORM RRB-1500.