IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C. | )<br>)<br>) |
| Plaintiff, | ) |
| v. | )  CIVIL ACTION NO.: 2:02-cv-548 |
| | ) |
| R.P.C. EMPLOYER SERVICES, INC., | )<br>) |
| Defendant. | ) |

**DEFENDANT'S BRIEF IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE
WITH RESPECT TO PLAINTIFF'S DAMAGES**

**AND NOW**, comes the Defendant R.P.C. Employer Services, Inc. (hereinafter "RPC"), by its attorneys, Feczko and Seymour and Michael J. Seymour, Esquire and files the following Brief in Support of Defendant's Motion in Limine with Respect to Plaintiff's Evidence of Damages:

**I.   WHETHER THE NUMBER OF TEAMS MAKING CLAIMS
      SHOULD BE LIMITED TO TEN (10) TEAMS**

ANSWER:   YES.

The Plaintiff is claiming damages for thirteen (13) teams, but only ten (10) teams submitted the appropriate forms and paid monies to RPC for services under the Service Agreement between the parties.  The NIFL consisted of eighteen (18) teams, but as shown by the attached Exhibit P-23, which is an Exhibit listed by the Plaintiff, only ten (10) teams paid monies to RPC.  In spite of this, the Plaintiff is presenting damages for three (3) additional teams, being the Louisiana Bayou Beasts, the Mobile Seagulls and the Southern Oregon Heat.  Their combined medical

claims amount to $65,833.70.

The only evidence submitted by Plaintiff's counsel on behalf of the three (3) teams in question are C-110 forms which contain nothing more than signatures and, otherwise, no additional information is provided. A sample of one of the C-110 forms is marked as Defendant's Exhibit "A" and will be submitted to the Court by hand deliver, along with all other Exhibits herein referenced. In addition to the blank C-110 forms, Plaintiff has not provided any other document to confirm that these forms were ever submitted to the Defendant. Moreover, the C-110 form was only one of many forms that were required to be completed before the team and its players were properly registered as employees of the Defendant. The complete packet of documents is identified in Plaintiff's List of Exhibits as P-24.

Since Defendant neither received the required forms to add the players from the three (3) disputed teams and received no monies from these teams as admitted by Plaintiff's own exhibits, it is the position of the Defendant that based upon the evidence, the claims of these three (3) teams should be excluded in their entirety from Plaintiff's proof of damages.

      **II.  IS THE APPROPRIATE CUTOFF DATE FOR THE CLAIMS BEING PRESENTED EITHER APRIL 17, 2001 OR MAY 17, 2001 OR SOME OTHER DATE?**

**ANSWER:**  **April 17, 2001, but no later than May 17, 2001.**

Under the terms of the Service Agreement, which had an

effective date of March 20, 2001, there exists two (2) possibilities for termination of the agreement. One is based upon a material breach and the second is merely to give thirty (30) days notice. Plaintiff's contention to the contrary is there should be no cutoff date for claims and that all medical bills incurred by the players for the entire season should be included in Plaintiff's proof of damages.

Paragraph 2 of the Service Agreement is titled "<u>TERM OF AGREEMENT</u>" and is as follows:

> "This Agreement shall commence on the EFFECTIVE DATE as set forth below and shall continue in effect of the initial term ("Initial Term") of one (1) year following the commencement of this Agreement. This Agreement may thereafter be extended by mutual consent of both RPC and Client from month to month "Extended Term". <u>During the Initial Term, RPC or Client may terminate this Agreement by giving written notice of termination to the other party thirty (30) days prior to the effective date of said termination.</u> During the Extended Term, either party may terminate this Agreement upon giving written notice thirty (30) days prior to the effective date of said termination. <u>Notwithstanding anything to the contrary contained in this Agreement, RPC may terminate this Agreement immediately upon twenty-four (24) hours notice to Client in the event of a material breach by Client of any of the provisions of this Agreement.</u>"

Defendant, in its letter sent April 16, 2001, terminated the Agreement for material breach listing nonpayment and noncompliance as the reasons. Material breaches which constitute a default under the Agreement are contained in Paragraph 11 titled "<u>DEFAULT</u>". They include, but are not limited to, the

failure to pay the fee, the failure to report timely wage information and the failure to comply with any applicable federal, state or local law, regulation, ordinance, directive or rule. Therefore, the effective date of termination was April 17, 2001.

