**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 02: 02cv0548 |
| R.P.C. EMPLOYER SERVICES, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

February 1, 2007

Presently before the Court are the following:

(1)     MOTIONS IN LIMINE WITH RESPECT TO THE DAMAGES PORTION OF THE TRIAL, with brief in support, filed by Plaintiff, the National Indoor Football League, L.L.C. ("NIFL") (*Document Nos. 100 and 103, respectively*), and the response and brief in opposition filed by Defendant, R.P.C. Employer Services, Inc. ("RPC") (*Document Nos. 104 and 107, respectively*); and

(2)     MOTION IN LIMINE WITH RESPECT TO PLAINTIFF'S DAMAGES, with brief in support, filed by RPC (*Document Nos. 105 and 106*) and the reply in opposition filed by the NIFL (*Document No. 108).*

The Motions will be addressed seriatim.

**PLAINTIFF'S FIRST MOTION IN LIMINE WITH RESPECT TO THE DAMAGES PORTION OF TRIAL (DOCUMENT NO. 100-1)**

RPC contends that each claim for damages being asserted by the NIFL on behalf of an injured player for the lack of workers compensation coverage/benefits should be reduced by a $1,000 per claim deductible pursuant to the terms of the Service Agreement.[1]   The NIFL responds that because its claims are for common-law damages, the damages available to it are the full amount of damages and no deductible or set off should apply.

In its Memorandum Opinion and Order of Court filed on March 16, 2006 (Document No. 71), the Court determined that the claims surrounding this litigation "fall outside the scope of workers' compensation statutes" and, therefore, the NIFL is entitled to recover the full amount of  common law damages.  Plaintiff's potential recovery will not be limited by the level of reimbursement available under the Ohio Worker's Compensation Act.  Likewise, Plaintiff's claims for common law damages are not subject to or reducible in any way by a deductible or set off.

Moreover, in the Court's view the Service Agreement language pertaining to a workers' compensation deductible is simply not applicable to any damages in this litigation.  Rather, the referenced deductible pertains to RPC's fee structure.  *See Service Agreement, Fee Structure Statement* ("DEDUCTIBLE:  $1000 - PER CLAIM AS ASSESSED TO EACH TEAM BY THE LEAGUE MANAGEMENT.)   This deductible may very well be applicable to

---

[1]    Interestingly, RPC did not plead any deductible as a defense in its Answer and Affirmative Defenses pursuant to Federal Rule of Civil Procedure 8(b) and (c), nor did it raise the issue in its Motions in Limine which were filed with the Court prior to the March 28, 2006 trial date.

the calculation of fees payable to RPC under the contract, i.e., no payroll percentage fee

payable to RPC on the first $1,000.00 of workers compensation benefits paid per claim.  There

is no other reference any where in the Service Agreement that a deductible is intended to apply

to any workers' compensation coverage or benefits.  *See also Service Agreement, ¶ 5(a)*

*Insurance - Workers' Compensation Insurance.*

The Court finds that the NIFL's damage claims are not to be reduced by any

deductible or set off and therefore will grant the NIFL's First Motion in Limine.

### Plaintiff's Second Motion in Limine With Respect to the Damages Portion of Trial  (Document No. 100-2)

In the NIFL's second motion in limine, it seeks to introduce all Health Care

Financing Administration ("HCFA") 1500 forms and/or medical charts/notes/reports or a

combination of both to substantiate its damages as long as same are accompanied by a

certification that complies with Federal Rules of Evidence ("FRE") 803(6) and 902(11).

By Order of Court dated March 23, 2006, the Court ordered as follows:

"1.     Plaintiff will be allowed to introduce into evidence any and all medical

records supplied to Defendants in November 2005 to the extent that the records in question are

admissible under Federal Rules of Evidence 803(6) and 902(11), or otherwise with an

appropriate foundation witness;

"2.     Plaintiff will be allowed to introduce into evidence any medical(s) records or

documents that were produced to Defendants on March 13, 2006, if such records constitute the

underlying supporting documentation to establish or confirm the accuracy of the information

set forth in the medical provider-completed Health Insurance Claim Forms (HCFA-1500s) that

3

were previously produced to Defendants in November 2005, to the extent that the records in

question are admissible under Federal Rules of Evidence 803(6) and 902(11), or otherwise with

an appropriate foundation witness.  *See* November 18, 2005, correspondence from Timothy

Leventry, Esquire to Michael J. Seymour, Esquire; and December 5, 2005, correspondence

from Timothy Leventry, Esquire to Michael J. Seymour, Esquire.

