## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONAL INDOOR FOOTBALL LEAGUE L.L.C.,** | : | **CIVIL DIVISION** |
| | : | |
| **PLAINTIFF,** | : | **NO.: CA 2 - 548** |
| | : | |
| **v.** | : | **TYPE OF PLEADING:** |
| | : | |
| | : | **EXHIBITS TO** |
| **R.P.C. EMPLOYER SERVICES, INC.,** | : | **REPLY TO DEFENDANT'S MOTION** |
| **and DAN J. D'ALIO,** | : | **IN LIMINE AS TO HCFA RECORDS** |
| | : | **ALONE ESTABLISHING PLAINTIFF'S** |
| **DEFENDANTS.** | : | **CLAIM FOR MEDICAL PROOF OF** |
| | : | **DAMAGES** |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | **FILED ON BEHALF OF:** |
| | : | |
| | : | **PLAINTIFF** |
| | : | |
| | : | |
| | : | **COUNSEL FOR PLAINTIFF:** |
| | : | |
| | : | **TIMOTHY C. LEVENTRY, LL.M.** |
| | : | **LEVENTRY, HASCHAK & RODKEY,** |
| | : | **LLC** |
| | : | **PA I.D. 34980** |
| | : | **1397 EISENHOWER BOULEVARD** |
| | : | **RICHLAND SQUARE III, SUITE 202** |
| | : | **JOHNSTOWN, PA  15904** |
| | : | **(814) 266-1799** |

## **EXHIBITS**

A.    NIFL's October 28, 2006 Motions in Limine

B.    RPC's November 9, 2006 Response to the NIFL's Motions in Limine

C.    Court's February 1, 2007 Order

D.    December 5, 2005 Correspondence

E.    Greg Albright's April 11, 2001 HCFA for $1,890.00

F.    Greg Albright's April 16, 2001 HCFA for $189.00

G.    Derek Gackle's $35.00 HCFA

H.    Excerpt from the Medicare Intermediary Manual

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONAL INDOOR FOOTBALL LEAGUE L.L.C.,** | : | **CIVIL DIVISION** |
| **PLAINTIFF,** | : | |
| | : | **NO.: CA 2 - 548** |
| | : | |
| **v.** | : | |
| | : | **TYPE OF PLEADING:** |
| | : | |
| **R.P.C. EMPLOYER SERVICES, INC.,** | : | **PLAINTIFF'S MOTIONS** |
| **and DAN J. D'ALIO,** | : | **IN LIMINE WITH RESPECT TO THE** |
| **DEFENDANTS.** | : | **DAMAGES PORTION OF TRIAL** |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| | : | **FILED ON BEHALF OF:** |
| | : | |
| | : | **PLAINTIFF** |
| | : | |
| | : | |
| | : | **COUNSEL FOR PLAINTIFF:** |
| | : | |
| | : | **TIMOTHY C. LEVENTRY, LL.M.** |
| | : | **LEVENTRY, HASCHAK & RODKEY,** |
| | : | **LLC** |
| | : | **PA I.D. 34980** |
| | : | **1397 EISENHOWER BOULEVARD** |
| | : | **RICHLAND SQUARE III, SUITE 202** |
| | : | **JOHNSTOWN, PA  15904** |
| | : | **(814) 266-1799** |

**EXHIBIT**

A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL | : | CIVIL DIVISION |
| LEAGUE L.L.C., | : | |
| PLAINTIFF, | : | NO.: CA 2 - 548 |
| | : | |
| v. | : | |
| | : | TYPE OF PLEADING: |
| | : | |
| R.P.C. EMPLOYER SERVICES, INC., | : | PLAINTIFF'S MOTIONS |
| and DAN J. D'ALIO, | : | IN LIMINE WITH RESPECT TO THE |
| DEFENDANTS. | : | DAMAGES PORTION OF TRIAL |

## PLAINTIFF'S MOTIONS IN LIMINE WITH RESPECT TO THE DAMAGES PORTION OF TRIAL

AND NOW, comes the Plaintiff, National Indoor Football League ( hereinafter "NIFL"), by and through its attorneys, Leventry, Haschak & Rodkey, LLC, and files Motions in the Limine With Respect to the Damages Portion of Trial and in support thereof avers as follows:

## PLAINTIFF'S FIRST MOTION IN LIMINE
## WITH RESPECT TO THE DAMAGES PORTION OF TRIAL

**MOTION ISSUE:**       **Whether the NIFL's damage claims are affected by any sort of deductible or set off?**

**SUGGESTED HOLDING:** **No, the NIFL's damage claims are not reduced by any sort of deductible or set off.**

1.      RPC argues that the NIFL's damages are limited by a $1,000.00 per claim deductible under the Service Agreement, but this argument is without merit.[1]

---

[1]RPC did not plead the deductible as a defense in its Answer and Affirmative Defenses, nor did it raise the issue in its Motions in Limine filed with the Court prior to the March 28, 2006 trial and, therefore, RPC should be precluded from raising these issues at this time.

L:\N\National Indoor Football League 01-214\Motions in Limine with Repest to Damages Portion of Trial.wpd

2.     First, as already determined by this Court pursuant to its March 16, 2006 Order, a

deductible or set off does apply because RPC may be sued for <u>full common law damages</u> for failing

to provide workers insurance coverage. <u>Vandemark v. Southland Corporation</u>, 525 N.E.2d 1374

(OH 1988)(holding that damages in an action for the failure to submit claims to the Ohio Workers'

Compensation Bureau are the full amount of damages allowed at common law).[2]  RPC has already

admitted its failure to provide any Ohio state-based workers compensation insurance when it agreed

to liability on March 28, 2006 when the parties settled the liability portion of the case.  Therefore,

full common law damages apply.  Full common law damages are not reduced in any way by a

deducible or set off.

3.     Second, contrary to RPC's assertion, the Service Agreement's language does not

permit RPC to impose a deductible.  The Service Agreement contains a "Fee Structure Statement"

that states "DEDUCTIBLE: $1,000.00 PER CLAIM AS ASSESSED TO EACH TEAM BY THE

LEAGUE MANAGEMENT."  The Service Agreement is attached hereto, made a part hereof and

labeled **Exhibit A**.

4.     The Service Agreement does not state the deductible applies to  workers'

compensation insurance coverage under the Ohio system (or any other state or private insurance);

there simply is no mention anywhere in the Service Agreement that a deductible is intended to apply

to any workers' compensation coverage.  Also, the above- quoted provision clearly states the league

---

[2]This Court issued a March 16, 2006 Order holding that the "Plaintiff may be entitled to recover the
full amount of damages and medical bills if properly proven" pursuant to the Federal Rules of Evidence.  The
March 16, 2006 Order is attached hereto, made a part hereof and labeled **Exhibit B**.  The March 16, 2006
Order applies the holding of <u>Vandemark</u> and permits the NIFL to seek the full amount of damages including
all medical bills, lost wages and out-of-pocket costs available at common law.

management may assess a deductible to each team, but the league management is not RPC.[3]  The

league management, however, never assessed and never intended to assess a deductible.  Therefore,

as an implication of this language, the NIFL controls any deductible assessment, and RPC could not

avail itself of arguing for the deductible even assuming the deductible applied to workers'

compensation.

5.      The NIFL's interpretation of the Service Agreement (i.e., that it does not impose a

deductible capable of being levied by RPC) is also correct because RPC's Proposal to the NIFL for

its services does not make any mention of a workers' compensation deductible.

6.      In fact, the Proposal operates to eliminate any possibility for a deductible.  The

Proposal states "Ohio is a state-run workers' compensation insurance program and we have received

approval from our pool of managers to add your group."[4]  The Proposal is attached hereto, made a

part hereof and labeled **Exhibit C**.  The significance of this representation is that the Proposal

markets workers' compensation coverage through the state of Ohio, which is a state sponsored

program.  Ohio's state sponsored workers' compensation program, like other state-sponsored

programs, does not include a deductible in its reimbursement schemes.  If RPC would have provided

workers' compensation coverage through Ohio for the NIFL's players as it promised, Ohio would

not have assessed any sort of deductible and none would have been due.[5]

---

[3]RPC does not claim to perform any league managerial duties in the Service Contract.  None of
RPC's pleadings state that RPC has any authority over the NIFL as "league management."  Furthermore,
RPC's President never testified at deposition that RPC existed as or functioned as league management.

[4]By stipulating to liability, RPC has admitted that this sentence was a misrepresentation because RPC
never obtained workers' compensation insurance through Ohio.

[5]After the NIFL players became injured and began submitting claims to the state of Ohio in 2001,
all of which were denied, RPC never raised the issue of a deductible with the NIFL or the Ohio Bureau of
Workers' Compensation.

WHEREFORE, Plaintiff requests this Court to preclude Defendants from arguing that its damages are limited by any deductible capable of being assessed by the Defendants for claims submitted by injured NIFL players.

## PLAINTIFF'S SECOND MOTION IN LIMINE

## WITH RESPECT TO THE DAMAGES PORTION OF TRIAL

**MOTION ISSUE:**   **May Health Care Financing Administration 1500 forms[6] and/or medical charts/notes/reports be introduced for purposes of proving the injured NIFL players workers' compensation claims?**

**SUGGESTED HOLDING:**   **HCFA forms individually, medical charts/notes/reports individually, or a combination of both may be introduced to substantiate the NIFL's damages as long as each and any such record is accompanied by a certification that complies with Federal Rules of Evidence 803(6) and 902(11).**

7.    In deciding the proper method of proving damages, the Court issued a March 16, 2006 Order (**Exhibit B**) in which it held the following:

"Plaintiff will be permitted to introduce into evidence certain documents that may be used to establish its damages without actual testimony from medical provider(s).

---

[6]Health Insurance Claim Forms (HCFA-1500's) are mandated by the federal government's Healthcare Financing Administration and Department of Labor to reimburse health care providers for services rendered under the Medicare/Medicaid programs and to reimburse injured federal employees covered under the Department of Labor's Office of Workers' Compensation Programs. These forms are universally used for claim submission purposes by medical providers nationwide. Most importantly, Form HCFA-1500 contains the same information as the Ohio Bureau of Workers' Compensation Claim Forms (Form FROI-1), but it is superior in that it has a physician verification and identifies the specific treatment or services provided unlike Ohio Form FROI-1. An NIFL player HCFA, a blank HCFA and a blank Ohio FROI-I is attached as part of **Exhibit B**.

