# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE L.L.C., | : | CIVIL DIVISION |
| PLAINTIFF, | : | |
| | : | NO.:  CA 2 - 548 |
| v. | : | |
| | : | TYPE OF PLEADING: |
| R.P.C. EMPLOYER SERVICES, INC., | : | PLAINTIFF'S PETITION FOR ATTORNEY'S FEES & COSTS |
| DEFENDANT. | : | |
| | : | FILED ON BEHALF OF: |
| | : | PLAINTIFF |
| | : | COUNSEL FOR PLAINTIFF: |
| | : | TIMOTHY C. LEVENTRY, LL.M. |
| | : | LEVENTRY, HASCHAK & RODKEY, LLC |
| | : | PA I.D. 34980 |
| | : | 1397 EISENHOWER BOULEVARD |
| | : | RICHLAND SQUARE III, SUITE 202 |
| | : | JOHNSTOWN, PA  15904 |
| | : | (814) 266-1799 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
_____

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE L.L.C., | : | CIVIL DIVISION |
| | : | |
| PLAINTIFF, | : | NO.:  CA 2 - 548 |
| | : | |
| v. | : | |
| | : | TYPE OF PLEADING: |
| | : | |
| R.P.C. EMPLOYER SERVICES, INC., | : | PLAINTIFF'S PETITION FOR |
| | : | ATTORNEY'S FEES & COSTS |
| DEFENDANT. | : | |
| | : | |
| | : | |

## **PLAINTIFF'S PETITION FOR ATTORNEYS' FEES & COSTS**

AND NOW, comes the Plaintiff, National Indoor Football League ( hereinafter "NIFL"),  by and through its attorneys, Leventry, Haschak & Rodkey, LLC, and files its Petition for Attorneys' Fees and Costs:

1.      This petition arises out of a civil action brought by the Plaintiff against RPC Employer Services, Inc. ("RPC") on March 20, 2002 alleging Breach of Contract, and Fraud and against Daniel J. D'Alio ("D'Alio")alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Section 1964 et. seq., because nearly  three-quarters of a million dollars of workers' compensation claims went uncovered due to RPC's and its President, D'Alio's, failure to procure workers' compensation insurance for the NIFL's teams through the state of Ohio despite agreeing to do so in the parties' Service Agreement.  The NIFL has incurred significant costs in the prosecution of this suit, as specified Paragraphs 13 through 19, *infra*.

2. This case does not involve an ordinary breach of contract cause of action. To the contrary, RPC breached its contract in bad faith and committed fraud because it knew it could not procure workers' compensation as promised. Six days prior to entering into the Service Agreement with the NIFL, representatives from the Ohio BWC informed D'Alio that RPC could not provide worker's compensation insurance coverage to the NIFL because the Plaintiff's players and staff were not located in the State of Ohio. RPC failed to disclose the details of this meeting to the NIFL and, to the contrary, proceeded to enter into a contract with the NIFL.

3. Because of RPC's breach of contract and perpetration of fraud, over $692,000.00 in workers' compensation claims were not paid affecting over 77 NIFL players and nearly 70 medical providers across the country. Indeed, the scope of this case is very large and forced the NIFL to spend significant time and monies to obtain resolution as detailed in Paragraphs 13 through 19, *infra*.

4. Trial on the issues of damages and liability was originally scheduled for March 28, 2006. During the March 28, 2006 combined damages/liability trial, the parties settled the RICO Count and Fraud Count against D'Alio and RPC for $75,000.00.

5. At the same time as the RICO and Fraud Count settlement, the parties agreed upon a contractual liability settlement which consisted of the parties' submission, to a mediator chosen by agreement of the parties, of the issue of damages consisting primarily of unpaid workers' compensation claims and RPC's payment, assumption of and/or indemnification for pending lawsuits/judgments consequentially related to RPC's breach of contract. Despite the NIFL's good faith efforts at resolution during mediation, the Defendants refused to assume responsibility for the damages, but instead continued to raise unsupported claims of set off, so the NIFL petitioned the Court to reopen the case on October 11, 2006.

