# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE L.L.C., | : | CIVIL DIVISION |
| | : | |
| PLAINTIFF, | : | NO.:  CA 2 - 548 |
| | : | |
| v. | : | |
| | : | TYPE OF PLEADING: |
| | : | |
| R.P.C. EMPLOYER SERVICES, INC., | : | REPLY TO DEFENDANT'S MOTION |
| | : | TO ALTER OR AMEND JUDGMENT |
| DEFENDANT. | : | OR TO GRANT NEW TRIAL |

FILED ON BEHALF OF:

PLAINTIFF

COUNSEL FOR PLAINTIFF:

TIMOTHY C. LEVENTRY, LL.M.
LEVENTRY, HASCHAK & RODKEY, LLC
PA I.D. 34980
1397 EISENHOWER BOULEVARD
RICHLAND SQUARE III, SUITE 202
JOHNSTOWN, PA  15904
(814) 266-1799

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL | : | CIVIL DIVISION |
| LEAGUE L.L.C., | : | |
| PLAINTIFF, | : | NO.:  CA 2 - 548 |
| | : | |
| v. | : | |
| | : | TYPE OF PLEADING: |
| | : | |
| R.P.C. EMPLOYER SERVICES, INC., | : | REPLY TO DEFENDANT'S MOTION |
| | : | TO ALTER OR AMEND JUDGMENT |
| DEFENDANT. | : | OR TO GRANT NEW TRIAL |
| | : | |
| | : | |

## PLAINTIFF'S REPLY TO DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT OR TO GRANT NEW TRIAL

AND NOW, comes the Plaintiff, National Indoor Football League ( hereinafter "NIFL"),  by and through its attorneys, Leventry, Haschak & Rodkey, LLC, and files the Plaintiff's Reply to the Defendant's Motion to Alter or Amend Judgment or Grant New Trial:

1. Admitted.

2. Admitted insofar as the Defendant alleges the Amended Complaint speaks for itself.

3. Admitted insofar as the Defendant alleges the Amended Complaint speaks for itself.

4. Admitted insofar as the Defendant alleges the March 28, 2006 Court record speaks for itself, which contains, among other things, RPC Employer Services, Inc.'s ("RPC" or "Plaintiff") stipulation as to contractual liability to Plaintiff.

5.    a.    Denied.  To the extent that the Defendant is paraphrasing the Court's August 31, 2007 ruling, the Defendant's allegation is denied because the Court's August 31, 2007 Order speaks for itself.  The Court's Order stated the NIFL is awarded unpaid claims as follows:

"$305,055.26, which reflects an amount of $145,787.29 from the pre-March 13, 2006 spreadsheet and $159,267.97 post-March 13, 2006 certification spreadsheet." August 31, 2007 Findings of Fact and Conclusions of Law, ¶ 7(a).

To the extent the assertions of Paragraph 5(a) imply that the records on the post-March 13, 2006 spreadsheet were inadmissible at trial without a foundation witness, the allegation is denied because the Defendant specifically agreed and stipulated to the admission of eleven (11) medical provider records shown on the post-March 13, 2006 spreadsheet without a foundation witness.   In accordance with this agreement, the parties jointly filed with the Court on May 14, 2007 a stipulation allowing certain player records for eleven (11) medical providers to be admitted without a foundation witness.[1]  The Stipulation also provided that the following ten (10) teams shall be part of the NIFL's damages claim: Billings Outlaws, Johnstown J-Dogs, Lake Charles Landsharks, Louisiana Rangers, Mississippi Firedogs, Rapid City Red Dogs, Sioux City Bandits, Sioux Falls Storm, Tri-City Diesel and Wyoming Cavalry.  As for the records contained on the pre-March 13, 2006 spreadsheet, those records contained certifications dated on or before March 13, 2006 and were records specifically

---

[1]  The medical provider records covered by the parties' stipulation are as follows: (A)  St. Vincent Healthcare regarding player Derek Gackle ($12,427.00); (B) UPMC regarding players Michael Elwood( $989.00), Todd McGough ($989.00), Quenteen Robinson ($6,678.10), John Schmitt ($793.00), and Charles Wyatt ($306.00); (C)       The Medical Center regarding player John Schmitt ($13,403.25); (D) Christus St. Frances Cabrini Hospital regarding players Jacobe Austin ($6,651.18), Damion Brown ($472.48), Randy Chappell ($5,014.97), Tremayne Evans ($88.00), James Goodman ($264.83), and Chris Lazard ($9,010.89); (E)  Bienville Orthopedic Specialists, Susan Legrand, regarding players Emmanuel Bentley ($14,607.00), Terrence Blackwell ($956.28), Calvin Bolton ($1,664.00), Billy Clay ($180.00), Terrance Dickerson ($1,257.52), Bobby Doyle ($450.52), Marcus Haynes ($108.00), Kevin Heard ($108.00), William Keith ($247.00), John Nicky Seymour ($7,258.00), and Stacy Wilson ($670.00); (F) Bienville Orthopedic Rehabilitation regarding players Emmanuel Bentley ($11,296.00), Timothy Hardaway ($550.00), and John Nicky Seymour ($1,089.00); (G)  Alabama Orthopaedic Clinics, Dean Brown, regarding players Tommy Aguilar ($273.00),  Samuel Caine ($1,036.00), Ted Coleman ($286.00), Steve Davis ($1,308.00), Juan Draine ($973.00), John Fourcade ($952.00), Dominicke Haston ($7,078.00), Alex Howell ($344.00), William James ($396.00), Alexis Lee ($2,287.00), Ronald Mabins ($1,663.00), James Matthews ($112.00), Raymond Nobles ($160.00), Stephen Ruckman ($432.00), Timothy Taylor ($269.00), and Ronnie Thompson ($226.00); (H) USA Medical Center, George Tullos, regarding player William James ($9,127.50); (I)  St. Luke's Regional Medical Center regarding players Jason Graham ($12,491.35) and Jeffrey Kerns ($1,017.25); (J) Good Samaritan Hospital regarding player Greg Albright ($9,225.95); (K) Healthsouth Holdings regarding player Alphonsus Olieh ($12,270.00).

