# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE L.L.C., | : | CIVIL DIVISION |
| | : | |
| PLAINTIFF, | : | NO.: CA 2 - 548 |
| | : | |
| v. | : | |
| | : | TYPE OF PLEADING: |
| | : | |
| R.P.C. EMPLOYER SERVICES, INC., | : | REPLY TO DEFENDANT'S MOTION |
| | : | FOR STAY |
| DEFENDANT. | : | |
| | : | |
| | : | FILED ON BEHALF OF: |
| | : | |
| | : | PLAINTIFF |
| | : | |
| | : | COUNSEL FOR PLAINTIFF: |
| | : | |
| | : | TIMOTHY C. LEVENTRY, LL.M. |
| | : | LEVENTRY, HASCHAK & RODKEY, LLC |
| | : | PA I.D. 34980 |
| | : | 1397 EISENHOWER BOULEVARD |
| | : | RICHLAND SQUARE III, SUITE 202 |
| | : | JOHNSTOWN, PA  15904 |
| | : | (814) 266-1799 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
_____

| | | |
|---|---|---|
| NATIONAL INDOOR FOOTBALL LEAGUE L.L.C., | : : | CIVIL DIVISION |
| PLAINTIFF, | : : | NO.:  CA 2 - 548 |
| v. | : : | |
| | : : | TYPE OF PLEADING: |
| R.P.C. EMPLOYER SERVICES, INC., | : : | REPLY TO DEFENDANT'S MOTION FOR STAY |
| DEFENDANT. | : : : | |

## PLAINTIFF'S REPLY TO DEFENDANT'S MOTION FOR STAY

AND NOW, comes the Plaintiff, National Indoor Football League ( hereinafter "NIFL"),  by and through its attorneys, Leventry, Haschak & Rodkey, LLC, and files the Plaintiff's Reply to the Defendant's Motion for Stay pending determination of the Defendant's Motion to Alter or Amend Judgment or Grant New Trial:

1. Admitted.

2. Admitted insofar as the Defendant alleges the Amended Complaint speaks for itself.

3. Admitted insofar as the Defendant alleges the Amended Complaint speaks for itself.

4. Admitted insofar as the Defendant alleges the March 26, 2006 Court record speaks for itself, which contains, among other things, RPC Employer Services, Inc.'s ("RPC" or "Plaintiff") stipulation as to contractual liability.

5.   a.   Denied. To the extent that the Defendant is paraphrasing the Court's August 31, 2007 ruling, the Defendant's allegation is denied because the Court's August 31, 2007 Order speaks for itself. The Court's Order stated the NIFL is awarded unpaid claims as follows:

> "$305,055.26, which reflects an amount of $145,787.29 from the pre-March 13, 2006 spreadsheet and $159,267.97 post-March 13, 2006 certification spreadsheet." August 31, 2007 Findings of Fact and Conclusions of Law, ¶ 7(a).

To the extent the assertions of Paragraph 5(a) imply that the records on the post-March 13, 2006 spreadsheet were inadmissible at trial without a foundation witness, the allegation is denied because the Defendant specifically agreed and stipulated to the admission of eleven (11) medical provider records shown on the post-March 13, 2006 spreadsheet without a foundation witness. In accordance with this agreement, the parties jointly filed with the Court on May 14, 2007 a stipulation allowing certain player records for eleven (11) medical providers to be admitted without a foundation witness.[1] The Stipulation also provided that the following ten (10) teams shall be part of the NIFL's damages claim: Billings Outlaws, Johnstown J-Dogs, Lake Charles Landsharks, Louisiana Rangers,

