IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NATIONAL INDOOR FOOTBALL LEAGUE, )
L.L.C., )
 )
                        Plaintiff, )
 )
                                          ) Civil Action No. 2:02-cv-548
        v. ) Hon. Terrence F. McVerry
 )
R.P.C. EMPLOYER SERVICES, INC., )
 )
                        Defendant. )

## DEFENDANT'S SUPPLEMENTAL RESPONSE TO
## PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

AND NOW, comes Defendant, R.P.C. Employer Services, Inc., (hereinafter "RPC"), by and through its attorneys, Feczko and Seymour and Michael J. Seymour, Esquire, and Burns, White & Hickton, LLC, and John B. Cromer, Esquire and Ira L. Podheiser, Esquire, and files the following Supplemental Response to Plaintiff, National Indoor Football League, L.L.C.'s Petition for Attorneys' Fees and Costs:

## PROCEDURAL HISTORY

1.      Plaintiff, National Indoor Football League, L.L.C. ("NIFL"), filed this action in March 2002 against RPC and a co-defendant, RPC's president, Dan D'Alio ("D'Alio").

2.      The Amended Complaint, filed on April 20, 2002, alleged that RPC and D'Alio breached a contract to provide workman's compensation coverage to NIFL players. In addition to breach of contract, the Amended Complaint also asserted fraud and RICO claims against RPC and D'Alio.

3.      The Amended Complaint alleged that a contract entered into between RPC and the NIFL on March 21, 2001 ("the Service Contract") obligated RPC to obtain workers' compensation insurance services for NIFL players under the Ohio Workman's Compensation

Act. Amended Complaint, ¶ 35. On June 4, 2001, the Ohio Bureau of Workers' Compensation informed the NIFL that its players were not covered under the Ohio Workers' Compensation Act and that numerous claims filed by individual players were denied. *Id.*, ¶ 43. The Amended Complaint further alleges that, from March 21, 2001 to June 4, 2001, numerous NIFL players sustained injuries from their participation in the football league and incurred medical expenses and wage loss claims which were not paid. *Id.*, ¶ 42. As a result, the NIFL claimed it incurred damages, representing unpaid wage loss and medical claims on behalf of its players that it contended should have been covered by worker's compensation insurance. *Id.*, ¶ 47.

4.     In the Amended Complaint, the bulk of the total amount of damages claimed was $637,142.04, that amount representing "known medical claims." That amount did not include unknown medical claims, attorneys' fees, or lost wages, or other items of damages. Amended Complaint, ¶ 68.

5.     On March 28, 2006, at and during the commencement of a jury trial on all the claims, the parties resolved portions of the various claims. RPC paid $75,000.00 to the NIFL to settle the RICO claims against D'Alio and the fraud claim against RPC. RPC consented to liability on the breach of contract claim and withdrew its Counterclaim against the NIFL. The parties also agreed to mediate the contractual damages issue, but were unable to reach a settlement. Defendant D'Alio was dismissed as a party to the contractual damages claim.

6.     Immediately following the mediation of the contract damages claim, RPC offered to settle the case for $150,000.00, with an intention of a negotiation process which would entail the RPC extending additional settlement monies.

7.     Because the case did not otherwise resolve at or around the mediation conferences, a trial date was set for May 2007. Prior to trial, the NIFL filed a Pretrial Statement

on Damages on May 14, 2007 stating that the damages stemming from unpaid workers' compensation claims was $505,498.44, a lower figure than $637,142 stated in the Amended Complaint.  Doc. No. 121, Plaintiff's Pretrial Statement, at 9.

8.     A bench trial was held on the damages issue from May 21 to May 24, 2007, with only two witnesses actually testifying.  The majority of the time was spent with the attorneys going over the damages documentation attempting to be submitted by the NIFL.