Plaintiff's President, Caroline Shiver responded to Defendant's termination letter on April 17, 2001 disputing the material breach and requesting coverage for claims over the next thirty (30) day period. The final paragraph of the letter from Plaintiff's President, Caroline Shiver states, "This letter is to notify you that we will be pursuing legal action against your firm. We will also expect you're to cover any claims that occur at this time and over the next thirty days which is covered by our contract. We will be happy to look for someone to take your place, but under the circumstances, we will expect our payrolls to be cut as they were faxed in this past Monday, per our agreement prior to our receiving any notice from your firm." Accordingly, the Plaintiff was requesting coverage for claims until May 17, 2001 from Defendant which would provide Plaintiff with adequate time to find substitute coverage.

Paragraph 5(a) of the Service Agreement titled "<u>INSURANCE</u>" provides the following, "RPC shall furnish and keep in full force and effect at all times <u>during the term of this Agreement</u> workers' compensation insurance covering all employees filling

4

Job Function Positions under the terms of this Agreement, and where applicable, such policies shall designate Client and RPC respectively, as the first and second named insured.  In addition, RPC shall cause that appropriate evidence of insurance be filed with the Worker's Compensation Bureau of any state as deemed necessary by the Client."  Therefore, according to the terms of the Service Agreement upon which Plaintiff's claim is based, Defendant's obligations to provide worker's compensation insurance coverage for claims concludes with the termination of the Agreement either on April 17, 2001 or at the latest, May 17, 2001.  Any claims occurring after May 17, 2001 and not covered by Worker's compensation is a result of Plaintiff's failure to act and mitigate its damages.  Under Ohio law which, under Paragraph 15d of the Service Agreement controls the construction of the Agreement, mitigation of damages is a requirement in breach of contract claims.  *Chandler v. General Motors*, 68 Ohio App. 2d 30 (1980).

### III. WHETHER PLAINTIFF'S CLAIM FOR DAMAGES IS LIMITED TO THE AMOUNT OF THE SERVICE FEES PAID TO THE DEFENDANT?

**ANSWER:    YES.**

Paragraph 14 of the Service Agreement is titled, "<u>WARRANTY</u>". The paragraph reads as follows:

> "NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, RPC MAKES NO COVENANT, REPRESENTATION, WARRANTY, OR AGREEMENT OF ANY KIND, EXPRESS OR IMPLIED, TO CLIENT OR ANY

OTHER PARTY WITH RESPECT TO THE PERFORMANCE BY EMPLOYEES OF SERVICES RENDERED TO CLIENT AS CONTEMPLATED HEREUNDER. UNDER NO CIRCUMSTANCES SHALL RPC TOTAL LIABILITY OF ANY KIND ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING BUT NOT LIMITED TO ANY WARRANTY CLAIMS HEREUNDER REGARDLESS OF THE FORUM AND REGARDLESS OF WHETHER ANY ACTION OR CLAIM IS BASED ON CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE) EXCEED THE TOTAL AMOUNT PAID BY CLIENT TO RPC AS SERVICE FEES HEREUNDER (DETERMINED AS OF THE DATE OF ANY FINAL JUDGMENT IN SUCH ACTION)."

Where a contract is clear and unambiguous Ohio and Pennsylvania law are in accord that its interpretation is a matter of law. *Nationwide Mutual v. Guman Brothers*, (1995) 652 N.E. 2nd 684. *Kripp v. Kripp*, 849 A.2d 1159 (2004). It is submitted that the warranty provision is clear and unambiguous and, therefore, must be applied. Based upon this provision, the amount of damages determined will be reduced to the amount of service fees paid by Plaintiff to Defendant. Paragraphs 20 and 38 of Plaintiff's Amended Complaint aver the service fees paid were in the amount of $8,136.00. These averments were not denied and are admitted by Defendant.

**WHEREFORE,** Plaintiff's claim for damages must be reduced to the amount of the service fees.

> Respectfully submitted,
> **FECZKO AND SEYMOUR**
>
> *s/Michael J. Seymour*
> Michael J. Seymour, Esquire
> PA I.D. No. 00260
> Feczko and Seymour
> Firm I.D. #003
> 310 Grant Street
> Suite 520 Grant Building

Pittsburgh, PA 15219
(412) 261-4970

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that I served a true and correct copy of the within Defendant's Brief in Support of Defendant's Motion in Limine with Respect to Plaintiff's Damages upon the following **electronically** on the 9th day of November, 2006:

Timothy C. Leventry, Esquire
**LEVENTRY, HASCHAK, RODKEY & KLEMENTIK, LLC**
1397 Eisenhower Boulevard
Richland Square III, Suite 202
Johnstown, PA 15904

*s/Michael J. Seymour*
Michael J. Seymour, Esquire
Counsel for Defendant