> "3.     To the extent that the documents produced on March 13, 2006 are beyond the

scope of those records provided to Defendants in November 2005, same will be excluded."

*Order of Court, March 23, 2006, Document No. 82.*

The Court is not persuaded that it should change its decision on this issue but some

clarification may be warranted.   The NIFL may introduce an HCFA 1500 form alone provided

said form/record(s) is in compliance with FRE 803(6) and 902(11) or otherwise through an

appropriate foundation witness.  Likewise, the NIFL may introduce a medical provider's

notes/chart/report (or other similar medical record) alone provided said record(s) is in

compliance with FRE 803(6) and 902(11) or otherwise through an appropriate foundation

witness.  Also, each component of any combination of HCFA 1500 form(s) and medical

provider notes/chart/report which NIFL seeks to introduce must be in compliance with FRE

803(6) and 902(11) or otherwise through an appropriate foundation witness.

Accordingly, the NIFL's Second Motion in Limine will be granted.

Although this ruling outlines the requirements and parameters regarding the

admissibility of certain records, the actual determination of admissibility must be made at trial

on a record-by-record submission basis.  Also, at trial the factfinder may need guidance from

the Court as to the fact(s) or import which a particular record may be considered to prove.[2]


### PLAINTIFF'S THIRD MOTION IN LIMINE WITH RESPECT TO THE DAMAGES PORTION OF TRIAL  (DOCUMENT NO. 100-3)

The NIFL's Third Motion in Limine requests that supplemental medical

documentation/records for injured NIFL players and FRE 902(11) certifications provided to the

RPC after March 13, 2006 be admissible and/or utilized to prove the NIFL's damages.

---

[2]    For illustrative purposes, the Court has reviewed the prototype records of Greg Albright and John Nicky Seymour submitted by Attorney Leventry with his December 5, 2006 correspondence.  The records regarding Greg Albright are an example of a combination of HCFA 1500 forms and a physician record/chart both of which appear to have a proper certification.  The HCFA 1500 form dated April 11, 2001 appears to establish a work-related injury for which Dr. D.P. Slawski rendered specific medical treatment on April 12, 2001, at a cost of $1,890.00 which would appear to be admissible for those basic pertinent facts.  The HCFA 1500 form dated April 16, 2001, however, although appearing to be admissible as evidence, will likely not suffice to prove the medical treatment cost of $189.00 because the checkmark in box 10(A) reflects that the patient's condition is not related to his employment with Trinity Diesel, i.e., not a work-related injury.  Accordingly, the records preliminarily submitted regarding Greg Albright appear to support a damages finding in the amount of $1,890.00, but not in the total amount of $2,079.00

The records regarding John Nicky Seymour are an example of a physician record/chart and billing account which appear to have a proper certification and are likely admissible as evidence at trial.  However, there is nothing appearing in those records from which a factfinder could reasonably conclude that the medical condition for which the provider (Dr. Pomeranz) treated Mr. Seymour was causally related to an injury suffered as a result of his alleged employment with the Mississippi Fire Dogs.  Therefore, although the records may be admissible as evidence, they may not be sufficient to prove the ultimate fact(s) to meet the Plaintiff's burden of proof regarding damages.