The HCFA-1500 requires the same information contained on the FROI-1 including the player's name, player's birth date and social security number, player's mailing address, the date of injury, the name of the employer or insurance provider and the identifying information for the medical provider or physician. Form HCFA-1500 also is just as detailed as form FROI-1 because it contains the amount of the provider's charges along with the CPT or HCPCS five digit code identifying the specific service or treatment rendered. The description of the procedure or service rendered is located Box 24(D). The American Medical Association compiles the CPT codes in yearly publications, and the federal government also compiles the HCPCS codes in yearly publications. The Ohio FRIO-1 requires similar codes to report diagnoses.

However, Plaintiff is forewarned that the requirements of Federal Rule of Evidence 803(6) and 902(11), as well as other Federal Rules of Evidence, will be strictly enforced and each document will be assessed for admissibility, including trustworthiness, upon presentation."

8.      In rendering this ruling, the Court permitted the NIFL to introduce medical records by following Rules 803(6) and 902(11). [7]

9.      The NIFL avers this Court permitted the introduction of documents under Rules 803(6) and 902(11) to prove damages, and the Court did not limit the type of documents it required to prove those damages.

10.     This Court's March 16, 2006 Order correctly did not require a specific document to prove damages because Rule of Evidence 803(6) permits any relevant document to be introduced as long as the document is a record of regularly conducted activity within the meaning of 803(6) and contains a corresponding Certification meeting the requirements of 902(11).[8]

---

[7]Rule 803(6) allows business records to be introduced, while 802(11) permits self-authentication of those records using a written certification. In Rambus, the Eastern District of Virginia laid out the four (4) requirements of a written certification needed to satisfy the Federal Rule of Evidence 902(11). Rambus, Inc. v. Infineon Technologies AG, 348 F.Supp.2d 698 (E.D. Va. 2004). If a written certification meets all four (4) requirements, the records are admissible without using a foundation witness: (1)  A custodian or other qualified person declares that he or she keeps or knows about the company's record keeping requirements and how they are created; (2)  The record must be "made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;" (3) The record must be "kept in the course of the regularly conducted activity," i.e., kept as a part of the usual course of business; (4) The record must have been a regular practice of a "regularly conducted activity" to make and keep the record at issue, i.e., keeping the record must be a regular practice of the business. Id. at 702-05. The NIFL's Certifications meet all of these requirements.

[8]Ohio accepted, without objection, HCFA forms and medical provider notes/charts/reports during the numerous administrative appeals of the players' claims. As stated in footnote 8, the HCFA Forms contain the same reporting information as the Ohio FROI-1 forms, but also are superior in that the HCFA's contain a physician certification. The NIFL should not be required to submit more evidence than it would have to submit to Ohio to prove the unpaid workers' compensation claims.

11.     Therefore, the NIFL may introduce a HCFA form alone, a medical provider's notes/chart/report alone (or similar medical record) alone, or a combination of the two to prove damages as long as the records are generated by the medical provider in the ordinary course of business and certified with a Rule 902(11) compliant Certification.

WHEREFORE, Plaintiff requests this Court permit the NIFL to introduce a HCFA form alone, a medical provider's notes/chart/report alone (or similar medical record), or a combination of the two to prove damages as long as the records are generated by the medical provider in the ordinary course of business and certified with a Rule 902(11) compliant Certification.

## PLAINTIFF'S THIRD MOTION IN LIMINE

## WITH RESPECT TO THE DAMAGES PORTION OF TRIAL

**MOTION ISSUE:**     **Can supplemental medical documentation/records for injured NIFL players and Rule 902(11) Certifications provided to RPC after March 13, 2006 be admitted into evidence to prove the NIFL's damages.**

**SUGGESTED HOLDING:** **Pursuant to the Court's March 23, 2006 Order, any medical records or similar documents which correspond to HCFA forms and similar records previously sent to RPC in November of 2005 are admissible as supporting documentation to prove the NIFL's damages. The Court's March 23, 2006 Order does not prevent the NIFL from introducing any Rule 902(11) Certifications sent after March 13, 2006 because these Certifications are documents needed to admit evidentiary records and are not themselves evidence that had to be provided to the RPC in November of 2005.**

12.     The Court issued a March 23, 2006 Order permitting the NIFL to provide to RPC supporting documentation for those records sent to RPC in November of 2005. A copy of the March 23, 2006 Order is attached hereto, made a part hereof and labeled **Exhibit D**.

13.     The NIFL sent to RPC in November of 2005 HCFA forms and medical provider notes/charts/reports illustrating services provided to injured NIFL players.

14.     On March 13, 2006, the NIFL sent additional medical provider notes/charts/reports that corresponded with and supplemented the HCFA forms and medical provider notes/charts/reports sent in November of 2005. Upon RPC's objection to the March 13, 2006 mailing, the Court ruled:

> "Plaintiff will be allowed to introduce into evidence any medical(s) records or documents that were produced to Defendants on March 13, 2006, if such records constitute the underlying supporting documentation to establish or confirm the accuracy of the information set forth in the medical provider-completed Health Insurance Claim Forms (HCFA-1500's) that were previously produced to Defendants in November of 2005, to the extent that the records in question are admissible under Federal Rules of Evidence 803(6) and 902(11), or otherwise with an appropriate foundation witness."

> "To the extent that the documents produced on March 13, 2006 are beyond the scope of those records provided to Defendants in November 2005, same will be excluded."

15.     The NIFL avers the Court's March 23, 2006 Order's primary concern was linking any supporting documentation sent post-November of 2005 to the medical provider's records and/or HCFA forms sent for a particular player in November of 2005. The March 23, 2006 Order allowed the NIFL to introduce the medical records it produced on March 13, 2006 (provided they comply with the other terms of the March 23, 2006 Order), but the Order did not say the NIFL could not submit additional compliant records after March 13, 2006.

16.     Accordingly, the Order also did not render inadmissible all provider records sent to RPC after March 13, 2006. Quite to the contrary, the Order permits the NIFL to introduce medical records as long as those records have been given to RPC and as long as those records support corresponding documents that were sent to RPC by the NIFL in November of 2005. As a result, all medical provider notes/charts/reports or HCFA forms (which are properly classified as a business

L:\N\National Indoor Football League 01-214\Motions in Limine with Repest to Damages Portion of Trial.wpd

record under the Federal Rules of Evidence) that were sent in March, April, or May of 2006 may be submitted to RPC and considered for the NIFL's damages as long as those forms correspond with and support medical provider notes/charts/reports or HCFA forms sent in November of 2005.

17.     The Court's March 23, 2006 Order made no mention of limiting the Rule 902(11) Certifications to those Certifications sent to the RPC on or before March 13, 2006. The Certificates are not an issue in this regard because they are not evidence that had to be provided to RPC in November of 2005. To the contrary, the Certifications are documents used obtain the introduction of HCFA forms and medical provider notes/charts/reports. RPC's attempt is prejudicial to have the Court exclude supplemental medical records, medical forms and Certifications by an artificial deadline, which information was previously disclosed/provided five (5) months before the previous trial by the submission of HCFA Forms or medical charts/notes/reports in November of 2005. This is especially true since RPC undertook no discovery relative to the information provided in November of 2005.

WHEREFORE, Plaintiff requests this Court permit the NIFL to introduce all HCFA forms, medical records, or similar documents provided to RPC at any time as long as those records and forms correspond to HCFA forms and similar records previously sent to RPC in November of 2005 in order to prove the NIFL's damages. The Plaintiff requests further that the Court permit the NIFL to introduce any Rule 902(11) Certifications notwithstanding when those Certifications were sent to RPC.

## PLAINTIFF'S FOURTH MOTION IN LIMINE

## WITH RESPECT TO THE DAMAGES PORTION OF TRIAL

**MOTION ISSUE:**     **Can the Court take judicial notice of judgments entered against the NIFL and/or its member teams in other jurisdictions, as establishing the NIFL's damages relative to those judgments.**

**SUGGESTED HOLDING:**  **Yes, the Court may take judicial notice of all judgments entered against the NIFL and/or member teams in other jurisdictions as establishing the NIFL's damages relative to those judgments.**

18.      Rule 201(b) of the Federal Rules of Evidence permits a district court to take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201(b).

19.      Under Rule 201(d) of the Federal Rules of Evidence, a district court must take judicial notice "if requested by a party and supplied with the necessary information." Rule 201(d).

20.      Pursuant to Rule 201(b)(2), the Court can take judicial notice of the contents of court records from another jurisdiction. Southmark Prime Plus, L.P. v. Falzone, 776 F.Supp. 888, 892 (D. Del. 1991) citing Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989); Green v. Warden, U.S. Penitentiary, 699 F.2d 364, 369 (7th Cir.), cert. denied, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983) ("Furthermore, federal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.") (citations omitted). The contents of the court records that may be judicially noticed include the briefs and petitions of the parties. Southmark Prime Plus, L.P. v. Falzone, 776 F.Supp. 888, 892 (D. Del. 1991) citing United States ex rel. Geisler v. Walters, 510 F.2d 887, 890 n. 4 (3d Cir.1975) (taking judicial notice of briefs and petitions filed in other courts).

21.     Several judgments were entered against the NIFL or its member teams in favor of injured NIFL players whose injuries were not covered workers compensation insurance due to RPC's breach of contract.  Accordingly, these judgments are at issue in this case for purposes of determining the NIFL's damages.

22.     The judgments include those by Nicky Seymour filed at MWCC No. 02 10760-H-5080-C in the Mississippi Workers' Compensation Commission; by Emmanuel Bentley filed at MWCC No. 02 10761-H5081-C and MWCC No. 02 10762-H5082-C in the Mississippi Workers' Compensation Commission; and by Kareem Vance filed at 02-4361 in the Office of Workers' Compensation District 1E of Louisiana. Copies of the three (3) judgments are attached hereto, made a part hereof and labeled **Exhibit E.**

23.     The NIFL requests the Court take judicial notice of the aforementioned judgments and other judgments introduced at trial as part of the damages due the NIFL and fix the judgment amount as the amount of damages due to the NIFL for the respective player's case.