6. Between May 21, 2007 and May 24, 2007, the NIFL presented its damages portion of this case. The NIFL's damages consist of unpaid medical provider claims, player judgments, attorney's fees, suit costs including witness expenses and prejudgment interest. The NIFL provided its revised list of unpaid provider claims (Plaintiff's Exhibit 41) to the Court on June 1, 2007 pursuant to the Court's May 29, 2007 order.

7. The NIFL now submits its petition for attorneys' fees and costs to the Court according to the prevailing party provisions of the parties' Service Agreement.

8. The NIFL is entitled to an award of attorneys' fees and costs against RPC according to the express terms of the Service Agreement. Paragraph 15(b) of the Service Agreement states in pertinent part: "In the event that any action is brought by either party hereto as result of a breach or a default in provision of this Agreement, the prevailing party in such action shall be awarded reasonable attorney's fees and costs in addition to any other relief to which the party may be entitled." The parties' Service Agreement is attached hereto, made a part hereof and labeled **Exhibit A**.

9. The parties' March 28, 2006 Stipulation as to Liability establishes the NIFL's prevailing party status under the Service Agreement as against RPC.

10. As prevailing parties, the NIFL is therefore entitled to recover from RPC their attorneys fees and costs as provided in the Service Agreement. This right to recovery is established by the parties' contract and by stipulation. Because the Plaintiff is the prevailing party, the Defendant must pay the NIFL's fees and costs irrespective of the outcome of the case. This matter has had a successful outcome that especially supports the NIFL's claim for attorney's fees and costs.

11. In the course of this dispute with the Defendants, the NIFL has been represented by Timothy C. Leventry, Esquire, the law firm of Leventry, Haschak & Rodkey, LLC and Forrest B.

Fordham, III. The NIFL hired the aforementioned counsel at an hourly rate rather than on a contingent fee basis.

13. In order to prosecute and enforce the NIFL's rights under the Service Agreement, the NIFL's attorneys provided a myriad of services extending over several years. As reflected by the Court's docket entries, the case has been marked by extensive and lengthy pleading and motion practice, voluminous discovery, a motion for judgment on the pleadings, a motion for summary judgment, seven (7) motions in limine, two sets of pretrial statements, numerous other filings, mediation, trial preparation and trial.

13. During the course of representation, the NFL's attorneys have provided a variety of necessary services, including, for example, research, damage calculations, fact and damage investigation, preparation and filing of pleadings, discovery requests, attendance and participation in depositions and court hearings, acquisition and review of <u>thousands</u> of pages of player information, identification and interview of numerous facts witnesses, witness preparation, preparation of exhibits, preparation of arguments and other such trial preparation. Each set of the Plaintiff's trial exhibits alone consisted of over 5,000 pages of documents consisting primarily of medical provider records for the injured NIFL players.

14. While providing the representation on an hourly basis as summarized above, the NIFL's attorneys and paralegals, from July of 2001 through June 13, 2007 have expended 1775.95 hours, having a total value of $205,103.00, calculated according to normal and customary billing rates of the NIFL's attorneys as recorded, explained and set forth in the detailed invoices attached as **Exhibit B** to this Brief. Each of the invoices show a detailed description of work performed and the hours spent by each attorney and/or paralegal, all of which was contemporaneously recorded at the time the work was performed.

**Exhibit B** also contains a spreadsheet summary of all attorneys' fees and costs with specific reference to each invoice by the NIFL's attorneys.

15.     The NIFL and its attorneys also have incurred $24,775.26 in necessary expenses for conducting this litigation and preparing for trial. A complete itemization of services rendered, time spent, and expenses incurred is included in the aforesaid invoices attached as **Exhibit B**.