referred to in the November 2005 discovery provided by Plaintiff.  Therefore, these records were admissible using the NIFL's FRE 803(6) certifications, the language of which the Court approved as a valid FRE 803(6) certification.

On the May 24, 2007 Court record, the parties stipulated to those medical records on both the pre-March 13, 2006 spreadsheet and the post-March 13, 2006 spreadsheet because they satisfied the four (4) key criteria identified in the Court's February 2, 2007 Order.[2]   The May 24, 2007 Stipulation on the record followed two (2) days of meetings between the parties' counsel to identify records which met the four (4) key criteria.  Any issues to which the parties did not agree were resolved conclusively before the Court on May 24, 2007 with the Court making a final decision on only a few unresolved medical records to which parties did not agree.  In the Plaintiff's Revised Exhibit 41, which was filed with the Court on June 1, 2007 pursuant to the Court's May 29, 2007 Order with respect to Post-Trial Filing deadlines, the Plaintiff identified for the Court's decision on damages all of the records which were either stipulated or resolved by the Court on May 24, 2007. Upon final review of the Plaintiff's Revised Exhibit 41, and following several questions to the parties' counsel for clarification, the Court issued its August 31, 2007 Order on damages.

b.     Admitted.  For purposes of qualification, the Court decided in its February 1, 2007 Order that it would take judicial notice of the judgments submitted by the NIFL as long as the judgments contain the four (4) key factors identified in the Court's February 1, 2007 Order. February 1, 2007 Memorandum and Order of Court, Pages 5 & 7.  RPC did not dispute on the May 24, 2007 Court record that the judgments for Emmanuel Bentley, John Nicky Seymour and Kareem

---

[2]In the Court's February 2, 2007 Order, it ruled that HCFA forms individually, medical charts/notes/reports individually, or a combination of both may be introduced to prove the four (4) key factors:  (1)  that the player's injury is work related, (2)  that the player was injured during the 2001 NIFL season, (3)  that the player received medical treatment related to the injury and (4) that the provider is due an amount for the treatment rendered.

Vance contained information sufficient to prove  the four (4) key factors, of which Plaintiff avers the Court found they did meet the four (4) criteria.

        c.      Admitted.  By way of qualification, the Defendant admitted in its Reply to the Plaintiff's Request for Admissions that it did not return the NIFL's premium payment of $9,217.07. The parties agreed on the May 24, 2007 record  the NIFL is due a refund of $9,217.07, representing the premium paid to RPC for the unprovided workers' compensation coverage, if the Defendant fails to produce evidence in its response to the Plaintiff's Post-Trial filings, that the premium was repaid to the NIFL directly from the state of Ohio.  The Defendant did not demonstrate this, so the Court properly ordered the Defendant to repay the NIFL $9,217.07.  Again, this was agreed to by the Plaintiff.

        6.      Admitted in part.  Denied in part.  It is admitted the Court's August 31, 2007 Order contained the Court's ruling on prejudgment interest.  However, the Defendant misstates the Court's order insofar as it alleges August 1, 2001 is the beginning accrual date "for the medical provider claims," therefore, same is denied.   The Court's August 31, 2007 Order provides in part:

> "As for all *unpaid* medical provider claims, August 1, 2001, is the prejudgment interest accrual date." (Emphasis Added). August 31, 2007 Findings of Fact and Conclusions of Law, ¶ 8(a)

By way of clarification of the Court's August 31, 2007 Order on this issue of prejudgment interest, the Court's August 31, 2007 Order relates to the Court's May 4, 2007 Order in which it preliminarily ruled on the Plaintiff's request for prejudgment interest.  In the May 4, 2007 Order, the Court stated:

> "[p]rovided said claims are properly proven, pre-judgment interest will likely be awarded as of the referenced date when payment became due as determined by the Court."  May 4, 2007 Memorandum Opinion and Order of Court, Page 2.

As a result of the parties' stipulations during the May 21, 2007 to May 24, 2007 trial, the Court determined the NIFL's unpaid medical claim damages and issued the August 31, 2007 Order setting the beginning accrual date of prejudgment interest as the Court had indicted it would determine in its May 4, 2007 Order.