---

[1] The medical provider records covered by the parties' stipulation are as follows: (A) St. Vincent Healthcare regarding player Derek Gackle ($12,427.00); (B) UPMC regarding players Michael Elwood ($989.00), Todd McGough ($989.00), Quenteen Robinson ($6,678.10), John Schmitt ($793.00), and Charles Wyatt ($306.00); (C) The Medical Center regarding player John Schmitt ($13,403.25); (D) Christus St. Frances Cabrini Hospital regarding players Jacobe Austin ($6,651.18), Damion Brown ($472.48), Randy Chappell ($5,014.97), Tremayne Evans ($88.00), James Goodman ($264.83), and Chris Lazard ($9,010.89); (E) Bienville Orthopedic Specialists, Susan Legrand, regarding players Emmanuel Bentley ($14,607.00), Terrence Blackwell ($956.28), Calvin Bolton ($1,664.00), Billy Clay ($180.00), Terrance Dickerson ($1,257.52), Bobby Doyle ($450.52), Marcus Haynes ($108.00), Kevin Heard ($108.00), William Keith ($247.00), John Nicky Seymour ($7,258.00), and Stacy Wilson ($670.00); (F) Bienville Orthopedic Rehabilitation regarding players Emmanuel Bentley ($11,296.00), Timothy Hardaway ($550.00), and John Nicky Seymour ($1,089.00); (G) Alabama Orthopaedic Clinics, Dean Brown, regarding players Tommy Aguilar ($273.00), Samuel Caine ($1,036.00), Ted Coleman ($286.00), Steve Davis ($1,308.00), Juan Draine ($973.00), John Fourcade ($952.00), Dominicke Haston ($7,078.00), Alex Howell ($344.00), William James ($396.00), Alexis Lee ($2,287.00), Ronald Mabins ($1,663.00), James Matthews ($112.00), Raymond Nobles ($160.00), Stephen Ruckman ($432.00), Timothy Taylor ($269.00), and Ronnie Thompson ($226.00); (H) USA Medical Center, George Tullos, regarding player William James ($9,127.50); (I) St. Luke's Regional Medical Center regarding players Jason Graham ($12,491.35) and Jeffrey Kerns ($1,017.25); (J) Good Samaritan Hospital regarding player Greg Albright ($9,225.95); (K) Healthsouth Holdings regarding player Alphonsus Olieh ($12,270.00).

Mississippi Firedogs, Rapid City Red Dogs, Sioux City Bandits, Sioux Falls Storm, Tri-City Diesel and Wyoming Cavalry. As for the records contained on the pre-March 13, 2006 spreadsheet, those records contained certifications dated on or before March 13, 2006 and, therefore, these records were admissible using the NIFL's FRE 803(6) certifications, the language of which the Court approved as a valid FRE 803(6) certification.

On the May 24, 2007 Court record, the parties stipulated to those medical records on both the pre-March 13, 2006 spreadsheet and the post-March 13, 2006 spreadsheet which satisfied the four (4) key criteria identified in the Court's February 2, 2007 Order.[2] The May 24, 2007 Stipulation on the record followed two (2) days of meetings between the parties' counsel to identify records which met the four (4) key criteria. Any issues to which the parties did not agree were resolved conclusively before the Court on May 24, 2007 with the Court making a final decision on only a few unresolved medical records to which parties did not agree. In the Plaintiff's Revised Exhibit 41, which was filed with the Court on June 1, 2007 pursuant to the Court's May 29, 2007 Order with respect to Post-Trial Filing deadlines, the Plaintiff identified for the Court's decision on damages all of the records which were either stipulated or resolved by the Court on May 24, 2007. Upon final review of the Plaintiff's Revised Exhibit 41, and following several questions to the parties' counsel for clarification, the Court issued its August 31, 2007 Order on damages.

   b.  Admitted. For purposes of qualification, the Court decided in its February 1, 2007 Order that it would take judicial notice of the judgments submitted by the NIFL as long as the judgments contain the four (4) key factors identified in the Court's February 1, 2007 Order.

---

[2]In the Court's February 2, 2007 Order, it ruled that HCFA forms individually, medical charts/notes/reports individually, or a combination of both may be introduced to prove the four (4) key factors: (1) that the player's injury is work related, (2) that the player was injured during the 2001 NIFL season, (3) that the player received medical treatment related to the injury and (4) that the provider is due an amount for the treatment rendered.

February 1, 2007 Memorandum and Order of Court, Pages 5 & 7.  RPC did not dispute on the May 24, 2007 Court record that the judgments for Emmanuel Bentley, John Nicky Seymour and Kareem Vance contained information sufficient to prove the four (4) key factors.

          c.      Admitted.  By way of qualification, the Defendant admitted in its Reply to the Plaintiff's Request for Admissions that it did not return the NIFL's premium payment of $9,217.07.  The parties agreed on the May 24, 2007 record the NIFL is due a refund of $9,217.07, representing the premium paid to RPC for the unprovided workers' compensation coverage, if the Defendant fails to produce evidence in its response to the Plaintiff's Post-Trial filings, that the premium was repaid to the NIFL directly from the state of Ohio.  The Defendant did not demonstrate this, so the Court properly ordered the Defendant to repay the NIFL $9,217.07.