9.     On June 13, 2007, the NIFL filed a Petition for Attorneys' Fees and Costs.  Doc. No. 132.  The Petition sought counsel fees and costs totaling $229,878.26.  *Id.*, ¶ 22.  In the Petition, they claimed that $692,000.00 in workers' compensation claims were not paid.  *Id.,* ¶ 3.

10.     Many of the averments contained in the Petition are false and unsupported allegations that RPC filed numerous frivolous motions and briefs, thereby forcing the NIFL to incur additional legal expense in prosecuting this action.  Lost in the extended discussion of the legal fees and costs is the undeniable fact that it was the NIFL's failure to provide adequate and proper documentation of its claimed damages, the NIFL's duplicating efforts in reproducing numerous records, and the NIFL's conduct in losing records that it had to re-secure, that caused the litigation to continue, which in turn caused all parties to bear additional expense.

11.     The NIFL filed an Amended Petition for Costs on June 25, 2007.  Doc. No. 135.  The Amended Petition sought an additional $2500.00 representing the mediation fees.

12.     RPC filed responses to both the Initial and Amended Petitions on June 27, 2007.  Doc. Nos. 136, 137.  In its responses, RPC rejected all of the unsupported assumptions made in the NIFL's initial Petition regarding the validity of the filings and legal arguments.  With regard to the mediation fee (incorrect amount) requested in the Amended Petition, the NIFL did not

negotiate in good faith as the NIFL's attorney had no authority to negotiate and advised of the potential of being replaced as counsel to the NIFL.

13.     On August 31, 2007, the Court issued its Findings of Fact and Conclusions of Law, pursuant to Fed. R. Civ. P. 52.  Doc. 141.  The Court found RPC liable for a total of $358,913.29, plus interest to be calculated.  The Court broke down this total as follows:

        a.     $305,055.26, for unpaid medical claims.  This amount was derived from Plaintiff's Revised Exhibit 41, which is an attempt to summarize the various unpaid claims.  This calculation is broken down as follows: $145,787.29 representing claims that were "certified" prior to March 13, 2006, and $159,267.97, representing claims that were "certified" after March 13, 2006;

        b.     $44,640.96, for outstanding judgments against NIFL by three players since workers' compensation did not cover treatment for their injuries; and

        c.     $9,217.07, representing un-reimbursed premium payments for the un-reimbursed premium payment made to RPC by NIFL for workers' compensation insurance coverage that was not obtained.

Findings of Fact, No. 8.

14.     On September 18, 2007, Plaintiff National Indoor Football League ("NIFL") filed a Supporting Affidavit With Respect to its Petition for Attorneys' Fees and Costs.  (Doc. No. 148).  This Supporting Affidavit, submitted by Attorney Timothy Leventry, was filed in accordance with the Court's Order of September 4, 2007, that directed the NIFL to provide an affidavit containing the following information:  (a) the prevailing market rates in both Johnstown and Pittsburgh for legal services; (b) the usual billing rates of all attorneys and support staff for

whom work is claimed; (c) the identify of the service provider contained in Plaintiff's attorneys' invoices; (d) detailed fees statements showing hourly rates for all attorneys and support staff for whom fees are claimed: (e) detailed fee statements showing hourly rates for all attorneys and support staff; (f) receipts for costs and reimbursements; (e) the Fee Agreement with the NIFL; and (g) documentation of the fairness and reasonableness of the costs and fees requested.

15.     This Supplemental Response addresses the claims and points made in the Supporting Affidavit.

## RESPONSE TO PLAINTIFF'S SUPPORTING AFFIDAVIT

16.     Paragraphs 1 through 15 of this Supplemental Response are incorporated herein by reference as though set forth fully herein.