As  early as July 19, 2005, the NIFL was explicitly made aware of the required documentation which would be necessary to prove its claims for damages and the dates by which it was to provide such documentation. *See Order of Court, Document No. 48.*  It appears that limited documentation was provided to RPC in a timely fashion by Plaintiff. Nevertheless, over objection, the Court permitted Plaintiff to supplement document production up to March 13, 2006, a date immediately preceding the trial.  On March 28, 2006, a jury was selected and opening statements were about to commence when counsel announced to the Court that a settlement had been achieved on the liability aspect of the case and that the parties wished to engage in mediation regarding the damages aspect of the matter.  It was fully expected that Plaintiff was prepared to present all of its testimony and evidence at that time. The Court acceded to the request of the parties and discharged the jury.  Apparently, mediation ensued over several months.  Unfortunately, mediation was not successful due to evidentiary issues which the Court is addressing herein.

After unsuccessful mediation efforts, the parties returned to the Court requesting a trial on damages.  Plaintiff now seeks to present as evidence at trial additional medical records which were not previously provided to Defendant prior to March 13, 2006, and/or FRE 902(11) certifications dated after March 13, 2006 regarding medical records which were provided to Defendant prior to March 13, 2006.  Such an effort by counsel for Plaintiff shall not be countenanced.

The Court's Order of March 23, 2006, specifically addressed the admissibility of medical records or documents that had been produced on or before March 13, 2006.  This Order was issued five (5) days before trial was to commence.  No additional records were

6

anticipated, expected, proffered or requested prior to trial.  Implicit in the Court Order was the absolute cut-off date for the production of records as of March 13, 2006.  That cut-off date is hereby explicit.

No medical record of any kind nor certification of records produced after March 13, 2006, shall be admitted into evidence at the trial of this action.  FRE 902(11) provides in pertinent part:

> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Plaintiff's Third Motion in Limine will be denied.


### PLAINTIFF'S FOURTH MOTION IN LIMINE WITH RESPECT TO THE DAMAGES PORTION OF TRIAL  (DOCUMENT NO. 100-4)

Lastly, the NIFL requests the Court to take judicial notice of judgments entered against the NIFL and its member teams in other jurisdictions to establish the NIFL's damages relative to those judgments.

The Court will take judicial notice of the evidence considered, findings and Orders and/or Judgments from appropriate adjudicative tribunals in other jurisdictions provided  that sufficient information is reflected in the order/judgment record(s) to establish a work-related injury within the subject coverage time period with related medical treatment and specific costs therefor.  Further, all such Orders and/or Judgments must be properly certified and

authenticated in accordance with the Federal Rules of Evidence and such evidence/documentation must have been produced to RPC on or before March 13, 2006.[3]

Plaintiff's Fourth Motion in Limine will be granted in part and denied in part.

### DEFENDANT'S FIRST MOTION IN LIMINE (DOCUMENT NO. 105-1)

In 2001, the NIFL consisted of eighteen (18) teams.  The NIFL argues that thirteen (13) teams submitted necessary information to RPC for workers' compensation purposes. RPC, however, contends that only ten (10) teams paid monies to RPC and therefore, the NIFL's claims should be limited to those ten (10) teams.[4]

Pursuant to the New Employee Packet, before a team and its players could be properly registered as employees of RPC, it was mandatory that the following forms be completed and returned to RPC:  "Employee Status Box; Application for Employment; W-4 Employee's Withholding Allowance Certificate, I-9:  Employment Eligibility verification; Photo copy of Social Security and Drivers License; Employment Agreement; Payroll Direct

---

[3]     Upon review of the submissions by Attorney Leventry regarding the workers compensation claims of Emmanuel Bentley and Nicky Seymour against the Mississippi Fire Dogs, it appears that sufficient information is reflected in the Order of Administrative Judge to justify judicial notice of same provided proper authentication/certification and notice to RPC with copies on or prior to March 13, 2006.

On the other hand, the submission on behalf of Kareem Vance against the Monroe Bayou Beast appears to be inadequate to prove the damages claimed insofar as the Judgment does not establish a specific work-related injury on a date within the subject coverage time period for which particular medical treatment was rendered. The Judgment may itself qualify for judicial notice, but it is lacking in specific evidentiary value.

[4]     The three teams in question are the Louisiana Bayou Beasts, the Mobile Seagulls, and the Southern Oregon Heat.