WHEREFORE, Plaintiff requests this Court take judicial notice of Nicky Seymour's judgment, Emmanuel Bentley's judgment and Kareem Vance's judgment and other similar judgments introduced at trial.

Respectfully submitted,

_____ s/ Timothy C. Leventry _____
TIMOTHY C. LEVENTRY, LL.M.
LEVENTRY, HASCHAK & RODKEY, LLC.
PA I.D. 34980
1397 EISENHOWER BOULEVARD
RICHLAND SQUARE I, SUITE 202
JOHNSTOWN, PA  15904
(814) 266-1799

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONAL INDOOR FOOTBALL** | : | **CIVIL DIVISION** |
| **LEAGUE L.L.C.,** | : | |
| **PLAINTIFF,** | : | **NO.: CA 2 - 548** |
| | : | |
| **v.** | : | |
| | : | **TYPE OF PLEADING:** |
| | : | |
| **R.P.C. EMPLOYER SERVICES, INC.,** | : | **PLAINTIFF'S MOTIONS** |
| **and DAN J. D'ALIO,** | : | **IN LIMINE WITH RESPECT TO THE** |
| **DEFENDANTS.** | : | **DAMAGES PORTION OF TRIAL** |

### CERTIFICATE OF SERVICE

I hereby certify that on the _____29th_____ day of _____October_____, 2006,

a true and correct copy of the **PLAINTIFF'S MOTIONS IN LIMINE WITH RESPECT TO**

**THE DAMAGES PORTION OF TRIAL** was served by First Class United States Mail, email

and/or facsimile by postage prepaid, upon the following:

**Michael J. Seymour, Esq.**
**Feczko and Seymour**
**520 Grant Building**
**310 Grant Street**
**Pittsburgh, PA 15219**

**Bernard C. Caputo, Esq.**
**Fort Pitt Commons Building, Suite 260**
**445 Fort Pitt Boulevard**
**Pittsburgh, Pennsylvania 15219**

**LEVENTRY,  HASCHAK**
**& RODKEY, LLC**

**s/ Timothy C. Leventry**
**Timothy C. Leventry, LL.M.**

L:\N\National Indoor Football League 01-214\Motions in Limine with Repest to Damages Portion of Trial.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NATIONAL INDOOR FOOTBALL       )
LEAGUE, L.L.C.                 )
                              )
        Plaintiff,            )
    v.                        )    CIVIL ACTION NO.: 2:02-cv-548
                              )
R.P.C. EMPLOYER SERVICES,     )
INC.,                         )
        Defendant.            )

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE WITH RESPECT TO THE DAMAGES PORTION OF THE TRIAL

AND NOW, comes the Defendant R.P.C. Employer Services, Inc.
(hereinafter "RPC"), by its attorneys, Feczko and Seymour and
Michael J. Seymour, Esquire and files the following Response to
Plaintiff's Motion in Limine with Respect to the Damages Portion
of the Trial:

### FIRST MOTION IN LIMINE

**ISSUE:**   **WHETHER PLAINTIFF'S CLAIMS ARE REDUCED BY A DEDUCTIBLE?**

**ANSWER:**   **YES, EACH CLAIM IS REDUCED BY A $1,000.00 PER CLAIM DEDUCTIBLE PURSUANT TO THE TERMS OF THE SERVICE AGREEMENT BETWEEN THE PARTIES.**

1.     The Service Agreement did provide that each claim
would be subject to a $1,000.00 deductible.  The fee payable to
RPC was based upon the fee structure statement referenced in
Paragraph 3(a) of the Service Agreement.  The fee structure
statement under description indicates a deductible in the amount
of $1,000.00 with the language, "per claim as assigned to each

EXHIBIT
B

team by the League Management." Attached to Plaintiff's Motions In Limine as Exhibit "A" is a copy of the Service Agreement.

2.     This Court's Order dated March 16, 2006 did not determine that the deductible did not apply. This issue was neither raised nor referenced in the Court's Order of March 16, 2006.

3.     The Service Agreement did contain a fee structure statement being page 7 of the Service Agreement, a copy of which is attached as Exhibit "A" to Plaintiff's Motion which contains the language as quoted.

4.     The deductible is clearly referenced under the section dealing with Workers' Compensation and the applicable fees and as further acknowledged by the President, Caroline Shiver's response in accepting the deductible when she signed the Service Agreement stating "The original quote to us is as noted, however, the contract says a $1,000.00 deductible per claim. We can manage this, but I did not know about this". See Page 16 of P-24 of Plaintiff's List of Exhibits. Accordingly, the Plaintiff signed the Service Agreement accepting the $1,000.00 deductible as a condition of the contract.

5.     It is admitted that the proposal submitted to the Plaintiff by RPC in October, 2000 did not impose a deductible. However, the first paragraph of the proposal stated "Please keep in mind that this proposal is valid until January 1, 2001. If

2

service in part or in whole is not commenced by that time, then a
new proposal may be necessary." The Service Agreement was not
signed on behalf of the Plaintiff until March 21, 2001 and on
behalf of the Defendant, on March 27, 2001 and as previously
mentioned, did include a fee structure schedule with the
$1,000.00 deductible per claim referenced and agreed upon by
Plaintiff's President.

6.    It is denied that there is any language in the
proposal which eliminates any possibility for a deductible.  On
the contrary as previously stated, the proposal was subject to
change at any time following January 1, 2001.  The balance of the
averments are denied.

**WHEREFORE,** Plaintiff's claims are subject to a $1,000.00
deductible per claim.

### SECOND MOTION IN LIMINE

**ISSUE:**        **MAY HEALTH CARE FINANCING ADMINISTRATION
                1500 FORMS AND/OR MEDICAL CHARTS/NOTES/
                REPORTS BE INTRODUCED FOR PURPOSES OF
                PROVING THE INJURED NIFL PLAYERS' WORKERS'
                COMPENSATION CLAIMS?**

**ANSWER:**       **ONLY IF THEY COMPLY WITH THE COURT ORDERS
                DATED JULY 18, 2005, MARCH 16, 2006 AND
                MARCH 23, 2006.**

7.    It is admitted this Court issued an Order dated March
16, 2006 containing the verbiage quoted.

8.    It is admitted the Court permitted the NIFL to

3

introduce medical records by following Rule 803(6) and 902(11)
adding a warning that the requirements of these rules "will be
strictly enforced and each document will be assessed for
admissibility including trustworthiness, upon presentation."

9.     The averment in Paragraph 9 is denied as the language
of the court Order states ". . . the Court rules that Plaintiff
will be permitted to introduce into evidence certain documents...
. . . ."

10.     It is admitted that the Court's March 16, 2006 Order
did not require a specific document to prove damages.  However,
this Court's Order of March 23, 2006 did restrict Plaintiff to
the medical records supplied to Defendants in November, 2005 and
documents produced to Defendants on March 13, 2006, "if such
records constitute the underlying supporting documents to
establish or confirm the accuracy of the information set forth in
the medical provider completed health insurance claim forms
(HCFA-1500) that were previously produced to Defendants in
November, 2005 to the extent that the records in question are
admissible under Federal Rules of Evidence 803(6) and 902(11) or
otherwise with an appropriate foundation witness."

11.     It is denied that the NIFL may introduce a HCFA form
alone or a medical provider's notes/chart/report alone (or
similar medical record) alone and to the contrary must be in
accordance with the prior rulings of this Court.

4

**WHEREFORE,** Plaintiff's request to introduce a HCFA form alone or any medical record alone should be denied.

### THIRD MOTION IN LIMINE

ISSUE:        **CAN SUPPLEMENTAL MEDICAL DOCUMENTATION/ RECORDS FOR INJURED NIFL PLAYERS AND RULE 902(11) CERTIFICATIONS PROVIDED TO RPC AFTER MARCH 13, 2006 BE ADMITTED INTO EVIDENCE TO PROVE THE NIFL'S DAMAGES?**

ANSWER:       **NO.**

12.    It is admitted that this Court issued a March 23, 2006 Order permitting Plaintiff to provide RPC supporting documentation for those records sent to RPC in November, 2005.

13.    Although the Plaintiff did send to Defendant in November, 2005 HCFA forms and other medical invoice forms, it did not provide notes/charts/reports illustrating services provided to injured NIFL players.  In response to the production, Defendant's counsel directed correspondence to Plaintiff's counsel dated December 1, 2005 complaining that the information supplied consisted of nothing more than a billing statement by the medical provider identifying the name and address of the player, the player's date of birth, the name of the player's team and the part of the anatomy involved.  An example is attached to the letter from Defendant's counsel dated December 1, 2005.

14.    It is admitted the Plaintiff sent additional medical provider notes/charts/reports that corresponded with and

5

supplemented certain HCFA forms and certain medical invoices, but did not supplement prior notes/charts/reports sent in November, 2005.  It is further admitted that the Court's Order dated March 23, 2006 referring to the March 13, 2006 production is accurately quoted and excluded any documents produced on March 13, 2006 which went beyond the scope of the records provided to Defendants in November, 2005.

15.    The Defendant denies the allegation concerning the Order's primary concern, as the Order speaks for itself. Although the Order referenced did not say the Plaintiff could not submit additional compliant records after March 13, 2006, the case was scheduled for trial on March 28, 2006, the Order was entered March 23, 2006 and no further productions were requested by Plaintiff or expected by Defendant.

16.    It is denied that the Order of March 23, 2006 permits the Plaintiff to introduce medical records sent after March 15, 2006 as long as those records have been given to Defendant and as long as though those records support corresponding documents that were sent to Defendant by the Plaintiff in November of 2005.

17.    The Court's Order of March 23, 2006 excluded any evidence not produced on March 13, 2006 as the Order was entered on March 23, 2006 and the trial was scheduled to commence March 28, 2006.  Plaintiff had been aware of the required documentation to prove damages from Judge Ambrose's Order dated July 18, 2005

6

and any prejudice suffered by it is due to its lack of diligence. It is admitted that Defendant undertook no discovery relative to the information provided in November, 2005 and it is averred that no such discovery was required as Defendant did not receive proper authentication for the records that had been received.

**WHEREFORE,** Plaintiff's request to introduce all HCFA forms, medical records, similar documents or Rule 902(11) Certifications at any time should be denied.