16.     The fees and expenses incurred by the NIFL would have been significantly less but for the Defendants' refusal to take responsibility for the unpaid claims at any time prior to the filing of this action on March 20, 2002 and during the pendency of the this lawsuit up to an including the damages portion of trial, even though the Defendants' stipulated as to liability one (1) year before the damages trial. Examples of the Defendants' repeated failures to assume responsibility and attempts to delay ultimate resolution of the case are as follows:

>   A.    After RPC cancelled the contract in bad faith, the NIFL appealed numerous player claims to the Industrial Commission of Ohio asking for coverage under the Ohio Bureau of Workers' Compensation (which RPC knew was not possible in March of 2001 prior to entering into the Service Agreement with the NIFL).  RPC participated in and received notice of the decisions rendered by the Industrial Commission in the summer and fall of 2001.  An example of the decisions reached by the Industrial Commission is attached hereto, made a part hereof and labeled **Exhibit C.**  Despite knowing that numerous claims were denied, RPC did not assume responsibility for the unpaid claims thereby forcing the NIFL to proceed to federal court.  The Plaintiff presented many of these cases in hopes that coverage

existed, without success. At this time, the NIFL's legal fees were less than $17,000.00.

B. After the NIFL filed its Complaint and Amended Complaint, the Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6), which was denied by the Court on May 9, 2003. Thereafter, the Defendants filed a Motion for Summary Judgment on March 12, 2004 against the Plaintiff raising the viability of the Plaintiff's 18 U.S.C. § 1964 claim, whether an enforceable contract existed between the NIFL and RPC and whether the Plaintiff established a valid fraud claim against the Defendants. The Court denied the Defendant's motions for summary judgment in favor of the Defendants leaving the RICO claim, fraud claim and breach of contract claim squarely intact. Although the Court denied both Motions, the Defendants still refused to accept any responsibility for the unpaid claims and forced the NIFL to proceed with litigation at great cost to the NIFL. Extensive research and brief writing was required to address Defendant's motions.

C. On November 18, 2005, the NIFL sent to the Defendants the HCFA forms and detailed spreadsheet all players' injuries and unpaid provider claims, which supported the allegation of total damages in excess of $650,000.00 as set forth in the Amended Complaint and corresponded with RPC's knowledge of the various claims filed by injured players through the Ohio Industrial Commission that were denied in the summer and fall of 2001. Upon receiving the information, the Defendants refused responsibility for any of the unpaid claims. As stated earlier herein, the gathering of this medical information was a monumental task, in that

       medical providers for the players on 13 teams had to be individually contacted to obtain this information. This work required a great deal of time and, upon receipt of said information, a tremendous amount of time had to be expended to review and organize the information.

D.    Still refusing to accept any responsibility, the Defendant filed their first round of a series of Motions in Limine on February 23, 2006. The Defendants' first round of Motion in Limine raised a myriad of issues relative to avoiding damages: (1) that the effective date of the Service Agreement precluded the NIFL from claiming pre-season injuries; (2) that RPC should not be liable for claims after April 17, 2001 (the alleged date of the Service Agreement termination) or no later than 30 days after April 17, 2001; (3) that the NIFL's damages are not recoverable beyond $31,800.50 in out-of-pocket expenses; (4) that the NIFL is precluded from introducing certain documentary evidence to prove damages. On March 16, 2006, the Court denied the Defendants' Motion with respect to the termination date of the Service Agreement, denied the Defendants' Motion with respect to limiting damages to no more than $31,800.50, and denied Defendant's Motion with respect to the exclusion of documentary evidence as long as the evidence is accompanied by a proper certification and otherwise is admissible. The only Motion in Limine decided in the Defendants' favor was with respect to the pre-season injuries, to which the NIFL has conceded during oral argument. On March 23, 2006, the Court also denied the Plaintiff's Motion to Strike records given to the Defendants after November of 2005 holding that Plaintiff will be allowed to introduce into

   evidence any medical(s) records or documents that were produced to Defendants on March 13, 2006 if those records relate to the records sent in November of 2005. Just as the NIFL spent large sums responding to the Motion to Dismiss and Motion for Summary Judgment, the NIFL also incurred significant costs in responding to the Defendants' first round of Motions in Limine and Motion to Strike. Again, these motions required the Plaintiff to perform significant research and writing in response.