7.      Denied.  It is expressly denied the Court found the medical providers to be "the truly injured" party.  On the contrary, the Court found in part that,

> "because it is the identified medical providers that have been denied payment for their services, not the NIFL, the NIFL is hereby directed to make payment(s) to the medical providers in accordance with the Court's rulings on Plaintiff's Revised Exhibit 41 . . ."  August 31, 2007 Findings of Fact and Conclusions of Law ¶ 9.

Insofar as the Defendant's allegation in Paragraph 7 of its Motion to Amend Judgment/Order New Trial implies the NIFL does not have standing, this allegation is expressly denied and is not supported either in law or by the Court's findings on this case.  Please refer to Paragraph 11, *infra*, for a more detailed discussion of this matter.

8.      a.      Admitted.   By way of qualification, the NIFL presented evidence at trial clearly showing that thirteen (13) teams were to be covered under the NIFL's Service Agreement.  RPC argues now, as it did at trial, that only ten (10) teams submitted the requisite information.  Carolyn Shiver testified these teams had supplied the required information.  As found by the Court, Carolyn Shiver testified at trial that the three (3) disputed teams in question did not have payroll to submit during bye-weeks during early April of the 2001 season, which means that the three (3) disputed teams did not have to submit payroll monies to RPC at that time.   August 31, 2007 Memorandum Order of Court, ¶¶ 15-17.  Furthermore, Ms. Shiver testified that payroll for the three (3) teams could not be submitted in mid-April of 2001 because RPC terminated the parties' Service Agreement.  August 31, 2007 Memorandum Order of Court, ¶ 19.  Ms. Shiver also testified that RPC

did not inform her that any of the C-110's submitted by the three (3) teams were not complete. Nothing in the record contradicted this testimony.  August 31, 2007 Memorandum Order of Court ¶¶ 26-27.

       b.     Admitted.  The Court denied all of RPC's Objections to Plaintiff's Revised Exhibit 41 based upon substantial, uncontradicted evidence and outlined its findings specifically in its Order of Court dated August 31, 2007.

       c.     Denied.  The Court awarded the NIFL prejudgment interest citing <u>Royal Electric Construction Corp. v. Ohio State Univ.</u>, 62 N.E. 2d 687, 691-92 (Oh. Sup. Ct. 1995) which established the "accrual of the claim" as the date on which prejudgment interest begins.  The Defendant cited no contrary Ohio case in its June 6, 2007 Brief for the beginning accrual date of prejudgment interest.   The Court accepted August 1, 2001 as the beginning accrual date stating,

> "it seems fair and equitable to fully compensate the medical providers whose claims have remained unpaid for approximately six years." August 31, 2007 Memorandum Order of Court, Page 3.

The NIFL suggested the August 1, 2001 accrual date in good faith, even though it is clear based on the records submitted to the Court that the vast majority the unpaid medical claims were incurred <u>prior to August 1, 2001.</u>  <u>See</u>, Plaintiff's Revised Exhibit 41.

       9.     Admitted. The NIFL filed its Petition for Award of Attorneys' Fees and Costs on June 13, 2007, and it supplemented its June 13, 2007 Petition by filing an Affidavit and additional information on September 18, 2007 as directed by the Court.  The NIFL respectfully requests this Court to award the NIFL additional attorneys fees associated with the NIFL's Response to the instant Motions filed by the Defendant (as stated in the "Wherefore" clause, *infra*).  This Motion, which is not supported in fact or by any case citations, is a continuing example why the NIFL has incurred

substantial legal fees in this case and why the NIFL deserves to be compensated in full for it legal expenses.  Despite the fact that Defendant RPC stipulated to liability on March 28, 2006 and stipulated to the vast majority of unpaid medical claims submitted by the NIFL on the Court's record on May 24, 2007, RPC continues to deny any responsibility for its actions.  This is the second and third time in which the NIFL has had to submit either a Reply or Brief to the Court on the same issues.

### GROUNDS FOR ALTERING OR AMENDING JUDGMENT/NEW TRIAL

10.     The NIFL incorporates by reference its responses to Paragraphs 1 though 9 as though set forth fully herein.

11.     Denied.  Firstly, the Court already decided the issue of standing in the NIFL's favor in March of 2006.  In RPC's Motion for Reconsideration, RPC argued the NIFL did not have standing to pursue claims against RPC because of the lack an employer/employee relationship between the Plaintiff and the players, and the Court rejected this argument.  In the Court's March 24, 2006 Order, the Court ruled the NIFL has standing to pursue claims against RPC on behalf of its member teams, citing Hunt v. Washington State Apple Adv. Comm'n, 432 U.S. 333, 343 (1977). The Court found that each team is a third-party beneficiary of the Service Agreement, the NIFL has a strong interest in maintaining its football league and is protecting its business by pursuing claims against RPC and "by avoiding lawsuits and satisfying existing claims from medical providers and players," and the teams are not necessary participants in the suit because the claims may be introduced using FRE 803(6) Certifications or foundation witnesses from medical providers.  March 24, 2006 Order of Court, Pages 2-3.

In finding the NIFL had standing to pursue claims on behalf of its individual teams (who employed the players), the Court also found the NIFL had standing to pursue claims on behalf of its players.  The Court reasoned,

> "Plaintiff has consistently argued that it contractually agreed to provide workers' compensation and medical coverage to the players and, therefore, clearly has standing to pursue these claims."