      6.      Admitted in part.  Denied in part.  It is admitted the Court's August 31, 2007 Order contained the Court's ruling on prejudgment interest.  However, the Defendant misstates the Court's order insofar as it alleges August 1, 2001 is the beginning accrual date "for the medical provider claims," therefore, same is denied.   The Court's August 31, 2007 Order provides in part:

> "As for all *unpaid* medical provider claims, August 1, 2001, is the prejudgment interest accrual date." (Emphasis Added). August 31, 2007 Findings of Fact and Conclusions of Law, ¶ 8(a)

By way of clarification of the Court's August 31, 2007 Order on this issue of prejudgment interest, the Court's August 31, 2007 Order relates to the Court's May 4, 2007 Order in which it preliminarily ruled on the Plaintiff's request for prejudgment interest.  In the May 4, 2007 Order, the Court stated:

> "[p]rovided said claims are properly proven, pre-judgment interest will likely be awarded as of the referenced date when payment became due as determined by the Court."  May 4, 2007 Memorandum Opinion and Order of Court, Page 2.

As a result of the parties' stipulations at the May 21, 2007 to May 24, 2007 trial, the Court determined the NIFL's unpaid medical claim damages and issued the August 31, 2007 Order setting the beginning accrual date of prejudgment interest as the Court had indicted it would determine in its May 4, 2007 Order.

7. Denied. It is expressly denied the Court found the medical providers to be "the truly injured" party. On the contrary, the Court found in part that,

> "because it is the identified medical providers that have been denied payment for their services, not the NIFL, the NIFL is hereby directed to make payment(s) to the medical providers in accordance with the Court's rulings on Plaintiff's Revised Exhibit 41 . . ." August 31, 2007 Findings of Fact and Conclusions of Law ¶ 9.

Insofar as the Defendant's allegation in Paragraph 7 of its Motion to Amend Judgment/Order New Trial implies the NIFL does not have standing, this allegation is expressly denied and is not supported either in law or by the Court's findings on this case. Please refer to Paragraph 11 of the NIFL's Reply to Defendant's Motion to Alter or Amend Judgment/Motion for New Trial, for a more detailed discussion of this matter.

8. a. Admitted. By way of qualification, the NIFL presented evidence at trial clearly showing that thirteen (13) teams were to be covered under the NIFL's Service Agreement. RPC argues now, as it did at trial, that only ten (10) teams submitted the requisite information. As found by the Court, Carolyn Shiver testified at trial that the three (3) disputed teams in question did not have payroll to submit during bye-weeks during early April of the 2001 season, which means that the three (3) disputed teams did not have to submit payroll monies to RPC at that time. August 31, 2007 Memorandum Order of Court, ¶¶ 15-17. Furthermore, Ms. Shiver testified that payroll for the three (3) teams could not be submitted in mid-April of 2001 because RPC terminated the parties' Service Agreement. August 31, 2007 Memorandum Order of Court, ¶ 19. Ms. Shiver also testified

that RPC did not inform her that any of the C-110's submitted by the three (3) teams were not complete. Nothing in the record contradicted this testimony. August 31, 2007 Memorandum Order of Court ¶¶ 26-27.

      b.      Admitted. The Court denied all of RPC's Objections to Plaintiff's Revised Exhibit 41 based upon substantial, uncontradicted evidence and outlined its findings specifically in its Order of Court dated August 31, 2007.

      c.      Denied. The Court awarded the NIFL prejudgment interest citing <u>Royal Electric Construction Corp. v. Ohio State Univ.</u>, 62 N.E. 2d 687, 691-92 (Oh. Sup. Ct. 1995) which established the "accrual of the claim" as the date on which prejudgment interest begins. The Defendant cited no contrary Ohio case in its June 6, 2007 Brief for the beginning accrual date of prejudgment interest. The Court accepted August 1, 2001 as the beginning accrual date stating,

> "it seems fair and equitable to fully compensate the medical providers whose claims have remained unpaid for approximately six years." August 31, 2007 Memorandum Order of Court, Page 3.

The NIFL suggested the August 1, 2001 accrual date in good faith, even though it is clear based on the records submitted to the Court that the vast majority the unpaid medical claims were incurred <u>prior to August 1, 2001.</u> <u>See</u>, Plaintiff's Revised Exhibit 41.