17.     RPC disputes the statement contained in Paragraph 1 in the "Background" portion of Plaintiff's Supporting Affidavit that "[t]he NIFL was established as the prevailing party when RPC Employer Services, Inc. ("RPC") stipulated to its liability for breaching the parties' Service Agreement." According to Ohio law, the term "prevailing party" is not viewed in a vacuum, but rather requires the court to look to matters outside the record. Bonney v. Otis Wright & Sons, Inc., 80 Ohio Misc.2d 5, 671 N.E.2d 1385 (1996). One factor looked at by the courts is "when a party becomes obstinate towards settlement and the verdict demonstrates overwhelmingly that his obstinacy was ill-conceived, the Court must be provided some discretion to avoid such situations in an effort to move the docket." Id. at 10, 671 N.E.2d at 1389. The "prevailing party" is not, as a matter of rule, the verdict winner. The "prevailing party" needs to have prevailed on a substantial portion of the claim. The claim here is the amount of damages to be recovered. Here, the bulk of the damages ultimately awarded following trial ($359.913.29) stemmed from unpaid medical claims ($305,055.26). However,

the NIFL initially claimed more than $692,000 in unpaid medical claims. The NIFL claimed wage loss, and no wage loss claim was submitted. The NIFL, in getting an award of approximately $359,000 did not prevail as to a substantial portion of its claim. The NIFL did not prevail when it refused to negotiate from a $150,000 settlement offer made to it. The amount awarded as part of the judgment is less than half of what was being claimed. In addition, after spending over $68,000 to prepare itself for a jury trial in March of 2006, the NIFL spent an additional $96,000 from April 2006 to the present to attend mediation and to present its damages. That is manifestly unreasonable in that the work was unnecessary and duplicative of the over $68,000 of work done in preparation for the jury trial.

18.     For these same reasons, when determining whether the NIFL is the "prevailing party, it is obvious that the statements contained in Paragraph 5 of Mr. Leventry's Supporting Affidavit to the effect that "the NIFL's total award of over $508,000.00 . . . represents more than 75% of the NIFL's total claim" is wildly misleading. The $508,000.00 figure set forth in the Supporting Affidavit includes simple interest of 8% per annum dating back to 2001. By his own admission, Mr. Leventry states that the claimed amount of damages ("over $692,000") represents the amount of unpaid workers' compensation claims only, and does not include interest calculations, player judgments, wage loss, or unreimbursed premiums. When calculating all of the "claims" made by the NIFL, the amount that the NIFL attempted to establish and the amount ultimately awarded pales in comparison to actual claims. There must be some proportionality to the award of attorneys' fees when there are no overriding social principals in play. When the action does not involve a civil rights claim or a consumer protection claim, but an ordinary contractual claim, the attorneys fees petition must be viewed with an eye toward proportionality; i.e. what would a reasonable client expect to pay as reasonable attorneys fees to present an

action.  Attorneys' fees of over $230,000 are not proportionate to the amount of the award, the amount actually attempted to be established, or the complexity of the case.

19.     In addition, it is at best unclear whether any of the parties to this lawsuit can ultimately be deemed to be the "prevailing party," in light of Court's direction that the NIFL make payment to the medical providers (along with prejudgment interest), as it is the medical providers, not the NIFL, that have been allegedly denied payment.  See Findings of Fact and Conclusions of Law, August 31, 2007, Doc. No. 139, Findings of Fact No. 9.  It is further true that there is no "prevailing party" given that the ultimate award was less than one-half of the total amount claimed and much closer to the settlement position of the Defendant

20.     Paragraph 14 of Mr. Leventry's Supporting Affidavit asserts that the fees sought are reasonable.  However, the fees are manifestly excessive and amounts to an undeserved windfall for Mr. Leventry and his law firm:

        a.     Mr. Leventry argues again that the scope of the case was "quite large," with damages exceeding $692,000.00 for unpaid medical claims and that the judgment represents approximately 75% of the amount sought. Affidavit, ¶¶ 14A, 14E.  For the reasons stated above, this figure is materially misleading, as the $692,000.00 excludes prejudgment interest. The actual judgment is about half of what was sought in this case.