Deposit Authorization Form; Local Tax Form (if applicable); BWC Ohio Workers

Compensation Form C-110; Emergency Notice Form; Occupational Privilege Tax Form (if

applicable); and Statement of Policy." *(See Exhibit P-24.)*  It appears that the only evidence

submitted by the NIFL on behalf of the three (3) teams in question are the C-110 forms which

may have been supplied recently.  Further, Defendant alleges that Plaintiff's own Exhibit P-23,

reflects that only ten (10) teams paid monies to RPC and none of the three disputed teams are

listed on the Exhibit.

Although it appears that RPC's motion to limit the damages claims to ten (10) teams

has merit, the Court will withhold so ruling pending presentation of appropriate evidence to

establish same at trial.  Therefore, Defendant's First Motion in Limine will be denied without

prejudice, but essentially deferred.


### DEFENDANT'S SECOND MOTION IN LIMINE (DOCUMENT NO. 105-2)

Paragraph 2 of the Service Agreement provides in relevant part, as follows:

> During the Initial Term, RPC or Client may terminate this Agreement by
> giving written notice of termination to the other party thirty (30) days prior
> to the effective date of said termination.  During the Extended Term, either
> party may terminate this Agreement upon giving written notice thirty (30)
> days prior to the effective date of said termination.  Notwithstanding
> anything to the contrary contained in this Agreement, RPC may terminate
> this Agreement immediately upon twenty-four (24) hours notice to Client
> in the event of a material breach by Client of any of the provisions to this
> Agreement.

*Service Agreement, Paragraph 2.*  It is undisputed that the Service Agreement had an effective

date of March 20, 2001.  RPC contends that by letter dated April 16, 2001, it terminated the

Service Agreement for a material breach effective on April 17, 2001, or, at the very latest,

thirty days thereafter, on May 17, 2001.  According to RPC, any claims which occurred after May 17, 2001 and are not covered by workers' compensation is a result of the NIFL's failure to act and mitigate its damages.

The NIFL responds that there should be no cutoff date for claims because RPC terminated the Service Agreement in bad faith and, therefore, all medical bills incurred by the players for the entire season should be included in its proof of damages.   Also, it appears that RPC not only terminated the contract, but also failed to tell the NIFL that the players were not and could not be eligible for Ohio Worker's Compensation coverage.  Further, the NIFL denies that it "materially breached the Service Agreement, which RPC acknowledged by its agreement to withdraw its counterclaim against the NIFL." *Pl's Response at 5, ¶ 11.*

Undeniably, RPC has acknowledged liability on the breach of contract claim brought against it by the NIFL and has withdrawn its counterclaim against the NIFL.  This Court cannot give effect to a limitation of liability clause to a party, who not only wrote the limitation of liability clause, but by its own admission, breached the contract.

Accordingly, the Court finds and rules that the permissible damage claims may encompass the entire 2001 NIFL season, and, Defendant's Second Motion in Limine will be denied.

### DEFENDANT'S  THIRD MOTION IN LIMINE (DOCUMENT NO. 105-3)

Paragraph 14, entitled Warranty, of the Service Agreement, provides as follows:

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE
CONTRARY, RPC MAKES NO COVENANT, REPRESENTATION,
WARRANTY, OR AGREEMENT OF ANY KIND, EXPRESS OR
IMPLIED, TO CLIENT OR ANY OTHER PARTY WITH RESPECT TO

10

> THE PERFORMANCE BY EMPLOYEES OF SERVICES RENDERED
> TO CLIENT AS CONTEMPLATED HEREUNDER.  UNDER NO
> CIRCUMSTANCES SHALL RPC TOTAL LIABILITY OF ANY KIND
> ARISING OUT OF OR RELATED TO THIS AGREEMENT
> (INCLUDING BUT NOT LIMITED TO ANY WARRANTY CLAIMS
> HEREUNDER REGARDLESS OF THE FORUM AND REGARDLESS
> OF WHETHER ANY ACTION OR CLAIM IS BASED ON
> CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE) EXCEED
> THE TOTAL AMOUNT PAID BY CLIENT TO RPC AS SERVICE
> FEES HEREUNDER (DETERMINED AS OF THE DATE OF ANY
> FINAL JUDGMENT IN SUCH ACTION).