### FOURTH MOTION IN LIMINE

**ISSUE:**        **CAN THE COURT TAKE JUDICIAL NOTICE OF JUDGMENTS ENTERED AGAINST THE NIFL AND ITS MEMBER TEAMS IN OTHER JURISDICTIONS AS ESTABLISHING THE NIFL'S DAMAGES RELATIVE TO THOSE JUDGMENTS?**

**ANSWER:**        **NO.**

18.    Rule 201(b) of the Federal Rules of Evidence speaks for itself.

19.    Rule 201(d) of the Federal Rules of Evidence speaks for itself.

20.    Rule 201(b)(2) of the Federal Rules of Evidence speaks for itself.

21.    It is unknown as to whether or not judgments have been entered against the NIFL or its member teams in favor of injured NIFL players whose injuries were not covered by Workers' Compensation insurance due to RPC's breach of contract.

7

Therefore, it is denied these judgments are at issue in this case for purposes of determining the Plaintiff's damages.

22.     The judgments referred to speak for themself.

23.     The Plaintiff's request that the Court take judicial notice of the judgments and fix the amount as the amount of damages due the Plaintiff for the respective players' case should be denied unless the Defendant previously received in accordance with the prior rulings of this Court the documentary evidence required to support such claims and the judgments are properly certified and authenticated in accordance with the Federal Rules of Evidence.

**WHEREFORE,** Plaintiff's request that the Court take judicial notice of the judgments by Nicky Seymour, Emanuel Bently and Corrine Vance should be denied.

Respectfully submitted,

**FECZKO AND SEYMOUR**

_s/Michael J. Seymour_
Michael J. Seymour, Esquire
PA I.D. No. 00260
Feczko and Seymour
Firm I.D. #003
310 Grant Street
Suite 520 Grant Building
Pittsburgh, PA 15219
(412) 261-4970

8

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I served a true and correct copy of the within Defendant's Response to Plaintiff's Motion in Limine with Respect to the Damages Portion of the Trial upon the following **electronically** on the 9th day of November, 2006:

Timothy C. Leventry, Esquire
**LEVENTRY, HASCHAK, RODKEY & KLEMENTIK, LLC**
1397 Eisenhower Boulevard
Richland Square III, Suite 202
Johnstown, PA 15904

*s/Michael J. Seymour*
Michael J. Seymour, Esquire
Counsel for Defendant

9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 02cv0548 |
| | ) | |
| R.P.C. EMPLOYER SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER OF COURT

February 1, 2007

Presently before the Court are the following:

(1) MOTIONS IN LIMINE WITH RESPECT TO THE DAMAGES PORTION OF THE TRIAL, with brief in support, filed by Plaintiff, the National Indoor Football League, L.L.C. ("NIFL") (*Document Nos. 100 and 103, respectively*), and the response and brief in opposition filed by Defendant, R.P.C. Employer Services, Inc. ("RPC") (*Document Nos. 104 and 107, respectively*); and

(2) MOTION IN LIMINE WITH RESPECT TO PLAINTIFF'S DAMAGES, with brief in support, filed by RPC (*Document Nos. 105 and 106*) and the reply in opposition filed by the NIFL (*Document No. 108*).

The Motions will be addressed seriatim.

**EXHIBIT**

**C**

### PLAINTIFF'S FIRST MOTION IN LIMINE WITH RESPECT TO THE DAMAGES PORTION OF TRIAL (DOCUMENT NO. 100-1)

RPC contends that each claim for damages being asserted by the NIFL on behalf of an injured player for the lack of workers compensation coverage/benefits should be reduced by a $1,000 per claim deductible pursuant to the terms of the Service Agreement.[1]  The NIFL responds that because its claims are for common-law damages, the damages available to it are the full amount of damages and no deductible or set off should apply.

In its Memorandum Opinion and Order of Court filed on March 16, 2006 (Document No. 71), the Court determined that the claims surrounding this litigation "fall outside the scope of workers' compensation statutes" and, therefore, the NIFL is entitled to recover the full amount of common law damages.  Plaintiff's potential recovery will not be limited by the level of reimbursement available under the Ohio Worker's Compensation Act.  Likewise, Plaintiff's claims for common law damages are not subject to or reducible in any way by a deductible or set off.

Moreover, in the Court's view the Service Agreement language pertaining to a workers' compensation deductible is simply not applicable to any damages in this litigation.  Rather, the referenced deductible pertains to RPC's fee structure.  *See Service Agreement, Fee Structure Statement* ("DEDUCTIBLE:  $1000 - PER CLAIM AS ASSESSED TO EACH TEAM BY THE LEAGUE MANAGEMENT.)  This deductible may very well be applicable to

---

[1]    Interestingly, RPC did not plead any deductible as a defense in its Answer and Affirmative Defenses pursuant to Federal Rule of Civil Procedure 8(b) and (c), nor did it raise the issue in its Motions in Limine which were filed with the Court prior to the March 28, 2006 trial date.

the calculation of fees payable to RPC under the contract, i.e., no payroll percentage fee

payable to RPC on the first $1,000.00 of workers compensation benefits paid per claim. There

is no other reference any where in the Service Agreement that a deductible is intended to apply

to any workers' compensation coverage or benefits. *See also Service Agreement, ¶ 5(a)*

*Insurance - Workers' Compensation Insurance.*

The Court finds that the NIFL's damage claims are not to be reduced by any

deductible or set off and therefore will grant the NIFL's First Motion in Limine.


### PLAINTIFF'S SECOND MOTION IN LIMINE WITH RESPECT TO THE DAMAGES PORTION OF TRIAL (DOCUMENT NO. 100-2)

In the NIFL's second motion in limine, it seeks to introduce all Health Care

Financing Administration ("HCFA") 1500 forms and/or medical charts/notes/reports or a

combination of both to substantiate its damages as long as same are accompanied by a

certification that complies with Federal Rules of Evidence ("FRE") 803(6) and 902(11).

By Order of Court dated March 23, 2006, the Court ordered as follows:

"1.    Plaintiff will be allowed to introduce into evidence any and all medical

records supplied to Defendants in November 2005 to the extent that the records in question are

admissible under Federal Rules of Evidence 803(6) and 902(11), or otherwise with an

appropriate foundation witness;

"2.    Plaintiff will be allowed to introduce into evidence any medical(s) records or

documents that were produced to Defendants on March 13, 2006, <u>if</u> such records constitute the

underlying supporting documentation to establish or confirm the accuracy of the information

set forth in the medical provider-completed Health Insurance Claim Forms (HCFA-1500s) that

were previously produced to Defendants in November 2005, to the extent that the records in

question are admissible under Federal Rules of Evidence 803(6) and 902(11), or otherwise with

an appropriate foundation witness.  *See* November 18, 2005, correspondence from Timothy

Leventry, Esquire to Michael J. Seymour, Esquire; and December 5, 2005, correspondence

from Timothy Leventry, Esquire to Michael J. Seymour, Esquire.

"3.     To the extent that the documents produced on March 13, 2006 are beyond the

scope of those records provided to Defendants in November 2005, same will be excluded."

*Order of Court, March 23, 2006, Document No. 82.*

The Court is not persuaded that it should change its decision on this issue but some

clarification may be warranted.   The NIFL may introduce an HCFA 1500 form alone provided

said form/record(s) is in compliance with FRE 803(6) and 902(11) or otherwise through an

appropriate foundation witness.  Likewise, the NIFL may introduce a medical provider's

notes/chart/report (or other similar medical record) alone provided said record(s) is in

compliance with FRE 803(6) and 902(11) or otherwise through an appropriate foundation

witness.  Also, each component of any combination of HCFA 1500 form(s) and medical

provider notes/chart/report which NIFL seeks to introduce must be in compliance with FRE

803(6) and 902(11) or otherwise through an appropriate foundation witness.

Accordingly, the NIFL's Second Motion in Limine will be granted.

Although this ruling outlines the requirements and parameters regarding the

admissibility of certain records, the actual determination of admissibility must be made at trial

on a record-by-record submission basis.  Also, at trial the factfinder may need guidance from

the Court as to the fact(s) or import which a particular record may be considered to prove.[2]

### PLAINTIFF'S THIRD MOTION IN LIMINE WITH RESPECT TO THE DAMAGES PORTION OF TRIAL (DOCUMENT NO. 100-3)

The NIFL's Third Motion in Limine requests that supplemental medical

documentation/records for injured NIFL players and FRE 902(11) certifications provided to the

RPC after March 13, 2006 be admissible and/or utilized to prove the NIFL's damages.

---

[2]    For illustrative purposes, the Court has reviewed the prototype records of Greg Albright and John Nicky Seymour submitted by Attorney Leventry with his December 5, 2006 correspondence. The records regarding Greg Albright are an example of a combination of HCFA 1500 forms and a physician record/chart both of which appear to have a proper certification. The HCFA 1500 form dated April 11, 2001 appears to establish a work-related injury for which Dr. D.P. Slawski rendered specific medical treatment on April 12, 2001, at a cost of $1,890.00 which would appear to be admissible for those basic pertinent facts. The HCFA 1500 form dated April 16, 2001, however, although appearing to be admissible as evidence, will likely not suffice to prove the medical treatment cost of $189.00 because the checkmark in box 10(A) reflects that the patient's condition is not related to his employment with Trinity Diesel, i.e., not a work-related injury. Accordingly, the records preliminarily submitted regarding Greg Albright appear to support a damages finding in the amount of $1,890.00, but not in the total amount of $2,079.00

The records regarding John Nicky Seymour are an example of a physician record/chart and billing account which appear to have a proper certification and are likely admissible as evidence at trial.  However, there is nothing appearing in those records from which a factfinder could reasonably conclude that the medical condition for which the provider (Dr. Pomeranz) treated Mr. Seymour was causally related to an injury suffered as a result of his alleged employment with the Mississippi Fire Dogs.  Therefore, although the records may be admissible as evidence, they may not be sufficient to prove the ultimate fact(s) to meet the Plaintiff's burden of proof regarding damages.