E.  Even after the Defendants' stipulation as to liability, the Defendants continued to avoid any responsibility for damages and caused the NIFL to incur more legal fees. Before the mediator, the Defendants argued that the NIFL's damages are not limited to those injuries occurring as of the date of termination of the Service Agreement or thirty (30) days thereafter despite admitting liability. For the first time during litigation, the Defendants argued that the NIFL's damages are limited by a deductible. In spite of the Court's March 23, 2006 Order permitting the introduction of any documents related to those sent in November 2005, the Defendants also continued to argue that any records sent to them after November of 2005 should be excluded. The Defendants' insistence on raising these issues required the NIFL to prepare briefs on two occasions for the mediator addressing the aforementioned issues. For settlement purposes before the mediator, the NIFL also prepared a detailed set of damage calculations, with supporting spreadsheets, taking into account the Defendants' issues raised during the first mediation session. A copy of the various spreadsheet calculations is attached hereto, made a part

hereof and labeled **Exhibit D**. These calculations required the NIFL to consider all the scenarios raised by the Defendants when calculating damages, such as the application of a deductible and time frames for the application of damages. Extensive review and assembly of the medical records was required to address these issues. These calculations required a careful analysis of each record culminating in a product requiring significant preparation time. The Defendants did not provide any analysis or calculation of their own for the second meeting with the mediator for purposes of settlement negotiations. As a result, the mediation proved to be very costly and unproductive because the Defendants just wanted to raise new and different ways to attempt to avoid the liability it had.

F. After the NIFL Petitioned the Court to reopen the case, the NIFL was required to file a second round of Motions of Limine for the damages trial concerning the issues raised by the Defendants during mediation. Again, the Motions were largely decided in favor of the Plaintiff. The Court even recognized that many of the issues raised by the Defendants were previously decided. In its February 1, 2007 Order on the Motions in Limine for the damages trial, the Court revisited its rulings of March 16, 2006, which continued to be raised despite the Court's previous decision: (1) "The NIFL may introduce an HCFA 1500 form alone provided said form/record(s) is in compliance with FRE 803(6) and 902(11) or otherwise through a foundation witness" and "the NIFL may introduce a medical provider's notes/chart/report (or other similar medical record) alone provided said record (s) is in compliance with FRE 803(6) and 902(11) or otherwise through an

appropriate foundation witness;" and (2) the NIFL may not introduce any kind of FRE 902(11) certification or medical record produced after March 13, 2006. The Court also ruled in favor of the Plaintiffs concerning the new issues raised by the Defendants: (1) the Court will take judicial notice of Orders and Judgments against the NIFL from tribunals in other jurisdictions provided that sufficient information is reflected in the Order/Judgment to establish work-related injury within the subject coverage time period with related medical treatment and specific costs therefor; (2) the NIFL's damage claims are not to be reduced by any deductible for set off; (3) the decision as to the number of teams eligible for damages will be deferred to trial at which time the Court will consider evidence presented by both parties; (4) the NIFL's damage claims may encompass the entire 2001 NIFL season; and (5) the NIFL's damages are not limited by Paragraph 14 of the Service Agreement. Even though the Court's February 1, 2007 Order largely was in favor of the Plaintiffs and even though the Defendants had already stipulated to liability, RPC continued to not recognize the damages due the NIFL. Instead the Defendants caused the NIFL to perform research, review, writing and assembly of many documents that were virtually unnecessary and not supported by the facts of the case.

G. After the extensive series of Motions which were principally decided in the NIFL's favor, the NIFL then had to spend nearly 300 hours to prepare for the damages trial in order to present the over 5000 pages of documents for introduction into evidence, much of which consisted of medical records for over 77 players. Instead

       of accepting responsibility for damages prior to trial, the Defendants, who did not prepare organized exhibits along with spreadsheets of provider claims, continued to raise issues which were decided in the Court's Orders on March 23, 2006 and February 1, 2007 Order, concerning the introduction of HCFA forms alone and concerning the introduction of records which relate to those sent to the Defendants in November of 2005. The Defense refused to accept the Court's rulings and continued to argue contrary positions to the Court Orders.