Implicit in the Court's March 24, 2006 ruling on standing is a recognition that many NIFL players have been provided with medical services which have not been paid by workers' compensation insurance.  These same players are liable and continue to be liable to the medical providers under contract-based or quasi-contract causes of action, and the NIFL or its teams are clearly liable under state workers' compensation statutes for failure to carry workers' compensation insurance for the players.  See, e.g., Vandemark v. Southland Corporation, 525 N.E.2d 1374 (OH 1988) (holding an employee whose employer failed to process a workers' compensation claim can file suit in tort for the full amount of damages allowed at common-law without limiting the medical bill-based damages to the amounts reimbursed under Ohio Workmen's Compensation Act).  For instance, the record shows in the is case that the Mississippi Fire Dogs, one of the NIFL's teams in 2001, were successfully sued by a former player, Emmanuel Bentley, and the team was found liable for "any and all medical expenses and benefits . . ." related to the football injury.  See, Plaintiff's Trial Exhibit 65, Page 6, Paragraph 3 of the Administrative Judge Order in the Emmanuel Bentley Suit; see also Plaintiff's Trial Exhibit 65 - the Nebraska Suit Filed by Alphonsus Olieh against the Tri-City Diesel and the NIFL.  In the Court's August 31, 2007 Findings of Fact and Conclusions of Law, the Court ordered that RPC is liable for the judgment obtained by Emmanuel Bentley.  August 31, 2007 Findings of Fact and Conclusions of Law, ¶ 7(b).  Since the NIFL and/or its teams are liable

for RPC's failure to carry workers' compensation insurance under state law and the NIFL has standing to pursue both the team's and player's claims pursuant to the March 24, 2006 Order, the Court must reject RPC's current challenge to the NIFL's standing.

Secondly, the Court's conclusion that the NIFL has standing to pursue payment of the unpaid medical expenses from RPC is proper based upon RPC's stipulation as to liability. On March 28, 2006, RPC consented to liability for breaching the Service Agreement, which was read into the March 28, 2006 Court record. In Paragraph 4 of the instant Motion, RPC admits to its stipulation. By this stipulation and admission on the record, RPC has conceded that the NIFL has standing to assert its breach of contract cause of action against the RPC. RPC's stipulation also necessarily means that RPC is admitting that the NIFL and RPC entered into the parties' Service Agreement (effective March 20, 2001) in which RPC promised to "furnish and keep in force and effect at all times during the terms of this Agreement workers' compensation insurance covering all Employees filling Job Function Positions under the terms of this Agreement . . ." Service Agreement, Page 2, Paragraph 5(a)/Plaintiff's Trial Exhibit 18. In addition, RPC's stipulation means that it has admitted that it breached the Service Agreement by failing to provide workers' compensation insurance consistent with the terms of the Service Agreement and, therefore, RPC is liable to pay for the unpaid medical provider claims which, as a consequence of RPC's breach, were not covered by workers' compensation coverage.

To then assert, as RPC has done, that the NIFL is not the injured party, despite RPC's stipulation to contractual liability under its contract with the NIFL, is completely contradictory to the facts established in the record. As has been proven in this case and as explained above, the NIFL and/or its teams are subject to suit for its players' unpaid medical bills in numerous jurisdictions

under state law for failure to carry workers' compensation insurance.  The Court awarded the NIFL $44,640.96 for judgments obtained by such players in Louisiana and Mississippi for unpaid medical expenses and other such costs for the failure of workers' compensation insurance to be in effect at the time of the injury.  Furthermore, the NIFL has provided evidence on the record that it has undertaken the obligation to pursue the unpaid medical claims against RPC and provide payment to medical providers.  In the May of 2007 trial, Carolyn Shiver testified that the NIFL specifically promised providers to pay for the unpaid medical expenses once it has pursued RPC in this case.[3] In reliance on the NIFL's promises, most providers have forbore in suing the NIFL, its teams or its players directly to recover the unpaid medical expenses and have consented to the NIFL's pursuit of these claims.  In further reliance on the NIFL's promises to pursue payment of the unpaid claims, many providers gave the NIFL properly executed FRE 803(6) Certifications along with HCFA forms and/or underlying medical records that were submitted to the Court at trial.  Other providers, who did not provide FRE 803(6) Certifications, agreed to send record's custodians to trial as foundation witnesses for admission of the medical records at trial.[4]  The providers' cooperation in this respect is clear evidence of their consent to the NIFL to pursue the unpaid claims.  Quite clearly under these circumstances, the NIFL is as much (if not more) the injured party as any unpaid provider or any player pursued by providers – it suffered nearly $50,000.00 in player judgments and held in abeyance additional player or provider lawsuits (for which it is subject under many state's workers'

_____

[3]In addition to hearing such testimony from Carolyn Shiver during the May 2007 trial, the Court acknowledged the NIFL's promises in its March 16, 2006 Order in which it denied RPC's argument that the NIFL is limited only to collecting what it had already paid, stating, "[a]ccording to the Plaintiff's counsel, the NIFL has made promises to medical providers and players that it will cover the medical expenses incurred by the players."  March 16, 2006 Order, Page 7.