9.      Admitted. The NIFL filed its Petition for Award of Attorneys' Fees and Costs on June 13, 2007, and it supplemented its June 13, 2007 Petition by filing an Affidavit and additional information on September 18, 2007. The NIFL respectfully requests this Court to award the NIFL additional attorneys fees associated with the NIFL's Response to instant Motions filed by the Defendant (as stated in the "Wherefore" clause of the NIFL's Reply to Defendant's Motion to Alter or Amend Judgment/Motion for a New Trial). This Motion, which is not supported in fact or by any

case citations, is a continuing example of RPC's obdurate conduct and why the NIFL has incurred substantial legal fees in this case and why the NIFL deserves to be compensated in full for it legal expenses. Despite that Defendant RPC <u>stipulated to liability</u> on March 28, 2006 and stipulated to the vast majority of unpaid <u>medical claims</u> submitted by the NIFL on the Court's record on May 24, 2007, RPC continues to deny any responsibility for its actions. This is the second and third time in which the NIFL has had to submit either a Reply or Brief to the Court on the same issues.

## **REQUEST FOR STAY**

10.     The NIFL incorporates by reference its responses to Paragraphs 1 though 9 as though set forth fully herein.

11.     Admitted in part. Denied in part. It is admitted RPC is making the Motion for Stay, but it is denied RPC is entitled to Stay.

12.     Denied. The allegations of Paragraph 12 of RPC's Motion contain conclusions of law to which no response is required. To the extent a response is required, the four factors to be considered for the grant of Stay under FRCP 62(c) are as follows: (1) whether the stay applicant has made as strong showing that he is likely to succeed on merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in proceeding; and (4) where the public interest lies. <u>Hilton v. Braunskill</u>, 481 U.S. 777, 776 (1987). In the Defendant's Request for Stay, the Defendant fails to satisfy any of the four factors: (1) RPC has not shown that it is likely to succeed on the merits; indeed, it does not allege any supporting evidence (contrary to evidence in the record) or case law which supports it position; (2) RPC has not given reasons why it believes it will be irreparably harmed absent the stay; (3) RPC has not given reasons why it believes the NIFL will not be injured by the Stay; in fact, NIFL's

position is that is continues to suffer due to RPC's breach every day because it continues to hold unpaid providers and unsatisfied players in abeyance; and (4) RPC has not alleged any reason showing that the Stay supports public interest.

13. Denied. The allegations of Paragraph 13 of RPC's Motion contain conclusions of law to which no response is required.

14. To the extent the Court grants the Stay, which the NIFL strongly opposes because RPC's request does not comport with the requirements of FRCP 62(d), the NIFL requests the Court to require RPC to post a supersedeas bond in the full amount of the August 31, 2007 judgment including all unpaid medical claims, player judgments, unpaid premium payments and prejudgment interest. Olcott v. Delaware Flood Co., 76 F.3d 1538, 1559-60 (10th Cir. 1996) citing Texaco, Inc. v. Pennzoil Co., 784 F.2d 1133, 1155 (2d Cir.1986), rev'd on other grounds, 481 U.S. 1(1987) (commenting the typical amount of the bond matches the full amount of the judgment).

15. Denied. The Plaintiff continues to be prejudiced by the Defendant's delays. Quite literally, the NIFL has had to function like a claims processing office for the last five (5) years. This continues to be a substantial burden upon the NIFL. Carolyn Shiver testified that she and her employees have spent many uncompensated hours dealing with RPC's breach of contract. Any delay continues to burden the NIFL and prevents it from satisfying judgments, putting to rest any potential claims against it or its teams under state law, paying providers who are eagerly awaiting the conclusion of this case and repairing its reputation in communities where many providers were not paid due to RPC's actions.

WHEREFORE, the Plaintiff, National Indoor Football League, respectfully requests this Honorable Court deny the Defendant's Request for Stay pursuant to FRCP 62(b).

Respectfully submitted,

Date: 10-1-07                          s/ Timothy C. Leventry
                                       Timothy C. Leventry, LL.M.
                                       Attorney for Plaintiff
                                       PA I.D. No. 34980
                                       1397 Eisenhower Boulevard
                                       Richland Square III, Suite 202
                                       Johnstown, Pennsylvania 15904
                                       (814) 266-1799