        b.     Mr. Leventry's statement his fees are justified due to the duration of the case (over 5 years) also requires some context. Affidavit, ¶¶ 14F. RPC, in good faith, stipulated to a finding that it had breached the Services Agreement in 2006, and then, in good faith, sought to mediate the damages question.  The record here establishes that the only reason why a

trial was necessary was due to the fact that the NIFL did not have proper documentation for its claims of damages. To further complicate matters, the delays were brought about by the NIFL's repeated failure to abide by the Court's deadlines to produce the required records.

c.     RPC should not be made to pay any fees associated with prosecuting the NIFL's RICO and fraud claims, asserted in the Amended Complaint, against RPC. As part of the partial resolution of this lawsuit on March 28, 2006, RPC consented to liability only as to the breach of contract claim. The amount of fees/expenses associated with the complex claims of RICO and Fraud must be removed from the Petition, as there is no contractual right to recover for those claims, and those claims would amount to at least 25% of the pre-April 2006 legal bills, which would account for approximately $30,000.

d.     While the lodestar hourly rate referenced in the Affidavit ($115.75) appears reasonable, the amount of hours expended (1802.95) is not. The amount of duplicative motion practice, including the filing of several motions in limine related solely to damages, was due almost exclusively to the NIFL's counsel.

e.     RPC should not be liable for any time spent with respect to preparing for the mediation. The mediation was process was initiated pursuant to the joint consent of the parties in an attempt to settle the damages claims. RPC should not be penalized because the mediation did not result in a settlement. In addition, as noted above, the NIFL spent over $68,000 to

prepare for the March 2006 trial and then proceeded after liability for the contract claim was stipulated to, bill over tens of thousands of dollars to mediate the damages.

21.    Ultimately, when all is said and done, there is no "prevailing party" and no attorneys' fees should be awarded.  In the alternative, should this court deem the NIFL the "prevailing party", it must reduce the fee/expenses to reflect proportion to the established claim, avoid unnecessary and duplicative time, avoid excessive time charged after preparation for trial has already occurred, and avoid time and charges associated with the NIFL's failure to comply with discovery requests and court order regarding the production of documentation to support it's claims.  As such, in the alternative, a reasonable, proportionate, non-duplicative, non-RICO/fraud, and necessary fee for the "prevailing party" would be $80,500.

WHEREFORE, for the foregoing reasons, as well as those stated in its earlier Responses to Plaintiff's Petitions for Attorneys' Fees (Doc Nos. 136, 137) Defendant R.P.C. Employer Services, Inc. respectfully requests that the Court deny Plaintiff's Petition for Attorneys' Fees and Costs, or in the alternative, reduce the fee in accordance with the above arguments.

Respectfully submitted,

FECZO AND SEYMOUR

By: ___ s/ Michael J. Seymour _____
        Michael J. Seymour, Esquire
        PA ID No. 00260
        310 Grant Street, Suite 520
        Pittsburgh, PA 15219
        Telephone:  (412) 261-4970

BURNS, WHITE & HICKTON, LLC

By: ___s/ John B. Cromer_____
    John B. Cromer, Esquire
    PA ID No. 66773
    Four Northshore Center
    106 Isabella Street
    Pittsburgh, PA 15212
    Telephone:    (412) 995-3000

    Attorneys for Defendant
    R.P.C. Employer Services, Inc.

Dated: October 2, 2007

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I served a true and correct copy of the within

Defendant's Supplemental Response to Plaintiff's Petition for Attorneys' Fees and Costs upon

the following counsel of record **electronically** on the 2nd day of October, 2007:

Timothy C. Leventry, Esquire
Leventry, Haschak, Rodkey & Klementik, LLC
1397 Eisenhower Boulevard
Richland Square III, Suite 202
Johnstown, PA 15904

Bernard C. Caputo, Esquire
John A. Caputo & Associates
Three Gateway Center, 5th Floor East
401 Liberty Avenue
Pittsburgh, PA 15222


s/Michael J. Seymour
Michael J. Seymour, Esquire
Counsel for Defendant