*Service Agreement, at ¶ 14.*  For the first time in this litigation, RPC, relying on Paragraph 14 of the Service Agreement, argues that "once the amount of damages has been determined, . . . , the Court will be required to mold the verdict so as to reduce any amount of damages to no more than the amount of the service fees paid by Plaintiff to Defendant." *Def's Mot. at ¶ 16.* The Court finds that RPC's argument fails for two reasons.

First, a party's failure to raise an affirmative defense by a responsive pleading or by an appropriate motion generally results in the waiver of that defense. *Charpentier v. Godsil,* 937 F.2d 859, 863 (3d Cir. 1991).  Heretofore, RPC has never raised the issue that damages were limited by Paragraph 14 of the Service Agreement.  The Court, therefore, finds that the NIFL would be severely prejudiced if the limitations stated in Paragraph 14 of the Service Agreement were now imposed, especially in light of the fact that the issue of liability has been resolved in favor of the NIFL.

Further, assuming *arguendo* that RPC was permitted to argue for the application of Paragraph 14, the interpretation of Paragraph 14 clearly reveals that it does not apply to limit the damages of the NIFL in this case.  The Court is persuaded by the logic and reasoning of the NIFL on this issue.  Paragraph 1 of the Service Agreement forms the basis of the contract, *e.g.*,

11

that RPC is furnishing to the NIFL staffing for all job function positions.  (*See* Service

Agreement, at ¶ 1 - "RPC hereby agrees to furnish to Client, and Client hereby agrees to engage

from RPC, staffing for all Job Function Positions."   When Paragraph 14 and Paragraph 1 are

read in tandem, it is apparent that Paragraph 14 would not apply to the instant situation wherein

RPC has been sued by the NIFL for failing to provide worker's compensation coverage, not

"with respect to the performance by [RPC] employees of services rendered to [the NIFL.]."

   Accordingly, the Court finds and rules that Defendant's Third Motion in Limine will

be denied.

   An appropriate Order follows.

         McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

NATIONAL INDOOR FOOTBALL           )
LEAGUE, L.L.C.,                    )
                                   )
    Plaintiff,                    )
                                   )
        v.                        )        02:  02cv0548
                                   )
R.P.C. EMPLOYER SERVICES, INC.,    )
                                   )
    Defendant.                    )

**ORDER OF COURT**

AND NOW, this 1st day of February, 2007, in accordance with the foregoing

Memorandum Opinion, it is **ORDERED**, **ADJUDGED, AND DECREED** as follows:

      1.     Plaintiff's First Motion in Limine (*Document No. 100-1)* is **GRANTED**;

      2.     Plaintiff's Second Motion in Limine (Document No. 100-2) is **GRANTED**;

      3.     Plaintiff's Third Motion in Limine (Document No. 100-3) is **DENIED;**

      4.     Plaintiff's Fourth Motion in Limine (Document No. 100-4) is **GRANTED**

**IN PART AND DENIED IN PART;**

      5.     Defendant's First Motion in Limine (Document No. 105-1) is **DENIED**

**WITHOUT PREJUDICE**;

      6.     Defendant's Second Motion in Limine (Document No. 105-2) is **DENIED**;

and

      7.     Defendant's Third Motion in Limine (Document No. 105-3) is **DENIED**;

                    BY THE COURT:


                    s/Terrence F. McVerry
                    United States District Court Judge

cc:       Forrest B. Fordham, III, Esquire
            Email: ffordhamlaw@aol.com

            Timothy C. Leventry, Esquire
            Leventry & Haschak
            Email: tleventry@lhrklaw.com

            Bernard C. Caputo, Esquire
            John A. Caputo & Associates
            Email: Bcaputolaw@aol.com

            Michael J. Seymour, Esquire
            Feczko & Seymour
            Email: mjseymour@covad.net