As early as July 19, 2005, the NIFL was explicitly made aware of the required documentation which would be necessary to prove its claims for damages and the dates by which it was to provide such documentation. *See Order of Court, Document No. 48.* It appears that limited documentation was provided to RPC in a timely fashion by Plaintiff. Nevertheless, over objection, the Court permitted Plaintiff to supplement document production up to March 13, 2006, a date immediately preceding the trial. On March 28, 2006, a jury was selected and opening statements were about to commence when counsel announced to the Court that a settlement had been achieved on the liability aspect of the case and that the parties wished to engage in mediation regarding the damages aspect of the matter. It was fully expected that Plaintiff was prepared to present all of its testimony and evidence at that time. The Court acceded to the request of the parties and discharged the jury. Apparently, mediation ensued over several months. Unfortunately, mediation was not successful due to evidentiary issues which the Court is addressing herein.

After unsuccessful mediation efforts, the parties returned to the Court requesting a trial on damages. Plaintiff now seeks to present as evidence at trial additional medical records which were not previously provided to Defendant prior to March 13, 2006, and/or FRE 902(11) certifications dated after March 13, 2006 regarding medical records which were provided to Defendant prior to March 13, 2006. Such an effort by counsel for Plaintiff shall not be countenanced.

The Court's Order of March 23, 2006, specifically addressed the admissibility of medical records or documents that had been produced on or before March 13, 2006. This Order was issued five (5) days before trial was to commence. No additional records were

6

anticipated, expected, proffered or requested prior to trial. Implicit in the Court Order was the absolute cut-off date for the production of records as of March 13, 2006. That cut-off date is hereby explicit.

No medical record of any kind nor certification of records produced after March 13, 2006, shall be admitted into evidence at the trial of this action. FRE 902(11) provides in pertinent part:

> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Plaintiff's Third Motion in Limine will be denied.

### PLAINTIFF'S FOURTH MOTION IN LIMINE WITH RESPECT TO THE DAMAGES PORTION OF TRIAL (DOCUMENT NO. 100-4)

Lastly, the NIFL requests the Court to take judicial notice of judgments entered against the NIFL and its member teams in other jurisdictions to establish the NIFL's damages relative to those judgments.

The Court will take judicial notice of the evidence considered, findings and Orders and/or Judgments from appropriate adjudicative tribunals in other jurisdictions provided that sufficient information is reflected in the order/judgment record(s) to establish a work-related injury within the subject coverage time period with related medical treatment and specific costs therefor. Further, all such Orders and/or Judgments must be properly certified and

authenticated in accordance with the Federal Rules of Evidence and such

evidence/documentation must have been produced to RPC on or before March 13, 2006.[3]

Plaintiff's Fourth Motion in Limine will be granted in part and denied in part.

## DEFENDANT'S FIRST MOTION IN LIMINE (DOCUMENT NO. 105-1)

In 2001, the NIFL consisted of eighteen (18) teams.  The NIFL argues that thirteen

(13) teams submitted necessary information to RPC for workers' compensation purposes.

RPC, however, contends that only ten (10) teams paid monies to RPC and therefore, the

NIFL's claims should be limited to those ten (10) teams.[4]

Pursuant to the New Employee Packet, before a team and its players could be

properly registered as employees of RPC, it was mandatory that the following forms be

completed and returned to RPC:  "Employee Status Box; Application for Employment; W-4

Employee's Withholding Allowance Certificate, I-9:  Employment Eligibility verification;

Photo copy of Social Security and Drivers License; Employment Agreement; Payroll Direct

---

[3]     Upon review of the submissions by Attorney Leventry regarding the workers
compensation claims of Emmanuel Bentley and Nicky Seymour against the
Mississippi Fire Dogs, it appears that sufficient information is reflected in the Order
of Administrative Judge to justify judicial notice of same provided proper
authentication/certification and notice to RPC with copies on or prior to March 13,
2006.

On the other hand, the submission on behalf of Kareem Vance against the Monroe
Bayou Beast appears to be inadequate to prove the damages claimed insofar as the
Judgment does not establish a specific work-related injury on a date within the
subject coverage time period for which particular medical treatment was rendered.
The Judgment may itself qualify for judicial notice, but it is lacking in specific
evidentiary value.

[4]     The three teams in question are the Louisiana Bayou Beasts, the Mobile Seagulls,
and the Southern Oregon Heat.

Deposit Authorization Form; Local Tax Form (if applicable); BWC Ohio Workers

Compensation Form C-110; Emergency Notice Form; Occupational Privilege Tax Form (if

applicable); and Statement of Policy." *(See Exhibit P-24.)*  It appears that the only evidence

submitted by the NIFL on behalf of the three (3) teams in question are the C-110 forms which

may have been supplied recently.  Further, Defendant alleges that Plaintiff's own Exhibit P-23,

reflects that only ten (10) teams paid monies to RPC and none of the three disputed teams are

listed on the Exhibit.

  Although it appears that RPC's motion to limit the damages claims to ten (10) teams

has merit, the Court will withhold so ruling pending presentation of appropriate evidence to

establish same at trial.  Therefore, Defendant's First Motion in Limine will be denied without

prejudice, but essentially deferred.


## DEFENDANT'S SECOND MOTION IN LIMINE (DOCUMENT NO. 105-2)

  Paragraph 2 of the Service Agreement provides in relevant part, as follows:

> During the Initial Term, RPC or Client may terminate this Agreement by
> giving written notice of termination to the other party thirty (30) days prior
> to the effective date of said termination.  During the Extended Term, either
> party may terminate this Agreement upon giving written notice thirty (30)
> days prior to the effective date of said termination.  Notwithstanding
> anything to the contrary contained in this Agreement, RPC may terminate
> this Agreement immediately upon twenty-four (24) hours notice to Client
> in the event of a material breach by Client of any of the provisions to this
> Agreement.

*Service Agreement, Paragraph 2.*  It is undisputed that the Service Agreement had an effective

date of March 20, 2001.  RPC contends that by letter dated April 16, 2001, it terminated the

Service Agreement for a material breach effective on April 17, 2001, or, at the very latest,

thirty days thereafter, on May 17, 2001.  According to RPC, any claims which occurred after May 17, 2001 and are not covered by workers' compensation is a result of the NIFL's failure to act and mitigate its damages.

The NIFL responds that there should be no cutoff date for claims because RPC terminated the Service Agreement in bad faith and, therefore, all medical bills incurred by the players for the entire season should be included in its proof of damages.   Also, it appears that RPC not only terminated the contract, but also failed to tell the NIFL that the players were not and could not be eligible for Ohio Worker's Compensation coverage.  Further, the NIFL denies that it "materially breached the Service Agreement, which RPC acknowledged by its agreement to withdraw its counterclaim against the NIFL." *Pl's Response at 5, ¶ 11.*

Undeniably, RPC has acknowledged liability on the breach of contract claim brought against it by the NIFL and has withdrawn its counterclaim against the NIFL.  This Court cannot give effect to a limitation of liability clause to a party, who not only wrote the limitation of liability clause, but by its own admission, breached the contract.

Accordingly, the Court finds and rules that the permissible damage claims may encompass the entire 2001 NIFL season, and, Defendant's Second Motion in Limine will be denied.

### DEFENDANT'S THIRD MOTION IN LIMINE (DOCUMENT NO. 105-3)

Paragraph 14, entitled Warranty, of the Service Agreement, provides as follows:

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE
CONTRARY, RPC MAKES NO COVENANT, REPRESENTATION,
WARRANTY, OR AGREEMENT OF ANY KIND, EXPRESS OR
IMPLIED, TO CLIENT OR ANY OTHER PARTY WITH RESPECT TO

THE PERFORMANCE BY EMPLOYEES OF SERVICES RENDERED
TO CLIENT AS CONTEMPLATED HEREUNDER.  UNDER NO
CIRCUMSTANCES SHALL RPC TOTAL LIABILITY OF ANY KIND
ARISING OUT OF OR RELATED TO THIS AGREEMENT
(INCLUDING BUT NOT LIMITED TO ANY WARRANTY CLAIMS
HEREUNDER REGARDLESS OF THE FORUM AND REGARDLESS
OF WHETHER ANY ACTION OR CLAIM IS BASED ON
CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE) EXCEED
THE TOTAL AMOUNT PAID BY CLIENT TO RPC AS SERVICE
FEES HEREUNDER (DETERMINED AS OF THE DATE OF ANY
FINAL JUDGMENT IN SUCH ACTION).

*Service Agreement, at ¶ 14.*  For the first time in this litigation, RPC, relying on Paragraph 14

of the Service Agreement, argues that "once the amount of damages has been determined, . . . ,

the Court will be required to mold the verdict so as to reduce any amount of damages to no

more than the amount of the service fees paid by Plaintiff to Defendant." *Def's Mot. at ¶ 16.*

The Court finds that RPC's argument fails for two reasons.

First, a party's failure to raise an affirmative defense by a responsive pleading or by

an appropriate motion generally results in the waiver of that defense.  *Charpentier v. Godsil,*

937 F.2d 859, 863 (3d Cir. 1991).  Heretofore, RPC has never raised the issue that damages

were limited by Paragraph 14 of the Service Agreement.  The Court, therefore, finds that the

NIFL would be severely prejudiced if the limitations stated in Paragraph 14 of the Service

Agreement were now imposed, especially in light of the fact that the issue of liability has been

resolved in favor of the NIFL.

Further, assuming *arguendo* that RPC was permitted to argue for the application of

Paragraph 14, the interpretation of Paragraph 14 clearly reveals that it does not apply to limit

the damages of the NIFL in this case.  The Court is persuaded by the logic and reasoning of the

NIFL on this issue.  Paragraph 1 of the Service Agreement forms the basis of the contract, *e.g.,*

11

that RPC is furnishing to the NIFL staffing for all job function positions.  (*See* Service

Agreement, at ¶ 1 - "RPC hereby agrees to furnish to Client, and Client hereby agrees to engage

from RPC, staffing for all Job Function Positions."   When Paragraph 14 and Paragraph 1 are

read in tandem, it is apparent that Paragraph 14 would not apply to the instant situation wherein

RPC has been sued by the NIFL for failing to provide worker's compensation coverage, not

"with respect to the performance by [RPC] employees of services rendered to [the NIFL.]."

      Accordingly, the Court finds and rules that Defendant's Third Motion in Limine will

be denied.

      An appropriate Order follows.

                McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 02cv0548 |
| | ) | |
| R.P.C. EMPLOYER SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER OF COURT**

AND NOW, this 1st day of February, 2007, in accordance with the foregoing

Memorandum Opinion, it is **ORDERED, ADJUDGED, AND DECREED** as follows:

1.     Plaintiff's First Motion in Limine (*Document No. 100-1)* is **GRANTED**;

2.     Plaintiff's Second Motion in Limine (Document No. 100-2) is **GRANTED**;

3.     Plaintiff's Third Motion in Limine (Document No. 100-3) is **DENIED**;

4.     Plaintiff's Fourth Motion in Limine (Document No. 100-4) is **GRANTED
IN PART AND DENIED IN PART**;

5.     Defendant's First Motion in Limine (Document No. 105-1) is **DENIED
WITHOUT PREJUDICE**;

6.     Defendant's Second Motion in Limine (Document No. 105-2) is **DENIED**;
and

7.     Defendant's Third Motion in Limine (Document No. 105-3) is **DENIED**;

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:  Forrest B. Fordham, III, Esquire
   Email: ffordhamlaw@aol.com

   Timothy C. Leventry, Esquire
   Leventry & Haschak
   Email: tleventry@lhrklaw.com

   Bernard C. Caputo, Esquire
   John A. Caputo & Associates
   Email: Bcaputolaw@aol.com

   Michael J. Seymour, Esquire
   Feczko & Seymour
   Email: mjseymour@covad.net

# Leventry, Haschak, Rodkey & Klementik, LLC

### Attorneys at Law

Sender's E-mail:
tleventry@lhrklaw.com

December 5, 2005

Timothy C. Leventry, LL.M.*
John M. Haschak**
Randall C. Rodkey
David C. Klementik, LL.M*

Terry L. Graffius
Ryan J. Sedlak
Paul J. Eckenrode

Mary Beth Krause (Paralegal)
*Legal Masters Degree in Taxation
**Registered Patent Attorney

**VIA Facsimile: 412-261-4970**

**Michael J. Seymour, Esq.**
**Feczko and Seymour**
520 Grant Building
310 Grant Street
Pittsburgh, PA 15219-2201

Re:     **National Indoor Football League v. RPC Employer Services, et. al.**

Dear Mr. Seymour:

This letter addresses Paragraphs 1, 2 and 3 of Judge Ambrose's July 18, 2005 Order and your letter of December 1, 2005. I will begin with Paragraph 3. To determine what a medical provider would receive for proving services covered by Workers' Compensation, the Ohio Bureau of Workers' Compensation publishes a Provider Fee Schedule containing five character codes corresponding with the Current Procedural Terminology ("CPT") developed by the American Medical Association ("AMA"). The Current Procedural Terminology lists five character codes along side descriptive terms of each type of service for reporting medical services and procedures. In addition to adopting the AMA's Current Procedural Terminology, the Provider Fee Schedule also adopted some of the five character codes used by the Health Care Financing Administration's Common Procedure Coding System ("HCPCS") for the categories of Ambulance, Medical/Surgical Supplies, Durable Medical Equipment, Orthodontics/Prosthetics, Dental, Home Nursing, Traumatic Brain Injury, Vision, Speech Language and Vocational Rehabilitation. Each five character code (both the CPT and HCPCS codes) in the Provider Fee Schedule then corresponds with the particular reimbursement amount which the medical provider is entitled to receive for proving a particular service. Quite literally, the Provider Fee Schedule contains thousands of listed procedures and corresponding amounts that vary depending upon the nature of the procedure or service. The Ohio Bureau of Workers' Compensation does not specify a percentage which it will pay for a claim because each procedure and service is treated differently in the Provider Fee Schedule.

Notwithstanding the reimbursements contained in the Provider Fee Schedule, Ohio law provides that the NIFL is entitled to full reimbursement of all medical bills and any lost wages. In <u>Vandemark v. Southland Corporation</u>, the Supreme Court of Ohio considered whether an employee

L:\N\National Indoor Football League 01-214\Ltr to Seymour Re - Ohio Comp. Coverage 12-1-05.wpd

1397 Eisenhower Boulevard, Richland Square III, Suite 202, Johnstown, PA 15904
Telephone:  814 266-1799   Fax:  814-266-5108
Web Site:  www.lhrklaw.com

EXHIBIT

D

could sue his employer in tort claiming the full amount of medical bills and lost wages for the employer's failure to process a workers' compensation claim despite the immunity generally afforded to an employer from suits by injured employees under the Ohio Workmen's Compensation Act. 525 N.E.2d 1374 (1988). Upon reviewing applicable case law, the Ohio Supreme Court permitted the employee to file suit in tort for the full amount of damages allowed at common-law without limiting the medical bill based damages to the amounts reimbursed under Ohio Workmen's Compensation. The Ohio Supreme Court relied heavily on the fact the essential nature of the claim "falls outside the scope of workers' compensation statutes" (emphasis added). Id. at 1376-1377. In holding that a common-law cause of action exists by the employee against the employer for failure to process a claim for worker's compensation, the Court reasoned:

> "[t]he injury alleged in this regard is not a physical injury sustained in the course of employment; rather, it is in the nature of a financial injury that resulted from the employer's alleged failure to process a workers' compensation claim back in 1980. The injury alleged in plaintiff's complaint occurred when plaintiff discovered that the defendant had not processed the prior claim. . . . As mentioned before, the instant cause is not a workers' compensation action; it is a common-law action for damages outside the scope of workers' compensation." Id. at 1377-78.

The reasoning of Vandemark applies with equal force in this case. The NIFL's claims are for common-law damages and unpaid medical bills caused by RPC's failure to secure workers' compensation insurance similar to the Vandemark Plaintiff's common-law claim for damages and unpaid medical bills caused by the Vandemark Defendant's failure to process a workers' compensation claim . Count II (Breach of Contract) and Count III (Fraud) of the NIFL's Amended Complaint are common-law actions. The actual damages available under Count I (RICO) also are based upon common-law damages. Because the NIFL's claims are for common-law damages, the damages available to the NIFL are the full amount of damages and medical bills rather than damages based upon reimbursement rates under the Ohio Workers' Compensation Act. The Vandemark Plaintiff was entitled to pursue the full amount of damages available at common-law and the NIFL also is permitted to do so.

Pennsylvania law also permits an action at law for full damages unrestricted by the workers' compensation reimbursement rates. 77 P.S. §501(d). The Pennsylvania Superior Court has interpreted this section as allowing an employee to proceed against the employer's automobile liability insurer where the employer fails to carry workers' compensation insurance. Harleysville Insurance Company vs. Wozniak, 500 A. 2d 872, 875 (Pa. Super. 1985) Because the employee may proceed with an action at law for damages, the Superior Court did not limit damages to the level of reimbursement available under Pennsylvania's Workers' Compensation Act. Id. at 874-876.

Given above-discussed case law and statutory law, the NIFL is entitled to the full amount of damages including all medical bills, lost wages and out-of-pocket costs. Both Ohio law and Pennsylvania law clearly state the NIFL's claim is an action at law for full damages and penalties, which is not subject to the reimbursement rates applicable only to claims falling within the scope of

workers' compensation statutes. Practically speaking, the Defendants should not be rewarded for its failures.

In regard to Paragraphs 2 and 3 of the July 18, 2005 Order, I respectfully disagree with your contention that the NIFL provided a billing statement that is insufficient to meet the requirements of the July 18, 2005 Order and insufficient to evaluate NIFL's claim. To the contrary, we complied with the Order by sending to you completed Health Insurance Claim Forms (HCFA-1500's), which are mandated by the federal government's Healthcare Financing Administration and Department of Labor to reimburse health care providers for services rendered under the Medicare/Medicaid programs and to reimburse injured federal employees covered under the Department of Labor's Office of Workers' Compensation Programs. Form HCFA-1500 is not a billing statement. These forms are universally used for claim submission purposes by medical providers nationwide. Most importantly, Form HCFA-1500 contains the same details as the Ohio Bureau of Workers' Compensation Claim Forms (Form FROI-1), but it is superior in that it has a physician verification and identifies the specific treatment or services provided unlike Form FROI-1.

By way of background information, Professional Risk Management, the NIFL's Third Party Administrator for Ohio Bureau of Workers' Compensation Claims who was procured by RPC, required most teams' employees to complete the Ohio BWC's form FROI-1 following an injury. The FROI-1 is the application used to initiate and to submit a workers' compensation claim with the state of Ohio. Unlike the FROI-1, each provider produced the HCFA-1500 forms attempting to get paid and, in some cases, sent their completed forms to Professional Risk Management. For example, I have attached Maynor Gray's claim form signed by Dr. Scott McClelland, MD. In other cases, the physician's/provider's sent the HCFA-1500 forms directly to either the NIFL or to the Ohio BWC, examples of which include William Locklear's HCFA-1500, which is attached hereto, and Alexander Dion's HCFA-1500, which you attached to your December 1, 2005 letter.

Notably, both the HCFA-1500 and the FROI-1 essentially contain the same information because they are both used for claim purposes. As an illustration, I have attached a copy of William Locklear's Form FRIO-1 along with the HCFA-1500 produced by Dr. Dan Davidson (referral by Dr. Scott McClelland). The HCFA-1500 contains identical information contained on the FROI-1 including the player's name, player's birth date and social security number, player's mailing address, the date of injury, the name of the employer or insurance provider (which varies by player because some forms identify the individual team while other identify Professional Risk Management or the NIFL), and the identifying information for the medical provider or physician. Form HCFA-1500, however, is more detailed than form FROI-1 because it contains the amount of the provider's charges along with the CPT or HCPCS five digit code identifying the specific service or treatment rendered. The description of the procedure or service rendered is located Box 24(D). The AMA compiles the CPT codes in yearly publications, and the federal government also compiles the HCPCS codes in yearly publications.

The bulk of the NIFL's claims against the Defendants relate to the unpaid bills for provider services, so the five digit code and corresponding charge listed on the HCFA-1500 is particularly relevant to illustrating the NIFL's damages. On the other hand, the Ohio workers' compensation claim form FROI-1 lacks any information with respect to the damages suffered by the NIFL for

unpaid provider services and treatment. In fact, given the <u>Vandemark</u> rule that the NIFL's damages equal the full damages for unpaid medical bills available at common-law instead of the amounts paid under the Ohio Workmens' Compensation Act, Form HCFA-1500 is more appropriate to substantiate damages because unlike FROI-1, it contains information specifically referencing the treatment/procedures/services provided along with the amounts charged.