   H.   The Defendants also refused to stipulate to the authenticity of the medical records requiring extensive time to prepare and obtain certification of medical records from over 100 providers. Not only would the Defendants not stipulate to the medical records, they challenged any inconsistency, no matter how minor, of the certificates and records. These challenges resulted in the Plaintiff having to review the thousands of pages of medical records with a fine tooth comb, again requiring many hours to be spent reviewing medical records and claims. All of this could have been avoided if RPC had procured workers' compensation insurance as promised.

18.   The Plaintiff's Petition for fees and costs is also justified and reasonable because of the NIFL's success in proving damages due the NIFL. As more fully set forth in the Plaintiff's Petition to accompany Revised Exhibit 41, which was filed with the Court on June 1, 2007, the NIFL has proven and is entitled to damages in the amount of $510,627.88 (including interest). The damages proven in this case is proximate to the damages claimed by the NIFL in its Amended Complaint.

19. Given the aforementioned circumstances, the work performed and the time spent by the Plaintiffs' counsel were more than reasonable and justified by the length of the case (more than five (5) years) and complexity of the case.

20. Moreover, the fees charged and expenses incurred by the NIFL's attorneys are fair and reasonable for the character and quality of the services provided, and are in accordance with the prevailing market rates in both Johnstown and Pittsburgh for similar services by persons with comparable skill and experience.

21. The rates set forth in the NIFL's attorney's itemized invoices are the usual and customary rates charged by their law firm and have been agreed to by NIFL. The hourly rates charged by the NIFL's attorneys are substantially lower than for attorneys in Allegheny County with similar experience. If counsel in Allegheny County had prosecuted this case, it is likely the charges would have been between 40% to 50% higher.

22. Because of the foregoing, the amounts sought by the Plaintiff for attorneys' fees and costs are fair, reasonable and consistent with (if not below) prevailing market rates. Accordingly, the NIFL respectfully requests an award of counsel fees and costs in the amount of $229,878.26.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court enter an order declaring the Plaintiff to be prevailing parties under the Service Agreement, and as such, entitled to have the Defendant, RPC Employer Services, Inc., pay the Plaintiff's reasonable attorneys' fees and costs pursuant to the express terms of the Service Agreement and directing the Defendant, RPC Employer Services, Inc., to reimburse the Plaintiff $229,878.26 (plus such additional amounts as shall be shown at the hearing on this matter if needed) for their reasonable attorneys' fees and disbursements; and awarding the Plaintiff such other and further relief as the Court shall deem appropriate.

                                        Respectfully submitted,

Date:  6-13-07                            s/ Timothy C. Leventry
                                        Timothy C. Leventry, LL.M.
                                        Attorney for Plaintiff
                                        PA I.D. No. 34980
                                        1397 Eisenhower Boulevard
                                        Richland Square III, Suite 202
                                        Johnstown, Pennsylvania 15904
                                        (814) 266-1799

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONAL INDOOR FOOTBALL LEAGUE L.L.C.,** | : | **CIVIL DIVISION** |
| PLAINTIFF, | : | **NO.: CA 2 - 548** |
| v. | : | **TYPE OF PLEADING:** |
| **R.P.C. EMPLOYER SERVICES, INC.,** | : | **PLAINTIFF'S PETITION FOR ATTORNEY'S FEES & COSTS** |
| DEFENDANT. | : | |

## PROPOSED ORDER

AND NOW, this _____ day of _____, 2007, upon consideration of Plaintiff National Indoor Football League, LLC's Petition for Attorneys' Fees and Costs, it is hereby ORDERED:

Defendant, RPC Employer Services, Inc., shall pay the Plaintiff's attorneys' fees and costs in the amount of $229,878.26, pursuant to the express terms of the Service Agreement.

_____
Honorable Terrence F. McVerry,
United States District Court Judge

L:\N\National Indoor Football League 01-214\Petition For Award of Attorneys Fee 2.wpd