[4]As explained in Paragraph 5(a) of this Response, RPC stipulated on May 14, 2007 to the introduction of said medical records without foundation witnesses instead of requiring those providers to send foundation witnesses to trial.

compensation laws) pending the outcome of this case thereby mitigating its own damages. For these reasons alone, RPC's allegation concerning the NIFL's standing must be rejected.

Thirdly, the Court must also reject RPC's standing challenge because the NIFL has standing under both federal law and Ohio law.   The test for standing in federal Courts is a two part test involving (1) the Plaintiff's satisfaction of Article III of Constitution's requirement for standing in federal courts and (2) the Plaintiff passing "prudential considerations."  Under the first part of the test, "[i]n order to satisfy Article III [of the Constitution], the plaintiff must show that he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979).   The injury must be concrete and capable of being redressed by the court should the plaintiff prevail on the merits. Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38-40 (1976). These requirements ensure that plaintiffs have a "personal stake" or "interest" in the outcome of the proceedings, Id. at 38-39, "sufficient to warrant ... [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on ... [their] behalf," Warth v. Seldin, 422 U.S. 490, 498-99 (1975). As for the second part of the test, "prudential considerations" require that: (1) a litigant assert his [or her] own legal interests, Phillips Petroleum c. v. Shutts, 472 U.S 797, 804 (1985); and (2) courts "refrain from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' " Sullivan v. Syracuse Housing Auth., 962 F.2d 1101, 1106 (2d Cir. 1992) (quoting Warth, 422 U.S. at 499-500); and (3) a litigant demonstrate that her interests are arguably within the "zone of interests" intended to be protected by the statute, rule or constitutional provision on which the claim is based, Valley Forge Christian College v. Americans United Separation of Church and State, Inc., 454 U.S. 464, 475 (1982) (quoting Association of Data Processing Service Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970)). The federal courts have adopted prudential limits

on standing in order 'to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim.' <u>Phillips Petroleum</u>, 472 U.S. at 804 (<u>quoting</u> <u>Gladstone</u>, 441 U.S. at 99-100).

Ohio law, under which the Service Agreement is to be interpreted, has developed a standing test that is similar to the first part of the federal test. Ohio requires the plaintiff to have a personal stake in the outcome of the controversy. The "personal stake" requirement has three basic elements: (1) injury in fact to the plaintiff that is concrete and particularized; (2) a causal connection between the injury and the conduct complained of; and (3) redressability, <u>i.e.</u>, that it is likely that the injury will be redressed by a favorable decision granting the relief requested. <u>Woods v. Oak Hill Community Med. Ctr., Inc.</u>, 730 N.E.2d 1037, 1042 (Oh. Ct. of Apps. 4th Dist. 1999).

In this case, the NIFL clearly satisfies the first and second parts of the federal standing test and the Ohio standing test. Under the Article III "actual injury" requirement (<u>see</u> <u>Gladstone</u>, 41 U.S. at 99) and the first requirement under Ohio law concerning "injury in fact", the NIFL and its teams have not only suffered <u>actual injury</u> or <u>injury in fact</u> in the form of judgments against them, they are also threatened with numerous lawsuits from players under many state's workers' compensation statutes and from medical providers to whom the NIFL and its teams promised payment upon resolving its suit with RPC. A causal connection also exists, as required by the federal Article III test (again <u>see</u> <u>Gladstone</u>, 41 U.S. at 99) and by the third part of the Ohio test, between RPC's admitted breach of contract and the unpaid medical claims – had RPC procured workers' compensation coverage as promised, numerous work related injuries would have been covered. There is also no doubt that the NIFL's injury is capable of redress as required by the Article III federal test (<u>see</u> <u>Simon</u>, 426 U.S. at 38-40) and the third prong of the Ohio standing requirement. At trial in May of 2007, the NIFL proved unpaid medical claims in excess of $350,000.00, which

when paid, will relieve the NIFL and its teams from any obligations to players and/or providers for those unpaid medical bills.

With respect to the "prudential considerations" requirement under the federal test, which is not part of the Ohio test, the NIFL satisfies this requirement because (1) it is asserting its own legal interest under the parties' Service Agreement under which the NIFL alone has privity with RPC, and the NIFL and its teams, whose interests the NIFL may represent under <u>Hunt v. Washington State Apple Adv. Comm'n</u>, are exclusively liable under various state laws for RPC's failure to provide worker's compensation and are exclusively liable to the providers to whom the NIFL promised payment would be attempted to be collected from RPC at the conclusion of this case; (2) the NIFL's claims are directed to RPC only and are not questions of wide public significance or generalized grievances; and (3) the NIFL's claims are within the "zone of interests" intended to be protected under the breach of contract cause of action on which the NIFL's claim is based because only the NIFL, as admitted by RPC, is in privity of contract with it.