Each physician or provider also submitted a written or printed signature on line 31 of each HCFA-1500, which the FROI-1 does not require. Pursuant to the requirements of the HCFA-1500, when the form is used to seek reimbursement for services provided to employees under the DOL's Office of Workers' Compensation Programs, HCFA-1500 instructs each physician to certify "that the services shown on this form were medically indicated and necessary to the health of this patient and were personally rendered or were rendered incident to your direct order." A copy of a blank HCFA-1500 and the accompanying instructions is attached hereto. Accordingly, Form HCFA-1500's physician's or provider's signature addresses the medical treatment verification requirements of Paragraph 2 of the July 18, 2005 Order, whereas FROI-1 does not address those requirements.

In short, the NIFL complied with each Paragraph of the July 18, 2005 Order. The records forwarded to the Defendants contain all necessary information required to evaluate the NIFL's claim for damages during settlement negotiations. Notwithstanding the NIFL's compliance with the July 18, 2005 Order, the NIFL is in the process of obtaining copies of the underlying medical records for anticipated use at trial. We will forward these to you as soon as possible.

If you have any questions, please contact my office.

Very truly yours,

Timothy C. Leventry, LL.M
Attorney at Law

TCL/rs
cc:     Honorable Donetta W. Ambrose (w/encl.)
        Carolyn Shiver (NIFL)

NIFL
ATTN:  SUSAN NATIONS
600 LOIRE AVE.
LAFAYETTE LA  70507

# HEALTH INSURANCE CLAIM FORM

| | | | | | | |
|---|---|---|---|---|---|---|
| PICA | | | | | | PICA |

| MEDICARE | MEDICAID | CHAMPUS | CHAMPVA | GROUP HEALTH PLAN (SSN or ID) | FECA BLK LUNG (SSN) | OTHER | 1a. INSURED'S I.D. NUMBER (FOR PROGRAM IN ITEM) |
|---|---|---|---|---|---|---|---|
| (Medicare #) | (Medicaid #) | (Sponsor's SSN) | (VA File #) | | | [X] (ID) | 568538916 |

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
ALBRIGHT , GREG

3. PATIENT'S BIRTH DATE   MM DD YY
03  18  1976    SEX  M [X]   F

4. INSURED'S NAME (Last Name, First Name, Middle Initial)
ALBRIGHT , GREG

5. PATIENT'S ADDRESS (No., Street)
903 N 42ND ST

6. PATIENT RELATIONSHIP TO INSURED
Self [X]   Spouse   Child   Other

7. INSURED'S ADDRESS (No., Street)
SAME

CITY
LINCOLN          STATE  NE

8. PATIENT STATUS
Single [X]   Married   Other

Employed   Full-Time Student   Part-Time Student

CITY          STATE

ZIP CODE   68504
TELEPHONE (Include Area Code)
(402/202-4459

ZIP CODE          TELEPHONE (INCLUDE AREA CODE)
(   )

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER
568538916

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (CURRENT OR PREVIOUS)
[X] YES   NO

a. INSURED'S DATE OF BIRTH   MM DD YY
03  18  1976    M [X]   F

b. OTHER INSURED'S DATE OF BIRTH   MM DD YY   SEX  M   F

b. AUTO ACCIDENT?          PLACE (State)
YES   [X] NO

b. EMPLOYER'S NAME OR SCHOOL NAME
TRICITY DIESEL

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?
YES   [X] NO

c. INSURANCE PLAN NAME OR PROGRAM NAME
NIFL

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
YES   [X] NO    If yes, return to and complete item 9.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE  I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED  SIGNATURE ON FILE          DATE  04 11 2001

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED  SIGNATURE ON FILE

14. DATE OF CURRENT:   MM DD YY
03 31 2001    ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY(LMP)

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE  MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION
FROM  MM DD YY   TO  MM DD YY

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE
Slawski,D.P.

17a. I.D. NUMBER OF REFERRING PHYSICIAN
G15525

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
FROM  MM DD YY   TO  MM DD YY

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?          $ CHARGES
YES   [X] NO

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)
1. 813.23
2. L E917.0
3.
4.

22. MEDICAID RESUBMISSION CODE          ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A DATE(S) OF SERVICE | | | | | | B Place of Service | C Type of Service | D PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS   MODIFIER | E DIAGNOSIS CODE | F $ CHARGES | G DAYS OR UNITS | H EPSDT Family Plan | I EMG | J COB | K RESERVED FOR LOCAL USE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| From MM | DD | YY | To MM | DD | YY | | | | | | | | | | |
| 04 | 01 | 2001 | 04 | 01 | 2001 | 23 | | 25575 | 1-2 | 1890 00 | 1 | | | | |

"RA IIE"
SEP 2 0 ENT'D

25. FEDERAL TAX I.D. NUMBER          SSN EIN
470664558    [ ] [X]

26. PATIENT'S ACCOUNT NO
H0020083327SM

27. ACCEPT ASSIGNMENT? (For govt. claims, see back)
[X] YES   NO

28. TOTAL CHARGE
$  1890 00

29. AMOUNT PAID
$  0 00

30. BALANCE
$1890

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS
(I certify that the statements on the reverse apply to this bill and are made a part thereof.)
SLAWSKI,D. F. MD
04 11 2001
SIGNED          DATE

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)
GOOD SAMARITAN HOSPITAL
10 E 31ST PO BOX 1990
KEARNEY, NE 68848
QUESTIONS? 1-800/967-1799

33. PHYSICIAN'S SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE & PHONE #
HLSK ANT'N SYSTEMS ENTERPRIS
DBA TRAILS WES
PO BOX 725
KEARNEY NE  6
PIN#

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88)          PLEASE PRINT OR TYPE          FORM

EXHIBIT

E

APPROVED OMB-0938-0008

NIFL
ATTN:  SUSAN NATIONS
600 LOIRE AVE.
LAFAYETTE LA  70507

**HEALTH INSURANCE CLAIM FORM**

PICA | | | | | | | PICA

| MEDICARE | MEDICAID | CHAMPUS | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER | (FOR PROGRAM IN ITEM |
|---|---|---|---|---|---|---|---|---|
| Medicare #) | (Medicaid #) | (Sponsor's SSN) | (VA File #) | (SSN or ID) | (SSN) | X (ID) | 568538916 | |

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
BRIGHT,GREG

3. PATIENT'S BIRTH DATE   SEX
MM 03 DD 18 YY 1976  M X  F

4. INSURED'S NAME (Last Name, First Name, Middle Initial)
ALBRIGHT,GREG

5. PATIENT'S ADDRESS (No., Street)
03 N 42ND ST.

6. PATIENT RELATIONSHIP TO INSURED
Self X  Spouse  Child  Other

7. INSURED'S ADDRESS (No., Street)
SAME

CITY
LINCOLN

STATE
NE

8. PATIENT STATUS
Single X  Married  Other

CITY                    STATE

CODE
8504

TELEPHONE (Include Area Code)
(402) 202-4459

Employed  Full-Time Student  Part-Time Student

ZIP CODE            TELEPHONE (INCLUDE AREA CODE)
( )

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER
568538916

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (CURRENT OR PREVIOUS)
YES  X NO

a. INSURED'S DATE OF BIRTH   SEX
MM 03 DD 18 YY 1976  M X  F

b. OTHER INSURED'S DATE OF BIRTH   SEX
MM DD YY   M  F

b. AUTO ACCIDENT?   PLACE (State)
YES  X NO

b. EMPLOYER'S NAME OR SCHOOL NAME
TRICITY DIESEL

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?
YES  X NO

c. INSURANCE PLAN NAME OR PROGRAM NAME
NIFL

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
YES  X NO   If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED  SIGNATURE ON FILE          DATE  04 26 2001

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED  SIGNATURE ON FILE

14. DATE OF CURRENT:  ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY(LMP)
MM 04 DD 10 YY 2001

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE  MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION
FROM MM DD YY  TO MM DD YY

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE
lawski,D.P.

17a. I.D. NUMBER OF REFERRING PHYSICIAN
G15525

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
FROM MM DD YY  TO MM DD YY

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?
YES  X NO       $ CHARGES

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)
1. V54.8
3.

2.
4.

22. MEDICAID RESUBMISSION CODE      ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A DATE(S) OF SERVICE | | | | | | B Place of Service | C Type of Service | D PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS | MODIFIER | E DIAGNOSIS CODE | F $ CHARGES | G DAYS OR UNITS | H EPSDT Family Plan | I EMG | J COB | K RESERVED FOR LOCAL USE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| From MM | DD | YY | To MM | DD | YY | | | | | | | | | | | |
| 04 | 10 | 2001 | 04 | 10 | 2001 | 11 | | 29065 | | 1 | 129 00 | 1 | | | | |
| 04 | 10 | 2001 | 04 | 10 | 2001 | 11 | | 73090 | L | 1 | 60 00 | 1 | | | | |

SEP 20

25. FEDERAL TAX I.D. NUMBER   SSN  EIN
70664558   X

26. PATIENT'S ACCOUNT NO.
H002107563SM

27. ACCEPT ASSIGNMENT? (For govt. claims, see back)
X YES  NO

28. TOTAL CHARGE
$ 189 00

29. AMOUNT PAID
$ 0 00

30. BALANCE
$ 189

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
LAWSKI,D. P. MD
SIGNED               04 26 2001   DATE

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)
TRAILS WEST SPORTS MEDICIN
3219 CENTRAL AVE SUITE 102
KEARNEY, NE 68847
QUESTIONS? 1-800/967-1799

33. PHYSICIAN'S SUPPLIER'S BILLING NAME, ADDRESS
& PHONE #
DBA TRAILS WE
PO BOX 725
KEARNEY NE
PIN#

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88)       PLEASE PRINT OR TYPE

**EXHIBIT**

F

tabbies



APPROVED OMB NO.