Lastly, the NIFL also possesses standing under both the Ohio and federal third-party standing tests. RPC argues the NIFL cannot assert claims on behalf of the medical providers. Throughout this case, the NIFL has never asserted that it is directly pursuing the medical providers claims to solely represent the medical provider's interests. To the contrary and as explained above, the NIFL is pursuing RPC, inasmuch as the NIFL is in privity of contract with RPC, on behalf of itself and its teams and players in attempting to avoid liability under various state's laws for failure to have worker's compensation in effect. In the course of protecting its own interests, however, the NIFL has instructed the court, both in prior pleadings and by Carolyn Shiver's testimony, that it promised many medical providers to seek payment for the unpaid medical bills. Even if the NIFL had asserted that it was representing the medical provider's interests solely and sought standing solely through

them, the NIFL still would have possessed third-party standing to represent the medical providers under Ohio law and federal law.

Under federal law, where a plaintiff asserting third-party standing has suffered concrete, redressable injury (that is, the plaintiff has Article III standing like in the NIFL's case), federal courts are to examine at least three additional factual elements for third-party standing. Amato v. Wilentz, et. al., 952 F.2d 742, 749 ((3d. Cir. 1991) citing Caplin & Drysdale v. U.S., 491 U.S. 617, 623 (US. 1989). "First, the court must examine the relationship between the plaintiff and the third party whose rights are asserted; second, the court must consider the ability of the third party to advance its own rights-whether some obstacle impedes the rightholder's own suit; and third, the court must inquire into the impact on third party interests-whether the plaintiff and the third party have consistent interests." Id.   The Ohio test is similar to the federal third-party standing test. To bring an action on behalf of a third-party under Ohio law, "a litigant must satisfy three criteria: first, the litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; second, the litigant must have a close relation to the third party; and third, there must exist some hindrance to the third party's ability to protect his or her own interest." State v. Orwick, 791 N.E.2d 463, 465-66 (Oh. Ct. of Apps.3rd Dist. 2003) citing State v. Yirga, Wyandot App. No. 16-01-24, 2002-Ohio-2832, 2002 WL 1299860, ¶ 38, appeal not allowed by 96 Ohio St.3d 1524, 2002-Ohio-5099, 775 N.E.2d 864, citing Warth v. Seldin, 422 U.S. 490, 499 (1975).

Applying federal and Ohio third-party standing law to this case, the NIFL satisfies both tests (assuming the NIFL was seeking standing solely through the medical providers).  The first part of the Ohio third-party standing test (the litigant's injury in fact) is the similar to the federal prerequisite that Article III standing be established before applying the federal third-party standing test.  As explained above, these parts of the test have already been met largely because of the judgments

obtained by former NIFL players against the NIFL and its teams.  In terms of the first part of the federal third-party standing test (relationship requirement) and the second part of the Ohio third-party standing test (relationship requirement), it is clear the NIFL and the providers have a defined, close relationship.  This relationship was forged beginning in 2001 when the NIFL began to communicate directly with unpaid providers as it appealed its players' denials of coverage through the Ohio workers' compensation system.  The relationship continued during this lawsuit as the NIFL promised payment to the providers upon resolution of this suit (primarily to protect itself and its teams from lawsuits under state law) and maintained constant communication to gather information including FRE 803(6) Certifications and medical records.  Regarding the second part of the federal third-party standing test (ability of the third-party to advance its own interests) and the third part of the Ohio third-party standing test, it is abundantly clear the NIFL is the only party in privity with RPC as admitted by RPC in its March 28, 2006 stipulation.  No medical provider could bring suit against RPC under a breach of contract cause of action.  As for the third part of the federal third-party standing test (the extent to which the parties interests are consistent), which is not specifically part of the Ohio test, both the NIFL and the medical providers share a common goal.  Payment of the medical providers relieves the NIFL and its teams under liability under state workers' compensation laws, relieves the players from suits by the medical providers, and satisfies the unpaid obligations of the medical providers which went unpaid due to RPC's breach of contract.  For these reasons, the NIFL possesses third-party standing to represent the medical providers in addition to possessing traditional standing under federal and Ohio law to represent its own interest as well as the interests of its teams and players.

The NIFL respectfully requests the Court deny the Defendant's objection to standing for the aforementioned reasons and in consideration that the Defendant did not cite one applicable case in support of its position and did not address the Court's prior, well-reasoned ruling on standing.

12.    Denied.  The damages in this case are not based on speculation and conjecture. Foremost, the damages alleged have their basis in the NIFL's standing as explained in Paragraph 11. As stated above, the NIFL and its teams have suffered quantifiable and real losses in form of judgments and liability under state law, and the medical providers have suffered losses in the form of uncovered medical claims.  Furthermore, the Defendant's allegation that the claims of damages "are based on speculation and conjecture" is clearly inconsistent with the Defendant's prior representations to the Court.  At the May 24, 2007 trial, RPC stipulated to the validity and admission of nearly all the damages presented by the Plaintiff.  RPC has constantly throughout this case flip-flopped its position arguing whatever position best suits the issue while at all times ignoring the fact they admitted liability and, accordingly, assumed responsibility for their failure to provide workers' compensation benefits.

13.    Denied.  The Court record confirms that the award of damages of $305,055.26 for unpaid medical claims is based upon substantial evidence, and the Defendant cites no specific evidence showing that the records were untimely produced.  Not only did RPC stipulate to nearly the entire amount of the award as explained in Paragraph 5(a), the record reflects that all information was produced timely to support the $305,055.26 award.  As indicated in the record, the Plaintiff sent the Defendant a November 18, 2005 Correspondence and an attached list/spreadsheet identifying the player, provider, injury, date and amount for all thirteen (13) teams.  The Court specifically ruled in the Plaintiff's favor upon consideration of the Plaintiff's evidence that information was timely provided and the lack of evidence presented by the Defendant.  This again is another example of the

Defendant arguing a position contrary to the Court's ruling and not providing any citations to support the alleged error of law by the Court.