ST   VINCENT HEALTHCARE
BOX 35200
BILLINGS MT 59107 5200
406 237 3200

1372769-001

| | 5 FED. TAX NO. | 6 STATEMENT COVERS PERIOD | 7 COV D | 8 N-C D | 9 C-I D | 10 L-R D | 11 |
| | 81-0232124 | 041601 043001 | | | | | |

12 PATIENT NAME
GACKLE, DEREK          PO BOX 1411          COLUMBUS          MT 59019

| 14 BIRTH DATE | 15 SEX | 16 MS | 17 DATE | ADMISSION | 19 TYPE | 20 SRC | 21 D HR | 22 STAT | 23 MEDICAL RECORD NO. | | 24 | CONDITION CODES | 30 | 31 |
| 03251973 | M | M | 041601 | 15 | 1 | 1 | 30 | 267450 | | 02 | | | |

| 32 OCCURRENCE CODE | DATE | 33 OCCURRENCE CODE | DATE | 34 OCCURRENCE CODE | DATE | 35 OCCURRENCE CODE | DATE | 36 OCCURRENCE SPAN FROM THROUGH | 37 |
| 04 | 041401 | | | | | | | | A |
| | | | | | | | | | B |
| | | | | | | | | | C |

NIFL   ATTN   SUSAN
BILLINGS OUTLAWS
600 LOIRE AVE
LAYFAYETTE LA 70507

| | | 39 VALUE CODES | | 40 | 41 | VALUE CODES |
| | | CODE | AMOUNT | | CODE | AMOUNT |
| | a | | | | | |
| | b | | | | | |
| | c | | | | | |
| | d | | | | | |

| 42 REV CD. | 43 DESCRIPTION | 44 HCPCS RATES | 45 SERV DATE | 46 SERV UNITS | 47 TOTAL CHARGES | 48 NON-COVERED CHARGES | 49 |
| 420 | PT KT1000 15 MIN | 97750 | 041601 | 1 | 3500 | | |
| 001 | TOTAL | | | | 3500 | | |

MEDICAL RECORDS ATTACHED

| 50 PAYER | 51 PROVIDER NO. | 52 REL INFO | 53 ASG BEN | 54 PRIOR PAYMENTS | 55 EST. AMOUNT DUE | 56 |
| NIFL   ATTN   SUSAN | 02000016 | Y | Y | | | |

57  DUE FROM PATIENT ▶

| 58 INSURED'S NAME | 59 P. REL | 60 CERT. - SSN - HIC. - ID NO. | 61 GROUP NAME | 62 INSURANCE GROUP NO. |
| GACKLE, DEREK | 01 | 517826876 | NIFL BLGS OUTL | BILLINGS OUTLA |

| 63 TREATMENT AUTHORIZATION CODES | 64 ESC | 65 EMPLOYER NAME | 66 EMPLOYER LOCATION |
| | | | |

| 67 PRIN. DIAG. CD. | 68 CODE | 70 CODE | OTHER DIAG. CODES 72 CODE | 74 CODE | 76 ADM. DIAG. CD. | 77 E-CODE |
| 8442 | | | | | 8442 | |

| 79 P.C. | 80 PRINCIPAL PROCEDURE CODE DATE | 81 OTHER PROCEDURE CODE DATE | 82 ATTENDING PHYS. ID 855566 |
| 9 | | | SHENTON DAVID W JR |
| | OTHER PROCEDURE CODE DATE | OTHER PROCEDURE CODE DATE | 83 OTHER PHYS. ID |

84 REMARKS
LEFT ACL

EXHIBIT
G

| Code | Title | Definition |
|------|-------|------------|
|  | America (UMWA) Demonstration Indicator | Demonstration Indicator ONLY |
| W1-ZZ |  | Reserved for national assignment. |

## 60.3 - Form Locators 31-41

**(Rev. 980, Issued: 06-14-06, Effective: 10-01-06, Implementation: 10-02-06)**

### FL 31 - (Untitled)

**Not Required**.  Previously reserved for State Use.  Discontinued Effective October 16, 2003.

### FL 32, 33, 34, and 35 - Occurrence Codes and Dates

**Required**.  The provider enters code(s) and associated date(s) defining specific event(s) relating to this billing period.  Event codes are two alpha-numeric digits, and dates are six numeric digits (MMDDYY).  When occurrence codes 01-04 and 24 are entered, the provider must make sure the entry includes the appropriate value code in FLs 39-41, if there is another payer involved.

Fields 32A-35A must be completed before fields 32B-35B are used.

Occurrence and occurrence span codes are mutually exclusive.  Occurrence codes have values from 01 through 69 and A0 through L9.

Occurrence span codes have values from 70 through 99 and M0 through Z9.

When FLs 36 A and B are fully used with occurrence span codes, FLs 34 A and B and 35 A and B may be used to contain the "From" and "Through" dates of other occurrence span codes.  In this case, the code in FL 34 is the occurrence span code and the occurrence span "From" dates is in the date field.  FL 35 contains the same occurrence span code as the code in FL 34, and the occurrence span "Through" date is in the date field.

Other payers may require other codes, and while Medicare does not use them, they may be entered on the bill if convenient.

Code Structure (Only codes affecting Medicare payment/processing are shown.)

| Code | Title | Definition |
|------|-------|------------|
| 01 | Accident/Medical Coverage | Code indicating accident-related injury for which there is medical payment coverage.  Provide the date of accident/injury |

**EXHIBIT**

**H**

| Code | Title | Definition |
|------|-------|-----------|
| 02 | No-Fault Insurance Involved - Including Auto Accident/Other | Date of an accident, including auto or other, where the State has applicable no-fault or liability laws (i.e., legal basis for settlement without admission or proof of guilt). |
| 03 | Accident/Tort Liability | Date of an accident resulting from a third party's action that may involve a civil court action in an attempt to require payment by the third party, other than no-fault liability. |
| 04 | Accident/Employment Related | Date of an accident that relates to the patient's employment.  (See Chapter 28.) |
| 05 | Accident/No Medical or Liability Coverage | Code indicating accident related injury for which there is no medical payment or third-party liability coverage.  Provide date of accident or injury. |
| 06 | Crime Victim | Code indicating the date on which a medical condition resulted from alleged criminal action committed by one or more parties. |
| 07-08 | | Reserved for national assignment. |
| 09 | Start of Infertility Treatment Cycle | Code indicating the date of start of infertility treatment cycle. |
| 10 | Last Menstrual Period | Code indicating the date of the last menstrual period.  ONLY applies when patient is being treated for maternity related condition. |
| 11 | Onset of Symptoms/Illness | (Outpatient claims only.)  Date that the patient first became aware of symptoms/illness. |
| 12 | Date of Onset for a Chronically Dependent Individual (CDI) | (HHA Claims Only.)  The provider enters the date that the patient/beneficiary becomes a chronically dependent individual (CDI).  This is the first month of the 3-month period immediately prior to eligibility under Respite Care Benefit. |
| 13-15 | | Reserved for national assignment |
| 16 | Date of Last Therapy | Code indicates the last day of therapy services (e.g., physical, occupational or |

| Code | Title | Definition |
|------|-------|-----------|
| | | speech-language pathology). |
| 17 | Date Outpatient Occupational Therapy Plan Established or Reviewed | The date the occupational therapy plan was established or last reviewed. |
| 18 | Date of Retirement Patient/Beneficiary | Date of retirement for the patient/beneficiary. |
| 19 | Date of Retirement Spouse | Date of retirement for the patient's spouse. |
| 20 | Guarantee of Payment Began | (Part A hospital claims only.) Date on which the hospital begins claiming payment under the guarantee of payment provision. (See the Financial Management Manual, Chapter 3.) |
| 21 | UR Notice Received | (Part A SNF claims only.) Date of receipt by the SNF and hospital of the URC finding that an admission or further stay was not medically necessary. (See Chapter 3.) |
| 22 | Date Active Care Ended | (SNF claims only.) Date on which a covered level of care ended in a SNF or general hospital, or date on which active care ended in a psychiatric or tuberculosis hospital or date on which patient was released on a trial basis from a residential facility. Code is not required if code "21" is used. |
| 23 | Date of Cancellation of Hospice Election Period. For FI Use Only. Providers Do Not Report. | Code is not required if code "21" is used. |
| 24 | Date Insurance Denied | Date of receipt of a denial of coverage by a higher priority payer. |
| 25 | Date Benefits Terminated by Primary Payer | The date on which coverage (including Worker's Compensation benefits or no-fault coverage) is no longer available to the patient. |
| 26 | Date SNF Bed Available | The date on which a SNF bed became available to a hospital inpatient who required only SNF level of care. |
| 27 | Date of Hospice Certification | The date of certification or re-certification of |

| Code | Title | Definition |
|------|-------|------------|
|  | or Re-Certification | the hospice benefit period, beginning with the first two initial benefit periods of 90 days each and the subsequent 60-day benefit periods. |
| 28 | Date CORF Plan Established or Last Reviewed | The date a plan of treatment was established or last reviewed for CORF care.  (See Chapter 5). |
| 29 | Date OPT Plan Established or Last Reviewed | The date a plan was established or last reviewed for OPT.  (See Chapter 5). |
| 30 | Date Outpatient Speech-Language Pathology Plan Established or Last Reviewed | The date a plan was established or last reviewed for outpatient speech-language pathology.  (See Chapter 5). |
| 31 | Date Beneficiary Notified of Intent to Bill (Accommodations) | The date the hospital notified the beneficiary that the beneficiary does not (or no longer) require a covered level of inpatient care. |
| 32 | Date Beneficiary Notified of Intent to Bill (Procedures or Treatments) | The date of the notice provided to the beneficiary that requested care (diagnostic procedures or treatments) that may not be reasonable or necessary under Medicare. |
| 33 | First Day of the Medicare Coordination Period for ESRD Beneficiaries Covered by an EGHP | The first day of the Medicare coordination period during which Medicare benefits are secondary to benefits payable under an EGHP.  This is required only for ESRD beneficiaries. |
| 34 | Date of Election of Extended Care Services | The date the guest elected to receive extended care services (used by Religious Nonmedical Health Care Institutions only). |
| 35 | Date Treatment Started for Physical Therapy | The date the provider initiated services for physical therapy. |
| 36 | Date of Inpatient Hospital Discharge for a Covered Transplant Procedure(s) | The date of discharge for a hospital stay in which the patient received a covered transplant procedure. Entered on bills for which the hospital is billing for immunosuppressive drugs.<br><br>**NOTE:**  When the patient received a covered and a non-covered transplant, the covered transplant predominates. |