14.    Denied.  For the reasons contained in Paragraph 5(a) and Paragraph 13, this allegation is denied because records supporting the award of $305,055.26 were timely produced.  The Plaintiff presented substantial and concrete evidence in this regard, and the Defendant failed to present any evidence to the contrary.

15.    Denied.  In the NIFL's Sixth Motion in Limine, the NIFL presented Ohio case law, which was accepted by the Court, specifically addressing the award of interest on the unpaid medical expenses:

> "The NIFL's damages include the unpaid medical bills and player judgments which were not covered under workers' compensation insurance as RPC had promised.  In its Order of March 16, 2006, the Court already decided the NIFL "may be entitled to recover the full amount of damages and medical bills if properly proven" because the NIFL's breach of contract claim falls "outside the scope of workers' compensation statutes."   Since the Court already decided the NIFL is proceeding under a valid breach of contract claim, the issue before the Court is prejudgment interest available under a breach of contract claim.  The Defendant argues the NIFL is not permitted to seek prejudgment interest for medical bills which are unpaid by the NIFL.  However, the Defendant's assertion is without merit."
>
> "In rejecting the argument that only liquidated damages are subject to prejudgment interest, the Supreme Court of Ohio articulated the key question a court must answer in deciding to award prejudgment interest under Ohio Revised Code 1343.03(A): "Has the aggrieved party been fully compensated."   Royal Electric Construction Corporation, 73 Ohio St.3d 110, 116 (OH Sup. Ct. 1995).  The Ohio Supreme Court stated, "to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and the judgment."   Id.  at 117.  In rendering the Royal decision, the Ohio Supreme Court upheld prejudgment for a Contractor who was liable to materialmen for excess costs of $51,591.00 due to the State's wrongful rejection of certain fixtures."
>
> "To make the NIFL whole, this Court must award the NIFL prejudgment interest on all unpaid, properly proven medical bills.  In its March 24, 2006 Order, this Court determined the NIFL is in the same position as the Contractor in the Royal Electric case because the Court ruled, "Plaintiff is not limited to seeking recovery of only $31,800.50 it has already paid, but rather Plaintiff may seek recovery for all medical damages it has incurred and reasonably expects to incur . . .", given the NIFL's

"promises to medical providers and players that it will cover the medical expenses."
Like the Contractor in <u>Royal Electric</u> who was liable to materialmen because of the
State's wrongful rejection of fixtures, the NIFL and its member teams are subject to
liability for the unpaid medical bills which were not paid due to RPC's failure to
provide workers' compensation.  Several NIFL players have judgments against the
NIFL and its teams for unpaid medical expenses and workers' compensation wages.
The NIFL is also subject to suits by medical providers who have relied upon the
NIFL's promises to obtain payment.  Under these circumstances, the NIFL is entitled
prejudgment interest on all unpaid, properly proven medical bills and judgments to
properly discharge the unpaid claims of the medical providers and to satisfy the
judgment holders."

In the Court's May 4, 2007 Order, it granted the NIFL prejudgment interest as required under

Ohio Revised Code 1343.03(A) pending calculation at the end of trial.  The Court then followed the

May 4, 2007 Order with the August 31, 2007 Order relying on the  <u>Royal Electric Construction</u>

<u>Corporation</u> decision.  <u>Id.</u>.  In commenting on the <u>Royal Electric Construction Corporation</u> decision,

the Court noted in its Order, "the question should not be whether the amount was liquidated,

unliquidated, or capable of ascertainment; instead, the question should be whether the aggrieved

party has been fully compensated.  March 4, 2007 Order, Page 2.  In RPC's Reply to the NIFL's

Sixth Motion in Limine, RPC did not present any contradictory authority  to the <u>Royal Electric</u>

<u>Construction Corporation</u> case.  Then, as now, RPC fails to present any legal basis to challenge the

Court's award of prejudgment interest and again is asking the Court to modify its position

notwithstanding the fact it has presented no contradictory evidence or law.

16.     Denied.  Quite properly, the NIFL bases the beginning date of the accrual of

prejudgment interest on the clear provisions of Ohio case law.  As explained in the NIFL's Brief in

Support of its Sixth Motion in Limine, the accrual date for prejudgment interest in breach of contract

actions is the date on which the claim becomes due and payable because the NIFL's cause of action

against RPC is in the nature of a breach of contract.  <u>First Bank of Marietta v. L.C. Limited, et.</u>

<u>al.,</u>1999 WL 1262058 (Ohio App. 10 Dist. 1999) <u>citing</u> <u>Royal Electric Construction Corp. v. Ohio</u>

State Univ., 73 Ohio St.3d 110, 115.  In its August 31, 2007 Order, the Court followed this case law

quoting the Royal Electric Construction Corporation case:

> "prejudgment interest is compensation for the period of time between the accrual of
> the claim and judgment, regardless of whether the sum was capable of being
> ascertained only at the time of judgment by the court."

RPC argued against the NIFL's Sixth Motion in Limine relying upon the Eagle American Ins.

Co. v. Frencho case, which is factually distinguishable from the instant case and, as the Court

decided on August 31, 2007, has no applicability to the NIFL's cause of action.  675 N.E.2d 1312

(Oh. App. 10 Dist. 1996).  The applicability of the Royal Electric Construction Corporation case is

clear, and RPC has cited no contradictory case law in the instant Motion or in prior pleadings,

therefore, RPC's contention concerning the proper accrual date of prejudgment interest must be

rejected.

17.     Denied.  This matter has already been heard by the Court, and after seeing and hearing

the evidence, the Court ruled these three teams should be included.  The Court correctly decided to

include all thirteen (13) teams when issuing its August 31, 2007 Orders, including the three teams

not stipulated by the parties (i.e., Louisiana Bayou Beast, Mobile Seagulls, and Southern Oregon

Heat).  RPC's allegation that "none of the these three teams submitted the proper documentation

prior to the termination of the Service Agreement between NIFL and RPC" was neither credible nor

dispositive for the Court when rendering its decision.  Please see the reasons for the Court's decision

described in Paragraph 8(a) of this Reply.

18.     Denied. The Court did not err in awarding damages that included the judgments for

Emmanuel Bentley, John Nicky Seymour and Kareem Vance.  As explained in Paragraph 13 of this

Reply, the information for these judgments was timely provided to the Defendant, and the Court

properly took judicial notice of the judgments as provided in its February 1, 2007 Order. February 1, 2007 Memorandum and Order of Court, Pages 5 & 7.

19.    Denied.  RPC admitted in its Reply to the Plaintiff's Request for Admissions that it did not return the NIFL's premium payment of $9,217.07.   The parties agreed on the May 24, 2007 record  the NIFL is due a refund of $9,217.07, representing the premium paid to RPC for the unprovided workers' compensation coverage, if the Defendant fails to produce evidence in its response to the Plaintiff's Post-Trial filings, that the premium was repaid to the NIFL directly from the state of Ohio.  The Defendant did not demonstrate this, so the Court properly ordered the Defendant to repay the NIFL $9,217.07.  RPC again is arguing a point it previously agreed to.

20.    Denied.  The issue of the $1,000.00 deductible was previously before the Court in the Plaintiff's First Motion in Limine with Respect to the Damages Portion of Trial.   The Court held, as a matter of law, a deductible does not apply because the Court had already determined the claims surrounding this litigation "fall outside of the scope of workers' compensation statues" and, therefore, the NIFL is entitled to recover the full amount of common law damages without any deductible or set off.  See, February 1, 2007 Memorandum Opinion and Order of Court, Page 2 citing the Court's March 16, 2006 Order in which the Court adopted the reasoning and holding of Vandemark v. Southland Corporation, 525 N.E.2d 1374 (OH 1988) (holding that a claim for failure to carry workers' compensation insurance is outside of the workers' compensation statutes and damages are not limited to reimbursements or set offs provided under the applicable workers' compensation act).  Then, as now, RPC fails to present any case citation which supports its position.

In the Court's February 1, 2007 Order, the Court also found, as a matter of law, that the Service Agreement does state that the deductible is intended to apply to any workers' compensation coverage or benefits.  In RPC's Reply to the Plaintiff's First Motion in Limine with Respect to

Damages, it fails to identify any provision in the Service Agreement that contradicts the Court's findings, and fails do so now.  Furthermore, Carolyn Shiver's testimony clearly establishes that the NIFL was never assessed any deductible by RPC prior to the termination of the Service Agreement. Furthermore, there are no deductibles in workers' compensation law, and if RPC had provided the workers' compensation insurance as they were supposed to through the Ohio Bureau of Workers' Compensation, there would not have been a deductible.  For all of these reasons, RPC's argument about the applicability of a deductible must be denied.

This motion filed by RPC clearly demonstrates why the attorneys' fees in this case are what they are.  The Plaintiff has had to repeatedly re-argue points over and over notwithstanding the Court's ruling.

WHEREFORE, the Plaintiff, National Indoor Football League, respectfully requests this Honorable Court : (1)  deny in its totality the Defendant's Motion to Alter or Amend Judgment or To Grant New Trial; (2) reaffirm the Findings of Fact and Conclusions of Law, Memoranda Orders of Court, Orders of Court, Judgments and all other such findings dated August 31, 2007; (3) order the Defendant, R.P.C. Employer Services, Inc. to comply with the terms thereof; and (4) award the Plaintiff additional attorneys' fees of $3,000.00 for the preparation of the NIFL's Reply to the instant Motion and for the Reply to the Defendant's related Motion for Stay.

Respectfully submitted,

Date:_____10-1-07_____          _____s/ Timothy C. Leventry_____
                                        Timothy C. Leventry, LL.M.
                                        Attorney for Plaintiff
                                        PA I.D. No. 34980
                                        1397 Eisenhower Boulevard
                                        Richland Square III, Suite 202
                                        Johnstown, Pennsylvania 15904
                                        (814) 266-1799